THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Robert F. Murphy, III, Lead Plaintiff for Patrol Officer Plaintiffs, et al.<br><br>and<br><br>Brian C. Grassey, Lead Plaintiff for Superior Officer Plaintiffs, et al.<br><br>       Plaintiffs<br><br>v.<br><br>Town of Natick, Natick Police Department, and Dennis R. Mannix, in his capacity as Chief of Police<br><br>       Defendants | Docket No.: 04-11996RGS |

## AFFIDAVIT OF DENNIS R. MANNIX

I, Dennis R. Mannix, state the following facts based on my personal knowledge:

1. I am currently the Chief of Police of the Natick Police Department, and have been in that position since I was appointed by the Town Selectmen in May, 1989.

2. I have a bachelor's degree from Boston State College in law enforcement, which was awarded in 1977. I also have a master's degree in criminal justice, from Anna Maria College.

3. I began my career in law enforcement with the Quincy Police Department, beginning in December 1971. Following my time in Quincy, I was hired as the Chief of Police in Bourne in May 1987, where I served until I became Chief in Natick in 1989.

4. As the Chief of Police, I am the ranking officer in charge of the Natick Police Department ("Department"). As the Chief, I am the final authority on all matters within the

Department, and I issue orders and regulations which govern the day-to-day activities of the Department.

5. The Officers in the Department are organized in what is often described as a military style chain-of-command, and authority and responsibility move up the chain. At the bottom are Patrol Officers. Supervising the Patrol Officers are the Sergeants. Supervising the Sergeants are the Lieutenants. In this chain of command, the Lieutenants report to me.

6. The Department is organized into several Divisions, and several independent command-level positions.

7. I have an Executive Officer, who is my second in command and responsible for Command when I am not available. The position is currently held by Lieutenant Peter Mason. In this position, Lieutenant Mason has overall authority to direct any and all employees within the Department. Lieutenant Mason also has other areas of responsibility including such things as professional standards oversight, officer training, administering information technology systems, emergency response purchases, and building and facilities issues.

8. Also immediately supervised by myself in these independent command-level positions are the Administrative Officer, Sergeant Leo Fitzpatrick, and the Traffic Safety Officer, Sergeant Brian Lauzon.

9. The remaining members of the Department are either assigned to: the Patrol Services Division, commanded by Lieutenant Steven Pagliarulo; the Investigative Services Division, commanded by Lieutenant Nicholas Mabardy; or the Information Services and Communications Division, commanded by Lieutenant Brian Grassey.

10. The Lieutenants, and Sergeants Fitzpatrick and Lauzon, work a Monday through Friday, 8AM to 4 PM schedule, commonly referred to as a 5 and 2.

11. The Patrol Services Division is divided into three shifts, Shift 1 from 12 midnight to 8 AM, Shift 2 from 8 AM to 4 PM, and Shift 3 from 4 PM to 12 midnight.

12. Each shift is supervised by two Sergeants, one inside (the Station Supervisor), and one outside (the Patrol Supervisor). Assignments to the shifts are determined based on seniority, as outlined in the CBAs.

13. There are approximately 9 Sergeants and 30 Patrol Officers assigned to the Patrol Services Division.

14. The Officers assigned to the Patrol Services Division, except Lieutenant Pagliarulo, commonly work a schedule of 4 days on and 2 days off, referred to as a 4 and 2.

15. Because of the different schedules, the Sergeants supervising each shift (either the Patrol Supervisor or the Station Supervisor) often work without a Lieutenant present.

   a. The Patrol Services Division runs three shifts, seven days a week, for a total of 21 shifts.

   b. The Sergeants are independent and expected to use their skills, knowledge, and experience, in making decisions about how to guide and direct the Patrol Officers.

16. I expect that each Sergeant will supervise the Patrol Officers under their command and supervision. These expectations are laid out in the Sergeant Position Description, and, in fact, are how the Department operates. As stated in the job description, a Sergeant must be thoroughly acquainted with the duties of Patrol Officers in order to assist and instruct the Patrol Officers in the proper discharge of their duties.

17. As supervisors, their primary duty is to direct the activities of the Patrol Officers, or to monitor their activities. This applies whether the Sergeants are in the station or out on patrol.

18. The summary section of the Sergeant's position description states as follows:

> A Sergeant provides the first level of supervision in the Department. He is primarily responsible for the proper performance of Patrolmen assigned to duty within the area subject to his supervision.
>
> A Sergeant is charged with ensuring compliance with the Department's regulations. He handles all minor infractions using his best judgment and report all serious violations to his supervisor.
>
> A Sergeant shall be responsible for the efficiency, discipline, conduct, appearance, and strict attention to duty of all Patrolmen under his supervision.

19. As set forth in the job description, the Sergeant is responsible for supervision. This includes supervising Patrol Officers assigned to his/her shift and being responsible for their effectiveness, monitoring the duty performance of departmental members and employees, and ensuring that it is satisfactory through encouragement, explanation, discipline, referral to his/her superior officer, and submitting a written report on any member of the Department when he/she commits a serious breach of regulations. Serious breaches may include flagrant refusal to follow the Sergeant's orders and more.

20. I expect that each Lieutenant will supervise the personnel within his or her Division, and I have delegated them the authority to do so. These expectations are laid out in the Lieutenant Position Description, and, in fact, are how the Department operates.

21. All of the Officers receive a copy of the Department Policies and Procedures, which includes the Position Descriptions, when they are hired. Upon receipt, they sign an acknowledgement which is kept in their personnel file.

22. In addition to the shift divisions, I have divided the Town of Natick into three separate geographical areas, Areas A, B, and C. Each Sergeant and Patrol Officer are assigned to a patrol area, in which they typically work during the course of their shift.

23. I have assigned three Sergeants as Area Commanders, one to each area. The Area Commanders are individually responsible for their Area and generally direct the rest of the Patrol Division, with respect to that Area.

24. Sergeants Thompson, Lamont, and Dunlop are the Area Commanders for Areas A, B, and C respectively. I expect that those Sergeants will liaise with the other Patrol Officers, especially the Sergeants, in developing and directing strategies and patrols, to address police problems specifically within their area.

25. There are approximately seven Patrol Officers with the rank of Detective, assigned to the Investigative Services Division, which is commanded by Lieutenant Mabardy. Lieutenant Mabardy directs the investigation, assignment, and monitoring of cases assigned to this Division. He is responsible for the work of the investigators that are in his division, and also reviews and approves reports, and directs the case management process.

26. As a matter of practice, I expect Lieutenant Mabardy to select the Patrol Officers he wants as Detectives, and I approve those selections. He also has the right to determine assignments within his Division.

27. There are approximately 10 Dispatchers, 3 Records staff, and the Court Liaison Officer assigned to the Communications and Information Services Division, which is commanded by Lieutenant Brian Grassey.

28. Lieutenant Grassey supervises the dispatchers generally, and the Patrol Officers and other supervisors with regard to the report review and investigations and case management. These duties constitute the bulk of his time and responsibilities.

29. The Traffic Safety Officer, Sergeant Brian Lauzon, coordinates with the Patrol Supervisors, in making traffic related assignments, as well as truck team assignments and special directed patrols.

30. The Administrative Officer, Sergeant Fitzpatrick, has job duties generally in the areas of Department administration, including detail and overtime administration, payroll administration, budgeting, grant writing, recording and reviewing the attendance of persons in the department, and other special duties as assigned by me.

31. I have a "Command Staff" which comprises the four Lieutenants and Sergeants Fitzpatrick and Lauzon. These senior staff are my delegates in their respective areas of expertise.

32. I hold Command Staff meetings regularly, as often as several times a week. I also hold general staff meetings with all of the Supervisors (the Sergeants and the Lieutenants) up to 10 times a year.

33. I seek input from the Command Staff and, while I am not required to follow their recommendations, I always give substantial, significant, and meaningful weight to that input in making my decision, on many issues within the department, including decisions regarding the hiring, firing, promotion, and/or discipline of police officers in the Department.

34. I also seek input from the command staff and all of the Supervisors, in making the Employee of the Month and Officer of the Year awards, and I consider it part of their duty to

provide feedback on the good work of employees, as well as the employees whose work needs improvement.

35. In the last five years, the Natick Police Department has hired only about 10 or 12 new Patrol Officers, as there is not a great deal of turnover.

36. The Natick Police Department hiring process is governed by the Massachusetts Civil Service law, which requires us to hire from a Massachusetts Civil Service list of eligible candidates. As a first step, we obtain a list from the Commonwealth of Massachusetts when we have an opening or intend to hire. The list is limited, typically, to three candidates for each opening, or five candidates if there are two openings. My understanding of the requirements is that, in short, the Appointing Authority must select from the first persons on the list for the open position, unless it can legally justify a bypass.

37. In the last five years, and for as long as I can recall, all new Sergeant and Lieutenant hires have been the result of internal promotions; we have not hired from outside of the Natick Police Department.

38. The Natick Police Department promotion process is also governed by the Massachusetts Civil Service law, which again requires us to choose from a list of eligible candidates for promotion published and provided to us by the Commonwealth of Massachusetts. Here again, it is my understanding that the Natick Police Department must select from the first persons on promotional list, unless it can legally justify a bypass.

39. Final decision making authority about a new hire in a Patrol Officer position is with the Natick Board of Selectmen; the Selectmen are what is described as the "Appointing Authority." As Chief, I oversee the selection process and gather input and information about candidates

developed in the process and with that information and input, I am ultimately responsible for making the final recommendation to the Selectmen about who should be hired.

    a. I do not recall a time when the Selectmen did not accept my recommendation on the hiring of a new Patrol Officer.

    b. I do not recall an instance where I did not give substantial and significant weight to others in the Department involved in the process, or where I did not rely materially on their input.

40. When there is an opening for a Patrol Officer, the opening is typically not for a specific shift and, therefore, there is no one or two Sergeants that the new hire will necessarily be reporting to if selected. The new hire will be assigned to the open shift at the time. The reason for this is that Patrol Officers are assigned to shifts by seniority.

    a. Under the Collective Bargaining Agreement, " . . . when a position . . becomes available, the most senior man shall have the first opportunity to bid for that position. . . ."

    b. Patrol Officers bid for shifts based on seniority, and the new hire is placed on the shift that no other patrol officer has selected.

41. Certain Sergeants will be and are involved in the new hire selection process. However, as hiring is infrequent, and because the Civil Service Law governs the selection process, and we do not hire for specific shifts, it would, in my opinion, create an unnecessary process to involve every Sergeant in every new Patrol Officer hire. Therefore, I have established a process that involves material input by certain Sergeants performing the candidate selection background part of the process but does not involve every Sergeant in every new hire decision.

42. Each Patrol Officer candidate is screened by one of a group of Sergeants trained as background investigators, and who report on the candidates qualifications.

    a. The background investigation is extensive, can take many weeks, and can include everything from verifying the accuracy of information provided to conducting interviews including of former employers, references listed and secondary references which is where the Sergeants try to get references by speaking with other persons who know the candidate because those persons presumably have not been prepped for an interview.

    b. This can include, for instance, neighborhood checks, talking to neighbors, and talking to any other person the Sergeants may deem appropriate; all of which is ultimately to determine the candidates background and qualifications and ultimately become part a material and significant part of the information considered in selecting a hire.

43. The Sergeants who perform this review then provide their findings and conclusions and suggestions or recommendations, if any, in a report submitted to me.

44. I rely heavily on the input of the Sergeants who provide and perform the background screenings on candidates. Significant, substantial, meaningful, and essential weight and consideration is given to the Sergeants reports.

45. Following the completion of the background investigation, the Command Staff and I hold a meeting at which time we discuss and evaluate the candidates; again ultimately bound by the Massachusetts Civil Service Law and bypass limitations. Opinions and suggestions are expressed and given a great deal of weight and consideration in developing the Department recommendation.

46. The candidates may be interviewed by the Command Staff, and we discuss our opinions of the candidate following each interview.

47. At times, I may also seek out further opinions of one or more other Sergeants, with respect to the hiring of a Patrol Officer.

48. I give serious weight to the thoughts and opinions of my Command Staff and Sergeants, and I take their recommendations seriously. At times, however, I may choose to not follow their recommendations, based on my own knowledge and experience.

49. I transmit the final recommendation to the Selectmen, in the form of a memo. I typically will mention whether the recommended candidate is a unanimous choice, or a consensus choice.

50. When a Patrol Officer is seeking promotion to Sergeant, or a Sergeant is seeking promotion to Lieutenant, the process is similar except that there is no need for a further background information as the person is already employed by the Department.

51. Because we are a small Department, the Officers are generally well known to everyone, and the feedback provided can be informal.

52. I expect that as a part of a Sergeant's duty, they would report to me directly, or through the chain of command, any information they possess which could impact a decision about a promotion.

53. I also expect that the Patrol Services Division Commander would seek information from other Superior Officers, with respect to the promotability of a particular Officer seeking advancement.

54. The work records of persons seeking promotions, including reports by their supervisor over the years (if any) are taken into consideration.

55. When considering the officers applying for promotion, I also involve my Command Staff in the decision, assign significant weight to their opinion, and consider seriously what they have to say.

56. The process for firing or imposing what can be described as formal discipline - such as a suspension or termination - is also similar and may rise to a level of involvement by the Selectmen. When the Selectmen are involved, they have indicated to me that they rely on my recommendation, and the fact that I seek input in developing that recommendation from other officers.

57. Only one Officer, if any, has been terminated in the last five years.

58. Many Officers have received lower levels of discipline, including but not limited to verbal counseling, a letter of counseling, and/or a reprimand.

59. Verbal counseling happens very frequently, and is part of the job duties of the Sergeants and the Lieutenants.

60. All supervisors have the authority to relieve someone of duty, when the situation requires such action.

61. Sergeants play a significant and material role in the disciplinary process of Patrol Officers.

   a. They are responsible for dealing with the day to day conduct issues that are not serious (serious meaning things such as flagrant refusal to obey orders or commission of a crime).

   b. They are responsible for acting on any misconduct or performance, and bringing forth the appropriate facts and reports about conduct that rises to the level of warranting more formal discipline or action.

    c. Not only is their input sought in the process, its is required and expected that as supervisors they are monitoring conduct and performance, and addressing problems as they arise in different ways depending upon the seriousness of the incident.

    d. The Sergeant job description and the CBA provides information about the Sergeant's role.

62. Under the terms of the CBAs, the first step for Patrol Officers who are aggrieved is to discuss the grievance with their immediate supervisor, i.e., their Sergeant. Sergeants have the authority to resolve grievances. Grievances themselves are filed with me.

63. The investigation of a complaint about an Officer generally begins with the filing of an incident report, typically done by the supervisor on duty at the time the complaint was lodged. That report is then passed to the Executive Officer, Lieutenant Mason, who initiates an investigation.

64. Investigation duties are usually assigned to the immediate supervisor, either a Sergeant or a Lieutenant.

65. Superior Officers who investigate complaints are allowed to include recommendations for discipline in their reports, but do not always do so. If a report does not include a recommendation, and I want one, I will ask for one. The facts provided by the Sergeant or Lieutenant are always relied upon in making a determination about if, or what, action should be taken.

66. Before I contemplate disciplinary action, I discuss the measure of discipline with the appropriate supervisors. I also typically discuss the situation with my Command Staff.

Signed under the pains and penalties of perjury, this 24th day of October, 2006.


*Dennis R. Mannix*

Dennis R. Mannix
Chief, Natick Police Department

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be send to those indicated as non registered participants on October 27, 2006.

/s/ John P. Flynn
John P. Flynn