THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Robert F. Murphy, III, Lead Plaintiff for Patrol Officer Plaintiffs, et al. | )     Docket No.: 04-11996RGS |
| and | ) |
| Brian C. Grassey, Lead Plaintiff for Superior Officer Plaintiffs, et al. | ) |
| Plaintiffs | ) |
| v. | ) |
| Town of Natick, Natick Police Department, and Dennis R. Mannix, in his capacity as Chief of Police | ) |
| Defendants | ) |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS MOTION
FOR PARTIAL SUMMARY JUDGMENT**

Defendants Town of Natick, Natick Police Department, and Dennis R. Mannix, Chief of

Police (collectively "Defendants") respectfully move that this Court grant them Partial Summary

Judgment and hold that, in accord with many years of established case law, the Superior Officers

are exempt employees under the Fair Labor Standards Act ("FLSA"), and thus are not entitled to

FLSA overtime payments.  In addition, Defendants request that this Court find that the seven

Detectives assigned to the Natick Police Department are also exempt employees under the

FLSA.

This action was filed by the Plaintiffs, 56 current and former Patrol and Superior Officers

of the Natick Police Department (collectively "Officers"), in September 2004, alleging that

Defendants had violated the FLSA for failing to include certain pay differentials into calculation of the appropriate overtime rate, for failing to include details as hours worked for the purposes of calculating overtime, and for failing to pay certain Superior Officer[1] Plaintiffs overtime for certain hours allegedly worked immediately prior to and after their regular shift. See Plaintiffs' First Amended Complaint of Violation Under the Fair Labor Standards Act, Counts I and II ("Amended Complaint").

Defendants submit that partial Summary Judgment is appropriate on all counts with respect to the Superior Officers and the Detectives, because these employees as a matter of law and undisputed fact, are "exempt" under the FLSA.  Superior Officers of the Natick Police Department are exempt employees because they are managers and/or administrative personnel as those terms are defined for purposes of the FLSA; and the Detectives of the Natick Police Department are exempt employees because they are administrative personnel;

As exempt employees, these two classes of Plaintiffs[2] are not entitled to FLSA overtime payments for any hours worked in a week exceeding 40 hours. See Amended Complaint, Count I.  Further, they are not entitled to FLSA overtime for any Details worked, whether those Details are Town or Private Details, and they are not entitled to FLSA overtime for any time spent immediately preceding or following their regular shift. See Amended Complaint, Count II.

---

[1]    The Superior Officer Plaintiffs are the Sergeants and Lieutenants of the Natick Police Department ("Department").  The Patrol Officer Plaintiffs are the Patrol Officers, but include several Officers who have been promoted to the rank of Sergeant since the Complaint was filed.  Other than the Defendant Chief of Police, there are no other Officers in the Department, although there civilian employees.

[2]    The Detectives hold the rank of Patrol Officer, and are part of the Patrol Officer Plaintiffs; however, as is demonstrated in Part III.A., *infra*, they should be treated differently than the non-Detective Patrol Officer Plaintiffs for purposes of the FLSA.

## ARGUMENT

**I.      Standard of Review.**

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on a

motion for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions,
> answers to interrogatories, and admissions on file, together with the affidavits, if
> any, show that there is no genuine issue as to any material fact and that the
> moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).  Where that standard is met, as in this case, summary judgment is

appropriate.  See also Quinones v. Buick, 436 F.3d 284, 289 (1st Cir. 2006).  A "genuine" issue

means one where "the evidence about the fact is such that a reasonable jury could resolve the

point in favor of the nonmoving party." O'Brien v. Agawam. 440 F. Supp. 2d 3, *6 (D. Mass.

2006).  A "material" fact is one that might "affect the outcome of the suit under the governing

law." Id. (citations omitted).

The burden of demonstrating that there is no dispute of material fact falls on the moving

party, and the court must view all facts and draw all inferences in the light most favorable to the

nonmoving party.   See Noviello v. City of Boston, 398 F.3d 76, 84 (1st Cir.2005).

Once a party has met its initial burden, the burden shifts to the non-moving party, to "set

forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby,

477 U.S. 242, 247-48 (1986); see also Fed. R. Civ. Pro. 56(e).   The opposing party "cannot rely

on the lack of evidence, but must affirmatively point to specific facts that demonstrate the

existence of an authentic dispute." Agawam, 440 F. Supp. 3 at *6.  Summary judgment should be

granted where there was adequate discovery and a party "fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

When deciding cross-motions for summary judgment, the court must consider each motion separately, drawing inferences against each movant in turn. <u>Blackie v. Maine</u>, 75 F.3d 716, 721 (1st Cir. 1996).

The facts developed during discovery will demonstrate that no issues for trial exist with respect to the exempt status of the Superior Officers and the Detectives, and no fact-finder could reasonably return a verdict in favor of the Plaintiffs, even if all the inferences were drawn in their favor. Therefore, Defendants are entitled to partial summary judgment, on the issues presented herein.

## II.    <u>The Superior Officers are Exempt Executive Employees Under the FLSA</u>.

The Fair Labor Standards Act ("FLSA") and years of interpretive case law exempt from coverage under overtime law employees who are employed in a "bona fide executive, administrative, . . . capacity." 29 U.S.C. § 213(a)(1). The Superior Officers of the Natick Police Department, the Sergeants and Lieutenants, fall within one of these exemptions, and are not entitled to overtime pay. The structure of the Natick Police Department, the testimony of Chief Mannix, and the testimony of the Superior Officers themselves,[3] support this conclusion, as is

---

[3]    Defendants deposed 20 of the 21 current and former Superior Officers who are Plaintiffs in this action. Some of those Plaintiffs were reluctant to agree to the use of the word "supervisor" or "manager" during the course of their depositions, but most eventually admitted that they participate in duties, and have certain responsibilities and authority, which show that they are indeed supervisors. <u>See</u> DSOF, ¶¶ 9-10, 19-22, 25-33. Defendants submit that any alleged dispute of fact regarding this point is one of characterization, not of content, and that there is no genuine dispute of material fact with regard to whether the Superior Officer Plaintiffs are indeed supervisors or managers.

discussed more fully below. <u>See</u> Defendants' Concise Statement of Material Facts Not in Dispute ("DSOF") at ¶¶ 19-22, 25-33.

There are two versions of Department of Labor ("DOL") regulations which expand upon the bona fide executive exemption set forth in the FLSA, and which govern Plaintiffs' claims.  In April 2004, the DOL issued revised regulations relating to the bona fide executive and administrative exception.  These "new" regulations became effective three weeks before Plaintiffs' original Complaint was filed, on August 23, 2004, <u>see</u> 69 Fed. Reg. 22122 (April 23, 2004), and only apply to analysis of the claims from that date forward.  Regardless of which version of the regulations is applied, neither the analysis nor the conclusion that the Superior Officers are exempt employees, materially changes.

### A.    Applicable Pre-August 2004 Regulatory Law.

Under the pre-August 2004 DOL regulations, an executive employee is one who is compensated on a salary basis at a rate of not less than $250 per week, whose primary duty is management of the enterprise in which employed or a customarily recognized department of subdivision thereof, and who customarily and regularly directs the work of two or more employees. <u>See</u> 29 C.F.R. § 541.119 (40 Fed. Reg. 7093 (Feb. 19, 1975)).  If an employee qualifies for exemption under this proviso, it is not necessary to test that employees qualifications in detail under paragraphs (a) through (f) of Sec. 541.1 of this part. <u>Id</u>. Analysis under this regulation has been referred to by the courts as "the short test."[4]

---

[4]    29 C.F.R. § 541.1 applied to employees who made less than $250 per week.  This analysis has been referred to by the courts as "the long test."

Because the Natick Superior Officers meet each of these criteria, and because the facts underlying each of these criteria are undisputed, they are executive employees who are not entitled to FLSA overtime.  This conclusion is supported by recent First Circuit case law.  In O'Brien v. Town of Agawam, the court concluded that all of the Agawam officers who held "supervisory rank" - i.e., Special Sergeant, Sergeant, Lieutenant, or Captain, were employed in a bona fide executive capacity and thus exempt from the overtime protections of the FLSA. See O'Brien v. Agawam, 350 F. 3d 279, 292-94 (1st Cir. 2003).

### 1.  Salary Basis.

Whether or not the Officers are paid on a salary basis is a simple factual inquiry.  As noted by the Agawam court, "[a]n employee is paid on a salary basis 'if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quality of the work performed.'" Agawam, 350 F. 3d at 292 (emphasis removed) (citing Auer v. Robbins, 519 U.S. 452 (1997)); see also 29 C.F.R. § 541.602(a).  The amount of that salary must be not less than $250 per week.[5]

Here, there has not been any evidence developed to suggest that the Superior Officers are anything other than salaried.  Like the officers in Agawam, they receive 1/52 of their annual pay each week, and that pay has not been subject to any deductions "because of variations in the quality or quality of the work performed." DSOF ¶ 4. The weekly pay amount may increase through the payment of contractual overtime, and other pay incentives, but the base amount does

---

[5]     Under the new regulations, the salary requirement is $455. 29 C.F.R. § 541.600(a).  The Superior Officers meet that requirement. DSOF ¶ 4.

not change.  This type of change is not enough to consider the officers anything other than

salaried. <u>See</u> <u>Agawam</u>, 350 F. 3d at 293 ("[I[t does not matter that the supervisory officers

received varying amounts of contractual overtime payment in addition to their salary; . . . ").

Extra payments beyond the base pay, such as those paid under the Quinn Bill, for example, do

not defeat salary basis. <u>See</u> 29 C.F.R. § 541.604(a) (extra compensation is expressly permitted).

Further, the base pay of the Superior Officers exceeds both the old $250 and the new $455

threshold. <u>See</u> DSOF ¶ 4.

Because the Officers receive the same base pay every week which exceeds the $455

threshold, and because they are not subject to unlawful pay deductions, they are salaried

employees, and fall within the first part of the FLSA executive exemption.

## 2.  Management Duties.

Whether an employee's primary duty is management is not a difficult analysis, as the

regulation itself notes: "[i]n the usual situation the determination of whether a particular kind of

work is exempt or nonexempt in nature is not difficult. In the vast majority of cases the bona fide

executive employee performs managerial and supervisory functions which are easily recognized

as within the scope of the exemption." 29 C.F.R. § 541.102(a).  Certainly, first level and second

level supervisors, within a department organized under a quasi-military Chain of Command,

should be considered executive employees.

The rule goes on to provide further clarification, and states that it is "generally clear"

that "management duties" include such things as: interviewing, selecting, training, setting hours

of work, directing work, maintaining records, appraising work performance, handling employee

complaints, discipline, planning work, apportioning work, legal compliance, and providing for

the safety of the men and the property.  29 C.F.R. § 541.102(b).

There are many cases, from many different circuits, which have held that police

Sergeants and Lieutenants perform "managerial" duties as their primary responsibility.  The

leading case is Auer v. Robbins, 65 F.3d 702 (8th Cir. 1995), aff'd, 519 U.S. 452 (1997).  In

Auer, Sergeants and one Lieutenant challenged a St. Louis statute which provided that no officer

at the rank of Sergeant or above would be eligible for overtime compensation.  The court found

that all of the different Sergeant positions were exempt under the FLSA.  The analysis turned on

whether the Sergeants had management as their primary duty, and in addition to evaluating the

amount of time spent on managerial duties, it looked at four key factors:

> (1) the relative importance of the managerial duties as compared to other types of
> duties; (2) the frequency with which the employee exercises discretionary powers;
> (3) the employee's relative freedom from supervision; and (4) the relationship
> between the employees salary and the wages paid to other employees for the kind
> of nonexempt work performed by the supervisor.

Id. at 712.  Thus, even if a Sergeant didn't spend more than a certain amount of time on his or

her managerial duties, as long as the Sergeant's primary duty is still management, he or she can

be an exempt executive employee.

The Auer court specifically addressed certain types of Sergeants with duties and

responsibilities that are similar to the duties and responsibilities of some of the Natick Sergeants.

For example, the Auer court analyzed the Precinct Sergeants, whose duties are similar to the

Natick Patrol Sergeants.  The court noted the trial court finding that the "rank and file police

officers look to the [S]ergeants for guidance and direction, while senior officers reply upon them

for accountability and control of their areas and do not closely supervise their activities." Auer,

65 F. 3d at 713; see also DSOF ¶¶ 20-24, 25c.  The court also discussed the trial court's finding

that the police manual provided that a Precinct Sergeant was responsible for, among other duties,

supervising the officers assigned to his precinct. Holding that the trial court correctly determined that the Precinct Sergeant's primary duty was management, the Eighth Circuit also focused on the fact that Sergeants are more highly compensated than Patrol Officers, and that the manual delineates their duties as managing subordinate officers. Auer, 65 F.3d at 713. Even where the duties of the Sergeant and the rank and file officers (i.e., in this case the Patrol Officers) might sometimes overlap – as could happen in Natick – the court determined that the Precinct Sergeants were exempt executives. Id.

This analysis makes sense because, as with many kinds of executives, the Sergeant's duties will vary from day-to-day. In Natick, this is particularly true. The Sergeants assigned to the Patrol Division may be inside the station, or outside driving the Patrol Supervisor car. DSOF ¶ 26. Such a Sergeant may spend some days on paperwork and reports, and others directing the response to, or investigation of, major accidents and/or crimes. The Natick Sergeants, like the Sergeants in the Auer case, oversee Patrol Officers, receive investigation information from the Patrol Officers, conduct Roll Call, oversee caseloads, brief Patrol Officers on crimes and investigations, collect data, inspect Patrol Officers before their shifts, provide counseling and act as resources for the Patrol Officers, oversee the Dispatchers, and take corrective action against Patrol Officers when they fail to conduct their duties in accordance with the guidelines and procedures of the Department. DSOF ¶¶ 27-28. The Eighth Circuit concluded these duties were primarily managerial in nature, and this court should do the same.

The Sergeant position description, which is included in the Rules and Regulations of the Department and issued to each Officer upon hire, outlines their duties and responsibilities as

supervisors. DSOF ¶17a.    It states:

> A Sergeant provides the first level of supervision in the Department. He is primarily responsible for the proper performance of Patrolmen assigned to duty within the area subject to his supervision.
>
> A Sergeant is charged with ensuring compliance with the Department's regulations.  He handles all minor infractions using his best judgment and report all serious violations to his supervisor.
>
> A Sergeant shall be responsible for the efficiency, discipline, conduct, appearance, and strict attention to duty of all Patrolmen under his supervision

DSOF ¶¶ 19-20.  It is part of the duties of the Patrol Officers to be accountable to the Superior Officers and to obey orders, as well as to communicate with the Superior Officers all pertinent information. DSOF ¶ 18.

The Auer court found that Desk Sergeants were exempt executive employees, even where they may have devoted less than 50% of their time to managerial duties. Auer, 65 F. 3d 714. What the court found important was that management duties were more important than other duties, that the Sergeants frequently exercised their judgment and discretion, that they were relatively free from supervision, and that they were more highly paid than other employees who did the same kind of work.  Id.; see also Anderson v. The City of Cleveland, TN, 90 F. Supp. 2d. 906, 909 (E.D. Tenn. 2000) ("Although the Patrol Lieutenants must keep the Captain informed of what occurs on their shifts, the Captain has little direct contact with the patrol officers. Because the Captain only works from 9:00 am until 5:00 pm, the Patrol Lieutenants make most day to day decisions without having to seek guidance of approval from the Captain. . .") (internal citations omitted).

All of these same conclusions apply to the Natick Sergeants, who may be assigned as Station Supervisors, and in fact are typically assigned as Station Supervisors for two of their four weekly shifts. DSOF ¶¶ 26-27. They work relatively free from supervision and exercise their judgment and discretion regularly, without close scrutiny from the Lieutenants. DSOF ¶¶ 7, 23, 25c.    In fact, because of the vagaries of scheduling and the fact that the Lieutenants and the Chief generally work five day time shifts, but the Patrol Services Division runs 21 shifts, seven days a week, 24 hours a day, the Sergeants are more likely than not to work unobserved by *any* higher ranking Superior Officer. Id. They often are the only Superior Officers at the Station or out on Patrol.

Sergeants are also more highly compensated than the Patrol Officers they supervise, and receive *specific* additional compensation for acting as supervisors. DSOF ¶ 6.  Article XVIII of the CBA, titled "Supervisory Compensation" provides:

> [e]mployees covered by this Agreement shall received five percent (5%) of their respective base pay per year in exchange for which employees shall arrive a reasonable amount of time prior to the start of their regular shift *to prepare themselves to provide supervisory guidance during their shift* and shall stay on duty a reasonable amount of time after each shift to conclude any administrative tasks that have arisen during their shift.  Time spent performing these functions shall not be subject to the work schedule provided in Article IX or the overtime provisions provided in Article XI.

DSOF ¶ 5 (emphasis supplied).  Because the Superior Officers are more highly compensated than the Patrol Officers who might, from time-to-time, be performing similar tasks, DSOF ¶ 6, and because of the Sergeant position description, the title of Station *Supervisor*, and their role and place in the command structure, these facts all lead to the inescapable conclusion that management is the most important duty of the Sergeants assigned to the Patrol Services Division, and they are exempt executive employees.

11

The <u>Auer</u> court also analyzed the role of Traffic Sergeant, and concluded that a Traffic Sergeant was an exempt executive employee, despite that fact that he or she performs accident reconstruction and other non-exempt work. However, because a Traffic Sergeant was primarily engaged in supervising and coordinating officers engaged in enforcing traffic regulations, providing motorist assistance, and controlling traffic, the court held these duties were primarily management in nature.

Sergeant Lauzon, the Natick Sergeant assigned as the Traffic Safety Officer, is similarly primarily engaged in the direction of the Officers in enforcing traffic regulations and controlling traffic. DSOF ¶ 33. In his role as Traffic Officer, Sergeant Lauzon acts as the Town's Safety Officer, and represents the Chief on the Town Safety Committee. <u>Id</u>. In that capacity, he makes recommendations to the selectmen about road closures and other traffic issues. <u>Id</u>. Sergeant Lauzon also interacts with outside groups, including neighborhoods, about traffic issues including safety, and noise, and reports on those issues to the Chief. <u>Id</u>. He also investigates complaints regarding speeding or traffic volume, and conducts traffic studies on behalf of the Department. <u>Id</u>. He utilizes the results of these studies to direct Sergeants or Patrol Officers in their patrols and reviews all reports from Patrol Officers related to crash reports. In addition to these duties, the Traffic Safety Officer makes or advises on all traffic related assignments, as well as truck team assignments and special directed patrols. <u>Id</u>.

Other circuits have come to the same conclusions, and found that Police Sergeants and Lieutenants are exempt executive employees. In <u>Shockey v. City of Newport News</u>, 997 F.2d 18 (4th Cir. 1993), Sergeants were declared exempt where they directly supervised and evaluated officers, planned raids, made decisions on allocation of manpower, disciplined officers,

inspected officers at the beginning of a shift, reviewed officer reports, reviewed citizen complaints about officers, observed officers on patrol, and briefed officers regarding investigations.  Sergeants were exempt employees in <u>Nickell v. City of Lawrence, KS</u>., 352 F.Supp. 2d 1147 (D.Kan. 2004),  where they supervised officers, assigned them to investigations, participated in their selection, implemented discipline, made budget recommendations, monitored policy implementation, established methods for field operations, conducted performance evaluations, responded to major crimes and assumed command, oversaw patrol activities, conducted shift briefings, and assigned cars.  Of note is that Sergeants had no authority to assign any discipline beyond a verbal warning (all others had to be approved by a Lieutenant), yet still the court found Sergeants to be exercising managerial duties.[6]

In <u>Anderson v. City of Cleveland, TN</u>, 90 F. Supp. 2d 906 (E.D. Tenn. 2000), Lieutenants were deemed exempt where they conducted yearly evaluations, disciplined lower ranking officers, referred complaints to internal affairs, decided how to allocate shift manpower, did not arrest or issue citations, and patrolled only to watch officers on patrol.  <u>See</u> <u>also</u> <u>Hibert v. District of Columbia</u>, 23 F.3d 429 (D.C.Cir. 1994) (D.C. Circuit concluded that Lieutenants were exempt); <u>Barner v. City of Novato</u>, 17 F.3d 1256 (9th Cir. 1994) (Lieutenants and Captains were exempt where their duties consisted of assigning investigation leads to investigators, and taking charge of crime scenes).

The <u>Agawam</u> court also held that Sergeants and Lieutenants were exempt executive employees, although in that case, acknowledging the well-settled status of this point, the Plaintiffs didn't even bother to challenge the question of whether the Superior Officers were

---

[6]     In the Department, the Sergeants, as first line supervisors, regularly engage in such verbal counseling. <u>See</u> Part II.B., *infra*; <u>see</u> <u>also</u> DSOF ¶ 48.

primarily engaged in management duties.  Here as well, there should be no real question that the Natick Sergeants and Lieutenants are primarily managers.  Following the analyses cited from the many circuits who have addressed this point, heir roles, as outlined in the position descriptions, and as supported by deposition testimony and the Affidavit of Chief Mannix, is to supervise the Patrol Officers as either first line or second line supervisors.  The Sergeants assigned to the Patrol Division even have supervisor in their title.  On any given day, they are acting as either the Station *Supervisor*, or the Patrol *Supervisor*, for their shift.  The Lieutenants are part of the *Command* staff.  The Department is organized as a quasi-military organization and the Sergeants and Lieutenants are all of a higher rank, and receive more pay, than the Patrol Officers.  In addition to receiving a higher rate of pay, all of the Superior Officers receive additional pay in the form of a *supervisory* stipend.[7]  All of these facts demonstrate that the Sergeants and Lieutenants are primarily managers.

### 3.  Direct Two or More Employees.

The Natick Superior Officers each direct two or more employees.  Whether a Superior Officer directs two or more employees is a simple factual analysis.  The Natick Master Roster and Table of Organization demonstrate that the Sergeants assigned to the Patrol Services Division directs as many as nine to ten Patrol Officers assigned to a shift. DSOF ¶ 23.  The Patrol Services Division Commander, currently Lieutenant Pagliarulo, directs the nine Sergeants

---

[7]    Each of the Superior Officer Plaintiffs deposed acknowledged that their contract, which was bargained-for, contained this clause, and recognize and affirm this clause in their Complaint. Amended Complaint, ¶ 13(f). Further, in this litigation, each Superior Officer Plaintiff is seeking additional overtime compensation for this time immediately preceding or following their regular shift. Id., ¶19(a).  As such, it is entirely disingenuous for Plaintiffs to now be claiming that they are not supervisors.

assigned to the Patrol Division, as well as, indirectly, the Patrol Officers assigned to his Division. DSOF ¶ 25.

There are seven detectives in the Department. They each have the rank of Patrol Officer, and are supervised by the Commander of the Investigative Services Division, currently Lieutenant Mabardy. DSOF ¶¶ 29-30.

The Information Services and Communications Division is headed by Lieutenant Brian Grassey. Lieutenant Grassey supervises the nine full-time and seven part-time civilian dispatchers, the civilian records staff, the Court Officer, and all of the Patrol Officers and other supervisors with regard to the report review and investigations and case management. DSOF ¶ 31.

The Administrative Officer, Sergeant Fitzpatrick, oversees budget and payroll, and coordinates the assignment of details for all of the Officers in the Department. DSOF ¶ 32. By virtue of his position in the Department as a Sergeant, he has authority over all of the Patrol Officers, even though he has no direct reports.

The Traffic Safety Officer, Sergeant Brian Lauzon, makes or consults on all traffic related assignments, as well as truck team assignments and special directed patrols. In that role, he has staff authority to direct all of the Officers in the Patrol Division, whether Patrol Officers, or other Sergeants. DSOF ¶ 33.

The second in command is the Executive Officer, Lieutenant Peter Mason. Lieutenant Mason is a Supervisor, with authority over the entire Department. DSOF ¶¶ 9-10.

All of the Superior Officers direct, or have the authority to direct, two or more employees of the Department.

### B. **"New" Regulations.**

Under the "new" regulations, promulgated in April 23, 2004 and effective August 23, 2004, the DOL formally included as a separate prong of the analysis, that an "executive" employee under the FLSA is one "who has the authority to hire or fire other employees or whose suggestions as to hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a)(4). While this concept was previously included in and analyzed under the "management of the enterprise" portion of the old regulations, it is now separately delineated.

The regulation states that an exempt executive employee is one "whose suggestions as to hiring, firing, advancement, promotion, *or* any other change of status is given particular weight." 29 C.F.R. 541.100(a)(4) (emphasis supplied). The use of the word "or" is significant, and indicates that as long as a potentially exempt employee participates in at least one of the activities in the list which are joined by the "or," that is sufficient to meet the test. There is no requirement that the suggestions of the potentially exempt employee must be given particular weight with regard to hiring *and* firing *and* advancement *and* promotion *and* any other change in status. If that was the case, the DOL could have easily used the word "and" instead of "or."[8] Regardless of whether this Court analyzes this prong as requiring each of the above activities, or recognizes the importance of the use of the word "or" in the regulations, the Superior Officers are exempt executive employees.

---

[8] As a part of speech, "or" is a conjunction, and it is generally used as a "function word" to indicate an alternative. See Webster's Third New International Dictionary 1585 (1993).

In applying this standard, the courts seem more focused on the employee's potential input into hiring or firing decisions, rather than the frequency of that input.  In <u>Donovan v. Baking Corp.</u>, 617 F.2d 516, 521 (2nd Cir. 1982), Assistant Managers who did not exercise their hiring or firing power "frequently" were still found to be exempt executive employees, as long as there were some instances of hiring and firing in the record.  Similarly, in <u>Baldwin v. Trailer Inns, Inc.</u>, 266 F.3d. 1104, 1117 (9th Cir. 2001), an executive who had only recommended firing once in his entire tenure with the company, was found to have the power to hire or fire, consistent with that outlined in the DOL regulations.  Most recently, in <u>Rozenblum v. Orange Beach Properties</u>, 436 F. Supp. 2d 1351, 1363-64 (S. D. Fla. 2006), an employee who admitted that he was asked "how he felt" about several new employees, was found to be an exempt employee, even though he did not have the actual authority to hire or fire.  The employee's manager, who held the hiring or firing power, testified that he "placed particular weight on the plaintiff's opinion and recommendations" regarding other employee's performance. <u>Id</u>. at 1364.  This factual situation is akin to the Natick Superior Officers.  None of them have the actual authority to hire or fire, but each of them are important in the evaluation process, and their opinions are collected and considered seriously, with respect to new hires, promotions, and discipline. <u>See</u> DSOF ¶¶ 36-46.  This is true even though Natick operates under the constraints of a civil service system for hiring or firing. DSOF ¶¶ 34-35.

A recent DOL opinion letter, issued after the new regulations were promulgated, concluded that a group of Lieutenants were exempt, even though the Lieutenants did not have the final authority to hire or fire officers due to the constraints of a civil service system.   The DOL concluded that even though civil service processes must be followed in hiring or firing, the Lieutenants' recommendations in the processes were given "particular weight."  In addition, the

17

DOL found that the Lieutenants' other duties of deploying units, planning and coordinating special units, training officers, maintaining police records, conducting performance appraisals, discipline, reviewing officers' work, and assisting in the budget process were managerial in nature.  FLSA Op. Ltr. 2005-40 (10/14/05).

The Town of Natick participates in the civil service process for hiring or firing public sector employees such as Police Officers.  Although Massachusetts civil service law limits police managers' discretion to hire or fire officers, both Sergeants and Lieutenants, and the Chief of Police, nevertheless have some discretion and authority in the personnel process.[9] This discretion is reflected in the case law and the Civil Service statute.  See City of Cambridge v. Civil Service Commission, 43 Mass. App. Ct. 300 (1997), 304-305 (citations omitted).

Appointing authorities are vested with discretion in selecting public employees based on merit and policy considerations and within the constraints of the civil service law.   Managers are allowed to conduct performance appraisals twice per year, and those appraisals are given weight by the civil service commission in deciding on promotions.  M.G.L. c. 31, §§ 6A, 6B.   Further, a town can choose to bypass the highest ranking candidate for hire or promotion, in favor of another of the top three candidates for a position, based on recommendations by the Department, which in Natick includes input from Lieutenants and/or Sergeants.  M.G.L.  c. 31, § 27.  Police departments are allowed to discharge or suspend officers for cause, and manager evaluations or

---

[9]         The Natick Police Department hiring process is governed by the Massachusetts Civil Service law, which requires the Department to hire from a Massachusetts Civil Service list of eligible candidates.  The list is limited, typically, to three candidates for each opening, or five candidates if there are two openings.  Ultimately, the Appointing Authority must select from the first persons on the list for the open position, unless it can legally justify a bypass.  See Mannix Aff. § 36.  Over the past five years, there have been only 10 or 12 new Patrol Officer hires. Id. ¶ 35.  New Sergeants and Lieutenants are generally the result of internal promotions, but must go through a similar process. Id. ¶¶ 37-39.

recommendations would be considered in that process.  M.G.L. c. 31, §§ 31-41.  Managers can

conduct up to two performance evaluations on probationary (first 6 months) Officers, and can

discharge them in the probationary period. M.G.L. c. 31, § 34.   Managers can further place

officers on punishment duty.  M.G.L. c. 31, § 62.  In addition, all Superior Officers have the

authority to suspend an officer. DSOF ¶ 47.

The Natick Selectmen are the appointing authority,[10] however, they rely on the Chief and his

Superior Officers to provide a recommendation, which is always followed. DSOF ¶ 36a.  In

developing the Department recommendation for hiring new Patrol Officers, the Chief gives

serious weight to the thoughts and opinions of his command staff and Sergeants, and take their

recommendations seriously. DSOF ¶¶ 37, 42.  A group of sergeants perform the background

evaluation on new hire candidates, conduct interviews and check basic facts about each

candidate. DSOF ¶¶ 39-40.  This includes such things as verifying accuracy of information

provided, interviews of former employers, interviews of references listed and secondary

references . . . "where you try to get references and go and meet them because they haven't been

prepped for it and interview them." DSOF ¶ 40. The process includes neighborhood checks,

talking to neighbors, criminal checks, verification of education, credit checks criminal. Id.  This

check and evaluation, and the resulting report which is delivered to the Chief, is an extremely

---

[10]        None of the Superior Officer Plaintiffs have the actual authority to hire or fire, however, all of
them are involved in the hiring, firing, or advancement process, and their suggestions and opinions in all such
matters are given particular weight.  Whether a manager's employment suggestions are given "particular weight"
depends upon such things as whether it is the employee's job to make such suggestions, the frequency with which
the manager makes such suggestions, and the frequency that the employer relies upon those suggestions.  A manager
may have "particular weight" even if he has no authority to actually hire or fire. 29 C.F.R. § 541.105.  The
regulations do not require the employee to have authority to make the ultimate decision and a higher level manager's
recommendation may be given more importance. Even where the final determination is made by other employees
because of the requirements of the civil service system, for purposes to the regulations, employees meet the
standard.

important part of the process, and is considered as if were itself a specific suggestion or recommendation. The Chief relies heavily on the reports, and the significant, substantial, and meaningful weight and consideration is given to them. DSFO ¶ 42.

Similarly, when a Patrol Officer is seeking promotion to Sergeant, or a Sergeant is seeking promotion to Lieutenant, the process is similar. Input into the promotional process is provided by the Command Staff, and should be provided by the Patrol Lieutenant and any other supervisors. DSOF ¶¶ 35-38. When considering the officers applying for promotion, the Chief assigns significant weight to the opinion of his staff, and considers seriously what they have to say. Finally, before the Chief contemplates disciplinary action, he discusses the measure of discipline with the appropriate supervisors, and sometimes the command staff. ¶¶ 48-53. All supervisors have the authority to relieve someone of duty, when the situation requires such action. DSOF ¶ 47.

Sergeants play a significant and material role in the disciplinary process of Patrol Officers, which includes verbal counseling. ¶ 48. They are responsible for dealing with the day to day conduct issues that are not serious (serious meaning things such as flagrant refusal to obey orders or commission of a crime). They are responsible for acting on any misconduct or performance, and bringing forth the appropriate facts and reports about conduct that rises to the level of warranting more formal discipline or action. Not only is their input sought in the process, its is required and expected that as supervisors they are monitoring conduct and performance, and addressing problems as they arise in different ways depending upon the seriousness of the incident. DSOF ¶¶ 48-52.

As demonstrated above, each of the Superior Officers participates in the hiring or the

firing or the advancement or the promotion process within the Department, or their opinions are given significant weight with respect to one or more of those processes. As such, there is no dispute that the Superior Officers are exempt executive employees under the FLSA, and Defendants' Motion for Summary Judgment on this issue should be granted.

### III.    Even if Certain Officers are Not Considered Exempt Executive Employees, They are Exempt Administrative Employees.

Defendants argue, in the alternative, that even if not all of the Superior Officers are exempt executive employees, several of them, particularly Sergeants Fitzpatrick and Lauzon are exempt administrative employees. In addition, the Patrol Officers who are also Detectives are exempt administrative employees. An exempt administrative employee is one who is: (1) paid a minimum amount on a salary basis; (2) whose primary duties involve office or nonmanual work directly related to management policies or general business operations; and, (3) whose primary duties include the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a)(1)-(3); see also Auer, 65 F.3d at 719-720.[11]

The same principles utilized in determining whether an executive employee's duties are primarily management, also apply in the determination of whether an employee's primary duty is administration. Id. at 720. Administrative duties include: advising the management, planning, negotiating, representing the company, and purchasing. Id. Administrative employees may be in charge of a "one-man department," or can be those who perform "special assignments,"

---

[11]    Even if this Court determines that Sergeants Fitzpatrick and Lauzon have some qualities of an exempt executive employee, and other qualities of an exempt administrative employee, the Court may still find them exempt employees through "tacking." Where the employee in question has certain executive responsibilities but also performs functions that might better be described as those of an administrative employee the employee is subject to a "combination exemption," as provided for the regulations. See 29 C.F.R. 541.707.

regardless of whether those assignments are performed inside or outside the employers place of business. See 29 C.F.R. §§ 541.201(2)(ii), (iii).  They may also have "staff" rather than "line" responsibilities. Id., § 541.201(2)(i).

"Discretion and independent judgment" includes the comparison and evaluation of possibilities and making a decision.  Things such as management polices and practices, major assignments, matters which affect an employer's operations to a significant degree, matters which may involve the deviation from a stated policy, investigation and resolution of significant matters, and representing the employer in disputes or complaints are examples of discretion and independent judgment, even if those decisions are subject to review by higher authority.  29 C.F.R. § 541.202.

   A.    **Detectives.**

The seven detectives assigned to the Investigative Services Division are exempt administrative employees, because, even though they hold the rank of Patrol Officer, their primary duties involve office or nonmanual work directly related to management policies or general business operations of the Department and those primary duties include the exercise of discretion and independent judgment with respect to matters of significance to the Department.

The detectives are experienced Patrol Officers, many of whom have developed years of expertise. DSOF ¶ 29.  This expertise is the primary purpose for their assignment to the Investigative Services Division. When assigned to the Investigative Services Division, the Detectives may then develop further even more specialized expertise.  For example, some detectives are expert in forensics.  Others are expert in internet or identity crimes, and yet others are expert in narcotics, homicide, or fraud. DSOF ¶ 29d.  When each of these Detectives and

their specific expertise is called upon, it is akin to the "special assignments" contemplated under the regulations. See 29 C.F.R. §§ 541.201(2)(ii), (iii).

Also in concert with the regulations, the detectives work independently, when it comes to making case-specific decisions about the direction of the investigation, the collection of evidence, and related activities. DSOF ¶ 29b. Each detective exercises discretion and relies on their own experience and expertise, in the conduct of investigations. DSOF ¶ 29c. These kinds of activities are directly related to management policies or general business operations of the Department, and are similar to employees who analyze data, and make recommendations or decisions based on those analyses. As outlined in Shockley v. City of Newport News, 997 F.2d 18, 28 (4th Cir. 1993) (emphasis in original), where an employee *"makes analyses of data and draws conclusions* which are important to the determination of, or which, in fact, determine . . . other policy, *clearly he is doing work directly related to management policies or general business operations.*"

The conduct of an investigation is precisely the kind of exercise of discretion and resolution of significant matters contemplated by the regulation, see 29 C.F.R. § 541.202, and the Detectives qualify as exempt administrative employees.

### B.    Sergeant Fitzpatrick.

If Sergeant Fitzpatrick does not qualify as an exempt executive employee, Defendants submit that, in the alternative, he is an exempt administrative employee. Sergeant Fitzpatrick is the Department Administrative Officer, and in charge of his own functional one-man "division" within the Department. See DSOF ¶ 32. Sergeant Fitzpatrick is a "staff" officer, who is a member of the Chief's Command Staff. He regularly attends Command Staff meetings, and advises the Chief with respect to budget matters and payroll. In addition, he is responsible for

overseeing the Departments time and payroll records and coordinating the pay process. Id.

Sergeant Fitzpatrick's job duties are markedly different from the other Sergeants and Lieutenants. Sergeant Fitzpatrick's job duties are generally in the areas of detail and overtime administration, payroll administration, budgeting, grant writing, recording and reviewing the attendance of persons in the department, and other special duties as assigned by the Chief of Police. DSOF ¶ 32. Reporting to the Chief, he is the most senior person in the department in this roll.

Sergeant Fitzpatrick is akin to the executive assistant, an exempt administrative employee specifically contemplated by the regulations. 29 C.F.R. § 541.203(d). He is the Chief's delegate with respect to budgeting and payroll, and the lead person in the Department for grant writing. All of these duties are directly related to and essential to the management of the Department, require the use of discretion and judgment, and show that Sergeant Fitzpatrick has the qualities of an exempt administrative employee.

**C.    Sergeant Lauzon.**

Sergeant Brian Lauzon is the Department Traffic Safety Officer, and heads up his own functional "division" within the Department. He is a "staff" officer, who is a member of the Chief's Command Staff. DSOF ¶ 33. In addition, he has staff authority over the Patrol Officers and Sergeants, and works cooperatively with the Commander of the Patrol Division in assigning patrols related to traffic safety. Id.

In his role as Traffic Officer, Sergeant Lauzon acts as the Town's Safety Officer, and represents the Chief on the Town Safety Committee. In that capacity, he makes recommendations to the selectmen about road closures and other traffic issues. Sergeant Lauzon

also interacts with outside groups, including neighborhoods, about traffic issues including safety, and noise, and reports on those issues to the Chief. Finally, Sergeant Lauzon investigates complaints regarding speeding or traffic volume, and conducts traffic studies on behalf of the Department. DSOF ¶ 33.

All of these duties are directly related to, and essential to the management of the Department. They involve the exercise of independent judgment and require Sergeant Lauzon to utilize his discretion and experience. Each of these factors leads to the conclusion that if Sergeant Lauzon is not an exempt executive employee, he is certainly an exempt administrative employee.

## <u>CONCLUSION</u>

Therefore, for all the reasons stated above, Defendants are entitled to Summary Judgment, and respectfully request that this Court:

A. Issue an Order which grants partial Summary Judgment on behalf of Defendants;

B. Award Defendants attorneys fees and its costs in defending this action; and

C. Award Defendants any other relief that is just and good.

Respectfully submitted,

Defendants, TOWN OF NATICK,
NATICK POLICE DEPARTMENT, and
DENNIS R. MANNIX, CHIEF OF POLICE

By their attorneys,

/s/  John P. Flynn
John P. Flynn, BBO# 172640
Geoffrey B. McCullough, BBO# 558207
Kathryn M. Murphy, BBO#564789
Karis L. North, BBO # 648998
MURPHY, HESSE, TOOMEY & LEHANE, LLP
300 Crown Colony Drive, Suite 410
Quincy, MA 02169
(617) 479-5000

Dated: October 27, 2006

## **CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be send to those indicated as non registered participants on October 27, 2006.

/s/ John P. Flynn
John P. Flynn