THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Robert F. Murphy, III, Lead Plaintiff for Patrol Officer Plaintiffs, et al.<br><br>and<br><br>Brian C. Grassey, Lead Plaintiff for Superior Officer Plaintiffs, et al.<br><br>                Plaintiffs<br><br>v.<br><br>Town of Natick, Natick Police Department, and Dennis R. Mannix, in his capacity as Chief of Police<br><br>                Defendants | Docket No.: 04-11996RGS |

**DEFENDANTS' CONCISE STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

Pursuant to Local Rule 56.1, Defendants submit the following concise statement of material facts to which they contend there is no dispute.

1. The plaintiffs are all current, former, or retired Patrol Officers or Superior Officers (collectively, "Officers") employed by the Town of Natick, Police Department.

2. Various terms of employment between the Town of Natick and the Officers are outlined in Collective Bargaining Agreements ("CBAs"), negotiated between their Unions and the Town of Natick.

3. There are separate CBAs for the Superior Officers and the Patrol Officers. (Ex. A, Superior Officers' Agreement; Ex. B, Patrol Officers' Agreement).

    4. The Superior Officers (Sergeants and Lieutenants) received a fixed base amount of compensation each week, regardless of the number of hours that they work, which in all instances exceeds $455. (Ex. A, Art. X and pay plans attached thereto).

        a. Every week, the Superior Officers receive a supervisory stipend to compensate them for additional time that they may spend beyond or after their shift to perform further supervisory job duties.

        b. In addition, each week they receive compensation for other compensation due under the contract, including such things as longevity pay or Quinn Bill money.

        c. Under their contract, Superior Officers also receive overtime for time considered extra work, overtime, under their collective bargaining agreement, and may also receive extra compensation for work on holidays and shift differentials, for instance. However, the base pay remains the same each week and exceeds $455.

    5. The Superior Officers receive an additional sum of money, negotiated into the collective bargaining agreement, to compensate them further for any time spent before or after their shift, and which recognizes that this time is not to be compensated as overtime. More specifically, the negotiated provision provides as follows:

        a. "<u>Supervisory Compensation</u> - Employees covered by this Agreement shall received five percent (5%)[1] of their respective base pay per year in exchange for which employees shall arrive a reasonable amount of time prior to the start of their regular shift to prepare themselves to provide supervisory guidance during their shift and shall stay on duty a reasonable amount of time after each shift to

---

[1] As of July 1, 2005, supervisory compensation was increased to 6% of base pay. (Ex. A, Art. XXVIII).

    conclude any administrative tasks that have arisen during their shift. Time spent performing these functions shall not be subject to the work schedule provided in Article IX or the overtime provisions provided in Article XI." (Ex. A, Art. XVIII).

6. Sergeants are more highly paid than Patrol Officers, in terms of base pay. Lieutenants are more highly paid than Sergeants. (Exs. A and B and pay plans attached thereto).

7. Officers in the Department are organized in what can be described as a military style chain-of-command, and authority and responsibility move up the chain. At the bottom are Patrol Officers. Supervising the Patrol Officers are the Sergeants. Supervising the Sergeants are the Lieutenants. The Lieutenants are supervised by the Chief of Police (Ex. C, Town of Natick FY 06 Organizational Chart; Affidavit of Dennis R. Mannix ("Mannix Aff.") ¶ 5; Ex. D Deposition of A. Grassey, 31:1-32:22; Ex. E, Deposition of Pagliarulo, 45:7-23).

8. The Department is headed by the Chief of Police, Dennis Mannix, who is a defendant in this action. (Mannix Aff. ¶1).

9. The second in command is the Executive Officer, Lieutenant Peter Mason, who is a plaintiff in this action. Lieutenant Mason fills in for the Chief when he is away, and is the highest commanding officer in the Department. He reports directly to the Chief of Police. (Mannix Aff. ¶ 7; Ex. F, Deposition of Mason, 6:1-2; 10:1- 2; Ex. E , 46:14-47:19).

10. Lieutenant Mason has authority over the entire Department. (Ex. E, 46:14-47:19).

  a. His job duties include supervision, professional standards, officer training (scheduling and coordinating), administering the computer systems, building issues, 911 purchases, and he is a member of the Chief's Command Staff. (Ex. F, 10:4 – 11:10; Mannix Aff. ¶ 7).

  b. He has the assets of all of the supervisors to task work out to, and is the person in

        charge of investigating complaints about a member of the Department. (Ex. F, 16:4-12).

    c. According to Lieutenant Mason, if there is a complaint about a patrol officer, that complaint would go to his or her supervisor (i.e., the Sergeant, if it was a Patrol Officer) for review. Complaints about a Detective would go to the head of that Division (Lieutenant Mabardy), or a complaint about a dispatcher would go to the communications supervisor to review (i.e., Lieutenant Grassey). (Id., 16:17-24; 19:14-22).

11. The Department is organized into several Divisions, and several independent command-level positions. (Ex. C).

12. These independent command-level positions are the Administrative Officer, Sergeant Leo Fitzpatrick, and the Traffic Safety Officer, Sergeant Brian Lauzon. (Id.).

13. The remaining members of the Department are either assigned to: the Patrol Services Division, commanded by Lieutenant Steven Pagliarulo; the Investigative Services Division, commanded by Lieutenant Nicholas Mabardy; or the Information Services and Communications Division, commanded by Lieutenant Brian Grassey. (Id.).

14. All of the Lieutenants, and Sergeants Fitzpatrick and Lauzon, are the Chief's Command Staff. (Mannix Aff. ¶ 31).

15. The Command Staff typically works a Monday through Friday, 8AM to 4 PM schedule, commonly referred to as a 5 and 2.

    a. The Command Staff meets regularly, as often as several times a week, to discuss and consult on significant issues in the Department. (Mannix Aff. ¶ 32; Ex. G,

      Deposition of Longtine, 20:5-23).

16. The remaining Officers typically work a rotating "4 and 2" schedule of 4 days off and 2 days on. When an Officer works a 4 and 2 schedule, which means that certain weeks they only work 4 days, or 32 hours, during the regular work week. (Ex. A, Art. IX).

17. Various duties and responsibilities of the Patrol Officers, Sergeants, and Lieutenants are spelled out in the Department Policies and Procedures, and other duties are as assigned or delegated by the Police Chief or a supervisor with authority to so delegate.

    a. Each Officer is given a copy of the Department Policies and Procedures when hired, and signs a document acknowledging receipt of same, which is kept in their individual personnel files. (Mannix Aff. ¶ 21).

18. A Patrol Officer is " . . . accountable to his superior officers" and "[c]ommunicat[ing] to his superiors all information he may obtain which is pertinent to the achievement of police objectives. (Ex. H, Position Description - Patrolmen).

19. Sergeants' duties and responsibilities include first level supervision in the Department, including being primarily responsible for the proper performance of Patrol Officers assigned to duty within the area subject to his or her supervision. (Ex. I, Position Description – Sergeants).

20. The summary section of the Sergeant's position description states as follows:

> A Sergeant provides the first level of supervision in the Department. He is primarily responsible for the proper performance of Patrolmen assigned to duty within the area subject to his supervision.
>
> A Sergeant is charged with ensuring compliance with the Department's regulations. He handles all minor infractions using his best judgment and reports all serious violations to his supervisor.
>
> A Sergeant shall be responsible for the efficiency, discipline, conduct, appearance, and strict attention to duty of all Patrolmen under his supervision

(Ex. I).

21. Sergeants are charged with ensuring compliance with Department regulations, monitoring the patrol officers performance and discipline, engaging in some discipline and instruction themselves, and making recommendations to superior officers regarding other more serious discipline of patrol officers. (Id.).

22. Lieutenants' duties and responsibilities include direct control over all members and employees of the police department, investigation of personnel complaints, maintenance of discipline, promotion of harmony and cooperation, oversee preparation of correspondence and reports, communicate information as required, assist department personnel in preparation of cases, prepare evaluations of department personnel and prepare reports related to the retention of probationary officers. (Ex. J, Position Description - Lieutenants).

23. The Patrol Division is divided into three shifts, Shift 1 from 12 midnight to 8 AM, Shift 2 from 8 AM to 4 PM, and Shift 3 from 4 PM to 12 midnight. (Ex. K – Master Roster)

   a. There are approximately 9-10 Patrol Officers and 3 Sergeants assigned to each shift, however, as they work a 4 and 2 schedule, not all Patrol Officers and Sergeants work every day on that shift. (Ex. L, Deposition of St. Hilaire 8:5-8; 9:3-9).

24. In addition, the Town is divided into three physical areas, Area A, Area B and Area C. Each Area is commanded by a Sergeant who is the Area Commander.  The Area Commander Sergeants are tasked with resolving policing problems within that area, and assigning Patrol Officers in the course of resolving those problems. (Ex. M, Deposition of Lamont, 5:20-7:3; 16:7-18:5; Ex. G Deposition of Longtine, 8:21-9:13; 12:12-16; Ex. N, Deposition of Thompson,

10:24-11:21).

25. The Patrol Services Division is commanded by Lieutenant Steven Pagliarulo, and was formerly commanded by Lieutenant Alfred Grassey.

    a. The Patrol Services Division Commander is in charge of the Patrol Services Division. The Sergeants in the Patrol Services Division report directly to the Lieutenant in charge of the Division, and the Patrol Officers report to the Sergeants. The Patrol Services Division Commander also supervises the crossing guards and the auxiliary police. (Ex. D, 28:8-30:24; Ex. E, 7:1-21).

    b. The Patrol Commander supervises the Sergeants assigned to the Division. In that role, he directs them in investigations and policing, manages shift coverage by Sergeants, inspects the daily log and occasionally reviews reports. He may also direct the Sergeants or Patrol Officers, in the case of a serious event or multiple events occurring at once. (Ex. E, 8:1-12:7).

    c. Lieutenant Pagliarulo is not present for every shift as he is only scheduled for 5 shifts a week on his regular 5 and 2 schedule. The Patrol Services Division runs a total of 21 shifts during the course of a week. (Ex. K).

    d. The Patrol Division Commander is a member of the Chief's Command Staff. The Command Staff provides suggestions, guidance and opinion to the Chief, and he consults with them prior to making decisions. (Mannix Aff. ¶¶ 31, 33, 34).

    e. The Patrol Division Commander provides input on hiring decisions, promotions, and disciplinary actions. (Ex. E, 32:3-36:22; 38:14-41:8).

    f. This input is given substantial weight by the Chief. (Mannix Aff. ¶¶ 33, 39b, 45, 48).

26. Each shift is supervised by two Sergeants, one inside (the Station Supervisor), and one outside (the Patrol Supervisor). Assignments to the shifts are determined based on seniority, as outlined in the CBAs. (Ex. A, Art. XIX.B.; Ex. B, Art. XXII).

27. The Sergeants are the first line supervisors of the Patrol Officers in the Chain of Command, and it is their responsibility to supervise the Patrol Officers in the course of their duties. (Ex. D, 10:8-11:24; Ex. E, 43:24-46:12; Ex. N, Deposition of Fleming, 7:21-11:5; 12:22-14:7; Ex. O, Deposition of Rossi-Cafarelli, 20:15-21:2; Ex. P, Deposition of Dunlop, 11:20 – 12:2; Ex. Q, Deposition of Hayes 12:21-23).

28. The Sergeants' supervisory duties include the following:

   a. Patrol Officers conduct roll call and determine who is and is not at work, are aware who is and is not at work, hand out assignments, updating Patrol Officers with key information needed to carry out their duties.  Throughout the course of the shift, the Sergeants remain the direct supervisor of the patrol officers at all time; they are responsible for directing and overseeing the Patrol Officers in the conduct of their duties including at accidents or other crime scenes, supervising their work, acting as a resource for questions and queries, and reviewing the reports submitted by the Patrol Officers.  (Ex. R, Deposition of Lead Patrol Officer Plaintiff Robert F. Murphy, III, 7:18-8:17; 9:12-10-13; Ex. S, Deposition of Hoffman, 7:3-9:3; 13:9-21; Ex. O, 7:8-12:15; 14:23-17:4; 48:15-49:3; Ex. T, Deposition of Viera, 6:16-20:16; 23:7-24:6; Ex. L,  11:19-23; 12:22-23; 17:10-18).

   b. The Sergeants make sure the Patrol Officers are following the policies and

procedures of the Department. (Ex. M, 9:7-16; Ex. P, 12:16 – 13:2; Ex. Q, 13:13-17).

c. Sergeants also supervise by providing guidance and feedback to Patrol Officers who are not performing their duties properly (i.e., verbal coaching), or provide written reports if the incident rises to the level of requiring reporting. (Ex. N, 21:14-22:10; Ex. S, 16:5-17:1; Ex. G, 17:11-22; Ex. U, Deposition of O'Callaghan, 27:14-28:20; Ex. V, Deposition of Thompson, 26:19-28:1; Ex. W, Deposition of Douglas 12:10 – 14:21; Ex. L St. Hilaire, 21:12-16).

d. Sergeants receive and review patrol officer reports, and carry over that information to Sergeants on subsequent shifts. (Ex. Q, 18:1-4, 18:22-19:4; Ex. S, 7:13-8:5).

e. Sergeants have the authority to move patrol officers during a shift from their regularly assigned area if a situation warranted. (Ex. W, 10:16-11:10, 17:23-18:18; Ex. P, 7:2-11).

f. Sergeants participate in Staff meetings, which include the Chief and the Lieutenants. In these meetings, important information related to the conduct of patrols, and issues out in the street are discussed. After the meetings, the Sergeants assigned to the Patrol Division would disseminate the information discussed to the Patrol Officers. (Ex. G, 20:5-21:7).

g. Sergeants have the authority to assign overtime shifts to the Patrol Officers. (Ex. R, 12:13-17).

h. Sergeants have the authority to sign off on overtime. (Ex. Z, 10:20-11:21).

i. Sergeants have the authority to relieve a Patrol Officer of duty in circumstances

    warranting such action. (Mannix Aff. ¶ 60; Ex. D, 23:2-24:18).

    j.  The Patrol Sergeant's car is marked "Supervisor" when he or she is out in the street. (Ex. M, 25:13-26:12).

    k.  Certain Sergeants conduct specialized training for the Department. For example, Sergeant Thompson is the lead firearms instructor, and conducts annual and quarterly firearms training for all Officers. (Ex. V, 20:9-22:21).

29. Detectives are organized into the Investigative Services Division, and supervised by a Lieutenant of Detectives. They hold the same rank as Patrol Officers. (Ex. K; Ex. E, 50:13-22).

    a.  The detectives are experienced Patrol Officers, many of whom have developed years of expertise. (Ex. X, Deposition of Mabardy, 16:6-7; 19:22-23).

    b.  The detectives work independently, when it comes to making case-specific decisions about the direction of the investigation, the collection of evidence, and related activities. (Id., 19:1-13).

    c.  Each detective exercises discretion and relies on his or her own experience and expertise, in the conduct of investigations. (Id., 19:1-13l 25:8-19).

    d.  When assigned to the Investigative Services Division, the Detectives may then develop further even more specialized expertise. For example, some detectives are expert in forensics. Others are expert in internet or identity crimes, and yet others are expert in narcotics, homicide, or fraud. (Id., 25:8-19).

30. The Lieutenant in charge of the Investigative Services Division, and the direct supervisor of the Detectives is Lieutenant Nicholas Mabardy. Lieutenant Mabardy directs the detectives assigning cases for follow-up, coordinating their work, reviewing their work and reviewing their

reports. (Ex. E, 48:22-49:13; Ex. X, 6:22). He is in charge of the Investigative Services Division, which includes seven Detectives. (Ex. X, 8:10-13). All seven Detectives report to Detective Mabardy. (Id., 21:12-14). He is in charge of the Division. (Id., 21:21 – 22:8).

    a. As Division Commanded, Lieutenant Mabardy is responsible for what occurs in the Investigative Services Division. (Id., 28:14 – 29:2). His job duties include responsibility for the entire department, including viewing the criminal cases that have been filed and determine if further investigation is needed. (Id., 15:7-9). He assigns cases to the Detectives in his Division. (Id., 15:19-20). He reviews their investigations. (Id., 15:24-16:1). He also is assistant to the firearms licensing authority and assists with the processing and storage of evidence. (Id., 16:17-20).

    b. The term commander he defines as providing leadership, coordination, and collaboration. (Id., 30:5-6).

    c. Lieutenant Mabardy makes recommendations about who will be assigned to his Division, but he reports that they may not always be followed. (Id., 30:24 -31; 36:13-14).

    d. He is part of the Chief's Command Staff and provides input about assigning persons to the Detectives division, including making recommendations. (Id., 34:7-14).

    e. As Division Commander and a Superior Officer, if Lieutenant Mabardy observes a violation of a policy, procedure, rules or regulations he has the authority to submit a report to the Chief about the Officer in violation. (Id., 38:15-21).

31. The Information Services and Communications Division is headed by Lieutenant Brian Grassey.

a.  Lieutenant Grassey supervises the civilian dispatchers, the civilian records staff, the Court Officer, and the Patrol Officers and other supervisors with regard to the report review and investigations and case management. These duties constitute the bulk of his time and responsibilities.  (Mannix Aff. ¶¶ 27-28; Ex. Y, Deposition of B. Grassey, 7:18-8:1; Ex. E, 47:21-48:6).

b.  Lieutenant Grassey testified in his deposition that his main function is report review.  In that capacity, he receives all of the reports from the Patrol Officers, including Detectives.  He reviews those reports for completeness and accuracy, and transmits them back to the officers and directs their further work, if necessary.  Reports are transmitted back and forth through the appropriate first line supervisor, either a Sergeant of the Lieutenant of Detectives. (Ex. Y, 8:3-13:6; 30:10-33:21; Ex. E, 48:8-20).

c.  Lieutenant Grassey is the "final authority" in the Department, with respect to those reports. (Ex. Y, 33:15-34:4).

d.  In addition to report review, Lieutenant Grassey oversees the civilian dispatchers, the records staff, and the daily police log. (Id., 13:18-19:9).

e.  Lieutenant Grassey reports to the Executive Officer, Lieutenant Mason, but he generally works independently. (Id., 20:3-21:6; 26:12-28:1).

f.  Lieutenant Grassey, a member of the Command Staff, has been involved in hiring and firing decisions, and disciplinary action, and his opinion has been sought with regard to those decisions. (Id., 36:2-42:20).

g.  This input is given substantial weight by the Chief. (Mannix Aff. ¶¶ 33, 39b, 45,

48).

32. The Administrative Officer, Sergeant Fitzpatrick, oversees budget and payroll, and coordinates the assignment of details for the Department. (Mannix Aff. ¶ 30).

    a. Sergeant Fitzpatrick's job duties are markedly different from the other Sergeants and Lieutenants. Sergeant Fitzpatrick's job duties are generally in the areas of detail and overtime administration, payroll administration, budgeting, grant writing, recording and reviewing the attendance of persons in the department, and other special duties as assigned by the Chief of Police. Reporting to the Chief, he is the most senior person in the department in this role. (Ex. Z, Deposition of Fitzpatrick, 9:21 - 16:2).

    b. In order to process overtime, a Patrol Officer generally must also have his or her supervisor sign off that the overtime occurred; this person is generally the supervisor overseeing that shift. Sergeant Fitzpatrick then processes this overtime, as well as Details, for payroll. (Ex. Z, 10:20 – 12:8).

33. The Traffic Safety Officer, Sergeant Brian Lauzon, makes all traffic related assignments, as well as truck team assignments and special directed patrols. (Mannix Aff. ¶ 29).

    a. In his role as Traffic Officer, Sergeant Lauzon acts as the Town's Safety Officer, and represents the Chief on the Town Safety Committee. In that capacity, he makes recommendations to the selectmen about road closures and other traffic issues. (Ex. AA, Deposition of Lauzon, 6:1-13).

    b. Sergeant Lauzon also interacts with outside groups, including neighborhoods, about traffic issues including safety, and noise, and reports on those issues to the Chief. (Ex. AA, 7:6-16).

    c.  Sergeant Lauzon also investigates complaints regarding speeding or traffic volume, and conducts traffic studies on behalf of the Department. He utilizes the results of these studies to direct Sergeants or Patrol Officers in their patrols. (Ex. AA, 10:15-12:10; 12:22-14:21; 27:17-29:19).

    d.  Sergeant Lauzon reviews all reports from Patrol Officers related to crash reports. (Ex. AA, 29:20-30:31:15).

34. The Department hiring and promotion process is governed by the Massachusetts Civil Service law, but under that law there is a certain amount of discretion and authority in developing the recommendation to the Selectmen. (Mannix Aff. ¶¶ 36-38).

35. Final decision making authority about a new hire in a Patrol Officer position, or a promotion to Sergeant or Lieutenant is with the Natick Board of Selectmen; the Selectmen are the Appointing Authority. (Mannix Aff. ¶ 39).

36. The Chief oversees the selection process and gather input and information about candidates developed in the process and with that information and input, and is ultimately responsible for making the final recommendation to the Selectmen about who should be hired. (Mannix Aff. ¶ 39).

    a.  The Chief does not recall a time when the Selectmen did not follow the Department recommendation. (Mannix Aff. ¶¶ 39a, 56).

37. In developing a recommendation for a new hire or a promotion, the Chief always gives substantial and significant weight to others in the Department involved in the process, and relies materially on their input. (Mannix Aff. ¶¶ 36-55).

38. In the last five years, all new Sergeant and Lieutenants have been the result of internal

promotions. (Id. ¶ 37).

39. When there is an opening for a Patrol Officer, the opening is typically not for a specific shift and, therefore, there are no particular Sergeants that the new hire will necessarily be reporting to if selected. The new hire will be assigned to the open shift at the time. The reason for this is that Patrol Officers are assigned to shifts by seniority. (Id. ¶ 41).

    a. Under the Collective Bargaining Agreement, " . . . when a position . . becomes available, the most senior man shall have the first opportunity to bid for that position. . . ." (Ex. B, Art. XXII).

    b. Patrol Officers bid for shifts based on seniority, and the new hire is placed on the shift that no other Patrol Officer has selected. (Id.).

40. As part of the hiring process, the Department conducts background investigations of the Patrol Officer candidates, and relies materially on those findings. (Id. ¶¶ 42-44).

    a. A group of Sergeants perform the background evaluation on new hire candidates. This process utilizes their experience, knowledge, and position; and includes such things as verifying accuracy of information provided, interviews, interviews of former employers, interviews of references listed and secondary references . . . "where you try to get references and go and meet them because they haven't been prepped for it and interview them." (Ex. F, 28:4-10).

    b. The process includes: neighborhood checks, talking to neighbors, criminal checks, verification of education, credit checks criminal. It typically takes awhile to gather all of the information. (Ex. F, 28:11-17).

41. The Sergeants then provide their findings and conclusions and suggestions or recommendations, if any, in a report submitted to the Chief. (Mannix Aff. ¶ 43).

42. The Chief relies heavily on the input of the Sergeants who provide and perform the background screenings on candidates. Significant, substantial, meaningful, and essential weight and consideration is given to the Sergeants' reports. (Id. ¶¶ 43-44).

43. Following the completion of the background investigation, the Command Staff and Chief hold a meeting at which time they discuss and evaluate the candidates. Opinions and suggestions are expressed and given a great deal of weight and consideration in developing the Department recommendation. (Id. ¶ 45).

44. The candidates may be interviewed by the Command Staff. (Id. ¶ 46).

45. At times, the Chief may also seek out further opinions of one or more other Sergeants, with respect to the hiring of a Patrol Officer. (Id. ¶ 47).

46. The Chief transmits the final recommendation to the Selectmen, in the form of a memo. He typically will mention whether the recommended candidate is a unanimous choice, or a consensus choice. (Id. ¶ 49).

47. All supervisors have the authority to relieve someone of duty, when the situation requires such action. (Id. ¶ 60).

48. Sergeants play a significant and material role in the disciplinary process of Patrol Officers, which includes verbal counseling. (Ex. O, 21:23-22:16; Ex. T, 28:13-30:9).

    a. They are responsible for dealing with the day to day conduct issues that are not serious (serious meaning things such as flagrant refusal to obey orders or commission of a crime).

    b. They are responsible for acting on any misconduct or performance, and bringing forth the appropriate facts and reports about conduct that rises to the level of

      warranting more formal discipline or action.

   c.  Not only is their input sought in the process, its is required and expected that as supervisors they are monitoring conduct and performance, and addressing problems as they arise in different ways depending upon the seriousness of the incident.

   d.  The job description attached as Exhibit I and the CBA attached as Ex. A provide further information about the Sergeant's role.

49. Under the terms of the CBAs, the first step for Patrol Officers who are aggrieved is to discuss the grievance with their immediate supervisor, i.e., their Sergeant. Sergeants have the authority to resolve grievances. Grievances themselves are filed with the Chief. (Ex. A, Art. VII.B).

50. The investigation of a complaint about an Officer generally begins with the filing of an incident report, typically done by the supervisor on duty at the time the complaint was lodged. That report is then passed to the Executive Officer, Lieutenant Mason, who initiates an investigation. (Ex. V, 31:14-33:5; Mannix Aff. ¶ 63).

51. Investigation duties are usually assigned to the immediate supervisor, either a Sergeant or a Lieutenant. (Mannix Aff. ¶ 64).

52. Superior Officers who investigate complaints are allowed to include recommendations for discipline in their reports, but do not always do so. The facts provided by the Sergeant or Lieutenant are always relied upon in making a determination about if, or what, action should be taken. (Id. ¶ 65).

53. Before the Chief contemplates disciplinary action, he discusses the measure of discipline with the appropriate supervisors, and typically, his Command Staff. (Id. ¶ 66).

Respectfully submitted,

Defendants, TOWN OF NATICK,
NATICK POLICE DEPARTMENT, and
DENNIS R. MANNIX, CHIEF OF POLICE

By their attorneys,

/s/  John P. Flynn
John P. Flynn, BBO# 172640
Geoffrey B. McCullough, BBO# 558207
Kathryn M. Murphy, BBO#564789
Karis L. North, BBO # 648998
MURPHY, HESSE, TOOMEY & LEHANE, LLP
300 Crown Colony Drive, Suite 410
Quincy, MA 02169
(617) 479-5000

Dated: October 27, 2006

## **CERTIFICATE OF SERVICE**

    I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be send to those indicated as non registered participants on October 27, 2006.

                                            /s/ John P. Flynn
                                            John P. Flynn