# EXHIBIT A

DEFENDANT'S
EXHIBIT NO. 3
FOR IDENTIFICATION
DATE 8/1

# AGREEMENT

# BETWEEN
# THE
# TOWN OF NATICK, MASSACHUSETTS

# AND

# THE INTERNATIONAL BROTHEROOD

# OF POLICE OFFICES, LOCAL 622

July 1, 2004 to June 30, 2007

# TABLE OF CONTENTS

ARTICLE I - RECOGNITION ...................................................................................3

ARTICLE II - UNION RESPONSIBILITY .................................................................3

ARTICLE III - UNION MEMBERSHIP .....................................................................3

ARTICLE IV - PRECEDENCE OF LAWS AND SEVERABILITY...............................4

ARTICLE V - STABILITY ........................................................................................4

ARTICLE VI - PAYROLL DEDUCTION OF AGENCY FEE......................................4

ARTICLE VII - GRIEVANCE PROCEDURE..............................................................4

ARTICLE VIII - PROMOTIONS ...............................................................................6

ARTICLE IX - WORK SCHEDULE ...........................................................................6

ARTICLE X - WAGES .............................................................................................6

ARTICLE XI - CALL BACK AND OVERTIME ..........................................................6

ARTICLE XII - NIGHT SHIFT DIFFERENTIAL .......................................................7

ARTICLE XIII - COURT TIME .................................................................................7

ARTICLE XIV - LONGEVITY ..................................................................................7

ARTICLE XV - EDUCATIONAL INCENTIVE & REIMBURSEMENT ........................7

ARTICLE XVI - IN-SERVICE TRAINING INCENTIVE .............................................8

ARTICLE XVII - HOLIDAYS....................................................................................8

ARTICLE XVIII - SUPERVISORY COMPENSATION ...............................................9

ARTICLE XIX - SHIFT ASSIGNMENTS & SENIORITY ...........................................9

ARTICLE XX - INSURANCE ...................................................................................9

ARTICLE XXI - VACATIONS...................................................................................9

ARTICLE XXII - CLOTHING ALLOWANCE & MAINTENANCE ............................10

ARTICLE XXIII - EXTRA PAID DETAILS..............................................................10

ARTICLE XXIV - PERSONAL LEAVE ...................................................................11

ARTICLE XXV - SICK LEAVE ..............................................................................11

ARTICLE XXVI - BEREAVEMENT LEAVE............................................................12

**ARTICLE XXVII - PERFORMANCE APPRAISAL** ..................................................................**12**

**ARTICLE XXVIII - INJURED ON DUTY LEAVE REPORTS**.................................................**12**

**ARTICLE XXIX - EMPLOYEE ASSISTANCE** ......................................................................**14**

**ARTICLE XXX - OPERATIONS, SAFETY & EFFICIENCY COMMITTEE**........................**14**

**ARTICLE XXXI, CIVILIAN DISPATCHER** .........................................................................**14**

**ARTICLE XXXII, NO STRIKE CLAUSE**...............................................................................**14**

**ARTICLE XXXIII, MANAGEMENT'S RIGHTS** ...................................................................**15**

**ARTICLE XXXIV, APPLICABILITY OF LAWS**...................................................................**15**

**ARTICLE XXXV, FINAL AGREEMENT** ..............................................................................**15**

**ARTICLE XXXVI, DURATION**...............................................................................................**16**

2

**Preamble**

Whereas the Great and General court of Massachusetts in its wisdom saw fit in the year 1966 to pass a law whereby Police Officers have a statutory right to bargain collectively with their municipal employer, it is the intention of this Agreement to maintain a harmonious relationship between them recognizing the legitimate rights and needs of the employees of the Police Department as well as the obligation of the Town to protect the safety of the public.

Now, therefore, in consideration of the mutual obligations contained herein, the parties agree as follows:

## ARTICLE I - RECOGNITION

The Town of Natick recognizes Local 622, International Brotherhood of Police Officers as the sole, exclusive bargaining agent for the purpose of collective bargaining with respect to wages, hours, and conditions of employment for all Lieutenants and Sergeants employed in the Natick Police Department.

Excluded from this Agreement are the Chief of Police, patrolmen, and all civilian employees of the Natick Police Department.

## ARTICLE II - UNION RESPONSIBILITY

The Union shall have the right and obligation to represent the employees covered by this Agreement; to present its views to the Town on matters of concern either orally or in writing; to consult or be consulted with respect to the implementation of matters and practices which are within the discretion of the Town except as limited by Article VII of this Agreement, and to engage in collective negotiations with the Town with the object of reaching an agreement applicable to the employees covered by this Agreement.

The Union shall be given the opportunity to be represented at discussions between the Town and Union members concerning grievances subject to Article VII of this Agreement.

Representatives of the Union shall be permitted to enter the premises of the Police Department at reasonable hours, when necessary, to investigate existing grievances, after obtaining approval of the Chief of Police. The Union agrees that care will be exercised by such representatives that they do not interfere with the performance of the duties assigned to employees covered by this Agreement.

## ARTICLE III - UNION MEMBERSHIP

Neither the Town nor its representatives or agents shall interfere with, restrain, or coerce employees in the exercise of their right to self-organization, to form join or assist an employee organization to bargain collectively through representatives of their own choice on hours, wages, and other conditions of employment, and to engage in other concerted activities for the purpose of collective bargaining as authorized by law.

Neither the Union nor its representatives or agents shall interfere with, restrain, or coerce employees in the exercise of their right to refrain from organizing, forming, joining or assisting any employee organization to bargain collectively on questions of wages, hours and other conditions of employment.

Neither the Town nor the Union shall discriminate against employees in the exercise of their rights, freely and without fear of penalty or reprisal, to form, join, and assist any employee organization or refrain from any such activity in accordance with the Collective Bargaining by Public Employees Act (Chapter 1978, Act of 1973, as amended).

3

## ARTICLE IV - PRECEDENCE OF LAWS AND SEVERABILITY

In the administration of all matters covered by this Agreement, the Town, Union officials and employees are governed by the provisions of any existing or future laws and regulations. This Agreement shall at all times be applied in accordance with and subject to such laws. Should any provision of this Agreement be deemed to be in conflict with any such laws, it may become the subject matter of discussion by the parties hereto for the purpose of attempting to negotiate a substitute provision in compliance with the requirements of such laws.

Nothing contained in this Agreement shall abridge, alter or diminish any rights established by and contained in the Civil Service Laws of Massachusetts as set forth in General Laws, Chapter 31, as amended, which become effective during the existence of this Agreement and which are granted to any individual employee covered by this Agreement, to the Union, and to the Town and its management officials.

If any provision of this Agreement is, or shall, at any time, be contrary to law, then such provision shall not be applicable or performed or enforced, except to the extent permitted by law, and substitute action shall be subject to appropriate consultation and negotiations with the Union. If any such provision is contrary to any law, the remainder of the Agreement shall not be affected thereby.

## ARTICLE V - STABILITY

No agreement, understanding, alteration or variation of the Agreement, terms or provisions herein contained shall bind the parties threat unless made and executed in writing by the parties hereto.

The failure of the Town or the Union to insist, in any one or more incidents upon the performance of any of the terms or conditions of this Agreement shall not be considered as a waiver or relinquishment of the right of the Town or of the Union to future performance of any such terms or conditions, and the obligation of the Town and the Union to such future performance shall continue in full force and effect.

## ARTICLE VI - PAYROLL DEDUCTION OF AGENCY FEE

Pursuant to General Laws, Chapter 150E, Section 17b, it shall be a condition of employment that on or after the thirtieth (30) day of employment in the bargaining unit, each and every member of the bargaining unit shall pay the Local 622, I.B.P.O. an agency service fee which shall be proportionately commensurate with the cost of collective bargaining and contract administration. The agency fee shall be deducted on a monthly basis, shall be equal in amount to the sum set from time to time by the Union as dues, and shall be used solely for the purposes of paying the expenses of collective bargaining.

Local 622, I.B.P.O. agrees to indemnify the Town for damages or costs in complying with this Article. No request to dismiss or suspend an employee for noncompliance shall be honored so long as there is a dispute before the State Labor Relations Commission or a court of competent jurisdiction as to whether the agency fee is "proportionately commensurate" with the cost of collective bargaining and contract administration.

## ARTICLE VII - GRIEVANCE PROCEDURE

The parties recognize that it is in the best interest of effective and harmonious performance of the duties and responsibilities of the Police Department for the prompt and equitable disposition of any grievances at the lowest organizational level possible under procedures of maximum informality and flexibility. Therefore, an employee shall have the right to present any matter of personal concern to his immediate supervisor for adjustment without the necessity of intervention of the Union, as long as such adjustment is not inconsistent with the terms of this Agreement, provided, however, that the Local Union President may, if time permits, be advised of the existence of such matter of personal concern and, with the approval of the employee, will be given an opportunity to be present, as an observer, during discussions between the employee and his supervisor to resolve the problem. All other problems, defined as grievances, shall be processed in accordance with the following procedures:

**(A)      Grievance Defined**
A grievance shall be defined herein as a complaint between the Town and the Union or an employee involving an alleged, specific and direct violation of specific provisions of this Agreement.

**(B)        Grievance Steps**
Step 1.  The grievant shall first discuss the grievance with his/her immediate supervisor within ten (10) days of the occurrence of the event giving rise to the grievance.

Step 2.  The grievance, if not settled, shall be presented in writing to the Police Chief within ten days of the discussion held in Step 1.  The grievance shall contain:

    (a)  Name and classification of the employee;
    (b)  Nature of the grievance and contract provisions involved;
    (c)  Steps taken to resolve the grievance informally;
    (d)  Requested remedy;
    (e)  Signature of the employee or employees involved.

The Police Chief shall give his answer in writing within ten days of receipt of the grievance.

Step 3.  If the employee or Union is not satisfied with the answer given by the Police Chief, the grievance may be submitted to the Town Administrator who shall consider it as soon as possible, but not later than twenty days after receipt of the Chief's answer.  Written grievance processed to the second step shall be submitted to the Town Administrator within five days after receipt of the Police Chief's answer.  A meeting with the Town Administrator or designee may be held prior to responding to the grievance.

**(C)        Arbitration**
If the grievance is not resolved by the answer of the Town Administrator as provided above, either party may, within fifteen days after such answer, upon written notice given to the other party, submit the grievance to arbitration in accordance with the voluntary rules of the American Arbitration Association.

No dispute or controversy shall be subject for arbitration unless it involves all alleged specific and direct violations of express language of a specific provision of this Agreement.  The arbitrator shall have no power to add to, subtract from or modify the terms of this Agreement.  The parties are agreed that no restrictions are intended on the rights and powers of the specific provisions of this Agreement.  The arbitrator shall arrive at his decision solely upon the facts, evidence and contentions as presented by the parties during the arbitration proceedings.
In determining whether there is a specific and direct violation of express language of a specific provision of this Agreement, it is agreed that the only criterion to be applied is the plain meaning of express modified by contract, past or present policy and oral statements made during negotiations or at any time by either party shall be inadmissible to prove the meaning of express language and shall not be considered by the arbitrator.

In the event of arbitration, the decision of the arbitrator shall be final and binding upon the parties hereto, however, no money shall be obligated or paid pursuant to an arbitration decision until appropriated by Town Meeting.

The expense of the arbitrator's services and the proceedings shall be borne equally by the parties.  If either party desires a verbatim record of the proceedings, it may cause such a record to be made, and make copies available to the other party.  Each party shall pay the cost of the verbatim transcript which it orders and receives.  The parties shall share the cost of the copy provided to the arbitrator.

The arbitrator shall be without power or authority to modify, add to, alter, subtract from, or change the terms of this Agreement.

**(D)        Disciplinary Action**
Any disciplinary action or measure imposed upon an employee may be processed as a grievance by the employee.  If an employee is reprimanded it shall be done in a manner that will not embarrass the employee before other employees or the public.

**(E)    Failure to Meet Time Limits**
A grievance not initiated within the time specified shall be deemed waived. Failure of the Association to appeal a decision within the time limit specified shall mean that the grievance shall be considered settled on the basis of the decision last made and shall not be eligible for further appeal.

## ARTICLE VIII - PROMOTIONS

### (Sergeant to Lieutenant)

The initial rate of basic compensation of each member of the Union shall be that rate which represents the years of service in the rank of permanent sergeant, except that in no event shall the initial rate for any member exceed the rate which represents more than three (3) years of service as a Lieutenant.

### (Patrolman to Sergeant)

The initial rate of basic compensation of each member of the Union shall be that rate which represents the years in service in the rank of permanent patrolman except that in no event shall the initial rate for any member exceed the rate which represents more than three (3) years of service as a sergeant.

## ARTICLE IX - WORK SCHEDULE

The employees covered by this Agreement shall work an eight (8) hour day.

The Police Department shall operate under the so-called four (4) and two (2) work schedule. This schedule provides that an officer shall work four (4) consecutive days and have two (2) consecutive days off.

The Traffic Safety Officer may be assigned to a 5-2 work schedule.

The Chief of Police may, at his sole discretion, implement an overlap "impact" or "power" shift with work hours from 6:00 PM to 2:00 AM. The number of personnel assigned to this shift will be determined by the Chief. Personnel selected to staff this shift will be chosen by seniority, through bidding. If the number of personnel available through bidding is insufficient, the Chief will select the remaining number of necessary personnel through inverse seniority of the required rank.

## ARTICLE X - WAGES

The attached pay plans shall serve as the pay plans for the duration of this Agreement. The following are the raises provided:

> July 1, 2004 – 2.5% increase
> July 1, 2005 – 2.5% increase
> July 1, 2006 – 2.0% increase
> January 1, 2007 – 2.0% increase

## ARTICLE XI - CALL BACK AND OVERTIME

If a member of the Union has left his last place of employment or last duty assignment after having completed his tour of duty and is recalled to the Police Station or any other place, and he reports thereto, or if a member of the Union is recalled on a day off or while on vacation, he shall be compensated on an overtime basis for all such time, and shall be guaranteed a minimum of four (4) hours recall pay therefor. Compensation for extra paid details provided for in Article XXIII shall not be covered by this Article.

Except as provided for under stand-by, overtime pay shall be granted for the period of time required by a member of the Union who is required to work beyond the end of his regularly scheduled tour of duty. The overtime rate shall be time and one-half (1 1/2) the employees regular hourly rate. Compensatory time in lieu of overtime shall be permitted only when both the employee and the Chief of Police agree.

## ARTICLE XII - NIGHT SHIFT DIFFERENTIAL

Each member of the Union who is assigned to work a tour of duty on the evening shift, the night shift or on the "impact" or "power" shift shall receive, in addition to his regular compensation, an amount equal to 6% in Base Pay (Base pay defined as amount in pay plan prior to any benefits added such as educational incentive, longevity, in-service training, holidays, etc.).

## ARTICLE XIII - COURT TIME

A member on duty at night or on a vacation, furlough, or on a day off, who attends as a witness or in a similar capacity for or on behalf of the Commonwealth in a criminal matter, wherein a member is required to attend in his capacity as a police officer, or before any grand jury hearing or who is required or requested to attend or appear before any department, agency, board, commission, division, authority, tribunal or official of the state or federal government or subdivision or agency of either such government, or who attends as a witness or in any other capacity for or on behalf of the government of the United States, the Commonwealth of Massachusetts, or the Town of Natick in a criminal matter pending shall be entitled to and shall receive one and one-half (1 1/2) times his hourly rate of pay for every hour or fraction thereof during which he was in attendance but in no event shall such compensation be less than four (4) hours' pay at such rate of pay for District Court and Superior Court. For the purposes of calculating such time a morning session shall be calculated from 8:00 a.m., and other appearances one (1) hour in advance of such appearance. All such payments shall be made in four (4) hour increments.

Employees shall be compensated for appearance in civil cases on the following conditions:

    A.    The appearance at the Civil proceedings is necessitated by incidents that occurred while the officer was on duty.

    B.    An officer must report to the Chief or his Designee before appearing in a civil case.

    C.    All fees collected by the officer for civil court appearance shall be deducted from compensation by the Town.

## ARTICLE XIV - LONGEVITY

Employees covered by this Agreement, who are regular officers shall be entitled to the following annual longevity increments, to be paid on a weekly basis.

| | |
|---|---|
| 10 - 14 years | 2% of Base Salary-As defined in Art. XII |
| 15 - 19 years | 3% of Base Salary |
| 20 + years | 4% of Base Salary |

## ARTICLE XV - EDUCATIONAL INCENTIVE & REIMBURSEMENT

Town meeting has voted acceptance of the Quinn Bill (M.G.L. c41 s108L), to be effective July 1, 1997. The attached terms shall apply to implementation and interpretation of the bill (see Attachment B).

In the event s108L is repealed by the Legislature, the current educational incentive program as described below shall be resumed.

Regular full-time officers who earn degrees in law enforcement shall be granted base salary as defined in Article XII increases of 5% for an associate's degree in law enforcement, or sixty credits earned toward a baccalaureate degree in law enforcement; an 8% increase for a baccalaureate degree in law enforcement, and a 10% increase for a master's degree in law enforcement or for a degree in law.

7

All semester credits and degrees shall be earned in an educational institution accredited by the New England Association of Colleges and Secondary Schools or by the board of higher education.

Each officer, upon successful completion of course work in law enforcement or a related elective, shall receive reimbursement for expenses incurred including tuition, books, and associated fees up to an annual maximum of $500. Reimbursement may be authorized for the purchase of text books included on the DPA recommended reading list for promotional examinations. This will include 1 copy of each publication. All such course work shall be pre-approved by the Chief of Police.

## ARTICLE XVI - IN-SERVICE TRAINING INCENTIVE

In addition to other compensation to which the member is entitled, in accordance with the terms of this Agreement, each member of the Union, who completes 24 hours of in-service training in a period of one year, shall receive a payment equal to 1.575% of base pay. Such in-service training shall be prior-approved by the Chief of Police.

Any member of the Union who completes such approved in-service training a second year in a row shall receive a payment equal to 2.025% of base pay for the second year. Any member of the Union who completes such In-Service Training a third year in a row shall receive a payment equal to 3.825% of base pay for the third year. For officers receiving compensation under the Quinn Bill the third year, the officer shall receive a payment equal to 2.7% of base pay for 24 hours of training.

Any member of the union not receiving compensation under the "Educational Incentive" section of this agreement may complete additional in-service training to a minimum total of 32 hours per year in a program or course of study approved by the Chief of Police. Upon completing the required hours of training, an officer shall receive a payment equal to 4.3% of base pay. This shall be in lieu of compensation under paragraph 1 and 2 of this Article.

## ARTICLE XVII - HOLIDAYS

| | |
|---|---|
| New Year's Day | Labor Day |
| Martin Luther King Day | Columbus Day |
| Washington's Birthday | Veterans' Day |
| Patriot's Day | Thanksgiving Day |
| Memorial Day | Christmas Day |
| Independence Day | |

Whenever an employee works a full tour of duty on any of the holidays enumerated above, he shall receive eight (8) hours' pay at his regular hourly rate as holiday pay.

Whenever any of the holidays listed above falls on an employee's day off or during his vacation, he shall receive an extra eight (8) hours' pay at this regular hourly rate, as holiday pay.
Under no circumstances except as specified in the following paragraph shall an employee be paid an amount greater than two (2) days pay.

If an employee works on a holiday, and such work continues beyond his normal tour of duty, then he shall be compensated for such excess work in accordance with the overtime provisions of this Agreement.

An employee who works on Thanksgiving or Christmas shall be paid time and one-half his regular hourly rate, in addition to his holiday pay.

Each member, so desiring, will be granted either Thanksgiving or Christmas as a day excused from duty (chargeable as vacation, compensatory time or a personal day).

8

## ARTICLE XVIII - SUPERVISORY COMPENSATION

Employees covered by this Agreement shall receive five percent (5%) of their respective base pay per year in exchange for which employees shall arrive a reasonable amount of time prior to the start of their regular shift to prepare themselves to provide supervisory guidance during their shift and shall stay on duty a reasonable amount of time after each shift to conclude any administrative tasks that have arisen during their shift. Time spent performing these functions shall not be subject to the work schedule provided in Article IX or the overtime provisions provided in Article XI. Effective July 1, 2005, compensation due under this section shall be six percent (6%) of base pay per year.

## ARTICLE XIX - SHIFT ASSIGNMENTS & SENIORITY

The following seniority provisions shall not apply to shift assignments presently in effect. Those shift assignments will continue after the effective date of the provision.

A.       Seniority relative to shift assignment shall not relate to assignment by the Chief of Police of Sergeants and Lieutenants to special roles within the department.

B.       Except for the above, assignment of shifts shall be in accordance with seniority in the rank of Sergeant or Lieutenant except when the Chief of the Department determines that a change in shift assignment is required for the good of the Department. A Sergeant or Lieutenant whose permanent shift is changed shall be notified in writing by the Chief seven days before such change is to take effect.

C.       The senior officer in the rank of Sergeant or Lieutenant shall be that member of the Union with the longest service as permanent Sergeant or Lieutenant.

## ARTICLE XX - INSURANCE

Group life and health insurance will be made available to bargaining unit employees on the same basis as to other Town employees.

## ARTICLE XXI - VACATIONS

The following lengths of vacation period shall be in effect:

        2 weeks  -  one to five years of service, or
        3 weeks  -  six to ten years of service, or
        4 weeks  -  eleven to twenty years of service, or
        5 weeks  -  after twenty years of service.

One (1) week of vacation time may be carried over (non accumulative) for those accruing 4 weeks or more. Any employee whose employment is terminated by any means other than just cause, without having taken the vacation to which he is entitled, shall be paid an amount equal to his unused vacation. In the case of resignation, two weeks prior notice of the resignation to the Town is required for the employee to receive payment in lieu of unused vacation.

The assignment by the Chief of Police of vacation periods shall be, where practicable, in accordance with seniority and rank consistent with departmental requirements.

There shall be no more than one Sergeant per shift to be on vacation at a time.

## ARTICLE XXII - CLOTHING & EQUIPMENT ALLOWANCE & MAINTENANCE

An annual total as listed below shall be credited to each Union member's clothing & equipment account. Purchases which are authorized by the Chief of the Department will be allowed to the maximum amount which is in effect.

| | |
|---|---|
| July 1, 1996 | $525.00 |
| July 1, 2004 | $575.00 |
| July 1, 2005 | $625.00 |
| July 1, 2006 | $675.00 |

The allowance of any member not expended to the maximum of the clothing & equipment allowance in any fiscal year shall revert to the Town.

Funds provided for this purpose which are not expended in any fiscal year shall not accumulate from year to year.

Each union member shall be paid, in addition to the above, the following amount per contract year for clothing maintenance.

| | |
|---|---|
| July 1, 2004 | $300.00 |
| July 1, 2005 | $350.00 |
| July 1, 2006 | $400.00 |

## ARTICLE XXIII - EXTRA PAID DETAILS

### Section 1

Whenever the Chief in his sole discretion, or his designee, determines that a private detail is necessary, it shall first be offered to regular Natick Police Officers.

Extra Paid Details shall accrue at a rate in accordance with the schedule below upon ratification of the contract:

| | |
|---|---|
| Upon execution by both parties: | $35 per hour |
| July 1, 2005: | $36 per hour |
| July 1, 2006: | $37 per hour |

The Extra Paid Detail rate shall be paid in four (4) hour increments.

Every reasonable effort shall be made to offer extra paid details on an equitable basis to all members of the union.

Extra paid details shall be offered to superior officers for all such details requiring the assignment of more than 3 officers (for the purpose of definition - election polling places shall be considered singularly by location).

Upon request by an out of Town Chief of Police or his designee, Natick Officers may work out of town details. Officers may only accept out of town details on a regularly scheduled day off or a vacation shift.

Officers may not accept details which would require them to be on duty in excess of seventeen consecutive hours, either on detail or in conjunction with overtime or their normal police duty.

### Section 2: Strike Details

Members of the Union shall be paid time and one-half of the detail rate of pay for paid details for labor strikes and labor disputes. This cost shall be borne by the party hiring the detail.

10

## ARTICLE XXIV - PERSONAL LEAVE

Each employee shall earn one personal day for every continuous ninety (90) days of no sick leave. An employee may earn a maximum of four (4) personal days in any fiscal year. Unless otherwise approved by the Chief, each personal day must be taken in the ninety (90) days following the ninety (90) days in which it was earned and cannot be accumulated.

In addition to the above, effective July 1, 1989 one personal day shall be granted to all members annually.

## ARTICLE XXV - SICK LEAVE

### Section 1

Regular full-time employees will accrue sick leave at the rate of one and one-quarter (1 1/4) days for each month of active service, (not to exceed fifteen (15) days in any year); such sick leave may not be used until completion of six (6) months continuous active service. Employees may accumulate unused sick leave days up to a total accumulation of two hundred twenty-four (224) days. New employees originally hired after July 1, 1989 may accumulate unused sick leave days up to a total accumulation of one hundred eighty (180) days.

Employees hired on or after July 1, 1997, shall accrue sick leave at the rate of one (1) day per month not to exceed 12/yr. with maximum accumulation of one hundred twenty (120) days. Such employees shall be compensated at retirement with one (1) day pay for each two (2) days of accumulated sick leave over fifty (50) days.

Except in the case of unusual circumstances, an employee who is to be out sick on a shift shall report such to the Commanding Officer one hour and one-half before the start of the shift and shall report the nature of the illness and the place of confinement.

The granting of non-occupational sick leave and payment of compensation during such period shall be subject to the following provisions:

A)      The Chief of Police, without medical evidence, may grant sick leave with pay to any employee of his Department a maximum of eight (8) days in any calendar year, but not more than three (3) days at any one time.

B)      For a period in excess of three (3) consecutive days, the Chief of Police may require a doctor's certificate. For each absence in excess of ten (10) days in any calendar year the Chief of Police may require a written explanation from the employee as a condition precedent to approval of sick leave.

C)      For each absence in excess of ten (10) days in any calendar year the Chief of Police may also require a doctor's certificate from the employee. If the Chief of Police denies sick leave after submission by the employee of the explanation or doctor's certificate, the Chief shall provide the employee with the reason for denial.

D)      In case of requests for sick leave due to the serious illness of a member of the employee's immediate family, the Town may require evidence of the necessity for such absence in the form of a physician's certificate, as a condition precedent to approval of such request.

Any employee who accumulates more than one hundred (100) sick days, shall be compensated at one days pay for every three (3) days of accumulated sick leave over said one (100) days at the time of retirement. There is no buy back of sick leave for any employee with less than one hundred (100) days sick leave.

11

**Section 2: Sick Leave Buyback**

Notification with regard to intention to retire and receive sick leave buy back will occur as follows:

a.  An employee who wishes to retire shall provide written notification of his or her intention to retire, specifying a tentative date, to the Chief of the Department by December 1 of the fiscal year prior to the fiscal year of retirement. An employee who gives the required notice in a timely manner shall receive sick leave buy back at retirement. If the employee fails to give the requisite notice by December 1, the Town will not be required to make the buy-back payment until a transfer of funding can be made at the next Town Meeting. The deadline for the fall Town Meeting is July 1st. The Town may make partial or full payments of sick leave buy-backs when insufficient notice is given if funds are available in sick leave buy-back budget items, but such payment shall not establish a precedent.

b.  Employees who state an intention to retire under this section but who subsequently chose not to retire shall retain all rights and benefits due to them under law and this Agreement.

c.  This section shall not apply to employees who separate from service due to death or disability.

## ARTICLE XXVI - BEREAVEMENT LEAVE

In the event of death of a member of a Union member's immediate family, the member will be permitted to be absent for three (3) consecutive work days without loss of pay based at the member's straight time hourly rate of pay. The immediate family is defined as parents, spouse, parents of spouse, children, grandchildren, brothers, sisters, brother-in-law, sister-in-law, and grandparents of the employee. The Chief of Police may grant additional time upon request from the employee in special circumstances.

## ARTICLE XXVII - PERFORMANCE APPRAISAL

The Chief of Police shall have the right to develop and implement a system of performance evaluation which shall be used to evaluate the performance of members of the Union. Said system shall be developed during Fiscal Year 2006.

The results of these evaluations shall not be used to discipline employees or serve as the basis for changing employee benefits, rights, wages or seniority. In addition, the members of the Union agree to perform performance evaluations of Patrol Officers pursuant to the performance evaluation system implemented by the Chief of Police for Patrol Officers.

## ARTICLE XXVIII - INJURED ON DUTY LEAVE REPORTS

In compliance with "Injured on Duty" leave procedures, it shall be the responsibility of the employee to immediately report to his/her supervisor any injury sustained as a result of the work of the department and further that all reports, doctors certificates, and medical records shall be provided to the Town in a timely fashion.

Any employee claiming injury leave will provide the following documentation to the Chief:

a.  Documentation of the incident causing injury.

b.  Evidence of incapacitation from a physician qualified to make such determination.

c.  Opportunity for the Town to evaluate the employee at regular intervals of not less than three months.

d.  Medical release relative to claimed injury to Town's agent or medical provider.

Injuries and/or illnesses sustained in the performance of duty shall be handled in accordance with M.G.L. c.41, section 111F, except as specified in this agreement.

If after missing 20 working shifts, an officer out I.O.D. is unable to return to full duty status, then the Town designated physician may examine the officer to determine his fitness to perform light/limited duty. Before making a determination the Town Physician shall consult with the officer's attending physician.

If the Town designated physician and the attending physician are unable to agree concerning the officer's ability to perform light duty, the two physicians shall select a third impartial physician, in the relevant specialty area, from a list of Mass. physicians maintained by the Mass. Medical Society, to examine the officer and render an opinion. The cost of this examination shall be borne by the Town.

Each physician who administers an examination under this procedure shall be provided, by the Town, a detailed analysis of the physical requirements of the light/limited duty tasks specified herein below, and shall be asked to make their determination of the fitness of the examined officer to perform the specific physical requirements of each light/limited duty task. Each doctor's report shall specify which, if any, limited duty task the examined officer is not capable of performing.

The determination of the third examining physician shall be binding on all parties. If indicated, such light duty shall be effective immediately, or if it is not indicated, the officer shall continue to be carried on I.O.D. status.

In the event that an officer is assigned to light duty, such light duty shall not interfere with ongoing medical treatment. If an officer cannot physically transport himself to the station for light duty, the department will provide such transportation as needed. Officers on light duty may be permitted to receive required medical treatment during assigned duty hours.

If an officer is assigned to light duty, he shall be assigned to his regular shift for such light duty. Notwithstanding the foregoing, if the officer's physician certifies in writing that the officer's recovery would be enhanced by working the day shift, then the officer will be given consideration for day shift assignment. If the written certification of the officer's physician is deemed unsatisfactory by the Chief, then the matter will be referred to the Town physician who shall consult with the officer's physician. In the event of a disagreement on this issue between the two physicians, the matter will be referred to the third impartial physician for a determination.

An officer injured while on an off-duty status shall be equally eligible for light duty on a voluntary basis, subject to the approval of the officer's attending physician, and the Chief of Police, who may require an examination by a Town-designated physician.

An officer on I.O.D. or light duty status shall not engage in any activity detrimental to his recovery.

Limited duty assignments shall not affect the shift assignments, or shift bid possibilities, of other members. Employees shall be assigned to limited duty on the same shift as their assignment before the injury, except as provided above. Light duty assignments are not of permanent duration and shall not continue longer than one (1) year.

The Town agrees that any employee who works less than a full week on light/limited duty shall be considered to be on injured on duty status for the lost time and shall be paid in accordance with M.G.L. c.41, section 111F.

It is understood by the parties that this provision is not intended to be used as a means of punishment. The Chief will not require an officer to report for light/limited duty and sit idly if there is no legitimate work available.

An officer assigned to light/limited duty shall be required to wear a uniform. The Department will not hold employees on light duty accountable for not responding in emergency situations, if they are prevented from doing so by the injury necessitating light duty.

Light/limited duty tasks shall include the following:

1.    Dispatching
2.    Teletype operations
3.    Training (non-physical)
4.    General clerical work
5.    Crime prevention (citizen's assistance and operation ID)
6.    Assist in property and evidence room
8.    Computer operations
9.    Other limited/light duty tasks as agreed upon by the Chief and the Union.

Disputes regarding interpretation of the application of this policy will be subject to the grievance and arbitration procedures contained in the collective bargaining agreement between the parties, except for medical condition.

Once application for retirement is made, the employee shall return to his prior I.O.D. status or sick leave whichever is appropriate. If the Local Retirement Board denies his application, the employee shall return to modified duty only to fill the remainder of his/her one year term. (The one year term shall not include that period of time that his/her application for retirement was pending.)

## ARTICLE XXIX - EMPLOYEE ASSISTANCE

The Town of Natick and Local 622 commend to the employees the use of the Town Employee Assistance Program for themselves and their families and further urges its employees to participate in educational sessions and other services provided by the E.A.P.

It is agreed that the use of drugs and alcohol is prohibited during any work period and any employee who reports to work under any influence of intoxicants or unlawful drugs shall be subject to immediate disciplinary action.

In the event that a bargaining unit employee temporarily loses his/her right to carry a firearm during duty as a result of a civil restraining order, said employee shall be re-assigned by the Chief of Police to other responsibilities within the department. However, the Town shall retain its right to discipline or discharge an employee for any misconduct related to the issuance of or during the period of civil restraining order.

## ARTICLE XXX - OPERATIONS, SAFETY & EFFICIENCY COMMITTEE

Representatives of Local 622 shall be appointed by the Union to a departmental "Operation, Safety & Efficiency Committee" to discuss issues and concerns with the Chief of Police and a representative of the Office of the Town Administrator over the course of this contract.

## ARTICLE XXXI, CIVILIAN DISPATCHER

The Town and the Union agree to implement Civilian Dispatch upon the implementation of E911 with the understanding that no Sergeant or Lieutenant will thereafter be assigned dispatch duties except in emergency circumstances.

## ARTICLE XXXII, NO STRIKE CLAUSE

### Resolution of Differences by Peaceful Means

The union and the town agree that differences between the parties shall be settled by peaceful means as provided within this Agreement. The Union and employees within the bargaining unit both individually and collectively in consideration of the value of this Agreement and its terms and conditions and the legislation which engendered it, will not authorize, cause, instigate, sanction or condone or take part in any work stoppage or delay, strike, walkout, slowdowns or any concerted refusal to perform normal work duties on the part of any employee or group of employees covered by this Agreement.

14

Notwithstanding Chapter 1073 of the Acts and Resolves of 1973, the Town may, in addition to filing a petition with the State Labor Relations Commission, petition the Court for an injunction and seek any other appropriate legal remedies.

## ARTICLE XXXIII, MANAGEMENT'S RIGHTS

The Town shall retain all rights and authority the Town has prior to the signing of any collective bargaining contract with the Union except those rights which are explicitly and specifically modified by the express terms of this Agreement. Notwithstanding the provisions of this contract, the Town shall retain and exercise through its Chief of Police all rights to manage and control the Natick Police Department and its employees that are given to the Town by the applicable statutes of the Commonwealth of Massachusetts and this is expressly understood by the parties to this Agreement. The Chief of Police shall make all suitable regulations governing the Police Department and the Officers thereof in immediate charge of all Town properties used by the Department and of the Police Department and the Officers thereof in immediate charge of all Town properties used by the Department and of the Police Officers whom he shall assign to their respective duties and who shall obey his orders. Nothing in this Agreement will be construed to abridge or modify the powers of the Chief of Police.

## ARTICLE XXXIV, APPLICABILITY OF LAWS

All benefits previously established by statute, by-law, Civil Service Law, Personnel Board Policy, or department policy with regard to vacation, sick leave, insurance, bereavement leave, overtime provisions, call-back pay, paid details, holiday pay, and any other conditions of employment presently enjoyed and not in conflict with the provisions of this Agreement shall be continued in full force and effect.

## ARTICLE XXXV, FINAL AGREEMENT

This Agreement incorporates the entire understanding of the parties on all issues which were or could have been the subject of negotiations. Any matter not specifically covered by this Agreement is not a part of this Agreement unless specific reference in this contract is made to a by-law or statute or rules and regulations.

The Union acknowledges that during the negotiations which resulted in the Agreement, it had the unlimited right and opportunity to make demands and proposals with respect to all proper subjects of collective bargaining, and that all subjects have been discussed and negotiated and the agreements contained in this contract were arrived at after free exercise of such rights and opportunities. Therefore, the Union voluntarily and without qualification waives the right and agrees that the Town of Natick shall not be obligated to bargain collectively with regard to any subject or matter referred to or covered by this Agreement or with respect to any subject matter not specified or referred to in this Agreement except by the mutual consent in writing of the parties hereto.

15

## ARTICLE XXXVI, DURATION

The terms of this Agreement shall commence on the date of execution by both parties and shall terminate on the thirtieth day of June 2007.

This agreement shall remain in full force until a new agreement has been agreed upon and signed.

TOWN OF NATICK
**Board of Selectmen**

INTERNATIONAL BROTHERHOOD OF
**POLICE OFFICERS**
**Sgt. & Lts, LOCAL 622**

Dated: 5\31\05

Dated: 05/31/05

Approved as to Form

Dated: 6/10/05

**Certification of Sufficient of Appropriation**

Dated: _____

16

IBPO Local 622 Weekly Wage Schedule – Lieutenants

{ME-E1}

| Computer Purposes | 0 | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|---|
| | Start | Past 1 Year | Past 2 Year | Past 3 Year | Past 4 Year | Past 5 Year |
| **Base Pay** | | | | | | |
| July 1, 2003 - 0% | $876 | $927 | $985 | $1,032 | $1,084 | $1,129 |
| Annualized Salary | $45,552 | $48,204 | $51,220 | $53,664 | $56,368 | $58,708 |
| July 1, 2004 - 2.5% | $898 | $950 | $1,010 | $1,058 | $1,111 | $1,157 |
| Annualized Salary | $46,696 | $49,400 | $52,520 | $55,016 | $57,772 | $60,164 |
| July 1, 2005 - 2.5% | $920 | $974 | $1,035 | $1,084 | $1,139 | $1,186 |
| Annualized Salary | $47,840 | $50,648 | $53,820 | $56,368 | $59,228 | $61,672 |
| July 1, 2006 - 2% | $938 | $993 | $1,056 | $1,106 | $1,162 | $1,210 |
| Annualized Salary | $48,776 | $51,636 | $54,912 | $57,512 | $60,424 | $62,920 |
| January 1, 2007 - 2% | $957 | $1,013 | $1,077 | $1,128 | $1,185 | $1,234 |
| Annualized Salary | $49,764 | $52,676 | $56,004 | $58,656 | $61,620 | $64,168 |
| **Supervisory - 6% Base Salary** | | | | | | |
| July 1, 2003 - 5% | $43.80 | $46.35 | $49.25 | $51.60 | $54.20 | $56.45 |
| Annualized Salary | $2,277.60 | $2,410.20 | $2,561.00 | $2,683.20 | $2,818.40 | $2,935.40 |
| July 1, 2004 - 5% | $44.90 | $47.50 | $50.50 | $52.90 | $55.55 | $57.85 |
| Annualized Salary | $2,334.80 | $2,470.00 | $2,626.00 | $2,750.80 | $2,888.60 | $3,008.20 |
| July 1, 2005 - 6% | $55.20 | $58.44 | $62.10 | $65.04 | $68.34 | $71.16 |
| Annualized Salary | $2,870.40 | $3,038.88 | $3,229.20 | $3,382.08 | $3,553.68 | $3,700.32 |
| July 1, 2006 - 6% | $56.28 | $59.58 | $63.36 | $66.36 | $69.72 | $72.60 |
| Annualized Salary | $2,926.56 | $3,098.16 | $3,294.72 | $3,450.72 | $3,625.44 | $3,775.20 |
| January 1, 2007 - 6% | $57.42 | $60.78 | $64.62 | $67.68 | $71.10 | $74.04 |
| Annualized Salary | $2,985.84 | $3,160.56 | $3,360.24 | $3,519.36 | $3,697.20 | $3,850.08 |
| **Shift Differential = 6% of Base Pay** | | | | | | |
| July 1, 2003 | 52.56 | 55.62 | 59.10 | 61.92 | 65.04 | 67.74 |
| Annualized Salary | $2,733.12 | $2,892.24 | $3,073.20 | $3,219.84 | $3,382.08 | $3,522.48 |
| July 1, 2004 | $53.88 | $57.00 | $60.60 | $63.48 | $66.66 | $69.42 |
| Annualized Salary | $2,801.76 | $2,964.00 | $3,151.20 | $3,300.96 | $3,466.32 | $3,609.84 |
| July 1, 2005 | $55.20 | $58.44 | $62.10 | $65.04 | $68.34 | $71.16 |
| Annualized Salary | $2,870.40 | $3,038.88 | $3,229.20 | $3,382.08 | $3,553.68 | $3,700.32 |
| July 1, 2006 | $56.28 | $59.58 | $63.36 | $66.36 | $69.72 | $72.60 |
| Annualized Salary | $2,926.56 | $3,098.16 | $3,294.72 | $3,450.72 | $3,625.44 | $3,775.20 |
| January 1, 2007 | $57.42 | $60.78 | $64.62 | $67.68 | $71.10 | $74.04 |
| Annualized Salary | $2,985.84 | $3,160.56 | $3,360.24 | $3,519.36 | $3,697.20 | $3,850.08 |

IBPO Local 622 Weekly Wage Schedule - Lieutenants

{ME-E1}

| Computer Purposes | | 0 | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|---|---|
| | | Start | Past 1 Year | Past 2 Year | Past 3 Year | Past 4 Year | Past 5 Year |

**Educational Incentive = 10% of Base - Associates Degree - Quinn Bill - Non Quinn 5%**

| | | Start | Past 1 Year | Past 2 Year | Past 3 Year | Past 4 Year | Past 5 Year |
|---|---|---|---|---|---|---|---|
| July 1, 2003 | | $87.60 | $92.70 | $98.50 | $103.20 | $108.40 | $112.90 |
| | Annualized Salary | $4,555.20 | $4,820.40 | $5,122.00 | $5,366.40 | $5,636.80 | $5,870.80 |
| July 1, 2004 | | $89.80 | $95.00 | $101.00 | $105.80 | $111.10 | $115.70 |
| | Annualized Salary | $4,669.60 | $4,940.00 | $5,252.00 | $5,501.60 | $5,777.20 | $6,016.40 |
| July 1, 2005 | | $92.00 | $97.40 | $103.50 | $108.40 | $113.90 | $118.60 |
| | Annualized Salary | $4,784.00 | $5,064.80 | $5,382.00 | $5,636.80 | $5,922.80 | $6,167.20 |
| July 1, 2006 | | $93.80 | $99.30 | $105.60 | $110.60 | $116.20 | $121.00 |
| | Annualized Salary | $4,877.60 | $5,163.60 | $5,491.20 | $5,751.20 | $6,042.40 | $6,292.00 |
| January 1, 2007 | | $95.70 | $101.30 | $107.70 | $112.80 | $118.50 | $123.40 |
| | Annualized Salary | $4,976.40 | $5,267.60 | $5,600.40 | $5,865.60 | $6,162.00 | $6,416.80 |

**Educational Incentive = 20% of Base - Bachelors Degree - Quinn Bill - Non Quinn 8%**

| | | Start | Past 1 Year | Past 2 Year | Past 3 Year | Past 4 Year | Past 5 Year |
|---|---|---|---|---|---|---|---|
| July 1, 2003 | | $175.20 | $185.40 | $197.00 | $206.40 | $216.80 | $225.80 |
| | Annualized Salary | $9,110.40 | $9,640.80 | $10,244.00 | $10,732.80 | $11,273.60 | $11,741.60 |
| July 1, 2004 | | $179.60 | $190.00 | $202.00 | $211.60 | $222.20 | $231.40 |
| | Annualized Salary | $9,339.20 | $9,880.00 | $10,504.00 | $11,003.20 | $11,554.40 | $12,032.80 |
| July 1, 2005 | | $184.00 | $194.80 | $207.00 | $216.80 | $227.80 | $237.20 |
| | Annualized Salary | $9,568.00 | $10,129.60 | $10,764.00 | $11,273.60 | $11,845.60 | $12,334.40 |
| July 1, 2006 | | $187.60 | $198.60 | $211.20 | $221.20 | $232.40 | $242.00 |
| | Annualized Salary | $9,755.20 | $10,327.20 | $10,982.40 | $11,502.40 | $12,084.80 | $12,584.00 |
| January 1, 2007 | | $191.40 | $202.60 | $215.40 | $225.60 | $237.00 | $246.80 |
| | Annualized Salary | $9,952.80 | $10,535.20 | $11,200.80 | $11,731.20 | $12,324.00 | $12,833.60 |

**Educational Incentive = 25% of Base - Masters Degree - Quinn Bill - Non Quinn 10%**

| | | Start | Past 1 Year | Past 2 Year | Past 3 Year | Past 4 Year | Past 5 Year |
|---|---|---|---|---|---|---|---|
| July 1, 2003 | | $219.00 | $231.75 | $246.25 | $258.00 | $271.00 | $282.25 |
| | Annualized Salary | $11,388.00 | $12,051.00 | $12,805.00 | $13,416.00 | $14,092.00 | $14,677.00 |
| July 1, 2004 | | $224.50 | $237.50 | $252.50 | $264.50 | $277.75 | $289.25 |
| | Annualized Salary | $11,674.00 | $12,350.00 | $13,130.00 | $13,754.00 | $14,443.00 | $15,041.00 |
| July 1, 2005 | | $230.00 | $243.50 | $258.75 | $271.00 | $284.75 | $296.50 |
| | Annualized Salary | $11,960.00 | $12,662.00 | $13,455.00 | $14,092.00 | $14,807.00 | $15,418.00 |
| July 1, 2006 | | $234.50 | $248.25 | $264.00 | $276.50 | $290.50 | $302.50 |
| | Annualized Salary | $12,194.00 | $12,909.00 | $13,728.00 | $14,378.00 | $15,106.00 | $15,730.00 |
| January 1, 2007 | | $239.25 | $253.25 | $269.25 | $282.00 | $296.25 | $308.50 |
| | Annualized Salary | $12,441.00 | $13,169.00 | $14,001.00 | $14,664.00 | $15,405.00 | $16,042.00 |

IBPO Local 622 Weekly Wage Schedule – Lieutenants

{ME-E1}

| Compute Purposes | 0 | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|---|
| | Start | Past 1 Year | Past 2 Year | Past 3 Year | Past 4 Year | Past 5 Year |
| **Longevity** | | | | | | |
| **July 1, 2003** | | | | **Maximum** | | |
| 10 - 14 Years = 2% of Base Annually | | $1,174 | $58,708 | Past | | |
| 15 - 19 Years = 3% of Base Annually | | $1,761 | | 5 Year | | |
| 20 + Years   = 4% of Base Annually | | $2,348 | | | | |
| | | | | | | |
| **July 1, 2004** | | | | **Maximum** | | |
| 10 - 14 Years = 2% of Base Annually | | $1,203 | $60,164 | Past | | |
| 15 - 19 Years = 3% of Base Annually | | $1,805 | | 5 Year | | |
| 20 + Years   = 4% of Base Annually | | $2,407 | | | | |
| | | | | | | |
| **July 1, 2005** | | | | **Maximum** | | |
| 10 - 14 Years = 2% of Base Annually | | $1,233 | $61,672 | Past | | |
| 15 - 19 Years = 3% of Base Annually | | $1,850 | | 5 Year | | |
| 20 + Years   = 4% of Base Annually | | $2,467 | | | | |
| | | | | | | |
| **July 1, 2006** | | | | **Maximum** | | |
| 10 - 14 Years = 2% of Base Annually | | $1,258 | $62,920 | Past | | |
| 15 - 19 Years = 3% of Base Annually | | $1,888 | | 5 Year | | |
| 20 + Years   = 4% of Base Annually | | $2,517 | | | | |
| | | | | | | |
| **January 1, 2007** | | | | | | |
| 10 - 14 Years = 2% of Base Annually | | $1,283 | $64,168 | Past | | |
| 15 - 19 Years = 3% of Base Annually | | $1,925 | | 5 Year | | |
| 20 + Years   = 4% of Base Annually | | $2,567 | | | | |

IBPO Local 622 Weekly Wage Schedule – Sergeants

**{MF-F1}**

| Computer Purposes | 0 Start | Past 1 Year | Past 2 Year | Past 3 Year | Past 4 Year | Past 5 Year |
|---|---|---|---|---|---|---|
| **Base Pay** | | | | | | |
| July 1, 2003 0% | $745 | $796 | $843 | $885 | $926 | $982 |
| Annualized Salary | $38,740 | $41,392 | $43,836 | $46,020 | $48,152 | $51,064 |
| July 1, 2004 - 2.5% | $764 | $816 | $864 | $907 | $949 | $1,007 |
| Annualized Salary | $39,728 | $42,432 | $44,928 | $47,164 | $49,348 | $52,364 |
| July 1, 2005 - 2.5% | $783 | $836 | $886 | $930 | $973 | $1,032 |
| Annualized Salary | $40,716 | $43,472 | $46,072 | $48,360 | $50,596 | $53,664 |
| July 1, 2006 - 2% | $799 | $853 | $904 | $949 | $992 | $1,053 |
| Annualized Salary | $41,548 | $44,356 | $47,008 | $49,348 | $51,584 | $54,756 |
| January 1, 2007 - 2% | $815 | $870 | $922 | $968 | $1,012 | $1,074 |
| Annualized Salary | $42,380 | $45,240 | $47,944 | $50,336 | $52,624 | $55,848 |
| **Supervisory - 6% Base Salary** | | | | | | |
| July 1, 2003 - 5% | $37.25 | $39.80 | $42.15 | $44.25 | $46.30 | $49.10 |
| Annualized Salary | $1,937.00 | $2,069.60 | $2,191.80 | $2,301.00 | $2,407.60 | $2,553.20 |
| July 1, 2004 - 5% | $38.20 | $40.80 | $43.20 | $45.35 | $47.45 | $50.35 |
| Annualized Salary | $1,986.40 | $2,121.60 | $2,246.40 | $2,358.20 | $2,467.40 | $2,618.20 |
| July 1, 2005 - 6% | $46.98 | $50.16 | $53.16 | $55.80 | $58.38 | $61.92 |
| Annualized Salary | $2,442.96 | $2,608.32 | $2,764.32 | $2,901.60 | $3,035.76 | $3,219.84 |
| July 1, 2006 - 6% | $47.94 | $51.18 | $54.24 | $56.94 | $59.52 | $63.18 |
| Annualized Salary | $2,492.88 | $2,661.36 | $2,820.48 | $2,960.88 | $3,095.04 | $3,285.36 |
| January 1, 2007 - 6% | $48.90 | $52.20 | $55.32 | $58.08 | $60.72 | $64.44 |
| Annualized Salary | $2,542.80 | $2,714.40 | $2,876.64 | $3,020.16 | $3,157.44 | $3,350.88 |
| **Shift Differential = 6% of Base Pay** | | | | | | |
| July 1, 2003 | $44.70 | $47.76 | $50.58 | $53.10 | $55.56 | $58.92 |
| Annualized Salary | $2,324.40 | $2,483.52 | $2,630.16 | $2,761.20 | $2,889.12 | $3,063.84 |
| July 1, 2004 | $45.84 | $48.96 | $51.84 | $54.42 | $56.94 | $60.42 |
| Annualized Salary | $2,383.68 | $2,545.92 | $2,695.68 | $2,829.84 | $2,960.88 | $3,141.84 |
| July 1, 2005 | $46.98 | $50.16 | $53.16 | $55.80 | $58.38 | $61.92 |
| Annualized Salary | $2,442.96 | $2,608.32 | $2,764.32 | $2,901.60 | $3,035.76 | $3,219.84 |
| July 1, 2006 | $47.94 | $51.18 | $54.24 | $56.94 | $59.52 | $63.18 |
| Annualized Salary | $2,492.88 | $2,661.36 | $2,820.48 | $2,960.88 | $3,095.04 | $3,285.36 |
| January 1, 2007 | $48.90 | $52.20 | $55.32 | $58.08 | $60.72 | $64.44 |
| Annualized Salary | $2,542.80 | $2,714.40 | $2,876.64 | $3,020.16 | $3,157.44 | $3,350.88 |

| Computer Purposes | 0 | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|---|
| | Start | Past 1 Year | Past 2 Year | Past 3 Year | Past 4 Year | Past 5 Year |

**Educational Incentive =10% of Base – Associates Degree (Quinn Bill) Non Quinn 5%**

| | | Start | Past 1 Year | Past 2 Year | Past 3 Year | Past 4 Year | Past 5 Year |
|---|---|---|---|---|---|---|---|
| July 1, 2003 | | $74.50 | $79.60 | $84.30 | $88.50 | $92.60 | $98.20 |
| | Annualized Salary | $3,874.00 | $4,139.20 | $4,383.60 | $4,602.00 | $4,815.20 | $5,106.40 |
| July 1, 2004 | | $76.40 | $81.60 | $86.40 | $90.70 | $94.90 | $100.70 |
| | Annualized Salary | $3,972.80 | $4,243.20 | $4,492.80 | $4,716.40 | $4,934.80 | $5,236.40 |
| July 1, 2005 | | $78.30 | $83.60 | $88.60 | $93.00 | $97.30 | $103.20 |
| | Annualized Salary | $4,071.60 | $4,347.20 | $4,607.20 | $4,836.00 | $5,059.60 | $5,366.40 |
| July 1, 2006 | | $79.90 | $85.30 | $90.40 | $94.90 | $99.20 | $105.30 |
| | Annualized Salary | $4,154.80 | $4,435.60 | $4,700.80 | $4,934.80 | $5,158.40 | $5,475.60 |
| January 1, 2007 | | $81.50 | $87.00 | $92.20 | $96.80 | $101.20 | $107.40 |
| | Annualized Salary | $4,238.00 | $4,524.00 | $4,794.40 | $5,033.60 | $5,262.40 | $5,584.80 |

**Educational Incentive = 20% of Base – Bachelors Degree (Quinn Bill) – Non Quinn 8%**

| | | Start | Past 1 Year | Past 2 Year | Past 3 Year | Past 4 Year | Past 5 Year |
|---|---|---|---|---|---|---|---|
| July 1, 2003 | | $149.00 | $159.20 | $168.60 | $177.00 | $185.20 | $196.40 |
| | Annualized Salary | $7,748.00 | $8,278.40 | $8,767.20 | $9,204.00 | $9,630.40 | $10,212.80 |
| July 1, 2004 | | $152.80 | $163.20 | $172.80 | $181.40 | $189.80 | $201.40 |
| | Annualized Salary | $7,945.60 | $8,486.40 | $8,985.60 | $9,432.80 | $9,869.60 | $10,472.80 |
| July 1, 2005 | | $156.60 | $167.20 | $177.20 | $186.00 | $194.60 | $206.40 |
| | Annualized Salary | $8,143.20 | $8,694.40 | $9,214.40 | $9,672.00 | $10,119.20 | $10,732.80 |
| July 1, 2006 | | $159.80 | $170.60 | $180.80 | $189.80 | $198.40 | $210.60 |
| | Annualized Salary | $8,309.60 | $8,871.20 | $9,401.60 | $9,869.60 | $10,316.80 | $10,951.20 |
| January 1, 2007 | | $163.00 | $174.00 | $184.40 | $193.60 | $202.40 | $214.80 |
| | Annualized Salary | $8,476.00 | $9,048.00 | $9,588.80 | $10,067.20 | $10,524.80 | $11,169.60 |

**Educational Incentive = 25% of Base – Masters Degree (Quinn Bill) – Non Quinn 10%**

| | | Start | Past 1 Year | Past 2 Year | Past 3 Year | Past 4 Year | Past 5 Year |
|---|---|---|---|---|---|---|---|
| July 1, 2003 | | $186.25 | $199.00 | $210.75 | $221.25 | $231.50 | $245.50 |
| | Annualized Salary | $9,685.00 | $10,348.00 | $10,959.00 | $11,505.00 | $12,038.00 | $12,766.00 |
| July 1, 2004 | | $191.00 | $204.00 | $216.00 | $226.75 | $237.25 | $251.75 |
| | Annualized Salary | $9,932.00 | $10,608.00 | $11,232.00 | $11,791.00 | $12,337.00 | $13,091.00 |
| July 1, 2005 | | $195.75 | $209.00 | $221.50 | $232.50 | $243.25 | $258.00 |
| | Annualized Salary | $10,179.00 | $10,868.00 | $11,518.00 | $12,090.00 | $12,649.00 | $13,416.00 |
| July 1, 2006 | | $199.75 | $213.25 | $226.00 | $237.25 | $248.00 | $263.25 |
| | Annualized Salary | $10,387.00 | $11,089.00 | $11,752.00 | $12,337.00 | $12,896.00 | $13,689.00 |
| January 1, 2007 | | $203.75 | $217.50 | $230.50 | $242.00 | $253.00 | $268.50 |
| | Annualized Salary | $10,595.00 | $11,310.00 | $11,986.00 | $12,584.00 | $13,156.00 | $13,962.00 |

**Longevity**

July 1, 2003
| | | | | |
|---|---|---|---|---|
| 10 – 14 Years = 2% of Base Annually | $1,021 | $51,064 | **Maximum** | |
| 15 – 19 Years = 3% of Base Annually | $1,532 | | Past | |
| 20 + Years   = 4% of Base Annually | $2,043 | | 5 Year | |

July 1, 2004
| | | | | |
|---|---|---|---|---|
| 10 – 14 Years = 2% of Base Annually | $1,047 | $52,364 | **Maximum** | |
| 15 – 19 Years = 3% of Base Annually | $1,571 | | Past | |
| 20 + Years   = 4% of Base Annually | $2,095 | | 5 Year | |

July 1, 2005
| | | | | |
|---|---|---|---|---|
| 10 – 14 Years = 2% of Base Annually | $1,073 | $53,664 | **Maximum** | |
| 15 – 19 Years = 3% of Base Annually | $1,610 | | Past | |
| 20 + Years   = 4% of Base Annually | $2,147 | | 5 Year | |

July 1, 2006
| | | | | |
|---|---|---|---|---|
| 10 – 14 Years = 2% of Base Annually | $1,095 | $54,756 | **Maximum** | |
| 15 – 19 Years = 3% of Base Annually | $1,643 | | Past | |
| 20 + Years   = 4% of Base Annually | $2,190 | | 5 Year | |

January 1, 2007
| | | | | |
|---|---|---|---|---|
| 10 – 14 Years = 2% of Base Annually | $1,675 | $55,848 | **Maximum** | |
| 15 – 19 Years = 3% of Base Annually | $2,234 | | Past | |
| 20 + Years   = 4% of Base Annually | $2,792 | | 5 Year | |