# EXHIBIT B

# AGREEMENT BETWEEN THE

# TOWN OF NATICK

# AND

# INTERNATIONAL BROTHERHOOD OF POLICE OFFICERS, LOCAL 311

*JULY 1, 2000 - June 30, 2003*

# Table of Contents

PREAMBLE................................................................................................................1

ARTICLE I - RECOGNITION ....................................................................................1

ARTICLE II - STABILITY ..........................................................................................1

ARTICLE III - PAYROLL DEDUCTION OF AGENCY FEE ..................................1

ARTICLE IV - GRIEVANCE PROCEDURE.............................................................2

ARTICLE V - APPLICABILITY OF PRIOR LAWS .................................................3

ARTICLE VI - WORK SCHEDULE............................................................................3

ARTICLE VII - COMPENSATION .............................................................................4

ARTICLE VIII - NIGHT SHIFT DIFFERENTIAL ....................................................4

ARTICLE IX - LONGEVITY.......................................................................................4

ARTICLE X - HOLIDAYS ...........................................................................................4

ARTICLE XI - DETECTIVE DUTIES ........................................................................5

ARTICLE XII - EDUCATIONAL INCENTIVE .........................................................5

ARTICLE XIII - IN-SERVICE TRAINING INCENTIVE ..........................................6

ARTICLE XIV - COURT TIME ...................................................................................6

ARTICLE XV - VACATIONS ......................................................................................6

ARTICLE XVI - CLOTHING ALLOWANCE .............................................................7

ARTICLE XVII - SEVERABILITY .............................................................................7

ARTICLE XVIII - EXTRA PAID DETAILS................................................................7

ARTICLE XIX - SICK LEAVE....................................................................................8

ARTICLE XX - PERSONAL LEAVE ..........................................................................9

ARTICLE XXI - BEREAVEMENT LEAVE ................................................................9

ARTICLE XXII - SENIORITY ....................................................................................9

ARTICLE XXIII - SAFETY .........................................................................................9

ARTICLE XXIV - NO STRIKE CLAUSE ...................................................................9

ARTICLE XXV - MANAGEMENT'S RIGHTS.........................................................10

ARTICLE XXVI - ORDERS RELATIVE TO WORKING CONDITIONS ...............10

ARTICLE XXVII - FINAL AGREEMENT ................................................................10

ARTICLE XXVIII - DURATION ............................................................................................10

ARTICLE XXIX - EMPLOYEE ASSISTANCE ...................................................................11

ARTICLE XXX - PERFORMANCE APPRAISAL ...............................................................11

ARTICLE XXXI - CIVILIAN DISPATCH ............................................................................11

ARTICLE XXXII - SPECIALIST PAY ................................................................................11

ARTICLE XXXIII -SICK LEAVE BANK .............................................................................11

ARTICLE XXXIV - OPERATIONS, EFFICIENCY & SAFETY COMMITTEE ..............11

ARTICLE XXXV - COMMUNITY SERVICE INCENTIVE .............................................11

ARTICLE XXXVI - BULLETIN BOARDS .........................................................................11

ARTICLE XXXVII - INJURED LEAVE AND RETURN TO WORK .............................12

ARTICLE XXVIII - COMPSTAT/TECHNOLOGY STIPEND .......................................13

Pursuant to the provisions of Chapter 150E, this Agreement is made and entered into this 22nd day of November, A.D., 1999 by and between the Town of Natick, Massachusetts (hereinafter called the Town) and Local 311, International Brotherhood of Police Officers (hereinafter called the Union).

## PREAMBLE

Whereas the Great and General Court of Massachusetts in its wisdom saw fit in the year 1966 to pass a law whereby Police Officers have a statutory right to bargain collectively with their municipal employer, it is the intention of this Agreement to maintain a harmonious relationship between them, recognizing the legitimate rights and needs of the employees of the Police Department, as well as the obligation of the Town, to protect the safety of the public.

Now, therefore, in consideration of the mutual obligations contained herein, the parties agree as follows:

## ARTICLE I - RECOGNITION

The Town hereinafter recognizes Local 311, International Brotherhood of Police Officers as the sole, exclusive bargaining representative for the purpose of collective bargaining with respect to wages, hours, and all other conditions of employment for permanent police patrolmen employed in the Natick Police Department, in accordance with the same unit for bargaining established by past certifications and decisions of the State Labor Relations Board.

Excluded from this Agreement are the Chief of Police, Lieutenants, Sergeants, Reserve Patrolmen, and all civilian employees of the Natick Police Department.

## ARTICLE II - STABILITY

No agreement, understanding, alteration or variation of the Agreement, terms or provisions, herein contained shall bind the parties thereto unless made and executed in writing by the parties hereto.

The failure of the Town or the Union to insist, in any one or more incidents upon the performance of any of the terms or conditions of this Agreement shall not be considered as a waiver or relinquishment of the right of the Town or of the Union to future performance of any such terms or conditions, and the obligation of the Town and the Union to such future performance shall continue in full force and effect.

## ARTICLE III - PAYROLL DEDUCTION OF AGENCY FEE

A.   Pursuant to General Laws Chapter 150E, Section 17b, it shall be a condition of employment that on or after the thirtieth (30) day of employment in the bargaining unit, each and every member of the bargaining unit shall pay to Local 311, International Brotherhood of Police Officers, an agency service fee which shall be proportionately commensurate with the cost of collective bargaining and contract administration. The agency fee shall be deducted on a monthly basis, shall be equal in amount to the sum set from time to time by Local 311 as dues, and shall be used solely for the purposes of paying the expenses of collective bargaining.

B.   Local 311, International Brotherhood of Police Officers, agrees to indemnify the Town for damages or costs in complying with this Article. No request to dismiss or suspend an employee for non-compliance shall be honored so long as there is a dispute before the State Labor Relations Commission or a court of competent jurisdiction as to whether the agency fee is "proportionately commensurate" with the cost of collective bargaining and contract administration.

1

## ARTICLE IV - GRIEVANCE PROCEDURE

The parties recognize that it is in the best interest of effective and harmonious performance of the duties and responsibilities of the Police Department for prompt and equitable disposition of any grievance at the lowest organizational level possible under procedures of maximum informality and flexibility. Therefore, an employee shall have the right to present any matter of personal concern to his immediate supervisor for adjustment without the necessity of intervention of the Union, as long as such adjustment is not inconsistent with the terms of this Agreement, provided, however, that the Local Union President may, if time permits, be advised of the existence of such matter of personal concern and, with the approval of the employee, will be given an opportunity to be present, as an observer, during discussions between the employee and his immediate supervisor. Grievances shall be processed in accordance with the following procedures.

### A.    Grievance Defined

A grievance shall be defined herein as a complaint between the Town and the Union or an employee involving an alleged specific and direct violation of specific provisions of this Agreement.

### B.    Grievance Steps

Step 1 -     The grievant shall first discuss the grievance with his/her immediate supervisor within ten (10) days of the occurrence of the event giving rise to the grievance.

Step 2 -     The grievance shall be presented in writing to the Police Chief within ten days of the occurrence of the event giving rise to the grievance. The grievance shall contain:

        (a)    Name and classification of the employee.
        (b)    Nature of the grievance and contract provisions involved.
        (c)    Steps taken to resolve the grievance informally.
        (d)    Requested remedy.
        (e)    Signature of the employee or employees involved.

The Police Chief shall give his answer, including the reason(s) therefore, in writing within ten days of receipt of the grievance.

Step 3 -     If no answer is forthcoming from the Police Chief within ten days, or if the employee or Union is not satisfied with the answer given by the Police Chief, the grievance may be submitted to the Town Administrator within ten (10) days. A meeting with the Town Administrator or designee may be held prior to responding to the grievance.

The Town Administrator shall have ten (10) days to respond to the grievance.

### C.    Arbitration

If the grievance is not resolved by the answer of the Town Administrator as provided above, either party may, within thirty (30) days after such answer, upon written notice given to the other party, submit the grievance to arbitration in accordance with the voluntary rules of the American Arbitration Association.

Any matter, which is subject to the jurisdiction of the Civil Service Commission, or any Retirement Board established by law shall not be a subject of grievance or arbitration, except as otherwise provided in Section D below.

No dispute or controversy shall be subject for arbitration unless it involves an alleged specific and direct violation of express language of a specific provision of this Agreement. The arbitrator shall

2

have no power to add to, subtract from or modify the terms of this Agreement. The parties are agreed that no restrictions are intended on the rights and powers of the Town except those specifically and directly set forth in express language in specific provisions of this Agreement. The arbitrator shall arrive at his decision solely upon the facts, evidence and contentions as presented by the parties during the arbitration proceedings.

In determining whether there is a specific and direct violation of express language of a specific provision of this Agreement, it is agreed that the only criterion to be applied is the plain meaning of express language in the Agreement and that evidence of past practice, except as modified by contract, past or present policy and oral statements made during negotiations or at any time by either party shall be inadmissible to prove the meaning of express language and shall not be considered by the arbitrator.

D.      No non-probationary patrol officer shall be discharged, removed, suspended, or otherwise disciplined without just cause. Any non-probationary officer who feels he/she was discharged, removed, suspended, or otherwise disciplined without just cause may contest that action under the grievance procedure of this Agreement or through the Civil Service Commission, but not both. Further, it is expressly understood that procedural challenges specific to the M.G.L. c.31 procedures that Management did or did not follow in taking the action referred to in this paragraph may not be processed as a grievance nor may they serve as basis for challenging whether "just cause" exists in any proceeding under the Grievance Article of this Agreement. If an employee is reprimanded it shall be done in a manner that will not embarrass the employee before other employees or the public.

E.      In the event of arbitration, the decision of the arbitrator shall be final and binding upon the parties hereto, however, no money shall be obligated or paid pursuant to an arbitration decision until appropriated by Town Meeting.

F.      The expense of the arbitrator's services and the proceedings shall be borne equally by the parties. If either party desires a verbatim record of the proceedings, it may cause such a record to be made, and make copies available to the other party. Each party shall pay the cost of the verbatim transcript that it orders and receives. The parties shall share the cost of the copy provided to the arbitrator.

G.      A grievance not initiated within the time specified shall be deemed waived. Failure of the Union to appeal a decision within the time limit specified shall mean that the grievance shall be considered settled on the basis of the decision last made and shall not be eligible for further appeal.

The arbitrator shall be without power or authority to modify, add to, alter, subtract, or change the terms of this Agreement.

## ARTICLE V - APPLICABILITY OF PRIOR LAWS

All benefits previously established by statute, by-law, Civil Service law, Personnel Board policy, or Department policy with regard to vacation, sick leave, insurance, bereavement leave, overtime provisions, call-back pay, paid details, holiday pay, and any other conditions of employment presently enjoyed and not in conflict with the provisions of this Agreement shall be continued in full force and effect.

## ARTICLE VI - WORK SCHEDULE

The employee covered by this Agreement shall work an eight (8) hour day.

All members of Local 311-IBPO except the Administrative Assistant shall be on a 4-2 work schedule. The Police Department shall operate under the so-called four (4) and two (2) work

schedule. This schedule provides that an officer shall work four (4) consecutive days and have two (2) consecutive days off. The Traffic Safety Officer, however, may be assigned to a 5-2 work schedule.

All overtime arising out of unforeseen circumstances (i.e. sick calls, emergencies, etc.) shall be offered to permanent officers before reserve officers.

The implementation of the provisions of Article VI shall be done after review with the Operations, Safety & Efficiency Committee upon mutual agreement of the parties.

The overtime rate paid to employees covered by this Agreement shall be at a rate of time and one-half their regular hourly rate. Payment of overtime compensation shall be calculated only for those hours worked in excess of 40 hours; and the base hourly rate shall be determined by dividing the weekly salary by 40 hours. Compensation for Extra Paid Details provided for in Article XVIII shall not be covered by this Article.

Any employee recalled to work after his normal tour of duty shall be paid a minimum of four (4) hours.

When an employee and the Chief of Police both agree, compensatory time off may be taken on any holidays listed in Article X of this Agreement.

## ARTICLE VII - COMPENSATION

There shall be a new pay plan in effect for the period commencing July 1, 2000 through June 30, 2003 (see attached).

## ARTICLE VIII - NIGHT SHIFT DIFFERENTIAL

A sum equal to 6% in Base Pay (Base pay defined as amount in pay plan prior to any benefits added such as educational incentive, longevity, in-service training, holidays, etc.) shall be effective for night shift differential, defined as 1st half and 2nd half shifts, on July 1, 1995.

## ARTICLE IX - LONGEVITY

Effective July 1, 1998, longevity computed in accordance with Civil Service Law shall be paid based upon the following schedule:

| | | |
|---|---|---|
| 10-14 | 2% | of Base Pay (as defined in Article VIII) |
| 15-19 | 3% | of Base Pay |
| 20 + years | 4% | of Base Pay |

## ARTICLE X - HOLIDAYS

Each employee covered by this Agreement will be granted compensation for the following holidays provided he either works on his last and next scheduled tours of duty immediately preceding and subsequent to the holiday, or he has been granted authorized leave of absence for such tours:

| | |
|---|---|
| New Year's Day | Labor Day |
| Martin Luther King Day | Columbus Day |
| Washington's Birthday | Veterans Day |
| Patriot's Day | Thanksgiving Day |
| Memorial Day | Christmas Day |
| Independence Day | |

4

Whenever any of the holidays listed above falls on an employee's regularly scheduled day off, or during his vacation he shall receive an extra eight hours pay at his regular hourly rate, as holiday pay, except that he shall receive sixteen hours pay at his regular hourly rate as holiday pay for Thanksgiving Day.

An employee who works on Thanksgiving or Christmas shall be paid time and one-half his regular hourly rate, in addition to his holiday pay.

Any employee who is scheduled to work both Thanksgiving and Christmas in a particular year may request that she/he be granted either Thanksgiving or Christmas as a day excused from duty (chargeable as vacation, compensatory time or as a personal day). Where the chief concludes that the Department's staffing needs require that he deny an affected employee's request to have one of these two holidays off, he may deny said request. When the Chief denies an affected officer's request (and thereby requires him/her to work both of these holidays), that officer will receive a total of one additional day's pay at his or her base rate, upon working Christmas, provided that she/he actually worked both holidays. The parties expressly acknowledge that the terms of this Article may represent a change in the past practice for granting excused absences on these two holidays.

Employees covered by this Agreement shall receive holiday pay for each holiday listed above whether or not they fall on Saturday (in an amount equal to one-fifth of their regular weekly salary) in addition to their weekly salary, except that holiday pay for Thanksgiving Day shall be equal to two-fifths of their regular weekly salary.

## ARTICLE XI - DETECTIVE DUTIES

Each member of the Union, who is permanently assigned to and who actually performs the duties of a Department detective, shall receive, in addition to his regular compensation, an annual premium of $1,000.00, or a proportional amount thereof if service as a detective is less than one year in duration; payable in weekly increments. Additionally, one (1) weekly stipend of $150 shall be paid to the one, above-referred detective who is on call for that week. In no event shall more than one person receive the on-call stipend attributable to any given week.

## ARTICLE XII - EDUCATIONAL INCENTIVE

Town Meeting has voted acceptance of the Quinn Bill (M.G.L. c41 s108L), to be effective July 1, 1997. The attached terms shall apply to implementation and interpretation of the bill (see Attachment B).

In the event s108L is repealed by the Legislature, the current educational incentive program as described below shall be resumed.

Regular full-time officers who earn degrees in law enforcement shall be granted base pay stipends of 5% for an associate's degree in law enforcement, or sixty credits earned toward a baccalaureate degree in law enforcement; an 8% stipend for a baccalaureate degree in law enforcement, and a 10% stipend for a master's degree in law enforcement or for a degree in law.

All semester credits and degrees shall be earned in an educational institution accredited by the New England Association of Colleges and Secondary Schools or by the board of higher education.

Each officer, upon successful completion of course work in law enforcement or a related elective, shall receive reimbursement for expenses incurred including tuition, books, and associated fees up to an annual maximum of $500. All such course work shall be pre-approved by the Chief of Police.

5

## ARTICLE XIII - IN-SERVICE TRAINING INCENTIVE

In addition to other compensation to which an officer is entitled, in accordance with the terms of this Agreement, each member of the Union who receives compensation under Article XII (Educational Incentive), and who completes twenty-four (24) hours of in-service training in a period of one year, shall receive a stipend that year which is equal to 2.7% of his or her annual base pay. Such in-service training shall be prior approved by the Chief of Police.

Any member of the Union who receives compensation under Article XII (Educational Incentive) and who completes such approved in-service training a second year in a row shall instead, receive a stipend that year which is equal to 3.2% of his or her annual base pay. Officers receiving compensation under Article XII (Educational Incentive) who complete such approved in-service training for a third successive year, shall receive a stipend that year which is equal to four (4) percent of his/her annual base pay, upon the completion of twenty-four (24) hours of approved training in a period of one year.

Any member of the Union not receiving compensation under the "Educational Incentive" Article of this Contract may complete in-service training to a minimum total of thirty-two (32) hours per year in a program or course of study approved by the Chief of Police. Upon completing the required hours of training, the officer shall receive a stipend that year which is equal to 7.7% of his or her annual base pay. The amount received by officers not receiving compensation under the Article XII (Educational Incentive) of this Contract and who comply with the provisions of this paragraph will not be less than two thousand seven hundred dollars ($2700).

## ARTICLE XIV - COURT TIME

When a member of the Union, as a result of his duties as police officer, is required to attend as a witness for the Commonwealth or Town in any criminal case pending in any district, municipal, juvenile or superior court at any time, other than during his regular tour of duty, said member shall receive a total compensation for such attendance as a witness, time and one-half his regular hourly rate for every hour or fraction thereof, but in no event for less than four (4) hours for District Court and four (4) hours for Superior Court.

Hours shall be calculated from a starting time of 8:00 A. M. for morning sessions and 1 hour in advance of scheduled session for all other appearances. Additional time shall be paid in 4 hour increments.

Employees shall be compensated for appearance in Civil Cases on the following conditions:

A.    The appearance at the civil proceedings is necessitated by incidents that occurred while the officer was on duty.

B.    Officer must report to the Chief or his Designee before appearing in civil case.

C.    All fees collected by the officer for civil court appearance shall be deducted from compensation by the Town.

## ARTICLE XV - VACATIONS

The following lengths of vacation period shall be in effect:

2 weeks - 1 to 5 years of service, or
3 weeks - after 5 years of service, or
4 weeks - after 10 years of service, or

6

5 weeks – after 20 years of service

One (1) week of vacation time may be carried over (non-accumulative) for those accruing 4 weeks or more. Any employee whose employment is terminated by any means other than just cause, without having taken the vacation to which he is entitled, shall be paid an amount equal to his unused vacation. In the case of resignation, two weeks prior notice of the resignation to the Town is required for the employee to receive payment in lieu of unused vacation.

A maximum of five officers will be allowed to be on vacation on any given date, except with the specific permission of the Chief, provided that staffing requirements can be met without invoking mandatory overtime.

The assignment by the Chief of Police of vacation periods shall be, where practicable, in accordance with seniority and rank consistent with departmental requirements.

## ARTICLE XVI - CLOTHING ALLOWANCE

An annual total as listed below shall be credited to each Union member's clothing account. Purchases, which are authorized by the Chief of the Department, will be allowed to the maximum, which is in effect.

July 1, 1999        $625.00

The allowance of any member not expended to the maximum of the clothing allowance in any fiscal year shall revert to the Town.

Funds provided for this purpose, which are not expended in any fiscal year, shall not accumulate from year to year.

Each union member shall be paid, in addition to the above, $200.00 per contract year for clothing maintenance.

## ARTICLE XVII - SEVERABILITY

If any article or section of this Agreement or any amendments thereto shall be held invalid by operation of law or by any tribunal of competent jurisdiction, or if compliance with or enforcement of any article or any section shall be restrained by such tribunal pending a final determination of validity, the remainder of this Agreement or any amendments thereto, or the application of such article or section to persons or circumstances other then those as to which compliance with or enforcement of has been restrained, shall not be affected thereby.

## ARTICLE XVIII - EXTRA PAID DETAILS

Whenever the Chief in his sole discretion, or his designee, determines that a private detail is necessary, it shall first be offered to regular Natick Police Officers.

Effective with the signing of this Agreement, Extra Paid Details shall accrue at a rate in accordance with the schedule below.

Effective upon the mutual ratification of this agreement, extra paid details shall be paid at the rate of $30 per hour. On January 1, 2003, the detail rate shall be increased to $32 per hour. All such details shall be paid in four (4) hour increments over 4 hours, over 8 hours, over 12 hours, etc.

Upon request by an out of Town Chief of Police or his designee, Natick Officers may work out of town details. Officers may only accept out of town details on a regularly scheduled day off or a

vacation shift. Officers may not accept details which would require them to be on duty in excess of seventeen (17) hours in any twenty-four hour period, either on a detail or in conjunction with overtime of their normal police duty.

The Chief of Police will make every reasonable effort to provide opportunity for Extra Paid Details to permanent officers before they are offered to Reserve Police Officers.

## ARTICLE XIX - SICK LEAVE

A.      Regular full-time employees will accrue sick leave at the rate of one and one-quarter (1 1/4) days for each month of active service, (not to exceed fifteen (15) days in any year); such sick leave may not be used until completion of six (6) months continuous active service. Employees may accumulate unused sick leave days up to a total accumulation of two hundred twenty-four (224) days. All members employed after July 1, 1987 may accumulate sick leave days up to a total accumulation of one hundred eighty (180) days.

Employees hired on or after 7/1/97 shall accrue sick leave at the rate of one (1) day per month not to exceed 12/yr. with maximum accumulation of 120 days. Such employees shall be compensated at retirement with one-day pay for each two (2) days of accumulated sick leave over 50.

Except in the case of unusual circumstances, an employee who is to be out sick on a shift shall report such to the Commanding Officer one hour and one-half before the start of the shift and shall report the nature of the illness and the place of confinement.

B.      The granting of non-occupational sick leave and payment of compensation during such period shall be subject to the following provisions:

1.      The Chief of Police, without medical evidence, may grant sick leave with pay to any employee of his Department a maximum of eight (8) days in any calendar year, but not more than three (3) days at any one time.

2.      For a period in excess of three (3) consecutive days, the Chief of Police may require a doctor's certificate. For each absence in excess of ten (10) days in any calendar year the Chief of Police may require a written explanation from the employee as a condition precedent to approval of sick leave.

3.      For each absence in excess of ten (10) days in any calendar year the Chief of Police may also require a doctor's certificate from the employee. If the Chief of Police denies sick leave after submission by the employee of the explanation or doctor's certificate, the Chief shall provide the employee with the reason for denial.

C.      In case of requests for sick leave due to the serious illness of a member of the employee's immediate family, the Town may require evidence of the necessity for such absence in the form of a physician's certificate, as a condition precedent to approval of such request.

D.      Any employee who takes sick leave on a holiday or any of the holidays listed in ARTICLE X, will not be permitted to work an extra paid detail as provided for in ARTICLE XVIII for one week after such sick day.

E.      Any employee who accumulates more than one hundred (100) sick days shall be compensated at one day's pay for every three (3) days of accumulated sick leave over said one hundred (100) days at time of retirement. There is no buy back of sick leave for any employee with less than one-hundred (100) day's sick leave.

8

## ARTICLE XX - PERSONAL LEAVE

Each employee shall earn one personal day for every continuous ninety (90) days of no sick leave. An employee may earn a maximum of four (4) personal days in any fiscal year. Unless otherwise approved by the Chief, each personal day must be taken in the ninety (90) days following the ninety (90) days in which it was earned and cannot be accumulated.

In addition to the other provisions of personal leave, one personal day shall be credited annually to each member of the union.

## ARTICLE XXI - BEREAVEMENT LEAVE

Any employee covered by this Agreement shall be allowed time off without loss of pay for the next three (3) scheduled workdays following the date of a death in the immediate family. The immediate family shall include parents, spouse, parents of spouse, children, brother or sister and grandparents, brother in-law and sister in-law.

The Chief of Police may grant additional time upon request from the employee in special circumstances.

Nothing in this Section shall be construed to conflict with Chapter 31 of the General Laws, as amended. The provisions of this Article are hereby declared to be severable and if any such provision or the application of any such provision to any person or circumstances shall be held to be invalid, illegal or unconstitutional, such ruling shall not be construed to affect the validity, legality, or constitutionality or any of the remaining provisions to persons or circumstances other than those as to which it is held invalid, illegal or unconstitutional.

## ARTICLE XXII - SENIORITY

For employees hired after July 1, 1993, seniority shall be determined by the date of appointment as a Natick Police Officer for purposes of shift selection, vacation selection, and overtime/detail distribution.

Those shift assignments presently in force shall remain in force and continue, unless the Chief, with and for good cause, must make a change.

If and when a position on the day shift, or either night shift, becomes available, then the most senior man shall have the first opportunity to bid for that position. Such shift vacancies shall be done after a 10-day posting in accordance with seniority.

## ARTICLE XXIII - SAFETY

There shall be established a procedure by which an issue relating to the safety of personnel, vehicles and equipment if not adequately addressed through normal channels a conference may be held by three members of Local 311 and the Chief of Police.

## ARTICLE XXIV - NO STRIKE CLAUSE

Resolution of Differences by Peaceful Means

The Union and Town agree that differences between the parties shall be settled by peaceful means as provided within this Agreement. The Union and employees within the bargaining unit both individually and collectively, in consideration of the value of this Agreement and its terms and conditions and the Legislation which engendered it, will not authorize, cause instigate, sanction or condone or take part in any work stoppage or delay, strike, walkout, slowdowns or any concerted

9

refusal to perform normal work duties not the part of any employee or group of employees covered by this Agreement.

Notwithstanding Chapter 1078 of the Acts and Resolves of 1973, the Town may, in addition to filing a petition with the State Labor Relations Commission, petition the Court for an injunction and seek any other appropriate legal remedies.

## ARTICLE XXV - MANAGEMENT'S RIGHTS

The Town shall retain all rights and authority the Town had prior to the signing of any collective bargaining contract with the Union except those rights which are explicitly and specifically modified by the express terms of this Agreement. Notwithstanding the provisions of this contract, the Town shall retain and exercise through its Chief of Police all rights to manage and control the Natick Police Department and its employees that are given to the Town by the applicable statutes of the Commonwealth of Massachusetts and this is expressly understood by the parties to this Agreement. The Chief of Police shall make all suitable regulations governing the Police Department and the Officers thereof subject to the approval of the Selectmen. The Chief of Police shall be in immediate charge of all Town properties used by the Department and of the Police Officers whom he shall assign to their respective duties and who shall obey his orders. Nothing in this Agreement will be construed to abridge or modify the powers of the Chief of Police.

## ARTICLE XXVI - ORDERS RELATIVE TO WORKING CONDITIONS

The Chief of the Department will forward to the Union President, within five (5) days, copies of all Department-wide general orders, special orders and other related notices which could effect a change in established working conditions covered by this Agreement.

## ARTICLE XXVII - FINAL AGREEMENT

This Agreement incorporates the entire understanding of the parties on all issues that were or could have been the subject of negotiations. Any matter not specifically covered by this Agreement is not part of this Agreement unless specific reference in this contract is made to a by-law, statute or rules and regulations.

The I.B.P.O. acknowledges that during the negotiations which resulted in the Agreement, it had the unlimited right and opportunity to make demands and proposals with respect to all proper subjects of collective bargaining, and that all subjects have been discussed and negotiated and the agreements contained in this contract were arrived at after free exercise of such rights and opportunities. Therefore, the International Brotherhood of Police Officers voluntarily and without qualification waives the right and agrees that the Town of Natick shall not be obligated to bargain collectively with regard to any subject or matter referred to or covered by this Agreement or with respect to any subject matter not specified or referred to in this Agreement except by the mutual consent in writing of the parties hereto.

## ARTICLE XXVIII - DURATION

This Agreement shall become effective July 1, 2000 and shall continue in effect until June 30, 2003. Thereafter, it shall renew itself for yearly period unless written notice is given by either party to the other not less than one hundred twenty (120) days prior to the expiration date of any extension thereof, that it is desired to terminate or amend this Agreement. In the event such notice is given, the parties shall begin negotiations within twenty-five (25) days. If negotiations are not completed prior to the expiration date, except for items being negotiated, the contract will remain in full force and effect.

10

## ARTICLE XXIX - EMPLOYEE ASSISTANCE

The Town of Natick and Local 311 recognize the benefits of the "Employee Assistance Program" for themselves and their families and commend the program to employees including such educational programs and rehabilitative assistance as may be needed by the employees of the union.

## ARTICLE XXX - PERFORMANCE APPRAISAL

The union shall appoint 2 members and an IBPO Representative to a committee to meet with the Chief of Police and work to design and implement a Performance Appraisal system on or before July 1, 1994.

If employee evaluation language is agreed with 622, the 311 Agreement is reopened for negotiations on that subject only.

## ARTICLE XXXI - CIVILIAN DISPATCH

The Town and the Union agree to implement Civilian Dispatch upon the implementation of E911 with the understanding that no Police Officer will thereafter be assigned dispatch duties except in emergency circumstances. The Town and the Union further agree that desk duty including phone answering are duties of a Police Officer.

## ARTICLE XXXII - SPECIALIST PAY

The Town and the Union will implement pay for an Administrative Officer at an annual sum of $1,250 effective July 1, 1993.

## ARTICLE XXXIII -SICK LEAVE BANK

Local 311 and the Town shall establish a Sick Leave Bank for members of the Local after July 1, 1987. The Bank shall have equal representation of the Local and the Town. The Sick Leave Bank Committee shall determine the policies, procedures, eligibilities and operation of the Bank and shall be the final authority in all such matters.

## ARTICLE XXXIV - OPERATIONS, EFFICIENCY & SAFETY COMMITTEE

There shall be created under this Contract an "Operations, Efficiency & Safety Committee which shall meet on a monthly basis. Said Committee shall be made up of members of Local 311 as designated, the Chief of Police or designee and the Town Administrator or Assistant Town Administrator as designated.

## ARTICLE XXXV – COMMUNITY SERVICE INCENTIVE

Effective July 1, 1999, in addition to other compensation to which an employee is entitled under the terms of this Agreement, each member of the Union who completes eight or more actual hours of community service work in one year shall receive $880.00. All eight-community service hours must be pre-approved by the Chief of Police.

## ARTICLE XXXVI – BULLETIN BOARDS

The Town will provide a bulletin board of the Union for its use. It is expressly agreed that no offensive or derogatory materials may be posted on the bulletin board. It is further understood

that before any material is posted on the bulletin board it must first be initialed by the person posting it.

## ARTICLE XXXVII - INJURED LEAVE AND RETURN TO WORK

In compliance with "Injured on Duty" proposals it shall be the responsibility of the employee to immediately report to his/her supervisor any injury sustained as a result of the work of the department and further that all reports, doctors' certificates, and medical records shall be provided to the Town in a timely fashion.

Any employee claiming injury leave will provide the following documentation to the Chief:

a.      Documentation of the incident causing injury.

b.      Evidence of incapacitation from a physician qualified to make such determination.

c.      Opportunity for the Town to evaluate the employee at regular intervals of not less than three months.

d.      Medical release relative to claimed injury to Town's agent or medical provider.

Injuries and/or illnesses sustained in the performance of duty shall be handled in accordance with M.G.L. c.41, section 111F, except as specified in this agreement.

If after missing 20 working shifts, an officer out I.O.D. is unable to return to full duty status, then the Town designated physician may examine the officer to determine his fitness to perform light/limited duty. Before making a determination the Town Physician shall consult with the officer's attending physician.

If the Town designated physician and the attending physician are unable to agree concerning the officer's ability to perform light duty, the two physicians shall select a third impartial physician, in the relevant specialty area, from a list of Mass. physicians maintained by the Mass. Medical Society, to examine the officer and render an opinion. The cost of this examination shall be borne by the Town.

Each physician who administers an examination under this procedure shall be provided, by the Town, a detailed analysis of the physical requirements of the light/limited duty tasks specified herein below, and shall be asked to make their determination of the fitness of the examined officer to perform the specific physical requirements of each light/limited duty task. Each doctor's report shall specify which, if any, limited duty task the examined officer is not capable of performing.

The determination of the third examining physician shall be binding on all parties. If indicated, such light duty shall be effective immediately, or if it is not indicated, the officer shall continue to be carried on I.O.D. status.

In the event that an officer is assigned to light duty, such light duty shall not interfere with ongoing medical treatment. If an officer cannot physically transport himself to the station for light duty, the department will provide such transportation as needed. Officers on light duty may be permitted to receive required medical treatment during assigned duty hours.

If an officer is assigned to light duty, he shall be assigned to his regular shift for such light duty. Notwithstanding the foregoing, if the officer's physician certifies in writing that the officer's recovery would be enhanced by working the day shift, then the officer will be given consideration for day shift assignment. If the written certification of the officer's physician is deemed

12

unsatisfactory by the Chief, then the matter will be referred to the Town physician who shall consult with the officer's physician. In the event of a disagreement on this issue between the two physicians, the matter will be referred to the third impartial physician for a determination.

An officer injured while on an off-duty status shall be equally eligible for light duty on a voluntary basis, subject to the approval of the officer's attending physician, and the Chief of Police, who may require an examination by a Town-designated physician.

An officer on I.O.D. or light duty status shall not engage in any activity detrimental to his recovery.

Limited duty assignments shall not affect the shift assignments, or shift bid possibilities, of other members. Employees shall be assigned to limited duty on the same shift as their assignment before the injury, except as provided above. Light duty assignments are not of permanent duration and shall not continue longer than one (1) year.

The Town agrees that any employee who works less than a full week on light/limited duty shall be considered to be on injured on duty status for the lost time and shall be paid in accordance with M.G.L. c.41, section 111F.

It is understood by the parties that this provision is not intended to be used as a means of punishment. The Chief will not require an officer to report for light/limited duty and sit idly if there is no legitimate work available.

An officer assigned to light/limited duty shall be required to wear a uniform. The Department will not hold employees on light duty accountable for not responding in emergency situations, if they are prevented from doing so by the injury necessitating light duty.

Light/limited duty tasks shall include the following:

1. Dispatching
2. Teletype operations
3. Training (non-physical)
4. General clerical work
5. Crime prevention (citizen's assistance and operation ID)
6. Assist in property and evidence room
7. Computer operations
8. Other limited/light duty tasks as agreed upon by the Chief and the Union.

Disputes regarding interpretation of the application of this policy will be subject to the grievance and arbitration procedures contained in the collective bargaining agreement between the parties, except for medical condition.

Once application for retirement is made, the employee shall return to his prior I.O.D. status or sick leave whichever is appropriate. If the Local Retirement Board denies his application, the employee shall return to modified duty only to fill the remainder of his/her one-year term. (The one-year term shall not include that period of time that his/her application for retirement was pending.)

## ARTICLE XXVIII - COMPSTAT/TECHNOLOGY STIPEND

In recognition of the CompStat Policing Program that is in effect, and in further recognition of the advanced technological skills Natick Patrol Officers possess, all officers covered by this agreement shall receive an annual stipend which is equal to two (2) percent of his or her respective annual base pay. In the event that the Department employs a management model

13

IBPO Local 311 Weekly Wage Schedule - Patrolman

### Base Pay

| | Start | Past 6 Mos | Past 1 Year | Past 18 Mos | Past 2 Years | Past 3 Years | Past 4 Years | Past 5 Years |
|---|---|---|---|---|---|---|---|---|
| July 1, 2000 | $602 | $629 | $656 | $683 | $712 | $741 | $766 | $796 |
| Annual Salary | $31,304 | $32,708 | $34,112 | $35,516 | $37,024 | $38,532 | $39,832 | $41,392 |
| July 1, 2001 | $620 | $648 | $676 | $703 | $733 | $763 | $789 | $820 |
| Annual Salary | $32,240 | $33,696 | $35,152 | $36,556 | $38,116 | $39,676 | $41,028 | $42,640 |
| July 1, 2002 | $639 | $667 | $696 | $724 | $755 | $786 | $813 | $845 |
| Annual Salary | $33,228 | $34,684 | $36,192 | $37,648 | $39,260 | $40,872 | $42,276 | $43,940 |

### Shift Differential = 6% of Base Pay

| | Start | Past 6 Mos | Past 1 Year | Past 18 Mos | Past 2 Years | Past 3 Years | Past 4 Years | Past 5 Years |
|---|---|---|---|---|---|---|---|---|
| July 1, 2000 | $36.12 | $37.74 | $39.36 | $40.98 | $42.72 | $44.46 | $45.96 | $47.76 |
| July 1, 2001 | $37.20 | $38.88 | $40.56 | $42.18 | $43.98 | $45.78 | $47.34 | $49.20 |
| July 1, 2002 | $38.34 | $40.02 | $41.76 | $43.44 | $45.30 | $47.16 | $48.78 | $50.70 |

### Educational Incentive = Associates/60 Credits 10% (Quinn) and 5% (Non Quinn)

| | Start | Past 6 Mos | Past 1 Year | Past 18 Mos | Past 2 Years | Past 3 Years | Past 4 Years | Past 5 Years |
|---|---|---|---|---|---|---|---|---|
| July 1, 2000 | $60.20 | $62.90 | $65.60 | $68.30 | $71.20 | $74.10 | $76.60 | $79.60 |
| Annual Salary | $3,130.40 | $3,270.80 | $3,411.20 | $3,551.60 | $3,702.40 | $3,853.20 | $3,983.20 | $4,139.20 |
| July 1, 2001 | $62.00 | $64.80 | $67.60 | $70.30 | $73.30 | $76.30 | $78.90 | $82.00 |
| Annual Salary | $3,224.00 | $3,369.60 | $3,515.20 | $3,655.60 | $3,811.60 | $3,967.60 | $4,102.80 | $4,264.00 |
| July 1, 2002 | $63.90 | $66.70 | $69.60 | $72.40 | $75.50 | $78.60 | $81.30 | $84.50 |
| Annual Salary | $3,322.80 | $3,468.40 | $3,619.20 | $3,764.80 | $3,926.00 | $4,087.20 | $4,227.60 | $4,394.00 |

### Educational Incentive = Bachelors 20% (Quinn) and 8% (Non Quinn)

| | Start | Past 6 Mos | Past 1 Year | Past 18 Mos | Past 2 Years | Past 3 Years | Past 4 Years | Past 5 Years |
|---|---|---|---|---|---|---|---|---|
| July 1, 2000 | $120.40 | $125.80 | $131.20 | $136.60 | $142.40 | $148.20 | $153.20 | $159.20 |
| Annual Salary | $6,260.80 | $6,541.60 | $6,822.40 | $7,103.20 | $7,404.80 | $7,706.40 | $7,966.40 | $8,278.40 |
| July 1, 2001 | $124.00 | $129.60 | $135.20 | $140.60 | $146.60 | $152.60 | $157.80 | $164.00 |
| Annual Salary | $6,448.00 | $6,739.20 | $7,030.40 | $7,311.20 | $7,623.20 | $7,935.20 | $8,205.60 | $8,528.00 |
| July 1, 2002 | $127.80 | $133.40 | $139.20 | $144.80 | $151.00 | $157.20 | $162.60 | $169.00 |
| Annual Salary | $6,645.60 | $6,936.80 | $7,238.40 | $7,529.60 | $7,852.00 | $8,174.40 | $8,455.20 | $8,788.00 |

### Educational Incentive = Masters 25% (Quinn and 10% (Non Quinn)

| | Start | Past 6 Mos | Past 1 Year | Past 18 Mos | Past 2 Years | Past 3 Years | Past 4 Years | Past 5 Years |
|---|---|---|---|---|---|---|---|---|
| July 1, 2000 | $150.50 | $157.25 | $164.00 | $170.75 | $178.00 | $185.25 | $191.50 | $199.00 |
| Annual Salary | $7,826.00 | $8,177.00 | $8,528.00 | $8,879.00 | $9,256.00 | $9,633.00 | $9,958.00 | $10,348.00 |
| July 1, 2001 | $155.00 | $162.00 | $169.00 | $175.75 | $183.25 | $190.75 | $197.25 | $205.00 |
| Annual Salary | $8,060.00 | $8,424.00 | $8,788.00 | $9,139.00 | $9,529.00 | $9,919.00 | $10,257.00 | $10,660.00 |
| July 1, 2002 | $159.75 | $166.75 | $174.00 | $181.00 | $188.75 | $196.50 | $203.25 | $211.25 |
| Annual Salary | $8,307.00 | $8,671.00 | $9,048.00 | $9,412.00 | $9,815.00 | $10,218.00 | $10,569.00 | $10,985.00 |

### July 1, 2000

| | | Maximum recalculate for Steps | | |
|---|---|---|---|---|
| Longevity 10-14 Years of Service = 2% of Base - Annually | | $15.92 | $828 | $41,392 |
| Longevity 15-19 Years of Service = 3% of Base - Annually | | $23.88 | $1,242 | |
| Longevity 20 + Years of Service = 4% of Base - Annually | | $31.84 | $1,656 | |

### July 1 2001

| | | Maximum recalculate for Steps | | |
|---|---|---|---|---|
| Longevity 10-14 Years of Service = 2% of Base - Annually | | $16.40 | $853 | $42,640 |
| Longevity 15-19 Years of Service = 3% of Base - Annually | | $24.60 | $1,279 | |
| Longevity 20 + Years of Service = 4% of Base - Annually | | $32.80 | $1,706 | |

### July 1, 2002

| | | Maximum recalculate for Steps | | |
|---|---|---|---|---|
| Longevity 10-14 Years of Service = 2% of Base - Annually | | $16.90 | $879 | $43,940 |
| Longevity 15-19 Years of Service = 3% of Base - Annually | | $25.35 | $1,318 | |
| Longevity 20 + Years of Service = 4% of Base - Annually | | $33.80 | $1,758 | |

### COMPSTAT Policing Program = 2% BASE

| | Start | Past 6 Mos | Past 1 Year | Past 18 Mos | Past 2 Years | Past 3 Years | Past 4 Years | Past 5 Years |
|---|---|---|---|---|---|---|---|---|
| July 1, 2000 | $12.04 | $12.58 | $13.12 | $13.66 | $14.24 | $14.82 | $15.32 | $15.92 |
| Annual Salary | $626.08 | $654.16 | $682.24 | $710.32 | $740.48 | $770.64 | $796.64 | $827.84 |
| July 1, 2001 | $12.40 | $12.96 | $13.52 | $14.06 | $14.66 | $15.26 | $15.78 | $16.40 |
| Annual Salary | $644.80 | $673.92 | $703.04 | $731.12 | $762.32 | $793.52 | $820.56 | $852.80 |
| July 1, 2002 | $12.78 | $13.34 | $13.92 | $14.48 | $15.10 | $15.72 | $16.26 | $16.90 |
| Annual Salary | $664.56 | $693.68 | $723.84 | $752.96 | $785.20 | $817.44 | $845.52 | $878.80 |