THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

Robert F. Murphy, III, Lead Plaintiff for
Patrol Officer Plaintiffs, et al. and,

Brian C. Grassey, Lead Plaintiff for
Superior Officer Plaintffs, et al.,

      Plaintiffs,

      v.

Town of Natick, et al.

      Defendants

USDC Case No.:  04-11996 RGS

---

**PLAINTIFFS' MEMORANDUM OF REASONS
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## I.    <u>Summary Judgment Principles</u>.

The Federal Rules of Civil Procedure (FRCP), Rule 56(c), provides in pertinent part that a court may grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law."[1]  "The materiality of a fact is determined according to the substantive law that governs the dispute." <u>Manarite v. City of Springfield</u>, 957 F.2d 953, 955 (1st Cir. 1992).  A factual dispute is not considered "genuine" simply because a party will not admit a fact.  Rather, the summary judgment analysis involves a "threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."

---

[1] <u>See, e.g.</u>, <u>Cimon v. Gaffney</u>, 401 F.3d 1, 4 (1st Cir. 2005).

Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986). Unless, "the evidence is such that a reasonable [factfinder] could return a verdict for the non-moving party," the motion should be granted. Id. at 247.

## II.    Nature of Claim.

This lawsuit involves a claim for failure of an employer to properly calculate and pay employees statutory overtime under the Fair Labor Standards Act of 1938, 29 U.S.C. §201 et seq. ("FLSA"), as amended. The FLSA became applicable to state and local employees effective April 15, 1986. See, The FLSA Amendments of 1974, Pub. L. 93-259, §6, 88 Stat. 55 (Congress amending FLSA to include state and local employees), and Garcia v. San Antonio Metropolitan Transit Authority, 469 U.S. 528 (1985) (holding that FLSA could constitutionally be applied to state and local employees). Thus the FLSA in its original form was enacted nearly seventy-years ago, and has applied to states and municipalities for the past twenty years.

## III.    The Town Failed To Properly Calculate The Overtime Rate For All Plaintiffs From At Least September 2001 To Present And Summary Judgment Should Be Granted On The Issue That Such Overtime Calculation Methodology Was Unlawful.

One of the central features of the FLSA from 1938 to present has been to require employers to pay employees for work over forty hours in a workweek "at a rate not less than one and one-half times the regular rate at which is he is employed." FLSA §207(a). The seven-day workweek requirement was modified in 1974 when Congress enacted FLSA §207(k) for police and fire employees. See Pub. L. 93-259, §6, 88 Stat. 55 (codified at 29 U.S.C. §207(k)). Under that amendment a public employer could adopt a special exemption permitting the employer to use a longer work period for such public safety employees. In this case there is no dispute that

such special workweek was not adopted, and that the workweek for measuring entitlement to overtime under the FLSA has been the standard seven-day workweek. (Facts at ¶5.)

As noted above, Section 207(a) provides for overtime, but it does not define the specific dollar amount of overtime (unlike the minimum wage which is defined as a dollar amount at FLSA §206). Rather, Congress defined the overtime rate at Section 207(a) in terms in of a proportionate (time and a half) relationship to the "regular rate". FLSA §207(a). Consequently, "[c]alculation of the correct 'regular rate' is the linchpin of the FLSA overtime requirement." O'Brien v. Agawam, 350 F.3d 279, 294 (1st Cir. 2003).

Pursuant to the Fair Labor Standards Act Amendments of 1949, Pub. L. 81-393, §6, 63 Stat. 910, Congress amended the FLSA by adding language to define the "regular rate" and seven (7) discrete elements of compensation that are excluded from the "regular rate". Id. Before analyzing the Amendments of 1949 in greater detail, it is important to understand Supreme Court precedent which provided the context for those changes. In 1944, five years prior to enacting the amendments in question, the Supreme Court in Mitchell v. Lublin, McGaughy & Assocs., 358 U.S. 207, 211 (1944) held that, "[w]ithin the tests of coverage fashioned by Congress, the Act has been construed liberally to apply to the furthest reaches consistent with congressional direction." Id. Thus, in 1949, when Congress amended the FLSA to define the phrase "regular time" and seven discrete exemptions, it was on notice to the general rule of Supreme Court precedent that the FLSA would be construed by the court liberally to apply compensation for employees. Accordingly, with respect to its definition of the "regular rate", Congress was on notice that if the FLSA listed a general rule, it must be clear on any and all exemptions, otherwise the Supreme Court would construe the general rule as controlling without exception.

With that in mind the Court may next consider the specific amendments of the FLSA in 1949, referred to above.  One aspect of Congress' action in 1949 was to define, in the broadest terms, a definition of the "regular rate" at FLSA §207(e), as follows:

> (e) "Regular rate" defined.  As used in this section <u>the "regular rate" at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee</u>, *but shall not be deemed to include—*

FLSA §207(e) (emphasis added).  As can be seen from the underscored language, had Congress left Section 207(e) without listing any exceptions, any and all compensation paid to an employee would have been construed as included in the calculation of the "regular rate".  Therefore, Congress included the italicized language (noted in the block quote above) and then set forth seven specific exceptions to this general rule.  Those exemptions have remained unchanged from 1949 to present.[2]

Given the importance of those seven exceptions, Plaintiffs next provide an excerpt of the actual language for each exception dating back to 1949, in each case preceded by Plaintiffs' editorial generalization about the thrust of such exemption:

> (1) [<u>Gifts unrelated to work, production, or efficiency</u>] sums paid as gifts . . . as a reward for service, . . . not measured by or dependent on hours worked, production, or efficiency;

> (2) [<u>Pay for off duty benefits</u>]  payments made for occasional periods when no work is performed due to vacation . . . illness, . . . or other similar cause; . . . traveling expenses, . . . and other similar payments . . . . . .  not made as compensation for . . .hours of employment;

> (3) [<u>Sum paid at employer's sole discretion, profit-sharing, or talent fees for performers</u>]  Sums paid . . . (a) at the sole discretion of the employer . . . not pursuant to any prior contract. . .; (b) the payments are made pursuant to a bona fide profit-sharing

---

[2] An eighth exemption was added in the Worker Economic Opportunity Act of 2000, Pub. L. 106-202, §2(a), 114 Stat. 308.  It related to "stock options" and is plainly not relevant here.

plan . . .; or (c) the payments are talent fees . . . paid to performers, including announcers. . . .

(4) [<u>Contributions to employee benefit trusts</u>]  contributions irrevocably made by an employer to a trustee . . . pursuant to a bona fide plan for providing . . . retirement, . . . or similar benefits for employees;

(5) [<u>premium compensation paid because employee worked more hours than standard, normal workday</u>]  extra compensation provided by a premium rate paid . . . because such hours are hours worked in excess of eight in a day . . . or in excess of the employee's normal working hours . . .;

(6) [<u>premium compensation paid because employee worked on a weekend, holiday, or non-standard workday</u>]  extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days;

(7) [<u>premium compensation paid per a union contract for working beyond normal hours (not exceeding eight), where the rate is not less than time and a half</u>]  extra compensation provided by a premium rate paid to the employee, in pursuance of an applicable employment contract or collective-bargaining agreement, for work outside of the hours established in good faith by the contract or agreement as the basic, normal, or regular workday (not exceeding eight) or workweek. . . . where such premium rate is not less than one and one-half times the rate established in good faith by the contract . . . for like work performed during such workday or workweek.

FLSA §207(e)(1) to (7); <u>see also</u> Fair Labor Standards Act Amendments of 1949, Pub. L. 81-393, §6, 63 Stat. 910.

It was in this context that–not surprisingly–the First Circuit in 2003 in <u>O'Brien v. Town of Agawam</u>, 350 F.3d 279, 294 (1st Cir. 2003) commented about the legal presumption that all compensation should be included in the "regular rate" under Section 207(e); that a party asserting an exception to that general rule bears the burden of proof; and that the exceptions listed at

Section 207(e)(1)-(e)(8) should be construed narrowly.  In addition, as the following shows, this conclusion of the First Circuit was not cutting edge law, but a rehearsal of long established principles articulated by the Supreme Court more than forty years ago as well as plain language of the FLSA in existence from 1949 to present and related regulations:

> Under [§207(e)] and the relevant case law and interpretative regulations, the regular rate cannot be stipulated by the parties; instead, the rate must be discerned from what actually happens under the governing employment contract. See 29 C.F.R. §778.108; Bay Ridge Operating Co. v. Aaron, 334 U.S. 446, 462-63, 92 L. Ed. 1502, 68 S. Ct. 1186 (1948).  The general rule, per the plain text of the FLSA, is that the regular rate "shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee." §  207(e).  The statute includes a list of exceptions to [the general rule defining the "regular rate" in Section 207(e)], but the list of exceptions is exhaustive, see [29 C.F.R.] §778.207(a), the exceptions are to be interpreted narrowly against the employer, see Mitchell v. Kentucky Fin. Co., 359 U.S. 290, 295-96 (1959), and the employer bears the burden of showing that an exception applies, see Idaho Sheet Metal Workers, Inc. v. Wirtz, 383 U.S. 190, 209, 15 L. Ed. 2d 694, 86 S. Ct. 737 (1966).

Agawam, 350 F.3d at 294; 29 C.F.R. §  778.200(c) ("All remuneration for employment paid to employees which does not fall within one of these seven exclusionary clauses must be added into the total compensation received by the employee before his regular hourly rate of pay is determined.")

With the foregoing in mind, the first summary judgment issue is whether, as a factual matter, the Town has failed to include all "remuneration for employment paid to, or on behalf of, the employee" in calculating the "regular rate".  There is no dispute as to the facts relating to this issue.  The Town has admitted that Natick patrol and superior officers receive various augments to their base wage and that none of those augments have been included by the Town in its calculation of the FLSA overtime rate (with the exception of shift differential).  (Facts at ¶21.) More specifically, the Court should find that all Plaintiffs receive a 6% shift differential ("shift

differential") if they perform work on the second or third shifts (i.e. work between 4:00 p.m. and 8:00 a.m.); all Plaintiffs receive an education differential ("education differential") relating to the education level they have attained pursuant to the so-called Quinn Bill statute, Mass. G.L. c.31 §108L; plaintiffs receive a longevity payment based upon their length of employment with the Town; all Patrol Officer plaintiffs receive a payment for their duties and knowledge regarding Compstat Technology some Patrol Officer plaintiffs receive assignment differentials; most if not all Patrol Officer Plaintiffs receive an in-service training stipend ("training differential") in the amount of a percentage of their base pay; and most if not all Patrol Officer Plaintiffs receive community services differential.[3]  (Facts at ¶9-20.)

Given that there is no genuine issue as to the material fact that the foregoing differentials are paid to Patrol and Superior Officer Plaintiffs as described in the preceding paragraph (per the relevant union contracts), the next issue in the summary judgment analysis is to determine whether as a matter of law, the Longevity and Education incentive pay that all plaintiffs receive, and the additional differentials applicable for Patrol Officer Plaintiffs for Compstat training, Inservice Training, Community Service and Special Assignments should be included in the calculation of the FLSA regular rate and corresponding FLSA overtime rate for Patrol Officer and Superior Officer Plaintiffs who earn such differentials.[4]

### 1.    Longevity Pay Paid To All Plaintiffs

In Agawam the First Circuit held that longevity pay must be included in an employee's regular rate.  Agawam, 350 F.3d at 295.  The court noted that in a closely analogous case eight years earlier the Sixth Circuit held that police officers' longevity payments are by definition

---

[3] Hereinafter all of the differentials will be referred to collectively as "the differentials".

[4] There is no issue that the night shift differential should be included and it is in fact included to the extent outlined in the Statement of Facts at ¶21.

compensation.  Id., citing Featsent v. City of Youngstown, 70 F.3d 900, 905 (6th Cir. 1995).

With regard to Featsent, the Sixth Circuit there, in addition found that a 1986 ruling of the

Department of Labor was also germane because it found that longevity shall be included in the

regular rate where it is provided, as here, pursuant to a union contract.  Featsent, 70 F.3d at 905

(citing "Admin. Ltr. Rul., Dept. of Labor, Opinion of the Wage-Hour Administrator, Op. Ltr. No.

1669 of August 26, 1986 finding that when longevity payments are required by both a city

ordinance and a bargaining agreement, they are nondiscretionary bonuses that must be included

in the regular rate").  See also  Schmitt v. Kansas, 844 F. Supp. 1449 (D. KA. 1994) (longevity to

be included in regular rate); Theisen v. City of Maple Grove, 41 F. Supp. 2d 932, 937 (D.MN.

1999) (extensive review of law in this area and concluding the longevity was part of regular

rate).  The legal point that longevity, where it is established by contract, was established not only

by the 2003 ruling in Agawam, but also by the 1995 ruling of the Sixth Circuit in Featsent, and

the 1986 DOL opinion letter cited therein, as well as by the plain text of the statute since the

1949 amendments.  Consequently, the Court should find, as a matter of law, that the Town has

unlawfully failed to include longevity differential in its past and current rate calculation from at

least September 2001 onward.

      With regard to this analysis, as well, the Court may apply each of the seven exceptions

set forth in Section 207(e) that have been in existence since 1949, one by one, in considering

whether each differential should be included in the regular rate.  In doing so the Court should

conclude that there is no even colorable basis to find that Longevity differential should be

excluded from the regular rate, especially given that there is a presumption that all pay should be

included and that the employer bears the burden of showing otherwise.  The following analysis

demonstrates this conclusion:

- §207(e)(1) gifts not related to work or performance or efficiency:  The Court's comments in Agawam amply explain why, in no way, can longevity be conceived of as a gift where, as here, it is a bonus and provided by union contract:  "[T]he annual longevity payment is essentially a form of bonus.  See 29 C.F.R. §778.208 (bonus payments, for purposes of the FLSA, are "payments made in addition to the regular earnings of an employee").  Bonuses that are explicitly promised to employees–as the longevity payments are in the CBA–must be included in the employees' regular rate.  29 C.F.R. §207(e)(3); 29 C.F.R. §778.211 (any bonus paid pursuant to a contract must be included in the regular rate)."  Id. at 294.  Quite obviously, the First Circuit's ruling was simply an application of longstanding principles under the FLSA, as well as very explicit regulations that were in place well before 2001.  Longevity, on its face, therefore, is not a "gift".  Indeed, to the contrary, it is a bargained-for benefit, won in collective bargaining negotiations, and codified in the union contracts for the Superior and Patrol Officer Plaintiffs.  Therefore it is not excluded from the regular rate under §207(e)(1).

- §207(e)(2) off duty benefits pay; §207(e)(3) profit sharing, talent fees; §207(e)(4) contribution to employee benefit trust.  Obviously longevity does not even colorably fall in the category of paid time off; quite obviously it is not profit sharing or talent fee; and on its face it has nothing to do with contributions to an employee benefit trust.  Therefore the exceptions under §207(e)(2),(3), and (4) are plainly not applicable.

- §207(e)(5), (6), and (7) premium paid for non-standard workday, day of work (holiday), or workweek:  Longevity pay as well is wholly unrelated to providing compensation for any aspect of working non-standard workday, hours of work, or a non-standard day of

work like a holiday, and it is not in even a form of "premium pay". The exceptions under §207(e)(5),(6), and (7) and not even colorably germane.

## 2.    Education Incentive Pay Paid To All Plaintiffs

The First Circuit held in <u>Agawam</u> that education incentive pay must be included in an employee's regular rate. The court again cited and quoted <u>Featsent</u> on this issue: "Educational advancement, however, enhances the quality of an employee's job performance…. Therefore, to the extent that the police officer's salaries do not [otherwise] account for their educational background, the bonuses attributable to educational degrees compensate the plaintiffs for their services and cannot be excluded from the regular rate under Section 207(e)(2)." <u>Agawam</u>, 350 F.3d at 294, citing <u>Featsent</u>, 70 F.3d at 904-905. The Court in <u>Featsent</u> further explained, "In fact, the 'similar payments' clause of Section 7(e)(2) was not intended to exclude bonuses from inclusion in the regular rate when those bonuses are understood to be compensation for services even when they are 'not directly attributable to any particular hours of work.'" <u>Featsent</u>, 70 F. 3d at 905 (citing 29 C.F.R. §778.224(a), promulgated in 1968, 33 F.R. 986). <u>See also Moreau v. Klevenhagen</u>, 956 F.2d 516, 521 (5th Cir. 1992) (referencing three DOL opinion letters, one of which concerned incentive payments made to employees following the completion of educational or career development programs as being included in regular rate, and two others finding that longevity pursuant to a collective bargaining agreement as well should be included in the regular rate). Accordingly, as a matter of law, the Court should find that the Town has unlawfully failed to include the education differential in its past and current rate calculation for overtime.

In addition, applying the specific language of the Section 207(e) exemptions here, as well, the Court can find that there is no even colorable basis to find that education differential is excludable from the regular rate:

- §207(e)(1) gifts not related to work or performance or efficiency:  The education differential is compensation that the Town is required to pay per the union contract. Moreover, the incentive is provided as compensation for the level of credentials, or quality of credentials that an officer holds and, presumably, that such credential is relevant to advancing quality police work.  Therefore, in no way can education differential be classified as an exempt gift under §207(e)(1) unrelated to work or performance, and, in any event, it cannot be a gift because it is required by union contract.

- §207(e)(2) off duty benefits pay:  Education differential is plainly not off duty benefit time like sick time, holiday time or the like.  It is compensation given every week, regardless of an officer having day off with pay.

- §207(e)(3) profit sharing, talent fees; §207(e)(4) contribution to employee benefit trust: On its face, the education differential may not even remotely be considered a contribution to an employee benefit trust, or profit sharing or talent fee compensation.

- §207(e)(5), (6), and (7) premium paid for non-standard workday or day of work (holiday), or workweek:  Education incentive as well is patently unrelated to hours worked in a day or week, the day of work, or whether the employee worked a non-standard day such as a holiday.  Nor is it even premium pay.  There is no even colorable basis to find education incentive excluded from the regular rate under the plain language of the statute.

3.    **Inservice, Compstat Technology, Community Service And Assignment Differentials Paid To Patrol Officer Plaintiffs.**

The four augments paid only to Patrol Officer Plaintiffs—the Inservice Training, Compstat Technology, Community Service, and Assignment differentials—must also be included in the overtime calculation rate.  With respect to training, community service and compstat technology differentials, they are fully analogous to the education incentive. Knowledge and use of advanced Compstat crime-tracking technology enhances an officer's job performance in the same manner (or possibly to a greater degree), as do the courses in criminal justice and sociology that are included in the education differential.  (Facts at ¶15.)  The training differential compensates police officers for their mastery of various relevant skills in areas like first aid and weapons, just like education incentive provides them with compensation for mastery of higher level education relevant to police work.  It is illogical to compensate officers for education and knowledge in one field of public safety or law enforcement but not another.  The same principles and clear language that led the First Circuit to conclude that the Education Differential in Agawam should be included in rate calculation are relevant to the training and technology differential in the instant case.

The community services differential and assignment differential similarly compensates the plaintiffs for their specific services in accord with the FLSA and cannot be excluded from the regular rate under Section 207(e)(2).  Assignment differentials have long been to be compensable under the FLSA, and community services similarly fall under the same rationale, as the cases in the margin show.[5]

---

[5] The assignment differential provides extra compensation for officers who perform work such as detective duties.  Inclusion of special duty pay must be included in the rate calculation.  See Featsent v. City of Youngstown, 859 F.Supp. 1134 (N.D. Ohio), rev'd on other grounds, 70 F.3d

Like the other differentials reviewed above, these four differentials applicable to Patrol Officer Plaintiffs as well do not even arguably fall under the exclusions of Section 20 (e).

• §207 (e)(1) gifts not related to work or performance or efficiency: Each of these items is a bargained-for benefit listed in the union contract for Patrol Officer Plaintiffs and, therefore, on the face of it, they cannot even colorably be considered a "gift".

• §207 (e)(2) off duty benefits pay; §207 (e)(3) profit sharing, talent fees; §207 (e)(4) contribution to employee benefit trust: None of these four differentials is even remotely related to taking a day off; nor do any of these relate in any way whatsoever to compensation pursuant to a profit sharing or a talent fee; and none of them on their face relate to an employer contribution to an employee benefit trust.

• §§207(e)(5), (6), and (7) premium paid for non-standard workday or day of work (holiday), or workweek: With regard to exceptions at §207(e)(5)(6) and (7), in each case the four differentials cannot in any way be construed as "premium pay" and each is unconnected to providing extra pay for hours, workweek, or specific day worked by the Patrol Officer Plaintiff.

### 4.    Summary.

Based upon the foregoing, there is no genuine material issue of fact, and Plaintiffs are entitled to judgment as a matter of law that each of the differentials, identified above, are not even colorably within an exception to the general rule relating to the requirement that all compensation be included in the "regular rate". Accordingly the Court should find that the Town has unlawfully failed to include such differentials in calculating the "regular rate' and

---

900 (6th Cir. 1995) (hazardous duty pay); Andrews v. Department of Correction, 888 F. Supp. 213 (Mass. 1995) (canine duty pay).

corresponding FLSA overtime rate from at least September 2001 to present.  Backwages should

be awarded under FLSA §216(b) for the underpayment of FLSA overtime in this regard.

> **IV.    Summary Judgment Should Be Granted To Plaintiffs
> On The Issue That The Town Has Failed To Pay The
> Proper Overtime Rate When Plaintiffs Worked "Town
> Details" In Violation Of Its Duty Under The FLSA.**

Section 207(p) of the FLSA, 29 U.S.C. §207(p) was enacted in 1985.  It provides that

work by police officers for "special details", on behalf of a "separate and independent" employer,

shall not be counted as hours worked in the FLSA workweek against the primary employer.  See

The FLSA Amendments of 1985, Pub. L. 99-150, §3, 99 Stat. 789, codified at 29 U.S.C.

§207(p).  The regulations of the Department of Labor, as well, reiterate that employees who

voluntarily work for a "separate and independent employer" during their off-duty hours shall not

have those hours counted towards the overtime threshold for purposes of calculation of overtime

liability of the primary employer under FLSA §207(a).  29 C.F.R. §553.227.

In this motion for summary judgment Plaintiffs challenge the Town's historical failure to

count certain details, known as "Town Details", as hours worked for the Town-employer, and the

Town's failure to compensate Plaintiffs at the FLSA overtime rate where such Town Detail hours

resulted in the Plaintiff working in excess of the forty hour threshold of FLSA §207(a).  With

regard to this there can be no dispute as to the fact that in addition to their regular police duties

Plaintiffs also work Town Details.  Their work in this regard is detailed on a database printout,

attached to the statement of material facts.  (Facts ¶62)  These Town details are distinguishable

from private details worked for private companies that fall under the exclusion of Section 207(p)

referred to above.[6]  Further, there can be no dispute with respect to the fact that these "Town

Details" include work for crowd control, traffic control, and other duties for the benefit of Town

_____

[6] There is no claim for overtime on account of hours worked by Plaintiffs for such private details.

operations in the following Town Departments, <u>inter alia</u>:  Town Recreation Department, Town

Selectmen, Town Department of Public Works – Building and Maintenance Division, Town

School Department, Town Department of Public Works – General, Town Clerk, Town High

School, Town Board of Health, Town Fire Department, Town Department of Public Works –

Water and Sewer Division, Town School Committee, Town of Natick High School Athletic

Department.  (Facts at ¶63)  Also, with respect to the above, the Town funds the payment to the

officer for such details, rather than a private company and officers are paid at a flat detail  rate

that is less than even the straight time rate, let alone the FLSA overtime rate. (Facts ¶60)

      With regard to Plaintiffs' position in this regard the Court may review <u>Jackson v. City of</u>

<u>San Antonio</u>, 2006 U.S. Dist. Lexis 62753 (W. D. TX).  In that case the court cited a 1985 DOL

opinion letter in which various factors were considered relevant in determining whether various

state agencies were separate and independent.  Taking its cue from the DOL letter and the known

cases on point[7], the federal district court in Texas concluded that summary judgment was

appropriate in the <u>Jackson</u> case and ruled against the plaintiffs as none of the officers' off-duty

employers were "institutionally or interest-wise related to the City."  In that case they were all

private companies.  The court wrote that the summary judgment record established that the

officers' off-duty engagements were limited to conventions, trade shows, home and garden

shows, football games, book fairs, San Antonio Spurs games, other basketball games, graduation

ceremonies and concerts. <u>Id</u>.  In so finding the Court stated the reasons why the law was clear on

the issue and why there was ample guidance from precedent and the DOL:

---

[7] <u>Johnson v. Unified Gov't. of Wyandotte County/Kansas city, Kansas</u>, 127 F.Supp.2d 1181,
1189 (D. Kan. 2000); <u>Barajas v. Unified Government of Wyandotte County/Kansas City,</u>
<u>Kansas</u>, 87 F.Supp.2d 1201, 1206 (D. Kan. 2000); <u>Nolan v. City of Chicago</u>, 125 F. Supp. 2d.
324, 334-335 (N.D. Ill. 2000); <u>Cox v. The Town of Poughkeepsie, New York</u>, 209 F. Supp. 2d
319, 325-326 (S.D.N.Y. 2002).

Nevertheless, it would be an exaggeration to say that this Court has no guidance at all in deciding this issue. While there is no controlling authority to guide this court, three previous courts, the Department of Labor ("DOL"), and the Senate have weighed in on the issue. Fortunately, these learned institutions yield a coherent pattern of reasoning. Specifically, although they break the analysis down in different ways, all agree that where an off-duty employer is institutionally separate from the primary employer and also separate for purposes of each particular instance of off-duty employment, it is separate and independent for purposes of § 207(p)(1). Conversely, where the off-duty employer possesses either structural overlap (e.g., a common payroll, a common budget, a parent-child relationship) or shared interests for purposes of the off-duty work (e.g., a joint stake in the event being conducted), the employers are not separate and independent for purposes of § 207(p)(1).

The DOL, for example, set forth in an opinion letter dated October 10, 1985 the following set of factors relevant to determining separateness and independentness:

1. The agencies are treated as separate employers from other State agencies for payroll purposes,

2. the agencies deal with other State agencies at arms' length concerning the employment of any individual,

3. the agencies have separate budgets or funding authorities,

4. the agencies participate in separate employee retirement systems,

5. the agencies are independent entities with full authority to perform all of the acts necessary to their functions under State statutes, and

6. the agencies can sue and be sued in their own names.

2006 U.S. Dist. Lexis 62753 at *15-*17.

Applying the foregoing to this case, the first question is whether the Town details claimed here are connected to the interests of the Town. There can be no dispute that they are. Unlike the San Antonio police officers, the Natick police officers are not asking for the FLSA

rate for what is their equivalent of "book fairs" and "Spurs games".  Rather, at issue here is the work the officers did for the Town and its various departments, described above.  In each case the work was obviously related to the Town's interests in further operations it was conducting through those areas.  (Facts ¶63)  The Town even funds the payment of the officers for such details, unlike private details.  (Facts ¶61)  There is no genuine issue of fact in dispute, nor can there be, that when a police officer performs a detail outside a Town polling place on election day, keeps public order when 20,000 runners pass through Natick's streets on Boston Marathon day, or directs traffic when the public works department is performing road maintenance or working on a water main, that the Town of Natick's interests are being served or that the Town as an "institution" has benefited from the work.  (Facts ¶63)

Further, under the DOL criteria, listed above, there can be no question that the Town's various departments are all departments of the same employer, the Town of Natick.  It is clear that whenever a plaintiff performed a Town detail it did so with the knowledge and approval of the Town.  Moreover and as discussed above, the work was also obviously for its benefit.  The Town of Natick is a municipal corporation and it is the final binding authority on all personnel matters for the police department and all other departments within its purview.  G.L. c.31, §41 (it is the appointing authority under civil service law).  The Town sets the police budget and provides funding for Town detail work, i.e., work done on its behalf.  Accordingly, when a police officer performs work for any Town "department" it is quite obviously performing work for the Town, not a separate employer.

Accordingly, there is no material issue of fact relating to this issue, and the Court may rule as a matter of law that Town details are not "special details" worked for a "separate and independent" within the meaning of the exception listed at §207(p)(1).  Further, the Court may

rule as a matter of law that such details must be counted as hours worked for the employer, Town of Natick, and that the Plaintiffs have been underpaid for FLSA overtime to the extent that they worked more than forty hours in a workweek and were been paid a flat detail rate for Town details that is less than the FLSA overtime rate.

> **V.      Summary Judgment Should Be Entered On Superior Officers' Claim That The Town Failed To Pay The Superior Officer Plaintiffs Overtime For Their Pre And Post Shift Work In Violation Of The Act.**

The FLSA requires employers to compensate employees for all "hours worked." See 29 U.S.C. §201.  However, the Portal-to-Portal Act provides that an employer need not pay an employee for activities that are "preliminary or postliminary" to the principal activities or activities the employee is employed to perform.  See 29 U.S.C. § 254(a)(2).  The Supreme Court has interpreted the mandate of the Portal-to-Portal Act to mean "that activities performed either before or after the regular work shift, on or off the production line are compensable…if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed."  Steiner v. Mitchell, 350 U.S. 247, 256, 100 L. Ed. 267, 76 S. Ct. 330 (1956).  The Supreme Court has further clarified this notion by holding any activity that is "integral and indispensable" to a "principal activity" is itself a "principal activity" under § 4(a) of the Portal-to-Portal Act.  IBP, Inc. v. Alvarez, Tum v. Barber Foods, 126 S. Ct. 514, 163 L.Ed. 2d 288 (2005).

The relevant issues for this count then are 1) whether the pre and post shift work performed by the superior officers is "integral and indispensable" to a principal activity or a principal activity itself and thus compensable under the FLSA and, 2) whether the superior officers have been properly compensated for the hours worked outside of their regular shift. There is no genuine issue in dispute as to both issues.

As a preliminary matter it must be noted that the summary judgment record first reflects that that all Superior Officer plaintiffs worked at least thirty (30) additional minutes, beyond the normal starting and ending times of their shift, for each shift that they worked, in each workweek, from at least September 2001 onward.[8] The record also reflects that the pre and post shift work is clearly both "integral and indispensable" to a principal activity or a principal activity itself and that the officers have not been compensated for this time under the FLSA's requirements.

The reason that there can be no issue as to the fact that pre and post shift work is integral and indispensable is because it generally consists of various tasks designed to effectively insure that at the start of their regular shift the officer is prepared to effectively perform his job and/or at the end of the shift that work is done so that officer can complete work necessary for his/her assignment on that day. (Facts ¶37-56) For example, the sergeants all testified that when coming in early they talk to the outgoing sergeant to receive an update on police activity over the past 16 hours; they read memos, notices and other information that must be disseminated at roll call; and they review the log from the previous shifts. (Facts ¶37-43; 45-48; 50-53.) When staying late the activities common to all sergeants include reviewing reports submitted during their shift, updating the incoming sergeant, and again reviewing the police log for accuracy. (Facts ¶37-43; 45-48; 50-53.) The record also reflects that Lieutenants, while having a wider variety of duties generally, also engage in pre and post shift work that is crucial to the performance of their assignments. (Facts ¶37, 49, 50, 54-56.)

---

[8] Many if not all superior officers regularly work well beyond 15 minutes both pre and post shift. However, given the improbability of calculating with the necessary certitude these exact figures the superior officer plaintiffs are content to claim what the summary judgment reflects without issue – each and everyone works at least one-half of one hour per day in addition to their regular shift hours.

In short, the summary judgment record unequivocally demonstrates that in all instances the superior officers are performing tasks that must be done in order for the enterprise to run and for them to complete their job duties. (Facts ¶37-56)  In many instances they are conducting work that is a principal activity of their employment in and of itself. (Facts ¶39, 49, 50, 56.)  In all other instances they are doing work that must be accomplished in order to prepare for and effectuate an obviously principal activity and without which their own work and the work of all patrol officers could not be performed either effectively or at all. (Facts ¶36-56)[9]  Accordingly, all the work is indeed "integral and indispensable" to their principal activities or a principal activity in and of itself.

Many courts have found activities analogous to the ones described above as integral and indispensable to the employer's enterprise. This includes time spent changing in and out of protective clothing; mandatory bus inspections by school bus drivers before leaving for their route; and the time spent by taxi drivers performing paperwork at the end of their shift. Steiner v. Mitchell, 350 U.S. 247 (1956) (Changing in and out of protective clothing); Hiner v. Penn-Harris-Madison School Corporation, 256 F.Supp.2d 854 (N.D.Ind. 2003) (Mandatory bus inspections by school bus drivers before leaving for their route); Marshall v. Gerwill, Inc., 495 F.Supp. 744 (D.Md. 1980) (Taxi drivers doing paperwork at the end of their shift).

Moreover, in the instant matter the pre and post shift activity is not even voluntary, although the voluntary nature of the work has no bearing on whether it is indispensable. Andrews v. Department of Correction, 888 F. Supp. 213 (Mass. 1995) (canine duty pay), citing

---

[9] If a sergeant did not come in before his shift began to prepare for roll call by reading memos and speaking to the outgoing sergeant, he could not conduct roll call promptly and properly when roll call needs to begin at the start of a shift.  If roll call did not begin promptly then the preceding shift would have to stay late.  The pre and post shift work performed by the superior officers prevents a slippery slope of disintegration that would otherwise occur within the employer's enterprise. (Facts ¶36-56)

Truslow, 783 F. Supp. 274, 278 (E.D. Va. 1992). It was mandated by contract. (Facts ¶26) This mandate only serves to reinforce the conclusion that the work was integral and indispensable— the employer actively bargained for and received the contractual benefit of this pre and post shift work from the superior officers.

Based upon the foregoing the Court should grant Plaintiffs' Motion For Summary Judgment on the issue that each Superior Officer Plaintiff has worked no less than a half hour extra per shift from September 2001 to present, (Facts ¶35), that the Town has failed to count the hours worked by Superior Officer Plaintiffs as hours worked by the employee in each workweek, (Facts ¶35), that the only compensation paid to Superior Officers for such half hour per shift pre and post shift work is less than the FLSA overtime rate and indeed less than even the officers' base straight time rate, (Facts at Appendix at Exhibit 29 at ¶10 for Administrative Officer's analysis of this and at Exhibits 15-29), and that the Town therefore from September 1, 2001 has unlawfully failed to pay Superior Officer Plaintiffs for such pre and post shift work at the FLSA overtime rate where such work was performed in a week that the officer worked more than forty hours.

> **VI.     Plaintiffs' Motion For Summary Judgment Should Be Granted On The Issue Of Liquidated Damages For All Violations.**

The Plaintiffs' further have moved that the Court on motion for summary judgment find that there is no genuine material issue of fact, and that Plaintiffs' are entitled to liquidated damages as a matter of law in accordance with FLSA §216(b), 29 U.S.C. §216(b).. An employer who violates the FLSA is liable to the employees affected "in the amount of their unpaid minimum wages, or their unpaid overtime wages compensation, as the case may be, and in an additional amount as liquidated damages." FLSA §216(b). As the statutory language plainly

indicates, liquidated damages are the norm under the FLSA, as the District Court held on remand

from O'Brien v. Agawam, 350 F.3d 279, 294 (1st Cir. 2003).  See  O'Brien v. Town of Agawam,

440 F. Supp. 2d 3, 14-15 (D. Ma. 2006) (citing Mayhew v. Wells, 125 F.3d 216, 220 (4th Cir.

1997); Local 246 Util. Workers Union v. S. Cal. Edison Co., 83 F.3d 292, 297 (9th Cir. 1996);

Roy v. County of Lexington, 141 F.3d 533 (4th Cir. 1998) (liquidated damages "are considered

compensatory rather than punitive in nature, and constitute compensation for the retention of

workman's pay which might result in damages too obscure and difficult of proof for estimate

other than by liquidated damages.")).  Indeed, it is noteworthy the District Court on remand in

Agawam found that liquidated damages were appropriate based upon similar failure of the

employer there to include longevity and educational incentive in its calculation of the FLSA

regular rate and corresponding FLSA overtime rate.  Agawam, 440 F. Supp. 2d at 15 (on

remand, court holding that Plaintiffs are entitled to liquidated damages in a sum equal to their

unpaid overtime compensation).

    If an employer has violated the FLSA it must show that it acted reasonably and in good

faith in order to avoid liability for liquidated damages.  See 29 U.S.C.A §216(b); see also Reich

v. Newspapers of New England, Inc., 834 F.Supp. 530, 542 (D.N.H. 1993), aff'd. 44 F.3d 1060

(1st Cir. 1995).  The burden of proof rests on the employer.  Andrews v. Dubois, 888 F. Supp.

213 (Mass. 1995).  There are relatively few circumstances in which the impact of liquidated

damages may be tempered.  None are applicable in the instant case.

    The "good faith" requirement is *subjective* and requires proof that the employer had an

honest intention to ascertain and follow the requirements of the statute.  Id.  The "reasonable

grounds" requirement is an *objective* one, and ignorance alone does not serve to exonerate the

employer.[10]  Most liquidated damages disputes eventually hinge on whether the employer was

acting as a "reasonable employer" would under all the circumstances.  Dybach v. Florida

Department of Corrections, 942 F.2d 1562 (11th Cir. 1991).  In the instant matter the Town fails

on this count as it clearly fails both the objective and subjective and objective tests described

above.  Indeed, the summary judgment record reflects no good faith intention, honest or

otherwise, to ascertain and follow the requirements of the statute.  Similarly, the Town has

offered no grounds or conduct, reasonable or otherwise, to believe its myriad violations were not

in violation.  (Fact ¶7)

        In regard to the subjective "good faith" test courts have been very selective in finding that

an employer acted with good faith necessary to avoid liquidated damages.  Examples of "good

faith" intention that excused liquidated damages include proof of reliance on conclusions from

DOL officials, proof of reliance on erroneous advice from attorneys, and proof of the formation

of a committee to review proper overtime rates and then having an outside attorney review the

committee's plan.  Cross v. Arkansas Forestry Commission, 938 F.2d 912 (8th Cir. 1991)

(Conclusions from DOL officials); Coleman v. Jiffy June Farms, Inc., 458 F.2d 1139 (5th Cir.

1972) (Erroneous advice from attorneys); Aaron v. City of Wichita, Kansas 797 F. Supp. 898,

(D. Kan. 1992) (Committee, outside attorneys).  Generally, "[A defense to an overtime claim] is

not shown when an employer does not inquire about the law's requirements, simply follows an

industry trend of not complying with the law, or violates the law in order to remain competitive."

Keeley v. Loomis Fargo & Co., 183 F.3d 257, 270 (3rd Cir. 1999); See Id. at pp. 269-271 & fn.

10 ["good faith" defenses to FLSA action cannot be based on industry custom or market forces].

---

[10] Claims of inexperience and/or operating on "blind faith" would be inapplicable to the instant case.  More importantly, they are invalid as grounds for a failure to comply with the FLSA. Bacellona v. Tiffany English Pub, 597 F.2d 464, 468 (5th Cir. 1979).

None of the subjective "good faith" intentions shown above are evidenced from the record in the instant case. Indeed, the summary judgment record reflects that Employer has done nothing and relied on nothing to even explain its failure to comply with the FLSA. (Facts ¶7, 8.) Accordingly, given the undisputed facts, as a matter of law there can be no "good faith" grounds for the Town's FLSA violations as outlined in this memorandum.

In regard to the objective "reasonable" conduct test, a court cannot evaluate the "reasonableness" of an employer's belief that its "act or omission was not a violation" without first identifying the "act or omission." Thomas v. Howard University Hospital, 39 F.3d 370 (D.C. Cir. 1994). In this case, the "acts or omissions" were obviously the Town's failure to include multiple differentials in calculating its employees' regular rates of pay; its failure to pay overtime for pre/post shift work; and its failure to pay proper overtime for Town detail work. (Facts ¶21, 28, 59-62)

Courts have been similarly selective in finding the employer's conduct was reasonable under the objective standard sufficient to avoid liquidated damages. For example, a court found reasonable conduct when a Fire District failed to pay proper overtime rates but showed tremendous effort in attempting to do so by discussing overtime requirements with other fire departments, conferring with attorneys and then quickly changing its overtime compensation when court decisions on paramedic issues began to be decided against employers. Doden v. Plainfield Fire District, 3 WH Cases2d 199 (N.D. Ill. 1995)

In the instant case none of the above occurred. The Employer has shown no conduct indicating any attempt whatsoever to comply with the FLSA. Indeed, on all three failure to calculate and/or failure to pay issues before the court in this matter, there is neither "good faith"

intention nor "reasonable" conduct to excuse liquidated damages. Accordingly, summary judgment should be granted on this issue.

On the issue of including the differentials the language of the FLSA is clear that with the exception of the seven items referenced at FLSA §207(e), all remuneration must be included in the calculation rate. The clarity of the FLSA's language alone is sufficient to find against the Employer for failing to include the wage augments and that language has existed since 1949, as shown above. However, the Town's failure on this count becomes even more incredible in light of the First Circuit's decision in Agawam. The Town may stress that the decision in Agawam was not issued until December 2003, or 2 years and 3 months until after this claim was filed. That would miss the point. The Agawam claim was filed well before the relevant period in the instant case commenced. And the First Circuit's decision there was based on well-known and long established principles reviewed above; ultimately serving only to reinforce what should have already been common knowledge to all employers.

On the issue of pre and post shift work there is a long history of case law on what does and does not constitute compensable preliminary and postliminary work. The summary judgment record leaves no question that the superior officers work is actual integral, indispensable, regular daily work. The fact that the officers are *contractually obligated* to come in before and stay after their shift alone indicates the crucial nature of these overtimes duties. The Town has failed to show one iota of good faith or reasonable conduct to indicate why it has failed to pay the superior officers for this work in accord with the FLSA. Liquidated damages for the pre and post shift work is warranted.

The issue relating to failure to pay FLSA overtime for Town Details, as well, is similarly based long established principles. The summary judgment record does not reflect – nor can it –

that work done for the Town, the Town public works department, the Town schools, or the Town recreation department are not work done for the employer.  This is because the Town itself is the plaintiffs' employer.  As shown earlier in this brief it is not possible to claim that the Town police department is somehow a separate and independent employer from the Town itself (or any of its departments) and the legal principles and DOL ruling establishing that have been established for more than a decade.  Rather, the Town enjoys budgetary and personnel control over all of its "departments", and any work done for the departments is of course work done for the Town.  (Facts ¶62, 63.)  There is no genuine issue in dispute over this and accordingly there is no good faith intention or "reasonable conduct" grounds to explain the Town's failure to pay overtime wages when its employees perform overtime detail work for it.

In conclusion, Plaintiffs' submit that the summary judgment record reflects a classic scenario in which Plaintiffs are entitled to statutory liquidated damages based upon facts for which there can be no genuine issue.  As a matter of law, therefore, the Court should grant Plaintiffs' motion for summary judgment as to liquidated damages.

## CONCLUSION

Based upon the foregoing Plaintiffs respectfully move that the Court grant Plaintiffs' Motion For Summary Judgment, accompanying this memorandum of reasons in all respects.

Respectfully submitted,

For Plaintiffs,

By Plaintiffs' Counsel:


*/s/ Jack J. Canzoneri*
Jack J. Canzoneri, BBO #564126
McDonald, Lamond & Canzoneri
Cordaville Office Center
153 Cordaville Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600

Dated:  October 27, 2006


## CERTIFICATE OF SERVICE

I, Jack J. Canzoneri, hereby certify that I have this day via the Electronic Case File system, served a copy of the foregoing Plaintiffs' Memorandum of Reasons In Support of Motion For Summary Judgment upon opposing counsel John P. Flynn, Jr. Esq., Karis North, Esq., Kathryn Murphy, Esq., and Geoffrey B. McCullough, Esq., Murphy, Hesse, Toomey & Lehane, LLP, 300 Crown Colony Drive, P.O. Box 9126, Quincy, Massachusetts  02269.


Dated:  October 27, 2006                        */s/ Jack J. Canzoneri*
                                                Jack J. Canzoneri