THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Robert F. Murphy, III, Lead Plaintiff for Patrol Officer Plaintiffs, et al. and Brian C. Grassey, Lead Plaintiff for Superior Officer Plaintiffs, et al., <br><br> Plaintiffs <br><br> v. <br><br> Town of Natick, Natick Police Department, and Dennis R. Mannix, in his capacity as Chief of Police, <br><br> Defendants | Docket No.: 04-11996RGS |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT**

Defendants Town of Natick ("Town"), Natick Police Department (the "Department"), and Dennis R. Mannix, Chief of Police (collectively "Defendants") Oppose Plaintiffs' Motion for Summary Judgment. The Plaintiffs, 56 Patrol and Superior Officers ("Officers") have not demonstrated that they are entitled to Summary Judgment because there are material facts in dispute, and because they have not shown that they are entitled to judgment as a matter of law. The FLSA does not apply to the Superior Officers because they are exempt employees not covered by the FLSA. Regardless of the exempt status, Plaintiffs have not demonstrated as a matter of law or fact that they are due any excess payments under the FLSA. Further, they have not demonstrated that the exempt Superior Officers are entitled to additional pay for their pre and post-shift activities under the FLSA. Plaintiffs have also failed to demonstrate that so-called "Town" details are worked for anything other than separate and independent entities as that term

has been interpreted by the Department of Labor and the Courts.  Finally, Plaintiffs claims that

they are entitled to liquidated damages also fails as a matter of law and fact.


## ARGUMENT

**I.     The Plaintiffs Are Not Entitled to Summary Judgment on Inclusion of Differentials.**

**A.     The Plaintiffs Have Not Demonstrated That They Are Entitled to the Differentials They Seek, As A Matter of Law.**

Generally, a plaintiff suing under the FLSA carries the burden of proving all elements of

his or her claim.  <u>Samson v. Apollo Resources, Inc.</u>, 242 F. 3d 629, 636 (5th  Cir. 2001); <u>see also</u>

<u>Tripodi v. Microculture, Inc.</u>,  397 F. Supp. 2d 1308, 1314 (D. Utah 2005); <u>Davis v. Friendly</u>

<u>Exp., Inc.</u>, 2003 WL 21488682 (11th Cir.) (unreported); <u>Teblum v. Eckerd Corp. of  Fla., Inc.</u>,

2006 WL 288932 (M.D. Fla. 2006 ) (Feb 07, 2006) (unreported). That burden applies to all

aspects of the Plaintiffs claims, and only shifts to Defendants where they are claiming an

exemption from applicability of the FLSA. <u>Samson</u>, 242 F. 3d at 636.   Further, because

Plaintiffs are the moving party, the court must view all facts and draw all inferences in the light

most favorable to the Defendants. <u>See</u> <u>Noviello v. City of Boston</u>, 398 F.3d 76, 84 (1st Cir.

2005).

Plaintiffs argue that the Town was required to provide FLSA overtime payments which

include all of the various differentials that they seek "from at least September 2001."  This

argument presents a misunderstanding of the law, and stretches the First Circuit decision in

<u>O'Brien v. Town of Agawam</u>, 350 F.3d 279 (1st Cir. 2003) beyond the scope set forth by that

court.  <u>Agawam</u> held that longevity payments and Quinn Bill monies (i.e., education differential

2

payments) were to be included in the calculation of the FLSA base rate.[1]  The <u>Agawam</u> decision was limited to *only* longevity and Quinn Bill monies, and any further calculation of the Officers'[2] base rate should be limited to those two differentials and only those two differentials.  <u>Agawam</u> is silent as to whether "Inservice, Comstat Technology, Community Service, and Assignment Differentials" are also to be included in the base rate and Plaintiffs cite no case law in support of this proposition.  As such, they have failed, as a matter of law, to demonstrate that they are entitled to the inclusion of all of the differentials and extra pay set forth in their argument, and their motion should be denied.  Further, even if these "Differentials" are included, Plaintiffs still have not shown an underpayment under the FLSA.  As demonstrated in Part I.B., *infra*, Plaintiffs are picking and choosing as to which portions of the FLSA apply, rather than looking at the law as a whole.

Plaintiffs attempt to argue that the Inservice, Comstat Technology, Community Service, and Assignment "Differentials" are similar to the Education differentials, and this argument fails. First of all, these payments are not "differentials" paid in the same regular manner as the Education and Longevity differentials.  The Community Service payment is made when each officer has accumulated a certain amount of Community Service time, and is not a payment for "special duty" or "special services" as characterized by Plaintiffs.  Plaintiffs further attempt to muddy the waters by calling the Community Service payment a "differential" when it is not. <u>See</u> Defendants' Statement of Facts as to Which There Exists a Genuine Dispute ("Ds Disputed Facts") ¶ 19.  This payment is more like a gift as a reward for *service*,  which is unrelated to

---

[1]     Defendants assert that the <u>Agawam</u> decision set forth a new interpretation of the law on this point.

[2]     Defendants further note that any such re-calculation would apply, if at all, only to the Patrol Officer Plaintiffs because the Superior Officers are exempt employees, as outlined in their Memorandum in Support of Motion for Partial Summary Judgment filed on October 27, 2006 ("Ds Memo").

work, production or efficiency, and therefore falls within the exemption under § 207(e)(1). In fact, just the concept of Community Service demonstrates that it falls within this exception. The Comstat Technology payment is analogous. It is a payment made to induce the Patrol Officers to become more proficient in the Comstat technology, and it is not paid to the Superior Officers. It should also be characterized as a reward for service, and falls within exemption (1). See Ds Disputed Facts ¶ 15.

The Inservice Training payment in actually an Inservice Training *Incentive*, as outlined in the CBAs. See id. ¶ 13. This incentive payment is made to encourage Patrol Officers to receive certain updates to their basic police skills. The payment is made when and only when a Patrol Officer completes a certain period of training, and is reimbursement for the costs of such training. Ds Disputed Facts, Ex. A. As such the Inservice Training Incentive is not similar to the Education Differential, and should not be included in the base rate of pay.

Finally, the Assignment "Differentials" are also not to be included in the base rate of pay. Assignment payments are made to the few Patrol Officers who are assigned as Detectives. The Detectives are exempt administrative employees and thus not entitled to FLSA overtime payments. See Ds Memo, Part III.A.

**B.     Even if Plaintiffs Are Legally Entitled to Certain Differentials Under <u>Agawam</u>, They Have Not Demonstrated FLSA Liability.**

**1.     Plaintiffs Have Not Demonstrated FLSA Liability, <u>Even if Differentials Are Considered</u>.**

Plaintiffs have the burden of showing that under the contractual scheme set forth in the CBAs[3] and the practices of the Department, they were paid less than required by the FLSA.  <u>See</u> <u>Samson v. Apollo Resources, Inc.</u>, 242 F. 3d 629, 636 (5th  Cir. 2001); <u>see also</u> <u>Tripodi v.</u> <u>Microculture, Inc.</u>,  397 F. Supp. 2d 1308, 1314 (D. Utah 2005).  Even if this Court is to conclude that the extra compensations claimed by the Plaintiffs should be included in the calculation of regular rate of pay for FLSA purposes, the Plaintiffs still have not met their burden of proof, and demonstrated that they suffered any underpayment under the FLSA.

Mistakenly, the Plaintiffs seem to present FLSA overtime as being the equivalent of contractual overtime, when indeed the two are not the same and have many differences.  Most notably, there are many instances where the CBAs provide that overtime will be paid to Officers, yet the FLSA would not require overtime.  As discussed below, this contractual overtime and overpayments made thereunder must be considered and credited against any FLSA overtime claimed, and netted against any additional liability claimed.  With consideration of these payments, which are significant, Plaintiffs must also demonstrate underpayment under the FLSA. They have not done so.  Plaintiffs may not pick and chose which parts of the FLSA they want to apply to their employment.  The law must be considered in its totality, which Plaintiffs fail to do.

---

[3]     Overtime paid in accordance with the requirements of the CBAs is referred to herein as "contractual" overtime.

## 2.     Contractual Overtime Paid Generally Exceeds FLSA Overtime.

Under the contract, Officers have been more generously paid than they may have been, if their pay was limited to that regulated under the FLSA.  Under Department pay practices, Officers are considered to work a 40 hour work-week, every week, regardless of the number of hours actually worked.  See 2nd Aff. Mannix ¶ 22.  Because of this practice, Officers receive overtime for time worked whenever that time falls outside their regular shift.  Time taken off as sick time, vacation time, and personal time have all been included as hours worked under the contract for purposes of determining where contractual overtime is due and paid.  However, this same non-worktime is *not* included under the FLSA for determining hours worked and any resulting FLSA overtime due, nor should it be.  The FLSA only compensates employees for hours actually worked. 29 U.S.C. § 201; see also 29 U.S.C. § 207(e)(2) (Off duty benefits pay not included in calculating base rate).  For instance, under the contracts, an Officer may take a 40 hour vacation, work an extra 8 hour shift, and receive overtime under the contract for this extra 8 hour shift. That same Officer would be deemed under the FLSA to have worked only 8 hours in the workweek, and would not be entitled to overtime.  The materiality of this factual issue is underscored by the fact that Officers receive significant vacation, personal and sick time under the contracts.  See Plaintiffs' Appendix ("Ps App.") Tab 1, Arts. XV, XIX, XX, XXI; Tab 3 Arts. XXI, XXIV, XXV, XXVI.

Furthermore, in weeks where Officers are regularly scheduled to work only 32 hours under the 4 and 2 schedules, they still receive overtime for any work in excess of the 32 hours, which is not required under the FLSA.  See Defendants Statement of Material Facts Not in Dispute ("DSOF") ¶ 16. Applying a straight calendar analysis, going week by week, the 4 day on

2 day off schedule produces a 32 hour work week approximately every 6th and 7th week.  Id.

Under the contract, an Officer may work only 32 regular hours in a week because that is what his

or her 4 and 2 shift will produce, yet still be paid overtime if he or she works an additional 8 hour

shift, even though overtime would not be due under the FLSA.

Also under the contract, Officers receive overtime if they work on a holiday, regardless

of whether or not they have worked in excess of 40 hours in the work week. Ps App., Tab 1, Art.

X; Tab 3, Art. XVII ("Whenever any of the holidays listed above falls on an employee's

regularly scheduled day off, or during his vacation he shall receive an extra eight hours pay at his

regular hourly rate, as holiday pay, except he shall receive sixteen hours pay at his regular hourly

rate as holiday pay for Thanksgiving Day.  Any employee who works on Thanksgiving or

Christmas shall be paid time and one-half his regular hourly rate, in addition to his holiday

pay.").

### 3.    The Law Provides that Excess Overtime Premiums Paid Are Credited Against FLSA Overtime

Extra overtime payments made pursuant to a collective bargaining agreement, as well as

various other premiums, may be taken credit for, and credited against, any FLSA overtime

liability.   Referencing section 7(h) of the FLSA, 29 C.F.R 778.200(b) provides:

> Extra compensation paid as described in paragraphs (5), (6), and (7) of subsection (e) shall be creditable toward overtime compensation payable pursuant to this section.

> Paragraphs 5, 6 and 7 provide as follows:

> (5) Extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee under subsection (a) or in excess of the employee's normal

working hours or regular working hours, as the case may be; [discussed in Secs. 778.201 and 778.202].

(6) Extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days; or [discussed in Secs. 778.203, 778.205, and 778.206].

(7) Extra compensation provided by a premium rate paid to the employee, in pursuance of an applicable employment contract or collective bargaining agreement, for work outside of the hours established in good faith by the contract or agreement as the basic, normal, or regular workday (not exceeding eight hours) or workweek (not exceeding the maximum workweek applicable to such employee under subsection (a)), where such premium rate is not less than one and one-half times the rate established in good faith by the contract or agreement for like work performed during such workday or workweek; [discussed in Secs. 778.201 and 778.206].

The interpretive statements provide an example which shows how these credits are to be made.

If an employee is hired at the rate of $5.75 an hour, and received as overtime compensation under his contract, $6.25 per hour for each hour actually worked in excess of 8 per day . . . his employer may . . . credit the total of the extra 50 cent payments . . . against the overtime compensation which is due under the statute for hours in excess of 40 in that workweek.

29 C.F.R. 778.202.

The First Circuit has explicitly recognized this authority in O'Brien v. Town of Agawam, 350 F.3d 279, 289 (1st Cir. 2003) (". . . the premium portion of the contractual overtime rate is deemed overtime pay and *may be offset* against any statutory overtime liability.") (emphasis added). Other courts have made similar findings. In Hesseltine v. Goodyear Tire & Rubber Co., 391 F. Supp. 2d 509 (E.D. Tex. 2005.), a federal district court in Texas confronted an issue also very similar to the one at bar. In that case, Goodyear paid employees at least time and one half

for all hours worked in excess of eight per day. Twelve hour shift employees therefore received

four hours of premium pay per day. The court allowed the four hours of pay to be credited

against Goodyear's overtime obligations.

> If an employer voluntarily pays an employee a premium rate contingent upon his
> working more than eight hours in one day, then such payment may be excluded
> from the employee's regular rate and credited toward unpaid overtime. See 29
> U.S.C. § 207(h)(2); 29 C.F.R. § 778.202(a) (2004) (citing 29 U.S.C. § 207(e)(5)).

Hesseltine, 391 F. Supp. 2d at 522. Here, where the Officers are receive overtime under

their contract in more instances than might be due under the FLSA, the Town is entitled

to take a credit for those payments, when establishing whether there is actually any

FLSA liability for overtime payments. Further, Plaintiffs must show that FLSA liability

exists, net of these premiums.

### 4.    Premiums Should be Credited on a Rolling, or at Least Annual, Basis.

While some courts have limited credits to a pay-period by pay-period basis, neither the

regulations nor the statute require this conclusion. There seems no legitimate reason to limit the

application of the law and regulation in this way, absent clear regulatory or statutory language.

The better conclusion, which has been recognized by other courts, has been that overtime

credits can be applied cumulatively. Courts holding that credits may be applied cumulatively

appear to recognize that limiting these premium credits to overtime to a pay period by pay period

basis results in a windfall to the plaintiff employees, who have already been paid at least what

the FLSA provided. See Hesseltine,  391 F. Supp. 2d at 522 (citing Singer, 324 F. 3d at 827)

(permitting an employer to offset incurred overtime liability with premium pay from a different

pay period in a case not applying § 207(h)); Kohlheim v. Glynn County, 915 F.2d 1473, 1481

(11th Cir.1990) (holding that employer was allowed to offset accrued overtime with all previously paid premiums regardless of the workweek); <u>Abbey v. City of Jackson</u>, 883 F. Supp. 181, 187 (E.D. Mich. 1995) (stating that employees would receive a windfall if employer offsets were limited to the period in which the premium pay occurred).

The <u>Hesseltine</u> court, in holding those premiums could be applied cumulatively, noted:

> Courts have permitted an employer to credit accumulated premium pay against incurred overtime, without regard to when the premiums were paid and when the overtime work occurred. <u>See Singer</u>, 324 F.3d at 827 (permitting an employer to offset incurred overtime liability with premium pay from a different pay period in a case not applying § 207(h)); <u>Kohlheim v. Glynn County</u>, 915 F.2d 1473, 1481 (11th Cir.1990) (holding that employer was allowed to offset accrued overtime with all previously paid premiums regardless of the workweek); <u>Abbey v. City of Jackson</u>, 883 F.Supp. 181, 187 (E.D.Mich.1995) (stating that employees would receive a windfall if employer offsets were limited to the period in which the premium pay occurred).

391 F. Supp. 2d at 522.

> The record reflects that Goodyear pays its twelve-hour shift employees an overtime rate of one and one-half times their regular rate for all hours worked over eight per shift. Jordan testified that Goodyear pays its employees a premium rate of 1.71 times their regular rate for additional unscheduled overtime, a rate that exceeds the requirements of the FLSA. . . . In this situation, on weeks in which Plaintiffs worked three twelve-hour shifts, a total of thirty-six hours in a week, they received twenty-four hours of pay at the regular rate and twelve hours of premium pay at the overtime rate. Likewise, when Plaintiffs worked four twelve-hour shifts, a total of forty-eight hours in one week, they received thirty-two hours of pay at the regular rate and sixteen hours at the premium overtime rate.
>
> Hence, Goodyear paid Plaintiffs a premium pay rate when it was not required to do so. Therefore, Goodyear may credit the premiums paid Plaintiffs against any additional overtime obligations incurred.

Id.

10

Courts holding that credit is only available within a single pay period seem to focus on issues involving timing of payment and/or the risk that otherwise timing may be missed, or the risk that an employer may economically manipulate the situation otherwise. See Herman v. Fabri-Centers of Am., Inc., 308 F.3d 580, 590 (6th Cir.2002) (noting that the FLSA requires that overtime payments be timely made); Howard v. City of Springfield, Ill., 274 F.3d 1141, 1148- 49 (7th Cir. 2001) (observing that applying credits cumulatively would allow employers to manipulate overtime payments to suit their economic concerns); see also 29 C.F.R. § 778.106 ("The general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends.").

The issue of timing of payment does not negate a cumulative application of credits. If timing is the sole issue, then prior credits should be allowed, so long as the current liability in pay period, when viewed cumulatively to date, does not fall below the FLSA requirement. This type of analysis would require a look back each week and tracking of credits; employees would never fall below what is due them under the FLSA.

Furthermore, where as here, overtime is paid in accordance with an overall agreed upon contractual scheme, which focuses on the year as the time period, there should be no risks of economic manipulation by the employer. The contract establishes all forms of pay and benefits on an annual basis. The collective bargaining agreement is negotiated, affording each party to set forth their positions and bargain for agreeable terms. Overtime is, thereafter, paid in accordance with the terms of a collective bargaining agreement. There seems no risk of manipulation where two parties collectively bargain for terms that clearly must have been intended to comply with the law, at minimum.

11

However, limiting the crediting of premiums to a pay period (particularly in a case such as this) does result in an unintended windfall to employees. There are no facts that show or suggest that either party negotiated or entered into this agreement with anything other than good faith, and an intent and belief that the overtime under the contract was also sufficient to meet their legal entitlements and obligations. To now limit credits to a pay period would reach a holding not required by the law, and would also create an unintended windfall to employees who themselves would have been equally aware of the law when negotiating their agreement.

### 5. <u>One Example of Overpayments.</u>

While Plaintiffs have the burden of proving, not just alleging, an FLSA violation, the payroll records of the lead Patrol Officer Plaintiff, Robert Murphy, have been roughly analyzed here for illustrative purposes. Using payroll year 2003, the full year of employment prior to Plaintiffs' filing of the Complaint, Officer Murphy's payroll records were examined,[4] and the amount of contractual overtime paid was compared to the amount of FLSA overtime possibly due. In accord with the law and as discussed above, non-overtime work such as detail time, vacation, sick and personal time were removed from the work hours, and the schedule was adjusted for the weeks where his base hours worked were 32 hours under the 4 and 2 scheduling pattern. Looking through all of these criteria, Patrol Officer Murphy worked 28 FLSA overtime hours for the 2003 calendar year. By contrast, he was paid for 80 overtime hours under the contract that calendar year.

The overtime premiums paid on these excess 52 hours (80-28) of contract overtime hours are creditable against any alleged additional FLSA payments due. Thus, Defendants have

---

[4]    <u>See</u> 2nd Aff. Mannix, Ex. A, for Murphy's 2003 Payroll records.

demonstrated that, when analyzed, Patrol Officer Murphy received more overtime payments in year 2003 than he would have been entitled under the FLSA, including the wage extras he claims. [5]  To meet their burden of proving an underpayment under the FLSA, Plaintiffs must perform this type of analysis and show, on a cumulative basis, an underpayment.  Again, Plaintiffs must consider their claims in the context of the entire FLSA, and cannot pick and chose which overtime compensations to include, and which to ignore.

## II.    "Town Details" Are Performed for Separate & Independent Entities and These Hours Worked Are Not Compensable Overtime.

Plaintiffs claim that some details should be considered "hours worked" for purposes of calculating overtime hours is without merit.  In so doing, they attempt to create a new standard unsupported by the applicable law, and compress all Details worked by the Officers into "Town Details."  The FLSA addresses the issue of so-called "Town Details" and has rejected Plaintiffs' scenario.

> If an individual who is employed by a State, political subdivision of a State, or an interstate governmental agency in fire protection or law enforcement activities (including activities of security personnel in correctional institutions) and who, solely at such individual's option, agrees to be employed on a special detail by a separate or independent employer in fire protection, law enforcement, or related

---

[5]    Using payroll numbers from the payroll period May 6, 2003, for instance, Officer Murphy was paid for 4 hours of overtime, although the records show he also took 8 hours of vacation that week on May 3, 2003.  Therefore, his total work hours would have been 36 (40 + 4 – 8= 36), which does not entitle him to overtime under the FLSA.  He was paid overtime premiums on that week, for the 4 hours, of about $44.79 (134.36 – 134.36/1.5), which amounts to about $11.20 per hour in excess premiums.

If this number is used to determine the credit available - $11.20 per hour - and is multiplied times the number of hours where overtime was paid under the contract, but not due under the FLSA, which appears to have been 48 hours, the result is $582.40 creditable toward FLSA overtime due.  Assuming this Court is to determine that the extras must be included in regular rate, these extras in Officer Murphy's case, using the same week as an example, could amount to about $6.34 per hour, or $9.50 per overtime hour (6.34 * 1.5).  Multiplying this number times the number of FLSA overtime hours in year 2003 of 28, the result is $266.  The available credit in year 2003, is at least $582.40 under this calculation, which netted against the inclusion of extras for FLSA overtime hours, shows an actual payment made to him in excess of that which may be due under the FLSA.

Further, this example is extremely conservative in that it does not include holiday premiums paid and time and one half, if any, or court time or overtime paid in 4 hour increments (if any) where the hours at court or worked on call-back were actually less.

activities, *the hours such individual was employed by such separate and independent employer shall be excluded by the public agency employing such individual in the calculation of the hours for which the employee is entitled to overtime compensation under this section* if the public agency--

(A) requires that its employees engaged in fire protection, law enforcement, or security activities be hired by a separate and independent employer to perform the special detail,

(B) facilitates the employment of such employees by a separate and independent employer, or

(C) otherwise affects the condition of employment of such employees by a separate and independent employer.

29 U.S.C. § 207(p)(1) (emphasis added).

Courts, the Department of Labor ("DOL"), and Congress have all spoken as to what constitutes a "separate and independent employer." In passing 1985 Amendments to the FLSA, Congress provided some examples of separate and independent employers of Police Officers engaged in special details. As Congress said:

2. Special detail work
An employee engaged in public safety is at times offered opportunities to accept optional special detail work for a separate and independent employer on the employee's off-duty time. These special details include the police officer who accepts extra employment from a school board to direct traffic at a football game, or from a promoter to furnish crowd control at a rock concert or convention. Such opportunities may result from a local legal requirement promulgated by the governing body which is also the employee's primary employer. The requirement may specify that a separate and independent employer must hire sworn law enforcement personnel for these functions, pay such personnel through the primary employer's payroll system, or otherwise adjust or alter their ordinary working conditions. . . . For example, a school system's employment, of police officers to direct traffic at a football game where local ordinance requires that only sworn police officers be used for such duty and where the work is solely at the option of the police officers *would qualify for separate treatment under this exception to the FLSA.* By contrast, the assignment of special details of police officers to cover the extra load of police work required by a large convention where that assignment is not solely at the option of these officers would not qualify. This would be true even if the body holding the convention reimburses

the primary employer for the costs of these services.

S. Rep. No. 99-159, 1985 U.S.C.C.A.N. 651, 660-61 (Oct. 17, 1985) (emphasis supplied).

Department of Labor ("DOL") regulations provide additional interpretation of what "special detail work" encompasses. See 29 C.F.R. § 553.227(b); see also Nolan v. City of Chicago, 125 F. Supp. 2d 324,335 (N.D. Ill. 2000) (DOL regulations provide a more specific interpretation of what is encompassed by the exemption in § 207(p)(1)).   The regulations set forth a two-part test to determine whether hours worked for another entity may be exempt under § 207(p)(1)'s "special detail work" exemption. The two prongs are "(1) the 'special detail' assignment must be undertaken and performed solely at the employee's option, and (2) the two employers must be 'in fact separate and independent.' " 29 C.F.R. § 553.227(b); see also Nolan, 125 F. Supp. 2d at 336; Barajas v. Unified Government of Wyandotte County/Kansas City, 87 F. Supp. 2d 1201, 1205 (D. Kan. 2000). If both prongs are satisfied, the exemption applies and the hours worked for the separate employers are not combined for purposes of assessing overtime compensation. Nolan, 125 F. Supp. 2d at 336.

Here, there is no dispute that the details are undertaken and performed solely at the employee's option. See 2nd Aff. of Mannix ¶ 19.  Whether two employers are in fact, separate and independent can only be determined on a case by case basis. 29 C.F.R. § 553.227(c).  Among the key factors set forth by the DOL and considered by the courts in considering this question are: (1) whether the agencies maintained separate payrolls; (2) whether the entities had arms-length dealings regarding employment; (3) whether the agencies had separate budgets; (4) whether the employees of the entities participate in separate retirement programs; (5) whether they are independent entities under state statute; and (6) whether they can both sue and be sued. See

<u>Jackson v. City of San Antonio</u>, 2006 WL 2548545, *5 (W.D. Tex.) (Aug. 31, 2006) (citing

October 10, 1985 DOL Opinion Letter).[6]

The DOL spoke most recently on special details in an April 2006 Opinion Letter.  In that

letter, the DOL considered whether details worked by police officers for events at a city-owned

stadium qualified for the partial overtime exemption.  Applying the analysis set forth in the

regulations above, DOL concluded that such details were indeed exempt, even though the

officers were working for a private third-party, but on city-owned property. <u>See</u> DOL Opinion

Letter, FLSA 2006-13 (April 28, 2006).  This scenario is similar to the scenario that Plaintiffs

claim make private details "Town" details.  Like the officers in the DOL Opinion Letter, the

Natick Officers may very well be providing services on Town-owned property, or Town roads,

but this fact did not change the DOL's opinion that the officers were working for a separate and

independent entity.  Further, as in the DOL opinion, Natick provides a roster of Officers who

may wish to work details, selects the Officers who will work any given detail from that list

(based on procedures set forth in the CBAs), negotiates their pay, and may retain a fee for

administrative duties.  The DOL found that all of these activities were exceptions to joint

employment, and that the dealings between the City and the third party were "*the type of activity*

*specifically allowed by FLSA section 7(p)(1) and 20 C.F.R. § 533.227.*"  As a result, DOL found

that the City and the third-party were separate legal entities, and this Court should come to the

same conclusion, and hold that the hours worked on all Details "need not be combined with the

---

[6]    According to the court in <u>Jackson</u>, only three other courts have considered this question.  Defendants'
submit this is because the answer is so often and as in this case, clear as a bell.  Where officers provide special detail
work for any entity other than the one for whom they work on a daily basis, as long as that work is voluntary, it falls
within the exception and is not included with hours worked for the purposes of assessing overtime.

hours worked by the police officers for the [Town] in determining entitlement to overtime

compensation."[7]

This example, and the example set forth by Congress in the legislative history of the 1985

FLSA Amendments show that Plaintiffs argument fails. Plaintiffs attempt to lump all of the

different department and entities that make up the Town of Natick, into one pot, in order to

increase their entitlement to overtime pay. That argument has been made before – and failed.[8]

Plaintiffs also assert, incorrectly, that "the first question is whether the Town details claimed here

are connected to the interests of the Town." Plaintiffs' Memo at 16. This is an incorrect reading

of the law, and ignores the facts presented below. Central to a finding of separate and

---

[7]    Opinion Letters of the Department of Labor, while not binding are "a body of experienced and informed judgment" and the court will give these materials 'substantial weight.'" Flood v. New Hanover County, 125 F.3d 249, 253 (4th Cir. 1997). See also Jackson, 2006 WL 2548545 at *5 (citing DOL Opinion Letter).

[8]    In Nolan, Police Officers for the City of Chicago brought an action against the City under the FLSA alleging that it failed to compensate the officers with overtime pay for the hours worked by the officers in a voluntary supplementary work program ("VSEP") under which the officers worked in a law enforcement capacity for the Chicago Housing Authority ("CHA") and the Chicago Transportation Authority ("CTA"). When the officers volunteered to work in the VSEP for the CTA or the CHA, the police department approved their participation, the officers wore their Chicago police uniforms and were subject to the police department's rules and regulations, as the Towns officers do in the present case.
    The District Court in Nolan held that the hours worked by the Chicago officers did not constitute overtime under the FLSA because, under 29 U.S.C. § 207(p)(1), the CTA and the CHA were "separate and independent" because the City did not control or provide for the fiscal needs of either Authority, as evidenced by the fact that both the CTA and the CHA had their own payrolls and separate funding sources. See Nolan, 125 F. Supp. 2d at 335. The court held that since the CTA and the CHA had separate payrolls, budgets, and retirement programs from the City, they were separate and independent from the City, and the exemption in § 207(p)(1) applied, and the hours worked for the CTA and the CHA need not be combined with the hours worked for the City's Police Department.
    In Barajas, police officers sued the city/county under the FLSA for overtime compensation for extra hours spent patrolling public housing complexes managed by the City's Housing Authority. As in Nolan, the officers participating in the Housing Authority patrol assignment were required to wear their police uniforms, to drive marked police vehicles and to maintain a code of police conduct. The police officers were paid an hourly rate for their Housing Authority work, and these hours were not combined for overtime purposes with those hours spent performing their ordinary police duties.
    The court denied defendant's motion for summary judgment on the issue of whether the Housing Authority was "separate and independent" from the City/County because there remained factual issues regarding the financial control of the Housing Authority. See Barajas, 87 F. Supp. 2d at 1209. Relying in part on two DOL opinion letters of July 1, 1993 and October 10, 1985, the Barajas court considered the "DOL factors" to consider in determining whether the Housing Authority was "separate and independent" from the City/County. Barajas, 87 F. Supp. 2d at 1206. In considering those factors, the court determined that the entities were indeed separate and independent.

independent is whether the entities are attached through budgets and finances. There is no dispute that the Police Department is budgeted and managed separately from the School Department, the Department of Public Works, and any other departments in the Town. Moreover, the Police Department itself treats, manages, and pays detail work differently than if the work had been assigned as part of a regular shift, or as overtime. See 2nd Aff. Mannix ¶¶ 10-14. Further, during the course of their detail work, are not providing regular Police services to the third-party employers. Thus, the work is performed for separate and independent entities, and should not be counted as overtime.

The Natick Police Department is treated as a separate employer from other functional areas of the Town: it is separately budgeted and funded by Town meeting; has its own separate duties and responsibilities, and it receives a budget from the Town Meeting that it is required to operate within. 2nd Aff. Mannix ¶¶ 3-5. The expenses and revenues of the Department come from its own budget, and it conducts its own operations within that department, including determining staffing, number of employees, services and functions, and costs and budget allocations. When it comes to providing services to other functional areas of the Town, including providing Details, it negotiates with the other functional areas of the Town in an arms-length transaction in that the other areas make their budgets and requests and pay as any separate employer would pay for services. 2nd Aff. Mannix ¶¶ 9, 11. The Department does not direct oversee or manage the work of any person or employee in other functional areas of the Town, nor are its employees subject to the management, control, direction, instruction, or rules of other functional areas of the Town. Finally, the Department has its own governance structure that includes the Chain of Command, as previously explained by Chief Mannix. DSOF ¶ 7. The

Police Powers of the Department are expressly reserved to the Department, and it performs functions that persons outside the Department may not perform.

Unlike overtime assignments, all Detail work is performed voluntary, 2nd Aff. Mannix ¶ 19. Detail work is offered to Officers based on a list, as it becomes available, and no Officer is ever required to perform detail work. Id. ¶¶ 6-7. The list creates equity and fairness in allocating details as they are generally considered to be sought-after work. Overtime, by contrast, is not assigned on such a system and can be assigned to Officers without their consent or assent, which takes away the equity that Detail assignment system provides.

The rate paid for all Details by the employing unit is the same, and is non-negotiable. It is set by the Officers in their contracts,[9] and is the only rate that can be paid. 2nd Aff. Mannix ¶17. In the last five years, Chief Mannix does not recall any Officer ever filing a grievance under the contract alleging that certain work should have been paid as overtime as opposed to as a detail. Id. ¶ 20.

Applying all of the DOL factors, the conclusion remains that the Department is a separate and independent entity from the other department of the Town. It is budgeted separately, managed separately, and controlled separately. Orders to the Department or to Department personnel are made by and through the Chief of Police, who has no authority over any other department. Nor do the heads of those departments have any authority over the Police Department. Because of this separate status, and because the Details at issue in this case are all voluntary, Plaintiffs motion on this point fails.

---

[9]    The CBAs themselves recognize that all Details which are not assigned Department work generally for separate and independent entities: "[w]henever the Chief in his sole discretion, or his designee, determines that a *private detail* is necessary, it shall first be offered to regular Natick Police Officers. DSOF, Ex. B, Art. ¶ XXIII (emphasis supplied).

**III.    The Natick Superior Officers are Exempt Employees, and Even if Not Exempt, Their Pre- and Post-Shift Activities are not Compensable Overtime.**

The Superior Officers of the Natick Police Department are exempt executives and administrators, and are thus not entitled to the FLSA's protections. Both the pre- and post 2004 FLSA regulations point inescapably to this conclusion, as outlined in more detail in Defendants' Memorandum in Support of its Motion for Partial Summary Judgment, which is incorporated by reference herein.[10]

Suggesting that the Sergeants and Lieutenants of the Department are not exempt executive, or in certain cases, administrative, employees, contradicts the entire structure and purpose of the Department. The Department rests on the concept of the Chain of Command, and the increasing levels of responsibility, authority, and oversight as an Officer is promoted up that chain. The delegation of authority up and down the Chain of Command is integral to carrying out the Department's mission or providing safety and security to Town residents, and is a basic fact of life in police departments. Because the Superior Officers are exempt employees under the FLSA, these Plaintiffs' are not entitled to overtime payments for any alleged pre- and post-shift activities.

As noted in Defendants' Memo, the attempts of the Superior Officer Plaintiffs to re-

---

[10]    The Superior Officers are exempt executives under the pre-2004 regulations (the "short test"). They are and were paid on a salary basis, in excess of $250 per week. They interview, select, train, direct the work of, maintain records for, appraise the performance of, and provide day to day discipline of the officers under their command. Overwhelming authority from cases interpreting the pre-2004 regulations supports this conclusion.

The Superior Officers are exempt executives under the post-2004 regulations as well. They provide management with suggestions as to hiring, firing., advancement, promotion, and discipline of officers under their command. The Natick selectmen not only give particular weight to the superiors' suggestions- they give the suggestions controlling weight. Department of Labor authority interpreting the post-2004 regulations supports this conclusion. Civil service regulations, which subject superior officer suggestions to administrative review, do not affect the superior officers' exempt status.

characterize their status as managers or supervisors is unsupported by the law and facts of this

case.  Each Plaintiff admits to participating in specific duties, and having certain responsibilities

and authority, which show that they are indeed exempt executive or administrative employees.

See DSOF ¶¶ 9-10, 19-22, 25-33.  Any alleged dispute of fact regarding this point is one created

by the Plaintiffs to buttress their other FLSA claims, and it should not survive the scrutiny of this

Court.

### A.    Even if the Superior Officers are Not Exempt, the Amount and the Fact of Pre and Post Shift Hours Has Not Been Established.

Plaintiffs are seeking additional overtime compensation for alleged time that the Superior

Officers work immediately preceding and immediately after their regularly scheduled shifts.  In

making this demand, Plaintiffs allege, but fail to demonstrate, that all of the Superior Officer

Plaintiffs actually work these additional hours.  Plaintiffs have provided Affidavits from 14 of

the 21 Superior Officers involved in this litigation, which claim that they arrive at least 15

minutes early for their shifts, and depart at least 15 minutes after their shift ends.  During that

"extra" time, these 14 Plaintiffs allege that they are engaged in work which they could not

possibly complete during the course of their shifts.

These allegations should be discounted for several reasons.  There is, at this time, no

independent means to verify when each Superior Officer arrives and departs, or when they

actually being working.[11]  The Department does not require that any Officer punch in and out,

---

[11]    Plaintiffs acknowledge this very fact in their brief, and state that even they cannot "calculate with the necessary certitude" the exact amounts of time and dates claimed to have been worked.  If the Plaintiffs acknowledge up front that they cannot meet their burden of proof, then they are not entitled to Summary Judgment on this point.

and so there are no records of when Officers arrive or depart. The only method of verifying whether these allegations are actually true, is by observation, and all of the Officers in the Department are Plaintiffs in the litigation, and interested parties. Chief Mannix, in his 2nd Affidavit, notes that it is his observation that not every Superior Officer arrives early and stays late, but acknowledges that he has no independent means of verifying that information. 2nd Aff. Mannix ¶ 21. It is his belief that not every Superior Officer, particularly the Sergeants actually arrive early and leave late. Further, if they do arrive early and/or stay late, the amount of time that they are actually performing supervisory duties which they could not have completed during their shifts, is very minimal, and certainly less than 30 minutes per day. Id.

Therefore, Plaintiffs have not demonstrated that the material facts underlying this claim are undisputed. The Court must evaluate the facts and disputed facts set forth herein, in the light most favorable to the Defendants. In that light, Plaintiffs Motion for Summary Judgment on this point does not succeed.

**B.    Any Additional Pre- or Post-Shift Time Claimed by the Superior Officers is Separately Compensated in the CBAs.**

The Superior Officers cannot contest that they are separately compensated for any pre- and post-shift time reasonably necessary to complete their supervisory duties, through the CBA. Superior Officers are also more highly compensated than the Patrol Officers they supervise. DSOF ¶ 6. Article XVIII of the CBA, titled "Supervisory Compensation" provides:

> [e]mployees covered by this Agreement shall received five percent (5%) of their respective base pay per year in exchange for which employees shall arrive a *reasonable amount of time* prior to the start of their regular shift to prepare themselves to provide supervisory guidance during their shift and shall stay on duty a *reasonable amount of time* after each shift to conclude any administrative tasks that have arisen during their shift. Time spent performing these functions

22

shall not be subject to the work schedule provided in Article IX or the overtime provisions provided in Article XI.

Id. ¶   (emphasis added).  All of the Superior Officers deposed were asked about this provision, and each, in their depositions, acknowledged that they did indeed receive such additional compensation.  See D's Memo at 14 fn. 7; see also 2nd Aff. Mannix, Ex. B (payroll records for Lt. Brian Grassey).

The fact that the actual amount of compensation, which was negotiated by each party in an arms length transaction, and in good faith, is relatively small, buttresses Defendants' contention that the amount of time really at issue here is also small, and may very well be a few minutes, here and there.  As Article XVIII of their CBA notes, the amount of time expected to be expended by the Superior Officers before or after their shift is what is *reasonable*.  The term reasonable requires the use of judgment, and discretion, in determining whether it is actually necessary or not, to come in early, or stay late.

The Superior Officers also acknowledged in their depositions, that as a matter of practice within the Department, they never put in for overtime for any pre- or post-shift extra time.  See Ds Disputed Facts, Response to ¶¶ 35-56 and Exhibits attached thereto.  When the Superior Officers do put in for overtime, it is because they stayed for a significant period of time, typically an hour or more.  There is no testimony demonstrating that those requests for overtime have ever been denied.   Because the Superior Officers consciously did not chose to document their alleged additional time, and seek overtime compensation for such time at the time the overtime was earned, it is too late at this juncture to seek additional compensation for any alleged and unproven extra time.

### C.     Any Additional Pre- or Post-Shift Time Claimed by the Superior Officers is *De Minimis* and Not Compensable.

Case law interpreting the scope of the FLSA has long held that the statute does not require compensation of time which is so negligible as to be *de minimis*.  The concept of a *de minimis* amount of time holds that "only when an employee is required to give up a substantial measure of his time and effort [is] compensable working time [] involved." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 692 (1946).  What amount of time actually constitutes *de minimis* time is not always easy to discern.  The Ninth Circuit has noted that "there is no precise amount of time that may be denied compensation as *de minimis*.  No rigid rule can be applied with mathematical certainty." Lindlow v. U.S., 738 F. 2d 1057, 1062 (9th Cir. 1984).  Courts have found as much as 10 minutes a day, *de minimis* time, not subject to compensation. See citations at id.

The Lindlow case has facts very similar to those here.  In that case, the plaintiffs, employees of the Corps of Engineers, sought overtime compensation for 15 minutes of work per day, for pre- and post-shift work which included reviewing log books, exchanging information with other employees on duty, and retrieving employees on duty. See Lindlow, 738 F. 2d at 1059.  After reviewing all of the testimony, the Ninth Circuit found that despite the Plaintiffs assertions, the trial court correctly found that they spent less than the time claimed actually engaged in pre-shift duties.  Some of that time was spent socializing, drinking coffee, or in other non-work activities. Id. at 1059-60.  The Court also found that the actual amount of time spent in those pre-shift duties varied substantially from day-to-day.

Such a finding is consistent with the facts in this case.  The pre-shift duties claimed by the Superior Officers vary widely, and certainly depend on what happens on a particular day.

24

This wide variance in time and duties also comports with Chief Mannix's impressions.  As he notes in his Second Affidavit, it is his observation that not every Superior Officer comes in early, or stays late, on every shift. 2nd Aff. Mannix ¶ 21.  Further, even if Superior Officers arrive early, or stay late, they do not always spend that time doing work that they could not otherwise have completed during the course of their shift. Id.  At certain times, it may be important that a Superior Officer arrive early or stay late, because of the circumstances of that particular shift. Id.  However, in those instances, the time required to complete that additional work is usually minimal, and less than 15 minutes of time and such instances are not every day occurrences.  For all of these reasons, Plaintiffs have not met their burdens of proof with regard to the pre- and post-shift claims, and their motion should be denied.

### IV.    If Plaintiffs Demonstrate They Are Entitled to a Further Calculation of Their FLSA Overtime, Are Not Entitled to Any Further Damages, Such as Liquidated Damages.

Ordinarily, an employer who is found liable under the FLSA is responsible for paying not only the unpaid overtime but also an equivalent amount in liquidated damages.  29 U.S.C. § 216(b).  However, if the employer can show that his failure to pay overtime was due to a good faith, reasonable belief that he did not owe overtime, the court may in its *discretion* award no or a reduced amount of liquidated damages.  29 U.S.C. § 260.  Such damages are not required, as Plaintiffs would have this Court understand.

The conditions prescribed as prerequisites to such an exercise of discretion by the court are two.  First, the employer must show that the act or omission giving rise to such action was in good faith; and second, the employer must show that there were reasonable grounds for believing that the act or omission was not a violation of the Fair Labor Standards Act.  29 C.F.R. § 790.22.

The determination of good faith and reasonable grounds are mixed questions of fact and law, which should be determined by objective tests.  29 C.F.R. § 790.22(c).

The legislative history of the Portal to Portal Act makes it clear that the employer's "good faith" is not to be determined merely from the actual state of his mind. Statements made in the House and Senate indicate that "good faith" also depends upon an objective test--whether the employer, in acting or omitting to act as he did, and in relying upon the regulation, order, ruling, approval, interpretation, administrative practice or enforcement policy, acted as a reasonably prudent man would have acted under the same or similar circumstances.  "Good faith" requires that the employer have honesty of intention and no knowledge of circumstances which ought to put him upon inquiry. 29 C.F.R. § 790.15.

Here, Defendants were acting in good faith, with the reasonable belief that the Officers were paid more handsomely under the terms of the various CBAs, than they would have been under the FLSA.  In addition, Defendants believed that certain of the Officers were exempt from the requirements of the FLSA.  These facts can be determined by an objective measure: that the Officers may indeed have been overpaid, as evidenced by the example of Patrol Officer Murphy, outlined in part I.B.5, *infra*.  Further, Defendants believed that the Superior Officers were exempt from the requirements of the FLSA as supervisors, which is further underscored by the fact that the Superior Officers were provided with additional compensation for that role.[12]  That

---

[12]     Even if this belief is shown to be mistaken, that in itself is not a basis for an award of liquidated damages. In <u>Adams v. U.S.</u>, 350 F. 3d 1216 (Fed. Cir. 2003), former and current employees of the United States Border Patrol brought suit for overtime wages. The United States Court of Federal Claims awarded damages to those employees who did not fall within the executive exemption to FLSA's overtime-pay requirements, and the employees appealed several pre-trial and post-trial decisions as to liability and damages.  The Federal Circuit upheld the trial court's denial of liquidated damages, holding that the employer acted in good faith.

these arguments are more than adequate to survive Summary Judgment is demonstrated by the case law on this issue.

Several cases have further explained the "good faith" defense.  In Mayhew v. Wells, 125 F. 3d 216 (4th Cir. 1997),  a deputy sued his sheriff for overtime compensation for time spent caring for and training his dog pursuant to the FLSA.  The trial court, upheld by the Fourth Circuit, held that the deputy was not entitled to liquidated damages because the sheriff withheld overtime in a good faith belief that the deputy was not entitled.

> Perhaps most probative of Wells' good faith and reasonableness is the fact that Mayhew individually owned the dog, unlike the law enforcement agency-owned dogs in every other dog-care case. Thus Mayhew would have had to spend the same amount of time feeding and caring for the dog whether it was used by the Department or not. Moreover, Mayhew owned a second dog, and much of the time spent caring for and feeding the tracking dog was simultaneously spent on this second dog. Therefore, even if Mayhew had not owned the tracking dog, Mayhew still would have spent this time with the second dog. The district court also found probative of Wells's reasonableness the quid pro quo agreement by which the Department paid for the dog's food, veterinary care, and training tools in exchange for Mayhew's activities with the dog. See Mayhew, slip op. at 8. In other words, Wells could have reasonably believed that Mayhew was  already being compensated for his dog-time. This evidence plainly supports the district court's conclusion that Wells possessed reasonable grounds to believe he was not violating FLSA.

Id. at 221.  Thus, "good faith" can be shown if the employer shows that the employer compensates employees through other mechanisms (such as the reimbursement for dog food here),   or good faith factual errors that relate to the payment of overtime.

In Masters v. City of Huntington, 800 F. Supp. 355 (S.D.W. Va. 1992), municipal fire fighters instituted an action against the city, alleging that the city had violated the FLSA by using an improper pay rate structure. The court concluded that in fact the FLSA was violated, but found liquidated damages improper as the City had acted in good faith.

Undisputed testimony establishes that, prior to the effective date of the Act, officials involved in personnel management for the City met with the City's attorney and the fire chief to review the pay structure and determine whether the City was in compliance with the requirements of the FLSA. In the period before the FLSA became applicable, the City's payment structure for firefighters had been governed by the wage and hour laws of the State of West Virginia under statutory provisions which, in similar fashion to the FLSA, provided that "no employer shall employ any of his employees for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate of not less than one and one-half times the regular rate at which he is employed." W.Va.Code 21-5C-3. Based on the pay structure in place, City officials believed that firemen were being paid forty hours a week at an established hourly rate and hours in excess of forty at a rate of one and one-half times the regular hourly rate. City officials further believed, and the Court accepts their testimony, that the firefighters were aware of their hourly rates of pay as set forth in the City's pay schedule. Equal biweekly paychecks were apparently considered a problem, however, concern over this matter was resolved by a request from the president of the fire fighter's union that the practice of equal pays be continued. In evaluating the pay structure, assistance and advice was sought not only from the City attorney, but also from Department of Labor officials, Department of Labor regulations, and municipal organizations to which the City, or its officials, belonged.

Id. at 362.

Similarly, in Pabst v. Oklahoma Gas & Elec. Co., 228 F. 3d 1128 (10th Cir. 2000), electronic technicians employed by a gas and electric company sued the company under the FLSA seeking to recover compensation for on-call time. On appeal, and upholding the lower court, the Tenth Circuit held that the technicians were not entitled to liquidated damages because of the employer's good faith attempts to comply with the FLSA.

The district court found that OG&E's actions were reasonable and in good faith for several reasons: OG&E paid double time, rather than just time-and-a-half, for each hour of overtime plaintiffs reported; it permitted plaintiffs to report an hour every time they responded to an alarm, even if they actually spent as little as five minutes; and it was not fully aware of the extent of the burden on plaintiffs until some time in 1997, at which point it took corrective action.

28

Id. at 1136.  Again, this case stands for the proposition that an employer acts in good faith where he provides extra compensation for work hours, believing that compensation to be a legitimate offset against any overtime owed.  This is precisely the action the Defendants took, and thus Plaintiffs are not entitled to liquidated damages.

## CONCLUSION

Therefore, for all the reasons stated above, Plaintiffs' Motion for Summary Judgment should be denied, and Defendants' Motion for Partial Summary Judgment should be granted. Therefore, Defendants' respectfully request that this Court:

A.  Issue an Order denying Plaintiffs' Motion;

B.  Issue an Order which grants partial Summary Judgment on behalf of Defendants;

C.  Award Defendants attorneys fees and its costs in defending this action; and

D.  Award Defendants any other relief that is just and good.

Respectfully submitted,

Defendants, TOWN OF NATICK,
NATICK POLICE DEPARTMENT, and
DENNIS R. MANNIX, CHIEF OF POLICE

By their attorneys,

/s/  John P. Flynn
John P. Flynn, BBO# 172640
Geoffrey B. McCullough, BBO# 558207
Kathryn M. Murphy, BBO#564789
Karis L. North, BBO # 648998
MURPHY, HESSE, TOOMEY & LEHANE, LLP
300 Crown Colony Drive, Suite 410
Quincy, MA 02169
(617) 479-5000

Dated: November 20, 2006

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be send to those indicated as non registered participants on November 20, 2006.

<u>/s/ John P. Flynn</u>
John P. Flynn