THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

USDC Case No.:  04-11996 RGS

_____

Robert F. Murphy, III, Lead Plaintiff for
Patrol Officer Plaintiffs, et al. and
Brian C. Grassey, Lead Plaintiff for
Superior Officer Plaintiffs, et al.,

Plaintiffs,

v.

Town of Natick, et al.

Defendants

_____

PLAINTIFFS' MEMORANDUM OF REASONS
IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT AND IN
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
ON THE EXEMPTION ISSUE

_____

For the Plaintiffs,


Jack J. Canzoneri, Esq., BBO#564126
Alan J. McDonald, Esq., BBO#330960
McDonald, Lamond & Canzoneri
153 Cordaville Road, Suite 210
Southborough, MA 01772
(508) 485-6600

November 20, 2006

## I.    INTRODUCTION

Plaintiffs submit this memorandum of reasons pursuant to Local Rule 56.1 in support of their cross motion for summary judgment on the issue of the non-exempt status of all plaintiffs, as well as in opposition to the motion for summary judgment that Defendants filed on November 1, 2006 on this issue.  Plaintiffs incorporate their memorandum filed on November 1, 2006 regarding background and the summary judgment legal standard.

## II.    FLSA LEGAL STANDARDS ON THE EXEMPT STATUS ISSUE

### A.    <u>Pre and Post August 23, 2004 Standards Clarification.</u>

The issue on summary judgment is whether plaintiffs are exempt executives or administrative personnel under the FLSA §213.  Effective August 23, 2004, about one month prior to the lawsuit having been filed in this action, the Department of Labor (DOL) revised certain longstanding regulations relating to the test for determining such exemptions.  The new regulations reinforce the conclusion that all such positions held by plaintiffs are non-exempt.

Under the former regulatory analysis, there was a "long test" for employees who did not earn above $250 per week and a "short test" for employees that earned more than that.  <u>See</u> former 29 C.F.R. §541.1(f).  There is no dispute that Plaintiffs have earned above $250 per week and thus they fell under the "short test" for the period prior to the August 2004 regulatory changes.  The dichotomy between "long" and "short" test was eliminated with the changes of August 2004.  The following close paraphrase of the regulations shows the change (newly added language underlined) as between the former "short test" (as is applicable for the period prior to August 2004 for plaintiffs) and the current single test for executive status:

§541.100 General rule for executive employees.

(a) The term "employee employed in a bona fide executive capacity" in section 13(a)(1) of the Act shall mean any employee:

(1)    [salary requirement] . . .

(2)    Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3)    Who customarily and regularly directs the work of two or more other employees; and

(4)    Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight.

Comparing 79 Fed. Reg. 59, 69 FR 22122 codified at 29 C.F.R. §541.100 effective August 23, 2004, with former language 40 Fed. Reg. 7092 (Feb. 19, 1975) codified at then 29 CFR §541.1.

The standard for the Administrative Exemption has remained unchanged and requires proof of the following two elements:  "An employee (1) [w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (2) [w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."  29 CFR §541.200; compare to former 29 CFR §541.2

In addition, the preamble of the new regulations at Part 541 for the first time includes language expressly declaring that mid-level police supervisors and detectives should not be considered exempt due to field supervision, investigation and other similar work.  Although Defendants reviewed the new regulations in their brief, they failed to note this crucial new

language.  It also contains express language codifying the long known standard that "working

foreman" are non-exempt.  This new language reads in pertinent part as follows:

> § 541.3 Scope of the section 13(a)(1) exemptions.
>
> (a)    The section 13(a)(1) exemptions and the regulations in this part do not apply to manual laborers or other "blue collar" workers who perform work involving repetitive operations with their hands, physical skill and energy. . . .
>
> (b)(1)  The section 13(a)(1) exemptions and the regulations in this part also <u>do not apply to police officers, detectives</u>, deputy sheriffs, state troopers, highway patrol officers, <u>investigators</u>, inspectors, correctional officers, parole or probation officers, park rangers, fire fighters, paramedics, emergency medical technicians, ambulance personnel, rescue workers, hazardous materials workers and similar employees, <u>regardless of rank or pay level, who perform work such as</u> preventing, controlling or extinguishing fires of any type; rescuing fire, crime or accident victims; <u>preventing or detecting crimes; conducting investigations or inspections for violations of law; performing surveillance; pursuing, restraining and apprehending suspects; detaining or supervising suspected and convicted criminals,</u> including those on probation or parole; <u>interviewing witnesses; interrogating and fingerprinting suspects; preparing investigative reports; or other similar work.</u>
>
> (2)    Such employees do not qualify as exempt executive employees because their primary duty is not management of the enterprise in which the employee is employed or a customarily recognized department or subdivision thereof as required under § 541.100. <u>Thus, for example, a police officer or fire fighter whose primary duty is to investigate crimes or fight fires is not exempt under section 13(a)(1) of the Act merely because the police officer or fire fighter also directs the work of other employees in the conduct of an investigation or fighting a fire</u>.
>
> (3)    <u>Such employees do not qualify as exempt administrative employees because their primary duty is not the performance of work directly related to the management</u> or general business operations of the employer or the employer's customers as required under § 541.200.

29 C.F.R. §541.3 (emphasis added).  Although the regulations for the first time expressed the

general non-exempt status of law enforcement personnel, that issue was addressed otherwise in

opinion letters of the DOL, long before August 2004.  See, e.g., DOL Opinion Letter, 1993

DOLWH LEXIS 6 (March 19, 1993).  ("We consider criminal investigative work to be

nonexempt work for purposes of exemption under §13(a)(1).  Were the lieutenant to spend

considerable amounts of time in such undercover work, the "primary" duty test for exemption

may not be met.  See §541.206 of the regulations.").

As the foregoing shows, the test for administrative status for plaintiffs has been the same

before and after August 2004.  However, the test for executives has an important change

comparing the former "short test" and the current single test, i.e., a third element is added that

now requires proof that the employee "has the authority to hire or fire other employees or whose

suggestions and recommendations as to the hiring, firing, advancement, promotion or any other

change of status of other employees are given particular weight."  29 C.F.R. §100.  The former

"long test" included this additional element as well, but the long test would have not been

applicable to plaintiffs because of their income.

In addition to the foregoing, the regulations and case precedent have long delineated the

meaning of much of the language used in the general definitions listed above, as well as how the

analysis should be applied.  That material is the next area of discussion.

## 1.    Job Titles, Job Descriptions Not Relevant, 29 CFR §541.2.

The status of an employee hinges on what the employee actually does in her position, not

self-serving criteria such as the employer's definition of the job title or listing of duties in a job

description.  Cooke v. General Dynamics, 993 F. Supp. 56, 61-62 (D. Conn. 1997) (self serving

job description, like job title, carries no weight); Demos v. City of Indianapolis, 126 F. 2d Supp.

548, 559 (S.D. Ind. 2000).

### 2.    Indicia of Management, 29 CFR 541.102.

The indicia of management have been the same at all times and include whether the

employee engages in "interviewing, selecting, and training of employees; setting and adjusting

their rates of pay and hours of work; directing the work of employees; maintaining production or

sales records for use in supervision or control; appraising employees' productivity and efficiency

for the purpose of recommending promotions or other changes in status; handling employee

complaints and grievances; disciplining employees; planning the work; determining the

techniques to be used; apportioning the work among the employees; determining the type of

materials, supplies, machinery, equipment or tools to be used or merchandise to be bought,

stocked and sold; controlling the flow and distribution of materials or merchandise and supplies;

providing for the safety and security of the employees or the property; planning and controlling

the budget; and monitoring or implementing legal compliance measures." Id.; see also Dalheim

v. KDFW-TV, 918 F.2d 1220, 1231-32 (5th Cir. 1990) (fewer performed; less likely exempt).

### 3.    Primary Duty, 29 CFR 541.700

Where 50% or more of the time spent in such position relates to managerial duties (or

direction), then it is considered the "primary duty."  Where those duties comprise less than 50%

then a tribunal must examine at least four factors that bear on the question of whether the duties

are merely ancillary or constitute the "primary duty," as follows:

> (a)      . . . [e.g.,] the relative importance of the exempt duties as
> compared with other types of duties; the amount of time spent
> performing exempt work; the employee's relative freedom from
> direct supervision; and the relationship between the employee's
> salary and the wages paid to other employees for the kind of
> nonexempt work performed by the employee.

29 C.F.R. §541.700.

### 4.     Department Or Subdivision, 29 CFR §541.103

The phrase "a customarily recognized department or subdivision" is intended to distinguish between a mere collection of employees assigned from time to time to a specific job or series of jobs and a unit with a permanent status and [permanent continuing] function."

### 5.     Discretion, 29 CFR 541.202, 541.704, case law.

Another important factor is whether the decision-making of the employee constitutes "independent discretion."  Although this is expressly stated in the regulation defining the administrative function, it has long applied to the executive exemption as well.  See, e.g., Brennan v. Carl Roessler Inc., 361 F. Supp. 229, 232 (D. Conn. 1973); Donovan v. Rockwell Tire & Fuel, 1982 U.S. Dist. LEXIS 17548, (M. D. N.C. 1982).

There are two key definitions which are important in understanding what constitutes "independent discretion."  In sum, the definitions show that "independent discretion" is discretion on matters of significance that are based upon the executive employee's personal judgment, rather than discretion based upon external guidelines that dictate how such discretion must be exercised or its parameters:

> The exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources.  . . .  The exercise of discretion and independent judgment also does not include clerical or secretarial work. . .

> 29 CFR §541.202

> . . . The section 13(a)(1) exemptions are not available, however, for employees who simply apply well-established techniques or procedures described in manuals or other sources within closely prescribed limits to determine the correct response to an inquiry or set of circumstances.

> 29 CFR §704.

The frequency in which a purported executive exercises such "discretionary" authority is also a factor considered.  Donovan v Burger King Corp., 675 F2d 516, 521 (2nd Cir. 1982); see also Donovan v Burger King Corp., 672 F.2d 221 (1st Cir. 1982).  Under the "long test" discretion was a factor in determining whether enforcement of rules was managerial and if employee only enforced rules made by others the employees was non-exempt.  Id. at 226.  Under the former "short test," however, enforcing management policies was enough because the factor of "independent discretion" played a diminished role in the analysis.  672 F.2d at 226.  Today under the regulations in place since August 2004 "discretion" is a factor without regard to salary level and, as quoted above, the preamble to the regulations make clear that "working foreman" and police employees are non-exempt, in part, because the decisions they make are not based upon independent discretion within the meaning of the FLSA.  29 C.F.R. §541.3.  That conclusion is clearly implied since positions such as police officers, detectives, and other similar positions are listed as exempt.  Obviously, all of those positions incorporate an element of discretion (e.g., a police officer decides whether to pull a car over for speeding and whether to issue a citation, whether there is probable cause to arrest) but it is not considered independent because the discretion is not based upon self-made standards, but standards that are from external sources such as longstanding standards of police work, legal standards, and standards of the police department itself.  Adam v. U.S., 26 Cal. Ct. 782, 786-87 (1992) ("These tasks do not involve obtaining compliance with INS policies, but rather are routine law enforcement duties involved in obtaining compliance with the nation's immigration laws.  If by enforcing the nation's immigration laws the agents are "significantly affecting" the execution of policy, then all border patrol agents should be exempt, and not just the senior agents. . . ."); Baca v United States, 29 Fed. Cal. 354 (1993).

There are multiple other cases demonstrating that, where discretion was not established, the employer failed to prove applicability of the executive or administrative exemption.  Dole v Papa Gino's of America, Inc. 712 F. Supp 1038 (D. Mass. 1989); Rothman v Publicker Industries, Inc. 201 F.2d 618, 620 (3rd Cir. 1953); Sack v. Miami Helicopter Service, Inc., 986 F. Supp. 1456, 1464-65 (S.D. Fla. 1997); Harris v District of Columbia, 741 F Supp 254, 261-262 (D. Co. 1990).

**B.      Case Precedent Cited By Defendants Does Not Undermine The Foregoing Analysis.**

Defendants apparently claim that the Supreme Court decision in Auer v. Robbins, 519 U.S. 452 (1997) is relevant to the legal analysis on the exemption issue.  It is not.  That case has no bearing on the issues here since the Supreme Court in that case affirmed the Eighth Circuit's ruling in Auer, 65 F.3d 702 (8th Cir., 1995) on salary basis issue, not the duties test issue.

In addition, Defendants make arguments about the "well-settled status" of the exemption of sergeants and lieutenants, (Def. Memo. at 13), citing a handful of cases.[1]  The Court should find that Defendants' assertion of the "well-settled status" of the exemption of sergeants and lieutenants is unfounded.  Litigation relating to the exempt status of front line and mid-level supervisors in police departments from 1986 (i.e., the year that FLSA was approved by Supreme Court for application to public sector employers) until approximately 1997 focused most frequently on challenging the exempt status under the so-called salary basis test.

With the foregoing in mind, turning to the first case cited by the Town, the Eighth Circuit's 1995 ruling in Auer, 65 F.3d 702.  In that case there was an analysis under the duties

---

[1]      Defendants also cite a DOL Opinion letter, Oct. 14, 2005, 2005 DOLWH LEXIS 52.  That letter has no general applicability, as alluded to by Defendants.  It was based upon the following facts which Plaintiffs contend are not present here:  "The completed questionnaire attached to your letter states that all three positions spend 50% or more of their time in management, customarily and regularly direct the work of at least 2 full time employees, and make suggestions regarding the hiring, firing, advancement and promotion of other employees which are given particular weight."  Id.

8

test of the exempt status of police sergeants and lieutenants.  However, the suggestion by

Defendants that the Eight Circuit ruling in <u>Auer</u> was part of "well-settled" <u>per se</u> rule relating to

exemption of such position is (to say the least) an overreaching interpretation of that case.

Rather, the Eighth Circuit in <u>Auer</u> examined facts pertaining to each specific position and

reached a specific conclusion for each position.  In doing so, the Court found that three of the

twenty-three sergeant positions at issue were in fact were non-exempt.  <u>Id.</u> at 709, n. 3.  Further,

in that case there was no analysis of the issues presented here relating to whether the sergeants'

and lieutenants' decision-making in executing their duties was based upon independent

discretion.  Nor was there discussion in that case of the issue, raised here, that discretion is not

"independent" where it is governed by an application of external criteria ranging from standards

of practice taught by one generation of police officer to another, to standards taught at the police

academy, to standards codified in the laws of the state and federal government, to standards set

forth in collective bargaining agreements, to standards codified in Rules, Regulations, Policies,

Procedures, and General Orders of the Police Chief in the highly regulated Natick Police

Department.  There was no analysis of any such circumstances by the Eight Circuit in <u>Auer</u>.  Nor

was there an analysis that the decision making of purported supervisors was, in essence, the same

as that of police officers, and merely constituted another check in the system.  Therefore, given

that such factors are relevant to the analysis, the Eighth Circuit's ruling in <u>Auer</u> lacks persuasive

value in the present case.  Finally, given the regulatory changes of August 23, 2004 the Eighth

Circuit's 1995 ruling in <u>Auer</u> has even less persuasive force.

  In addition, the Eighth Circuit's ruling in <u>Auer</u> was not issued upon motions for summary

judgment and this is another reason why it is not persuasive.  Rather, the appeal to the Eighth

Circuit in <u>Auer</u> was issued after a five-day bench trial in which the District Court judge heard

evidence and made findings of fact and law.  With respect to the district court's factual findings, the Eighth Circuit stated, "We review the district court's finding of the amount of time devoted and the significance of the sergeants' managerial duties for clear error."  Id. at 712.

Moreover, in Auer the Eighth Circuit addressed plaintiffs' argument that the district court disregarded the factor of how much time the sergeants spent performing managerial tasks.  The Eighth Circuit rejected that argument, finding that the district court's findings evaluated the four factors that are examined where an employee performs exempt duties less than 50% of the time (said factors quoted above in Part II.A.3, "Primary duty", 29 CFR 541.700).  Id. at 712.  Yet, in its summary of the reasons why the district court's reasoning was sound under those four criteria, the Eighth Circuit stated at best a conclusory description of the evidence that was before the district court.  See, e.g., id. at 713.  Upon reading the Eighth Circuit ruling, one does not know the specifics of what were presented to the district court that lead to these conclusions, or what testimony the judge credited or discredited or found reliable.  Consequently, the Eighth Circuit's ruling in Auer has marginal persuasive value, especially where as here the issue is raised by defendants on motions for summary judgment, rather than after a trial where the four factors in question were evaluated and competing evidence was weighed.  Given that the exempt status issue is subject to a detailed, fact intensive inquiry, and that the reasoning of the Eighth Circuit in Auer omitted the vast majority of the detail, the Court here should find that Auer fails to provide even persuasive support for Defendants' present motion for summary judgment on the exemption issue.

Finally, the Eighth Circuit's ruling in Auer as well as the underlying district court case lacks persuasive force because both courts placed stock on the content of the job description for sergeants.  Regulations and precedent under the FLSA warn against placing any reliance on such

self-serving materials, yet the Eighth Circuit and the district court did not address this concern and therefore engaged in an analysis that deviated from the requirements of the regulations. This provides even further basis to consider the Eighth Circuit's ruling in <u>Auer</u> unpersuasive.

In addition, contrary to the apparent claim of Defendants in their memorandum of law at page 13, the ruling of the court in <u>Hilbert v. District of Columbia</u>, 23 F.3d 429 (D.C. Cir. 1994) has no relevance to this case. First, Defendants have misidentified the ruling in that case. The court found that lieutenants were <u>not</u> exempt because they were paid on a wage basis (rather than salary basis). The appeals court affirmation therefore related to that issue. Second, the case is not helpful here because it focuses on the salary basis test, not the duties test.

The Defendants also cite <u>Barner v. City of Novata</u>, 17 F.3d at 1256 (9th Cir. 1994) at page 13 of the memorandum of law. That case, like the Eighth Circuit's ruling in <u>Auer</u> discussed above, was an appeal after a trial in which the district court found that two lieutenants and two captains were exempt employees. The Ninth Circuit's ruling in <u>Barner</u>, for the most part, focuses on the salary basis test and whether a deduction from salary was sufficient to render the four plaintiffs (two captains and two lieutenants) exempt. However, in two paragraphs, the Ninth Circuit addressed the duties test as pertains to two of the four plaintiffs and found that the district court did not commit error when it found that said plaintiff satisfied the duties test. In so ruling, the Ninth Circuit as well provided only a cryptic account of the facts and did not address issues, as will be addressed below, relating to discretion. <u>Id.</u> at 1260-61. The court's ruling in <u>Barner</u> was so cryptic that, if taken at face value, it would mean that any individual who writes assignments on a "to do" list on a dry-erase board in the police station roll call room, is exempt. <u>Id.</u> Or it would mean that any police officer who is the "supervisor in charge" at a detail is exempt. <u>Id.</u> The appeals court ruling therefore reflects a cursory looks at a few facts that were in

the record after a trial and therefore the opinion of the Ninth Circuit fails to cite sufficient detail

to be persuasive.  Accordingly, the Ninth Circuit's ruling in Barner has no persuasive value on

the exempt issue presented here, especially where the issue here is presented upon a motion for

summary judgment, rather than after trial as in Barner.  Indeed, of the hundred plus courts that

have cited Barner, all cited Barner for its ruling on the salary basis issue and none for its "duties

test" holding.

    In addition Defendants cite Shockey v. City of Newport News, 997 F.2d 18 (4th Cir.

1993) for the proposition of it being "well-settled" that sergeants are exempt.  That case as well

fails to support that proposition.  The Fourth Circuit's ruling in Shockley was a review of

findings after a trial before the district court.  The standard of review, therefore, relating to

factual questions was for "clear error."  Id. at 26 (citing Icicle Seafoods, Inc. v. Worthington, 475

U.S. 709, 714 (1986) and Clark v. J.M. Benson Co., 789 F.2d 282, 286, n.2 (4th Cir. 1986)

("deviation from 50% 'rule of thumb' . . . requires consideration of the factual circumstances for

which a jury is more appropriate").  The key fact issue resolved by the district court was whether

the frequency and nature of the supervisory duties performed by sergeants was akin to that of a

"working foreman", rather than exempt executive.  Id. at 26.  The Court found that the district

court's conclusion that they were not akin to working foreman was not a "clear error," reasoning

as follows:

> Although in many respects each of the Sergeants discussed
> above resembles a "working foreman," the district court had ample
> reason to conclude that they had more responsibility over their
> units than the working foreman concept contemplates.  Their
> responsibilities extended not only to direct supervision of their
> subordinates, but also to the evaluation of the subordinates and to
> the management of both the people and equipment assigned to
> their units.  These responsibilities required the exercise of
> considerable discretion, discretion that typically is not given to a
> working foreman.  From our review of the record, we conclude

> that the evidence supported the district court's finding that the
> Sergeants' primary duty was management. . . .

Id. at 27-28.

The foregoing shows that the issue is usually suitable for resolution by trial rather than on motions for summary judgment, and that the ruling did not establish any "well-settled" rule that all sergeants per se are exempt. Indeed, as shown below, Plaintiffs demonstrate that they do not engage in "evaluation of subordinates", and do not exercise "considerable discretion" when they communicate to subordinates that they are failing to follow procedures established by the Police Chief. Further, any claim that Shockley illustrates a overall exemption for sergeants is false because in that case some of the sergeants were found non-exempt and the matter was referred back to the district court for the development of further evidence. If anything, therefore, Shockley shows that the exemption issue is a fact intensive issue that is suitable to resolution only by a jury in most cases.

Defendants also cited Anderson v. City of Cleveland, Tenn., 90 F. Supp. 2d 906 (E.D. Tenn. 2000) and Nickell v. City of Lawrence, Kan., 352 F. Supp. 2d 1147 (D. Kan. 2004). Those cases delve into the details of what factors rendered the sergeants and lieutenants exempt in those cases. The persuasive value of those district court cases from Tennessee and Kansas is minimal given, inter alia, that the duties that they found existed for those sergeants and lieutenants in those cases are distinguishable from this case, including on the issue of evaluations, input that is given particular weight, independent discretion, and other factors.

Finally, Plaintiffs refer the Court to the following cases where courts on motions for summary judgment either rejected a defendant motion that sergeants or lieutenants were exempt, or found such positions non-exempt. These cases further refute the claim of any supposed "well-settled" per se rule that sergeants and lieutenants are exempt. I.A.F.F. Local 2141 v. City of

13

Alexandria, 720 F. Supp. 1230, 1233-34 (E.D. Va. 1989) ("Supervising, while an important

aspect of management, is not the equivalent of management.  This is true of the patrol sergeant,

the tactical sergeant, the vice/narcotics sergeant, the truck lieutenant, and the swing lieutenant.

In summary, plaintiffs holding [these] positions . . . are entitled to premium overtime because

their primary duty is not management as defined by the labor regulations"); Fraternal Order of

Police Lodge 3 v. City of Baltimore, 1996 U.S. Dist. LEXIS 22502 at *31 (D. Maryland 1996)

(denying motion for summary judgment; exempt status of sergeants and lieutenants); Horrocks v.

Daggett County, 2006 U.S. Dist. LEXIS 65236 (D. Ut. 2006) (jail commander); Nixon  v. The

City of Junction City, Kansas, 707 F. Supp. 473, 477 (D. Ka. 1988) (lieutenants and sergeants).

### C.    Burden Of Proof On Exemption Issue And Summary Judgment Standard.

The exempt status of the plaintiffs is an affirmative defense and therefore Defendants

bear the burden of proof.  That burden, especially at summary judgment as suggested above, is

particularly heavy.  See, e.g.,  Clark, 789 F.2d at 286, n.2 (summary judgment not appropriate on

issue of "primary function" being managerial where employee performs such duties less than

50% of the time).  One Court observed as follows in rejecting a municipal employer's motion for

summary judgment on the exempt status of Superior Officers in a municipal police department:

> Before reaching each of the arguments, however, the Court should
> note that the applicability of an exemption (and consequently
> inapplicability of the FLSA's general overtime pay requirement) is
> an affirmative defense, not a denial, and as such the City bears the
> burden of proving it.  This substantially raises the hurdle the City
> must overcome to win summary judgment. As the Fifth Circuit
> recently stated, "To obtain summary judgment, if the movant bears
> the burden of proof on an issue because as a defendant he is
> asserting an affirmative defense, he must establish beyond
> peradventure all of the essential elements of the defense to warrant
> judgment in his favor."

Jackson v. City of San Antonio, 2006 U.S. Dist. LEXIS 62753 (W.D. Tx. 2006) (quoting

Chaplin v. Nations Credit, 307 F.3d 368, 372 (5th Cir. 2002); Fontenot v. Upjohn Co., 780 F.2d

1190, 1194 (5th Cir. 1986).

Applying that burden the Court in Jackson discussed the exemption issue and found that

summary judgment was not in order for sergeants:

> Similarly, the Court notes its general reluctance to finding
> such exemptions applicable. The United States Supreme Court,
> quoting from a speech by President Franklin D. Roosevelt,
> described the FLSA as follows: "The Fair Labor Standards Act
> was designed to extend the frontiers of social progress' by insuring
> to all our able-bodied working men and women a fair day's pay for
> a fair day's work.'" Accordingly, the Supreme Court continued,
> "Any exemption from such humanitarian and remedial legislation
> must . . . be narrowly construed, giving due regard to the plain
> meaning of statutory language and the intent of Congress. To
> extend an exemption to other than those plainly and unmistakably
> within its terms and spirit is to abuse the interpretative process and
> to frustrate the announced will of the people." A.H. Phillips, Inc.
> v. Walling, 324 U.S. 490, 493, 65 S. Ct. 807, 89 L. Ed. 1095
> (1945), quoting from Message of the President to Congress, May
> 24, 1934.

> This Court thus views the City's arguments cautiously. Not
> only must the City establish beyond doubt the facts underlying its
> claimed exemptions, but it must also establish that the law, even
> when construed narrowly, yields a judgment in its favor when
> applied to those facts.

> . . .

> Viewing these facts under the totality of the circumstances
> and bearing in mind that the City must prove "beyond
> peradventure" all the essential elements of the "executive
> exemption" defense to warrant judgment in its favor, the Court is
> of the opinion that the City has failed to meet its burden as to this
> claim. The City's evidence goes to show that the Officers had *some*
> managerial duties. It does not show that such duties were the
> *primary* occupation of these Officers. Therefore, the Court finds
> that it simply does not have "all the facts in the particular case" nor
> a sense of "the character of the Officers' jobs as a whole." The
> Court cannot find at this stage that the executive exemption applies

to these Officers, and, therefore, the City's request for summary judgment on this point is DENIED.

Id. at *11 to *12.

Based upon the foregoing Plaintiffs next apply the principles reviewed above to the summary judgment record and demonstrate that they are entitled to partial summary judgment on the non-exempt status of the Patrol Officer plaintiffs including the Detectives as well as Superior Officer Plaintiffs.  Further, Plaintiffs argue in the alternative that, even assuming arguendo that the Court does not grant Plaintiffs' partial summary judgment on the exempt status of one or more category of plaintiffs, then the Court should find that there is sufficient conflict in the record that the Defendants' Partial Motion For Summary judgment on the exempt status issue should be denied.

### III.     ANALYSIS OF EACH CATEGORY OF EMPLOYEE

### A.     Patrol Officers including those assigned as Detectives.

Based upon the analysis set forth above, summary judgment should be granted establishing that none of the Patrol Officers, including those assigned to the Patrol Division and those assigned as Detectives to the Investigative Services Division, are exempt employees.

The facts as to which there can be no genuine issue show that they perform not even one element of the Executive Function, including managerial functions, direction, and perhaps even more obviously no role in hiring, firing, advancement, promotion or any other change in status of employees.  Nor do they perform even one element of the Administrative Exemption.  The current regulations expressly hold that Detectives and Patrol Officers are non-exempt and explain why the supposed "special assignments" that Defendants assert are nothing more than non-exempt work of employees working in a particular field of special knowledge.  29 C.F.R. §541.3.  The vague allegations of Defendants on this issue fail to overcome Plaintiffs specific

facts which show that the work is non-exempt.  Therefore, there is no genuine material issue as to the facts bearing on this issue, and all Patrol Officers regardless of where they are assigned are non-exempt.  (PSOF at ¶¶29-30, and ¶¶54-55)  <u>Reich v. New York State,</u>, 3 F.3d 581, 588 (2nd Cir. 1993) (holding that state police investigators are non-exempt and reasoning:  "Without question, the BCI is in the law enforcement "business."  And, it remains undisputed that the primary function of the Investigators within that business is to conduct -- or "produce" -- its criminal investigations.  Investigators do not administer the affairs of that bureau; and the State does not argue that they do.  We agree with the district court that the primary activities of the BCI Investigators place them squarely on the "production" side of the line. Accordingly, the Investigators do not fall within the administrative exemption to the FLSA; and the State must comply with the overtime provisions of the Act.");  <u>Bothell v. Phase Metrics, Inc.</u>, 299 F.3d 1120, 1126 (9th Cir. 2002) (denying motion for summary judgment on administrative exemption, and discussing "Administration/Production Dichotomy").

### B.    <u>Administrative Officer – Sgt. Fitzpatrick.</u>

Based upon the analysis set forth above, summary judgment should be granted establishing that the Administrative Officer, Sgt. Fitzpatrick, does not fall under any exemption, including the administrative exemption.

Defendants in their analysis of Sgt. Fitzpatrick do not clearly concede that Sgt. Fitzpatrick does not fall under the Executive Exemption, although they focus mainly on the Administrative Exemption.  With respect to the former, the facts as to which there can be no dispute show that Sgt. Fitzpatrick engages in no managerial duties, directs no employees, and that he sporadically (3 instances out of 23) gives input on hiring, promotions and discipline, but with regard to that there is no particular weight placed upon his suggestion.  (PSOF at ¶¶ 17,

32(a)-32(i))  The lack of a standard in considering such input is corroborated by the testimony of other superior officers on the Command Staff who have all testified, in varying degrees, to the sporadic nature of the Chief soliciting their input, the lack of any codification of what weight will be placed in their input or stating a requirement that such input be obtained, and the lack of any consistency in the Chief actually considering that input in more than a cursory manner. (PSOF at ¶¶15, 25(f), 31(f) and (g), 33(d)(e)(f), 36, 43, 44, 46, 53)  Rather, there are no printed guidelines for taking his input, what weight to place upon it, what to do if his input is not sought as was the case the vast majority of the time, and only the self-serving litigation testimony of the Chief as to a arbitrary subjective standard that he "imposes on himself."  (PSOF at ¶56(a)(b); see ¶¶15, 25(f), 31(f) and (g), 32(a) to (i), 33(d)(e)(f), 36, 43, 44, 46, 53)  Additionally, the system of hiring and promoting is rote and based upon civil service standards which reduce if not eliminate (as they are designed to do) the impact of personal opinions and subjective elements on the hiring and promotional process; even if an officer expressed an opinion in support of a candidate it would have no bearing on the selection unless there was a disqualifying condition.  (PSOF at ¶34, ¶31(f)(ii)).  In this context, there can be no can be no genuine issue as to the facts that he performs not even one element of the Executive Function, let alone performing it as a "primary function", and that therefore summary judgment should be granted finding that this exemption is not applicable to him as a matter of law.  (PSOF at ¶32).

With respect to the Administrative Exemption it is agreed that Sgt. Fitzpatrick performs several administrative functions.  But the Town's burden is to show that, in doing so, Sgt. Fitzpatrick engages in "independent discretion."  There are no specifics in the material submitted by the Town which could satisfy the summary judgment standard to show such discretion.  By contrast the first hand testimony of Sgt. Fitzpatrick in his affidavit forecloses any conclusion

other than that he does not use independent judgment in carrying out his administrative functions, and this is corroborated by the Chief's own admission that Sgt. Fitzpatrick uses "no discretion" in his job.  (PSOF at ¶32)  Since as a matter of law, both functions are required, it follows that summary judgment should be granted on the issue that Sgt. Fitzpatrick is non-exempt.  (PSOF at ¶32)

> ### C.     Traffic Safety Officer – Sgt. Lauzon And Former Sgt. Davis.

With respect to the Traffic Safety Officer, here as well, the Town claims he falls under both the Executive and Administrative Exemptions.  With respect to the Executive, there can be no issue as to the facts and as a matter of law the court should find that he is non-exempt.  In that regard, Sgt. Lauzon (and his predecessor Sgt. Davis) have simply applied police knowledge, focusing on traffic concerns.  (PSOF at ¶33)  They are no different than other non-exempt patrol officers in this regard to the extent that the police analysis that they apply to such situations is not unique to them, but rather standardized principles in the field of police work.  Those standardized principles are all from external sources and from longstanding techniques of police work.  (PSOF at ¶33; see also at ¶29(a)(c)(e), 54-55)  Further he engages in none of the duties under the managerial prong and therefore it is patent that he does not spend more than 50% of his duties on such tasks or otherwise engage in such tasks as his "primary" function.  (PSOF at ¶33(a)(d)(f)).  Therefore, the act of the Traffic Safety Officer engaging in traffic safety activity cannot be considered managerial, and otherwise the record shows that he does not engage in such managerial functions.

The claim that he directs other employees is also false.  He directs no employees.  (PSOF at ¶33)(a).  The Town's allegations are non-specific, and at best show that he communicates laterally with another sergeant to discuss the need for a specific traffic patrol activity.  This

collaboration is not direction and the patrol officers who may perform the "directed patrol" are simply engaging in an act of police work that they themselves could have decided upon, i.e., observe facts and determine whether to take enforcement action, decide where to patrol in a given area based upon longstanding police techniques. (PSOF at ¶33; see also at ¶29(a)(c)(e), 54-55) Sgt. Lauzon's function is merely one of a police officer that is afforded the benefits of more data than would normally come to a patrol officer and, as a consequence, he has the opportunity to apply the same police analysis that patrol officers perform, but based upon facts that provide greater guidance. It is for this reason that under the current regulations at 29 CFR §541.3 that such police work is non-exempt, just like the sub-category of detective work is non-exempt. There is no issue as to the fact that he engages in either no direction or little if any direction of employees. (PSOF at ¶33)

Further on the issue of management status, the facts show that he has no role whatsoever in hiring, firing, discipline, or any other similar feature of employment status. (PSOF at ¶33(d)) The Town's non-specific allegations, confronted by Plaintiffs specific facts, and the undisputed fact that Sgt. Lauzon fails to engage in any executive function compels the conclusion as a matter of law that he is not exempt. Even if he did provide input on such matters, as demonstrated above in the discussion of Lt. Fitzpatrick, the record shows that no specific weight is accorded to such input. (PSOF at ¶56(a)(b); see ¶¶15, 25(f), 31(f) and (g), 32(a) to (i), 33(d)(e)(f), 36, 43, 44, 46, 53) While on the command staff since July 2005, not even once has he provided input on such matters. (PSOF at ¶33(d)(e)(f))

Additionally, with respect to the Administrative Exemption, it as well does not apply. The Town places emphasis on input that Lauzon gives to the Town safety committee. But that input is merely reporting facts, as a police patrol officer in the field may in discussion with

motorists at a crash investigation or a detective in discussion with the victim of a crime.  (PSOF at ¶33)  In all cases, the police officer is applying police knowledge and training to state relevant facts and that is all that Sgt. Lauzon does when reporting to the citizens and others on the Town's safety committee.  (PSOF at ¶33; see also at ¶29(a)(c)(e), 54-55)  That, combined with the undisputed fact that he exercises no function under the Administrative Exemption, and that he does not exercise independent judgment, establish as a matter of law that he is not an exempt Administrator.  (PSOF at ¶33, especially at ¶33 (b) and (c))  The Court should therefore sustain his status as non-exempt.

### D.    **Patrol Sergeants and the Former Detective Sergeant.**

The Town also contends that the Patrol Sergeants are exempt administrators.  There can be no dispute to the facts relating to this issue and as a matter of law the Court should reject the Town's position and find that the Patrol Sergeants are all non-exempt.  This includes all Patrol Sergeants in the Patrol Division, as well as the former Sergeant-Detective position held by Lt. Pagliarulo before he was promoted (at which time that position was not replaced).

Starting with the third element of the analysis relating to Executive Exemption status, the Town is unable to prove, and the facts to which there can be no dispute show, that none of the Sergeants have any meaningful input in affecting decisions relating to hiring, firing, discipline, or any other similar feature of employment status, and/or that such input is "given particular weight."  (PSOF at ¶¶21, 28, 45, 48, 50, 52, 53, 56(d), 56(e), 56(h))  The Town's non-specific allegations, confronted by Plaintiffs specific facts regarding the non-participation of Sergeants in these areas reflect that there can be no genuine material issue as to this issue.  When they do get involved on rare occasions, if at all, it relates to reporting facts up the chain of command, rather than making findings.  (PSOF at ¶21 and ¶28(c))  This is true regardless of whether the person

holds the special designation Area Commander.  (PSOF at ¶24)  And, with respect to

Background Investigations, the record shows that they are simply reporting facts about criteria

established by the Chief and do not entail independent discretion.  (PSOF at ¶¶40, 41, 43, 45)

Further, even assuming <u>arguendo</u> that there was something other than rare, sporadic input

given by some patrol sergeants in this area, still that would not be sufficient because there can be

no dispute that such input is not given any particular weight.  Rather, the overwhelming body of

evidence in the summary judgment record reflects that the Chief chooses when and if he will

obtain input from others about such matters, that he has only a subjective, arbitrary, self-imposed

criteria relating to the weight that should be assigned such matters, and that the testimony of the

Chief as to such arbitrary self-imposed standard is self-serving, subjective, and being articulated

for the first time in these proceedings (and reflected in no documents).  (PSOF at ¶56(a)(b); see

¶¶15, 25(f), 31(f) and (g), 32(a) to (i), 33(d)(e)(f), 36, 43, 44, 46, 53)  Likewise, civil service

standards effectively remove the ability to consider subjective factors or factors other than

blatant disqualifying conditions in hiring and promotional decisions.  (PSOF at ¶34, ¶31(f)(ii)).

If anything is clear, therefore, the Court should find that there is no genuine issue that there is no

particular weight given to input, even setting aside that input is rarely if ever given, and that

there is no system for obtaining such input from Patrol Sergeants.

With regard to the issue of direction and management duties, the Sergeant's direction is

limited to enforcing rules that are established by others, not by any rules that they personally and

independently establish.  (PSOF at ¶¶17, 21, 28(a-1)-(a-5))  Therefore, like the discretion

concern in <u>Donovan v Burger King Corp.</u>, 672 F.2d 221 (1st Cir. 1982), in this case as well, the

fact that Patrol Sergeants enforce policies created by others fails to support exempt status.

Further, with regard to the issue of direction and management it is not the "primary

function" of the jobs of the Patrol Sergeants. (PSOF at ¶21, 27, 28) None of the indicia of management other than sporadic direction, and that accounts for a small fraction of the time spent on each shift. (PSOF at ¶28 in general, and at ¶28(l) in particular)

Given that the Patrol Sergeants perform such direction (or managerial functions) far less than 50% of the time, the regulatory factors must be examined to determine if it is a primary function. For the following reasons the facts as to which there can be no dispute show that such managerial duties are not the primary function. In that regard the duty to provide sporadic guidance and review of reports and return reports sometimes when there is a discrepancy, is not "more important" than the duty of the Patrol Sergeant to do what they do the vast majority of the time which is apply police knowledge like all patrol officers do and make decisions based upon training and external standards, and engage in other non-supervisor functions like answering questions from dispatchers (just like patrol officers could), the public, reading reports from higher ranks at roll call (and clerical function), monitoring the station security, and booking prisoners, among others. (PSOF at ¶28(a-1), 28(a-5), generally at ¶28) On the issue of the sergeant's relative freedom from direct supervision it is true that sergeants, like patrol officers, are so well trained in the Natick Police Department that they require little guidance, but that lack of guidance or direct supervision is a function of the general police competence of the staff and that matters are so well formatted that each incident has a response determined. (PSOF at ¶28(a-5)) The external rules that dictate the course of a Sergeant's work, therefore, are a substitute for direct supervision and akin to it to the extent that those rules are established by the Chief.

Finally, with respect to the former Sergeant-Detective position, the foregoing analysis is applicable. The main difference is that the Sergeant-Detective directed only one person and

therefore on its face the former Sergeant-Detective did not satisfy the requirement that he direct two or more full time employees, as is required to be an exempt Executive. (PSOF at ¶59)

For the above reasons, the Court should find that the there is no genuine material issue as to the facts bearing on the exempt status of Patrol Sergeants, and former Sergeant-Detective Pagliarulo, and that as a matter of law those positions are non-exempt. This is reinforced as well by the preamble to the current regulations, which state or imply that mid-level police supervisors shall not be considered exempt. 29 CFR §541.3(b). It is also reinforced by the undisputed fact that their work focuses on one shift of the Patrol Division, rather than a "customarily recognized division or subdivision of the enterprise. 29 CFR §541.3(c) (d).

### E.    Information Services/Communications Division Commander – Lt. Brian C. Grassey.

The Court should also find that there is no dispute as to the facts relating to the position of the Lieutenant in charge of Information Services and Communications, Lt. Grassey, and as a matter of law his position is non-exempt. The following points support this conclusion.

First, turning first to the issue of the authority to effectively recommend hiring, firing, promotion, discipline or other advancement or similar change in job status, the Court should find as shown above that Lt. Grassey is no exception to the undisputed evidence that shows that his input is given sporadically, not sought, and when given not considered or disregarded. This is shown not only in general, but in particular with respect to Lt. Grassey. (PSOF at ¶¶31(a)-(g); see also PSOF at ¶¶56(a)(b), 15, 25(f), 32(a) to (i), 33(d)(e)(f), 36, 43, 44, 46, 53)

Second, in any event, any input given is not given any particular weight. The rich factual detail in support of this conclusion shows that there can be no dispute as to this point. Even if input is given, if it is only subject to, as here, a subjective, arbitrary standard, made-up by the Chief, in his own mind, and not codified anywhere or articulated ever before this litigation, it

follows as a matter of course that such input is not given any particular weight.  (PSOF at 56(a); see also discussion of this issue in section above regarding  Sgt. Fitzpatrick)  Likewise, civil service standards render subjective input, even if it were given, of little or no weight.  (PSOF at ¶34, ¶31(f)(ii)).

Third, with respect to direction and managerial duties there can be no dispute that these are not Lt. Grassey's primary function.  Lt. Grassey may respond to questions from dispatchers, but this is very infrequent, and when it occurs it is simply a clarification of how to proceed in a particular case based upon mandates of the Chief or other standard police knowledge.  (PSOF at ¶31(d)-(e))  A patrol officer could just as readily answer the questions posed and it requires no independent judgment for Lt. Grassey to respond to those inquiries.  With respect to the two transcriptionists, Lt. Grassey engages in nothing more than clerical interchange with them.  They get recordings of reports and they transcribe them.  Lt. Grassey reads them.  If one report needs to be transcribed earlier, it is not because it is Lt. Grassey's druthers to speed things up; but instead because of a mandate by law that the report be done immediately or the logistics of the Court liaison officer going to court.  Finally, with respect to the Court Liaison Officer, Lt. Grassey engages in no direction of him.  They see each other for a few minutes in the morning, sometimes the Court Officer tells Lt. Grassey to correct a report that contains an error, and then the Court Officer is gone for the day.  (PSOF at ¶31(a)(iv))  None of the foregoing interchanges are meaningful direction and none of the guidance, if any offered, is based upon independent judgment and discretion and none of it reflects that direction is a primary function.

This same analysis holds true for the report review process which is simply an application of the external standards of report writing established by the Clerk of the Court, the law, and the Chief.  His function in reviewing the reports therefore is nothing more than that of a seasoned

police officer who is applying routine police knowledge in another context, this time to reviewing a report, instead of investigating a crime, or determining how to address a traffic concern. The interchange with officers about corrections therefore is not based upon anything more than one colleague advising another of a quality check concern and the other correcting it. (PSOF at ¶31(a)(iii))

There are no other functions that Lt. Grassey engages in that are even colorably managerial, and his participation on the Command Staff does not implicate any such managerial duties, but rather is a forum most of the time for him to listen to the Chief (or sometimes the Chief and the Executive Officer) about the Chief's description of what is happening in the Department. (PSOF at ¶¶15, 31(f), ¶43, ¶56(g)). As shown above, there is no input at those meetings which is given particular weight or which is solicited in any systematic way. This reinforces that his primary function is not to engage in managerial duties.

Based upon the foregoing Plaintiffs respectfully move that the Court find no material issue of fact exists with respect to the position held by Lt. Grassey and that as a matter of law his position is non-exempt.

### F.    Investigative Services Division Commander – Lt. Mabardy And Former Lt. Alfred Grassey.

The Court should also find that there is no dispute as to the facts relating to the position of the Lieutenant in charge of Investigative Services, a position held by Lt. Mabardy since August 2002, and Lt. Alfred Grassey before that. Given those facts the court should find that this position as well is non-exempt. The following points support this conclusion.

First, turning first to the issue of the authority to effectively recommend hiring, firing, promotion, discipline or other advancement or similar change in job status, the Court should find that Lt. Mabardy is no exception to the undisputed evidence that shows that his input is given

sporadically, not sought, and when given not considered or disregarded.  This is shown not only in general, but in particular with respect to Lt. Mabardy.  (PSOF at ¶¶15, 30)

Second, in any event, any input given is not given any particular weight. See the analysis above of this issue regarding Sgt. Fitzpatrick and the others.  (PSOF at ¶56(a)(b); see ¶¶15, 25(f), 31(f) and (g), 32(a) to (i), 33(d)(e)(f), 36, 43, 44, 46, 53)  And civil service standards effectively remove the ability to alleged weight to such subjective factors.  (PSOF at ¶34, ¶31(f)(ii)).

Third, with respect to direction, Lt. Mabardy engages in police work that entails communicating with his colleagues, detectives, about the course of their investigation.  Routinely this does not involve any orders being given.  There is rarely a time when there is not a consensus on how to proceed in an investigation and, in any event, given the volume of cases, it would be possible for Lt. Mabardy to engage in more than marginal direction of the investigations.  His direction is minimal and is based upon an application of existing police standards, rather than any rules that he has devised himself.  Lt. Mabardy in his affidavit testified that it is the collaboration, not the rare instances when he needs to require investigation in accordance with his view, that is the primary function of this job.  (PSOF at ¶30, especially at "Coordinating investigations")  When he assigns cases, this as well is a clerical task not requiring any independent discretion.  (PSOF at ¶30 "Assigning cases – clerical task")

This same analysis holds true for the report review process which is simply an application of the external standards of report writing established by the Clerk of the Court, the law, and the Chief.  His function in reviewing the reports therefore is nothing more than that of a seasoned police officer who is applying routine police knowledge in another context, this time to reviewing a report regarding a crime investigation, instead of reviewing facts like a patrol officer at the scene of a motor vehicle crash, or by the traffic safety officer addressing concerns about

traffic.  The interchange flowing from report review is nothing more than another step in ensuring the quality of the police work product that flows from the unit and that there are no discrepancies.  (PSOF at ¶30 "Report Review").  Finally, with respect to Lt. Mabardy's ability to recommend a patrol officer for transfer to the detectives unit, this is so rare that it cannot be considered alone, or in combination with the above, to be the primary function of his job.  (PSOF at ¶30 "Power to assign").

With respect to Lt. Mabardy's participation on the Command Staff meetings, this does not implicate any managerial duties.  First, often times he is not even invited to attend, and when he does his input if offered is sometimes not event considered.  (PSOF at ¶¶15, 31(f), ¶43, 56(g)). The Command Staff meeting for purposes of Lt. Mabardy as well is routinely a forum for him to listen to the Chief (or sometimes the Chief and the Executive Officer) about the Chief's description of what is happening in the Department.  (Id.)  As shown above, there is no input at those meetings which is given particular weight or which is solicited in any systematic way. (PSOF at ¶56(a); see also discussion under Sgt. Fitzpatrick above)

Based upon the foregoing Plaintiffs respectfully move that the Court find no material issue of fact exists with respect to the position held by Lt. Mabardy in the Investigative Service area as a matter of law is non-exempt.

**G.    Patrol Services Division Commander –**
**Lt. Pagliarulo and former Lt. Alfred Morgan.**

The facts for which there can be no dispute show as a matter of law that the position of Commander of the Patrol Division is a non-exempt position.  This position was previously held by Lt. Alfred Morgan and has been occupied by Lt. Pagliarulo after he was promoted to lieutenant in November 2003 (i.e.,  reassigned from his position as Sergeant Detective discussed above).  The reasons for this conclusion are as follows:

28

First, on the issue of the authority to effectively recommend hiring, firing, promotion, discipline or other advancement or similar change in job status, the Court should find as shown above that Lt. Pagliarulo is no exception to the undisputed evidence that shows that his input is given sporadically, not sought, and when given not considered or disregarded.  Second, as discussed in greater detail above in the section relating to Sgt. Fitzpatrick, Lt. Grassey and others, there is no dispute as to the fact that, even if input is given, is it not given any particular weight.  (PSOF at ¶56(a)(b); see ¶¶15, 25(f), 31(f) and (g), 32(a) to (i), 33(d)(e)(f), 36, 43, 44, 46, 53)  Third, with respect to direction, although Lt. Pagliarulo schedules officers, this is simply based upon an application of specifications established by the Chief (and union contracts), not personal independent decisions he makes.  Consequently, he is non-exempt.  (PSOF at ¶25)

Based upon the foregoing undisputed facts, the Court should find that the Town's motion for summary judgment on Lt. Pagliarulo's status exempt should be denied, and that Plaintiffs' cross motion to establish his status as non-exempt should be granted.

**H.    <u>Executive Officer – Lt. Peter Mason.</u>**

The Executive Officer Peter Mason is referred to as second-in-command to the Chief.  Motion for summary judgment should be granted declaring his non-exempt status based upon certain facts for which there can be no dispute.  First, as with the other members of the Command Staff, any input that Lt. Mason gives is not given any particular weight by the Police Chief as reviewed in detail in the sections above regarding Sgt. Fitzpatrick and Lt. Grassey.  (PSOF at ¶¶11, 15, 17, 25(f), 31(f) and (g), 32(a) to (i), 33(d)(e)(f), 36, 43, 44, 46, 53, 56(a)(b))  Second, his actions are guided by external criteria, rather than any standards that he personally devises.  (PSOF at ¶11, 17)  Therefore, any limited direction that he may give is guided by criteria other than his own independent criteria.  Moreover, as second-in-command, in any event,

there is reduced opportunity for Lt. Mason to direct employees.  Accordingly, the Court should find that, as a matter of law, Lt. Mason as Executive Officers is non-exempt.

        I.        **Former Community Services Officer – Lt. Mabardy.**

With respect to the former Community Services Officer, a position held by Lt. Mabardy for years prior to his reassignment to the head of the Detectives unit in August 2002, his work there was all non-exempt.  The undisputed facts show that the vast sum of the work that he performed as Community Services Officer had to do with interacting with the community and establishing links between such groups and the Police Department.  He directed no employees and had no involvement in hiring, firing etc., and in any event, any input that he gave sporadically as a member of the Command Staff was not considered and in any event not subject to any particular weight.  (PSOF at ¶¶15, 43, 57)  Likewise, the undisputed facts in Lt. Mabardy's affidavit show that he engaged in none of the indicia falling under the Administrative Exemption.

For these reasons motion for summary judgment should be granted establishing the non-exempt status of Lt. Mabardy when he held the position of Community Services Officer until August 2002 when he was reassigned to the detectives' area.

### IV.    CONCLUSION

Based upon the foregoing Plaintiffs respectfully oppose Defendant's motion for partial summary judgment on the exemption issue and ask that said motion be denied.  Further, based upon the foregoing Plaintiffs' move for partial summary judgment on the issue of the non-exempt status of each Patrol Officer and Superior Officer Plaintiff in this matter.

Respectfully submitted,

For Plaintiffs,

By Plaintiffs' Counsel:

_/s/ Jack J. Canzoneri_____
Jack J. Canzoneri, BBO #564126
McDonald, Lamond & Canzoneri
Cordaville Office Center
153 Cordaville Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600

Dated:  November 20, 2006

## RULE 7.1 CERTIFICATION

I, Jack J. Canzoneri, hereby certify that I have conferred and have attempted in good faith to resolve or narrow the issue in the above-captioned matter and that the parties are unable to resolve the issues presented therein.

Dated:  November 20, 2006        _/s/ Jack J. Canzoneri_____
                                 Jack J. Canzoneri.

## CERTIFICATE OF SERVICE

I, Jack J. Canzoneri, hereby certify that I have this day via the Electronic Case File system, served a copy of the foregoing Plaintiffs Memorandum of Reasons In Support of Partial Motion For Summary Judgment (Exemption Issue) upon opposing counsel John P. Flynn, Jr. Esq., Karis North, Esq., Kathryn Murphy, Esq., and Geoffrey B. McCullough, Esq., Murphy, Hesse, Toomey & Lehane, LLP, 300 Crown Colony Drive, P.O. Box 9126, Quincy, Massachusetts  02269.

Dated:  November 20, 2006        _/s/ Jack J. Canzoneri_____
                                 Jack J. Canzoneri