THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Robert F. Murphy, III, Lead Plaintiff for
Patrol Officer Plaintiffs, et al. and,

Brian C. Grassey, Lead Plaintiff for
Superior Officer Plaintiffs, et al.,

    Plaintiffs,

    v.

Town of Natick, et al.

    Defendants

USDC Case No.: 04-11996 RGS

### Affidavit of John Haswell

I, John Haswell, attest to the following based upon my own personal knowledge:

1. My name is John Haswell and I reside in Natick Massachusetts.

2. In 1989 I started full time as a patrol officer in the patrol division of the Town of Natick Police Department. Prior to that I worked on a reserve capacity for the Town's Police Department. From the start of my employment to present I have remained in the civil service classification "patrol officer", even though in about 1995 I was reassigned as a patrol officer within the Natick Police Department from the Patrol Division to the Investigative Services Division as a detective. The reassignment is a temporary assignment, not a permanent assignment even though I have been in the detective assignment for the past eleven years. This is the same for all detectives, regardless of how long they have been assigned as detectives. I was reassigned by order of the Chief. The current Commander of the Investigative Services Division is Lt. Mabardy. Prior to Lt. Mabardy the Commander was Alfred Grassey. Based upon my own personal observations and work under these two lieutenants, I can state the manner in which the Investigative Services Division is operated under the leadership of Lt. Mabardy is essentially the same as the way it functioned under the leadership of Lt. Grassey.

3. _Academy training._ I attended the police academy in the mid 1980s in Needham for 18 weeks. While at the Academy I was trained in all the specific techniques of law enforcement for police officers in Massachusetts as well as the General Laws affecting police work and how it guides such techniques. Some examples of this include the following:

1

      **(a)**    <u>Vehicle Crash Investigation</u>.  Training in this regard included learning the specific procedures relating to laying the foundation of an motor vehicle crash investigation including the specific information that should be included in a "report", what should be done with respect to "investigation", the purposes of reporting and investigating including enforcement of traffic law to facilitate public safety on the roads and deter unsafe practices, educate drivers and the community, and prevent accidents.  With regard to this I was also taught about the elements of investigation including witness observations, interviewing all available witnesses, the importance of gathering information relating to the accident's time, place and type of accident, and the final resting place of the vehicle in context of these issues.

      **(b)**    <u>Causes for vehicle crash.</u>  Training in this regard included examining the reasons why the driver did not or was not able to evade the accident.  This includes considering the driver's decision as to the speed of the vehicle prior to the accident and whether excess speed was factor in the accident; driver distraction due to any number of factors (i.e., children fighting car, conversation); impairment of senses due to vision, glare, auditory capacity, knowledge of traffic laws, driver skill and years of driving experience, driver motivation such as anger, fear, timidity, and exhibitionism, and ailments caused by medicines, drugs, poisons (like carbon monoxide), fatigue, or heart or other health conditions.  Training also instructed officers to consider the condition of the vehicle and its potential cause (headlights, wheels, brakes, windows, windshield wipers, and the condition of the road and weather.  There is also specific training on what observations to make of the driver and determining whether the driver is Operating Under the Influence ("OUI") within the meaning of G.L. c. 90.  With regard to these, as well, training involved information on what is probable cause and what steps can and cannot be taken with or without probable cause, as well as the circumstances that allow the officer to require the driver to take a Field Sobriety Test ("FST") and the implications of driver refusal, as well as the appropriate use of a breathalyzer.

      **(c)**    <u>Other details relating to vehicle crash response.</u>  Training also included other longstanding police techniques relating to what to do when responding to a vehicle crash such as where to place the police cruiser, which vehicle to attend to first in a multi-vehicle crash, using lights and siren when traveling to a crash scene after radio dispatch, crowd control, special traffic control techniques depending on the location of the vehicles, what information to collect from drivers and passengers, and what information if any to collect from the interior of the vehicle.

      **(d)**    <u>Domestic disturbances and other response situations.</u>  Training also included information on the criteria for report writing, investigation, and other longstanding police techniques relating to other response situations, with detail similar to that noted above for vehicle crash situations.

**(e)** Criminal procedure. At the academy I was given detailed information on the constitutional and statutory standards governing criminal procedure and how those standards affect police work. This includes, e.g., standards relating to probable cause, affording citizens' their constitutional rights, how to not endanger the investigation by improper conduct under those standards, and review of case law applying such constitutional and statutory standards.

**(f)** Criminal law. I was also given detailed information on the statutes of the Commonwealth of Massachusetts that a police officer must enforce. I learned which offenses are ones for which an individual may be arrested; which require a warrant; and key exceptions to these general rules including those set forth in statutes. I also learned the importance of each element of the crime and why an investigation must identify each element.

**(g)** Motor Vehicle law. In addition to learning how to investigate a vehicle crash scene as noted above, I also learned each of the statutes that a police officer must enforce relating to motor vehicles, the elements pertaining to each offense, and the importance of identifying the existence of those elements. There was also specific focus on which motor vehicle laws are arrestable offenses.

**(h)** Elements of self defense. At the Academy, as well, I was given detailed information on techniques of self defense and the laws applicable to that. I was taught about handcuffing technique for passive situations and force situations. There was also role playing in situations such as bar room brawls and how to handle those situations.

**(i)** Driving. I was taught about driving a police cruiser and the laws that relate to that. I was also taught on an emergency driving course techniques of driving and about the tolerance (limitations) of a vehicle (e.g., turns, skidding).

**(j)** Firearms. At the academy there was extensive information on the laws governing the use of firearms by law enforcement officials, as well as the safe and effective use of a firearms (e.g., proper stances, target shooting, no shoot situations). In addition, there was education on a concept called the "use of force continuum", where you learn about how to escalate force and deescalate force, from police presence alone, to verbal commands, to hand tactics, to use of pepper spray, to use of a baton, to handgun use. I was taught how to recognize and control a situation and move up and down this continuum, using the least force necessary to obtain control.

**(k)** Interview techniques. I was also taught about interview techniques and the key elements of information that should be obtained from witnesses and how that varied based upon the elements of the crime that I may be investigating.

3

I learned about judging a person's credibility and veracity based upon eye contact (or lack of eye contact), covering mouth when speaking, and/or non-responsive answers to questions posed, as well as separating witnesses.

    **(l)**   <u>Report writing.</u>  At the academy I was also taught about report writing.  That in part included an application of other information I learned relating to elements of the crime, criminal procedure and criminal law, as well as issues relating to witness credibility and veracity.  I was taught about the key elements that must be included in a report and otherwise how to complete a satisfactory police report so that is will be objective and support the crime for which it was written.

    **(m)**   <u>Inservice training.</u>  I am required to attend yearly in-service training to keep me abreast of any changes in the law.

    4.   <u>Natick Police Department Rules, Regulations, Policies, Procedures, General Orders.</u>  In addition to knowledge relating to the General Laws of the Commonwealth and information reviewed above pertaining to longstanding special techniques of police work that I learned at the Police Academy that provide the criteria for how I must perform my job, the Natick Police Department's Police Chief has issued a vast number of Rules, Regulations, Polices, Procedures and General Orders that also dictate how I am must perform my job as a patrol officer when I was assigned to the patrol division and in my current assignment as patrol officer/detective in the Investigative Services Division.  They relate to matters such as how to proceed to an accident scene (lights, sirens, speed, marked cruiser), and what to do at an accident scene to collect information, what information to incorporate in a report, how to investigate domestic crimes, and what investigation to do at an accident scene and other matters.  Most of these same principles were taught to me on the job, from the time I was a patrol officer onward, with more senior patrol officers or sergeants and lieutenants offering guidance to me as a junior patrol officer etc.  This guidance related to reinforcing the principles of police technique and reinforcing the expectations required under the General Laws and the Police Chief's rules, regulations, policies, procedures and general orders applicable to the Natick Police Department.

    5.   <u>Education.</u>  I received a B.S. in criminal justice from Westfield State College in 1982, and in 1997 I received a Masters Degree from Anna Maria College in criminal justice.

    6.   <u>Virtually all duties governed by longstanding techniques and other external standards.</u>  Based upon the training and education that I received as reviewed above, and the documentation of the Department that otherwise describes standards of performance, virtually every aspect of what I did as a patrol officer in the patrol division and now in the investigative services division in the assignment of detective was/is governed by the aforementioned material, rather than by me deriving my own brand of police work unique to me. As a patrol officer in both divisions I apply those same external guidelines in performing my job.  To the best of my knowledge I have

established no guidelines for performance of police work myself. I apply no discretion in my decision making that is independent of these external mandates to the best of my knowledge.

       7.    <u>Assignment of cases to detectives</u>. Lt. Mabardy assigns cases to the detectives for investigation. In that regard most of the assignments he makes are based on a particular detective's greater knowledge of a particular area of crime investigation. For example, James Ordway is assigned general investigations and crime scene investigations since he has greater knowledge on collecting evidence at a crime scene (e.g., lifting finger prints, obtaining foot or tire impressions); Elizabeth Blanchard is assigned general investigations and domestic violence cases as well as processing evidence and property (she also is involved with the clerical task of issuing firearms licensing and processing the paperwork for the sexual offender log according to the specific requirements of the law); Richard Halloran is assigned to general investigation and juvenile cases; Kevin Delehanty and Daniel Brogan are both assigned general investigations and narcotics cases; John Doherty is assigned general investigation and may aid in some elements of crime scene evidence collection; and John Haswell is assigned general investigations and computer crime. The task of allocating cases to these seven detectives is clerical and, as I understand it relates to two simple criteria: (1) trying to assign cases that focus on a detective's particular area of greater knowledge to that detective; and (2) otherwise trying to ensure that the workload of all seven detectives is relatively equal. To the best of my knowledge, this is what I have observed.

       8.    <u>Duties of Patrol Officer Detectives versus Patrol Officers in the Patrol Division</u>. As detectives our work is similar to the work of patrol officers in the patrol division to the extent that each patrol officer, regardless of whether he or she is assigned as a detective or patrol officer in the patrol division, is required to apply the knowledge, training, longstanding techniques of police work, the General Laws of Massachusetts, and any printed rules, regulations, policies, and procedures, and general orders of the Police Chief that dictate how we must investigate crimes and enforce the law. Unlike patrol offices in the patrol division, detective patrol officers are afforded more often more time to follow-up on investigations. Detective patrol officers, just like patrol officers in the patrol division, examine the evidence before them, determine whether there is probable cause, and determine whether to cease investigation. Patrol Officers do the same thing. As an example, patrol officers in the patrol division make decisions based upon the foregoing principles at a motor vehicle accident to "clear the scene" and take no enforcement action. The same analysis is applied when the detective patrol officers submit reports stating that no further investigation is required and that a case may be closed without charges. Patrol Officers clearing a scene assert the same type of decision-making as detectives closing a case. Similarly, just like patrol officers in the patrol division, detective patrol officers may look at a set of facts and decide to issue a warrant, take out a criminal complaint in district court, seek a warrant, or other disposition. As a patrol officer who has worked both as a patrol officer in the patrol division and currently a detective in the investigative services division, the foregoing observations relating to the commonality of the work of all patrol officers in both the patrol division and inspectional services division is apparent. The Chief even reinforces the detectives are

not separate and distinct patrol officers, but just another assignment of a patrol officer. This is reflect for example in the Chief's decision to have us attend roll call side by side along with patrol offices of the patrol division.

       9.      <u>Paragraph 29(b) of Town's Statement of "Undisputed" Facts</u>.  I understand that at 29(b) of the statement of "undisputed" facts filed by the Town in this matter, the Town claims: "The detectives work independently, when it comes to making case-specific decision about the direction of the investigation and the collection of evidence, and related activities".  This is not accurate.  We may make an evaluation of what to do to investigate, but it is not independent to the extent that (1) we do so subject to longstanding techniques of police work that we are all trained in and pursuant to rules and regulations and other printed rules of the department and the law; (2) our work product is presented in a report which is submitted to the Lieutenant for review and referral back to us for revision at times to ensure compliance with such standards (i.e., to correct any discrepancies); and (3) there is discussion on a daily basis of what we are doing and how we do it.

       10.      <u>Paragraph 29(c) of Town's Statement of "Undisputed" Facts</u>**.**  I understand that at 29(c) of the statement of "undisputed" facts filed by the Town in this matter, the Town claims: "Each detective exercises discretion and relies on his or her own experience and expertise, in the conduct of investigation."  This is inaccurate to the extent that we use discretion, but it is subject to standards that we do not establish.  Rather, those standards are governed by the material referenced above, including training at the Academy, the requirements of the General Laws and state police crime investigation criteria, longstanding techniques of police work that we have all been trained to understand and apply by more experienced colleagues, sergeants, and lieutenants over the years, and the standards set forth by the Chief in his Rules, Regulations, Policies, Procedures, and General Orders.  This is the same as police work of a patrol division patrol officer, but the detective work focuses exclusively on crime investigation and greater time commitment to it.  The only difference between us is that the detectives have the luxury of more time to follow up on all aspects of the investigation.  To my knowledge, there are no decisions that the detectives make in the conduct of an investigation that are based upon independent, self-created standards and discretion.  Rather, all aspects of our work including our very decision-making is governed and dictated by the external mandates and longstanding police techniques referenced above.

       11.      <u>Paragraph 29(d) of Town's Statement of "Undisputed" Facts</u>  I understand that at 29(d) of the statement of "undisputed" facts filed by the Town in this matter, the Town claims: "When assigned to the Investigative Services Division, the Detective may then develop further more specialized expertise."  As noted above, the Detectives are not court experts.  We are fortunate that we have developed greater knowledge in certain specific areas and it is because of that diversity of greater knowledge that we collaborate whenever necessary to understand how to proceed.  That collaboration is by detective to detective, by detective to Lieutenant.  We are not experts and cannot testify as experts of forensic principles.

      12.    <u>No work with management policies and general business operations</u>.

      a.    There is not one shred of work by a detective that has to do with creating policies or servicing the internal operation of the police department itself. Rather, the vast sum of our work is actual police work. For example, as noted above, even when we submit a report to close an investigation, the very decision to close an investigation is an application of police knowledge to the case file, and it is identical (albeit in a different context) to a police patrol officer on Route 9 in Natick deciding to clear the scene of a motor vehicle accident and take no enforcement action. None of the detectives have anything to do with administering payroll, distributions of details, or other payroll or other internal human resource functions. I nor any of the other patrol officers or detectives is in control of any portion of the budget or discretionary funds.

      b.    As a Detective I have not worked in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations; government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

      c.    As a Detective I do not had authority to formulate, affect, interpret, or implement management policies or operating practices; I have not carried out major assignments in conducting the operations of the business itself; I have not performed work that affects business operations to a substantial degree; I have not had authority to commit the Town or Department in matters that have significant financial impact; I have not had the authority to waive or deviate from established policies and procedures without prior approval; I have not had the authority to negotiate and bind the Town or the Department on significant matters; I have not provided consultation or expert advice to management, except to the extent that I have had collaborative discussions wherein I shared my views, just like patrol officers do, based upon accumulated knowledge in police work in general and particular areas thereof and longstanding techniques of same; I have not been involved in planning long- or short-term business objectives, but instead have applied my police knowledge just like patrol officers do in investigating crime and determining whether to take enforcement action or "clear the scene" (i.e., end the investigation); I have not investigated and resolved matters of significance on behalf of management but instead engaged in the investigative work of the police department; and, I have not represented the company in handling complaints, arbitrating disputes or resolving grievances.

      13.    <u>No work having to do with management.</u>

      a.    Nor do patrol officers in general, or detective patrol officers in the patrol division, perform functions that relate to management. None of the patrol officer detectives or patrol officers in the Patrol Division have anything to do with the process relating to hiring, firing, promotion, discipline or causing any other changes in working

conditions. Nor do any of employees in the classification of patrol officer have anything to do with directing the work of others. Rather, we perform our jobs under the foregoing standards established by the Chief, the law, and otherwise by special techniques of police work. There are awards such as Employee of the Month and Officer of the Year. As offices in the Department, of course, we are free to communicate our opinions to the Chief on such matters, but it is not required and at no point has the Chief or the Town communicated in words or in written documentation any expectation that we do this and/or how much weight would be accorded such input.

      b. As a Detective I have not participated in interviewing and selecting Department employees; I have not set or adjust rates of pay and hours of work; I have not directed any employee's work; I have not maintained production records for use in supervision or control; I have not appraised employee productivity and efficiency for the purpose of recommending promotions or other changes in status; I have not handled employees' complaints and grievances; I have not planned any employee's work other than my own; I have not determined or set the work techniques to be used as these are dictated by external standards; I have not participated in apportioning the work among the workers; and I have not participated in determining the type of materials, supplies, or tools to be used in the course of an employee's duties.

      Sworn to under the pains and penalties of perjury this 16th day of November, 2006:

*s/John Haswell*
John Haswell, Patrol Officer - Detective