*Natick Police Department*
2 Park Street
Natick, Massachusetts 01760-2797

Telephone
653-1212
653-1213
653-1214

GENERAL ORDER #89-03

June 2, 1989

To:      All Department Members

From:    Chief Dennis R. Mannix

Subject: Gasoline documentation

Effective immediately, all members using the department gasoline pump will fill out the gas slip provided. Members should ensure that the slip is inserted properly so that the starting and ending meter reading is recorded in the appropriate space. All other lines should be completed and the user will sign the slip before placing it in the out-portion of the box on top of the pump.

Per order –

*Dennis R. Mannix*
Dennis R. Mannix
Chief of Police

Attach. A – Item 2

19

GENERAL ORDER 89-04
REVISED JULY 25, 1989

FROM: CHIEF DENNIS R. MANNIX
TO: ALL MEMBERS AND EMPLOYEES OF THE DEPARTMENT
SUBJECT: PRISONERS, PERSONS IN PROTECTIVE CUSTODY, AND LODGERS

1. PRIOR TO PROCESSING A PERSON IN CUSTODY, OFFICERS WILL SECURE THEIR WEAPONS TEMPORARILY IN THE SHIFT COMMANDER'S OFFICE, AND, WHEN INSTALLED, IN THE GUN LOCKER IN THE BOOKING AREA. UNDER NO CIRCUMSTANCES WILL AN ARMED OFFICER ENTER AN OCCUPIED MALE OR FEMALE LOCKUP AREA.

2. ALL PERSONS UNDER ARREST AT THE STATION HOUSE SHALL BE EXAMINED IN ACCORDANCE WITH 276 MGL 33, AND FORTHWITH ADVISED OF THE RIGHT TO A PHONE CALL UNDER 276 MGL 33A. IF THE PRISONER IS UNDER ARREST FOR OPERATING A MOTOR VEHICLE WHILE UNDER THE INFLUENCE OF LIQUOR, HE/SHE SHALL BE ADVISED OF THE PROVISIONS OF 263 MGL 5A.

3. BEFORE A PERSON IS PLACED IN A CELL OR DETENTION ROOM, HIS/HER NAME, ADDRESS, DATE OF BIRTH, AND FULL DESCRIPTION SHALL BE TAKEN. SAID PERSON, IF POSSIBLE, SHALL BE PHOTOGRAPHED AND HIS/HER FINGERPRINT IMPRESSIONS TAKEN.

4. THE PRISONER SHALL BE THOROUGHLY SEARCHED, AND **ALL OF HIS/HER PROPERTY**, INCLUDING **SHOES, BOOTS, BELTS, ETC.**, SHALL BE TAKEN FROM HIM/HER AND SAFELY KEPT BY THE SHIFT COMMANDER UNTIL HIS/HER RELEASE FROM THE LOCKUP.

5. PERSONS UNDER ARREST SHALL NOT BE PERMITTED TO SMOKE.

6. RECOGNIZING OUR RESPONSIBILITY TO PROTECT THE LIVES AND SAFETY OF THOSE WITH WHOM WE ARE ENTRUSTED, THE FOLLOWING PROCEDURES REGARDING PRISONER SECURITY SHALL BE FOLLOWED:

    a. EFFECTIVE IMMEDIATELY, THE DEPARTMENT WILL CONTINUE USING THE DETEX TIME RECORDER AT THE END OF THE CELL BLOCK. THIS SECTION OF THE SUICIDE PREVENTION LAW REMAINS UNCHANGED.

    b. PRISONERS WILL CONTINUE TO BE CHECKED EVERY FIFTEEN MINUTES, WHENEVER POSSIBLE, THE CHECK RECORDED BY TURNING THE KEY. THIS WILL NORMALLY BE CARRIED OUT BY THE DESK SUPERVISOR.

    c. IF YOU MISS A CHECK DUE TO WALK-IN BUSINESS, TELEPHONE CONVERSATION, RADIO TRAFFIC, ETC., DO NOT WAIT UNTIL THE NEXT FIFTEEN-MINUTE CHECK. MAKE THE CHECK AS SOON AS POSSIBLE AND CONTINUE AT FIFTEEN-MINUTE INTERVALS

    d. IF THE SUPERVISOR IS EXTREMELY BUSY AND MORE THAN ONE SECURITY CHECK WILL BE MISSED, AN ADDITIONAL OFFICER WILL BE TEMPORARILY REASSIGNED AND MAKE THE SCHEDULED CHECKS UNTIL EITHER THE PRISONER IS BAILED OR THE SITUATION IS ALLEVIATED.

Attach. A – Item 3

20

GENERAL ORDER 89-04        PRISONERS, ETC.        REVISED JULY 25, 1989
                                                  PAGE 2

e. IF THE PRISONER IS A "HIT" ON A QUERY FIVE, THREATENS, OR EVEN MENTIONS SUICIDE, AND IF BAIL IS GOING TO BE MADE IN A SHORT TIME, THE SUPERVISOR SHALL MAKE THE REQUIRED CHECKS. IF THE PRISONER IS TO BE HELD, THE SUPERVISOR SHALL DESIGNATE A CELL PERSON. THE SUPERVISOR MAY, UNDER THE UNUSUAL CIRCUMSTANCES OUTLINED IN THIS PARAGRAPH, H RE A CELL-BLOCK MONITOR ON OVERTIME, IF DEEMED APPROPRIATE.

f. SUPERVISORS WILL BE HELD ACCOUNTABLE FOR CARRYING OUT THIS POLICY AND PROCEDURE.

PER ORDER OF -

*Dennis R. Mannix*

DENNIS R. MANNIX
CHIEF OF POLICE

21

## GENERAL ORDER NO. 89-05

From: Chief Dennis R. Mannix
Subject: Operation of Department Vehicles
Date: July 26, 1989
To: All Department Members

1. **EMERGENCY DRIVING**: The Police Department's primary concern in emergency driving situations is the protection of the lives and safety of all citizens and officers. During emergency driving situations, officers will comply with the provisions of the Law of the Road, Massachusetts General Law Chapter 89. Driving under emergency conditions does not relieve the officer from the duty to drive with due regard for the safety of all persons, nor will these provisions protect the driver from the consequences of his disregard for the safety of others.

   A. <u>Definition</u> - Emergency driving is defined as the operation of an authorized emergency motor vehicle (a police vehicle equipped with identifying decals, a fully operational visibar, and siren) by a law enforcement officer, in response to a life threatening situation or a violent crime in progress, at a speed 10 or more MPH over the posted speed limit or normal flow of traffic, and/or in disregard of traffic control devices governing the motion or direction of movement of motor vehicles.

   B. Officers may exercise the privileges set forth in paragraph 1.C. if the following three conditions exist simultaneously:

      (1) The vehicle driven must be an authorized emergency vehicle (see paragraph 1.A).

      (2) The unit must be responding to an emergency.

      (3) A siren must be sounded and emergency lights displayed.

   C. If the provisions of paragraph 1.B. exist, officers driving authorized emergency vehicles may do the following.

Attach. A – Item 4

22

provided due regard for the safety of all persons is considered:

(1) Park or stand, irrespective of legal prohibitions.

(2) Proceed past a red or stop signal or stop sign, <u>but only after stopping or slowing as may be necessary for safe operation.</u>

(3) Exceed the prima facie speed limits as long as life or property is not endangered.

(4) Disregard regulations governing direction of movement or turning in specified directions.

D. The decision to drive under emergency conditions will be discretionary with each individual officer.

E. When deciding to initiate or continue driving under emergency conditions, officers will consider such factors as traffic volume, time of day, the type of crime in progress and potential hazard or liability to themselves and the public. Officers will have sufficient information to justify the decision to drive under emergency conditions.

F. Officers responding to assist another officer will bear in mind that even though a rapid response is essential, they must arrive at the scene safely in order to be of assistance.

G. Drivers of authorized emergency vehicles operating under emergency conditions will use their siren and emergency lights. Emergency lights only, may be used in responding to certain emergency calls to avoid alerting suspects. However, the use of emergency lights only does not exempt the driver from the provisions of the Law of the Road.

H. Officers driving under emergency conditions will take necessary steps, e.g., roll windows up, operate the siren on "manual", etc., to ensure the Dispatcher understands their transmissions.

23

    I.    Drivers of police vehicles not equipped with identifying decals, emergency lights, and a siren will <u>not</u> engage in emergency driving as defined in paragraph 1.A.

    J.    The driving involved with the apprehension of routine traffic violators is not considered to be emergency driving. Officers are expected to make reasonable efforts to apprehend routine traffic violators and may exceed the posted speed limit to clock a vehicle or disregard other traffic laws, e.g., a red light, when it can be done safely.

    K.    This policy is not intended to suppress the intelligent exercise of good judgement based on the circumstances and the information available to the officer.

2.    <u>PURSUIT DRIVING</u>: The Police Department's primary concern in pursuit situations is the protection of the lives and safety of all citizens and officers. During pursuit situations officers will comply with the provisions of the Law of the Road, Chapter 89. Pursuit driving does not relieve an officer from the duty to drive with due regard for the safety of all persons, nor does it offer him immunity from violations of Massachusetts General Laws Chapters 89 and 90.

    A.    <u>Definition</u>: A motor vehicle pursuit is an active attempt by a law enforcement officer operating an emergency vehicle and utilizing simultaneously all emergency equipment, to apprehend one or more occupants of another moving vehicle, when the driver of the fleeing vehicle is aware of that attempt and is resisting apprehension by maintaining or increasing his speed, disobeying traffic laws, ignoring the officer, or attempting to elude the officer.

    B.    The following policies will govern vehicular pursuits:

        (1)    Police vehicles not equipped with identifying decals, emergency lights, and a siren are <u>prohibited</u> from becoming involved in a pursuit in any capacity.

(2) No more than two (2) marked emergency vehicles will be involved in the immediate pursuit. Other police vehicles will be support units and will not become actively involved in the pursuit.

(3) The first unit to become involved in a vehicular pursuit will be designated the primary vehicle and will have the following responsibilities:

    (a) The officer <u>will</u> activate the vehicle's emergency lights and siren and notify the dispatcher of the following information:

        i. His car number/unit identifier.

        ii. The location, direction of travel, and speed of the suspect vehicle.

        iii. The offense for which the suspect is wanted.

        iv. The description of the vehicle being pursued.

        v. The number of occupants and description of the occupants of the pursued vehicles.

    (b) The officer <u>should</u> also broadcast special information such as hazards to officers, traffic conditions, etc.

    (c) Officers involved in pursuits will take necessary steps, e.g., roll windows up, operate the siren on "manual," etc., to ensure the Dispatcher understands their transmissions.

(4) In a pursuit, a second marked police car will become the back-up unit. Upon joining the pursuit, the back-up officer will activate the vehicle's emergency lights and siren and advise radio that he is the back-up unit.

25

   (a) Only one back-up unit is to be used unless authorization for additional back-up units is obtained from a supervisor.

   (b) Back-up vehicles should follow the primary vehicle at a safe distance.

   (c) Caravaning of police vehicles behind the pursuit is not authorized.

 (5) Additional units will be support vehicles and will not become actively involved in the pursuit.

   (a) Support vehicles will cover escape routes.

   (b) Support units will be available to assume a back-up or primary role should one of those vehicles be unable to continue the pursuit.

   (c) Marked support vehicles will be operated with emergency lights and sirens when it is necessary to violate traffic laws to maintain support positions and warn other drivers of the support vehicles' approach.

   (d) If a support vehicle inadvertently intercepts the suspect vehicle, the support vehicle will not attempt to intervene. The officer in the support vehicle will attempt to obtain the suspect vehicle's license number, if not known, and observe the suspect for identification purposes.

 (6) Emergency lights and sirens will be used at all times during a pursuit. This does not preclude an officer from operating his siren intermittently on "manual" in order to maintain audible communications with the Dispatcher and other officers.

   (a) Initially, officers will not activate their emergency lights and siren until they are as

close as practical to any vehicle they wish to stop.

(7) Officers will avoid participating in pursuits as pursuit, back-up, or support vehicles when their vehicles are occupied by prisoners, suspects, complainants, witnesses, civilian observers, or any other person not on-duty as a police officer.

  (a) If for any reason, a marked police unit with a civilian occupant is involved in a pursuit, as a primary or back-up unit, that unit will, as soon as practical, turn over the pursuit position to another marked police unit with no civilian occupants.

(8) When a pursuit is initiated, the <u>Dispatcher</u> will:

  (a) Notify all units of the pursuit.

  (b) Notify the patrol supervisor.

  (c) Notify neighboring jurisdictions when the pursuit approaches its boundaries.

(9) The officer(s) in the primary unit will make radio transmissions during the pursuit until the back-up unit is close enough to monitor the pursuit and take over the radio transmissions.

  (a) The primary unit should only broadcast critical information at this point and should be prepared to continue radio transmissions only if the back-up unit loses the pursuit.

(10) Police vehicles will <u>not</u> be used for the following purposes:

  (a) Ramming of suspect vehicles.

  (b) Boxing in or surrounding the suspect vehicle. NOTE: Marked and unmarked units may be

    used to box in an unaware suspect in order to avoid a pursuit.

 (c) To overtake, drive next to, or force suspect vehicles off the roadway.

 (d) Blocking the roadway.

(11) Pursuits will be immediately terminated under the following conditions:

 (a) A supervisor orders the pursuit terminated.

 (b) The suspect is known to the officer and the offense is a traffic infraction, misdemeanor, or non-violent felony.

 (c) The distance between the officer and suspect is such that in order to continue the pursuit, it would require exceptional speeds that would place the officer and public in serious danger.

 (d) The officer loses visual contact with the suspect for an extended period of time (approximately 15 seconds). This is not to imply that officers must cease looking for the suspect; however, officers must slow to a safe operating speed if they lose visual contact with the suspect.

 (e) When there is a clear and unreasonable hazard to the officer, fleeing motorist and/or other persons. A clear hazard exists when speeds dangerously exceed the normal flow of traffic or when vehicular or pedestrian traffic necessitates erratic maneuvering which exceeds the performance capabilities of the vehicle or the driver.

 (f) When the danger created by the pursuit outweighs the necessity for immediate apprehension.

The driver of a primary or back-up pursuit vehicle will terminate his involvement in the pursuit if his vehicle experiences equipment failure involving the vehicle's emergency lights, siren, radio, brakes, steering or other essential mechanical equipment.

(12) While not necessarily dictating immediate action, strong and continuing consideration should be given to termination of the pursuit under the following conditions:

  (a) When environmental factors such as rain, fog, or darkness substantially increase the danger of the pursuit.

  (b) When the officer is unfamiliar with the area and is unable to accurately notify the Dispatcher of his location and the direction in which the pursuit is proceeding.

  (c) When road conditions are congested by traffic or pedestrians. This would be especially appropriate during rush hours or in the area of any school.

  (d) When the violator proceeds the wrong way on any highway, highway frontage road, divided highway, or one-way street. Officers will, **AT NO TIME**, pursue violators the wrong way on a highway, highway frontage road, or any divided roadway.

  (e) When the pursuing officer knows, or has reason to believe, that the fleeing vehicle is being operated by a juvenile who has committed a traffic infraction, misdemeanor, or non-violent felony, and who is driving in such an unsafe manner that it is obvious he does not have the maturity to deal with the danger involved.

(13) Patrol supervisors will assert control by monitoring the pursuit and taking the necessary action to ensure compliance with this policy.

    (a) Supervisors will order the termination of a pursuit if, in their judgement, the necessity of apprehension is outweighed by the level of danger.

(14) The following policies will apply when other jurisdictions are involved in a pursuit:

    (a) When other law enforcement agencies enter the Town of Natick, officers will act as support units only. EXCEPTION: Natick officers may participate as primary and back-up units when the officers from the outside agency are driving an unmarked car, they clearly indicate they wish Natick officers to take over the pursuit, and a Natick supervisor authorizes participation in the pursuit.

        i. If only one unit from an outside agency is involved and it is a marked emergency vehicle, a Natick unit may act as a back-up unit with the permission of a supervisor.

        ii. Natick officers acting as support units for an outside agency's pursuit will not continue their support function beyond the Natick town limits unless authorized to do so by a supervisor.

    (b) When entering another jurisdiction, Natick officers will ask the dispatcher to advise that jurisdiction of the pursuit for informational purposes and possible assistance.

(15) A formal review will be made of <u>all</u> pursuits initiated by Natick officers. The Patrol Division Commander may conduct a review of the action of

Natick officers involved in a pursuit initiated by another agency.

(a) The supervisor of the unit initiating the pursuit will be responsible for submitting a written report outlining the details of the pursuit. This report may include memorandums from the units involved in the pursuit.

(b) The incident report will be forwarded to the Patrol Division Commander within 24 hours of the event.

(c) The purpose of the review is to determine if:

i. The pursuit was necessary and within departmental policy.

ii. There are training needs to be considered.

iii. Any policy changes need to be considered.

(d) The Patrol Division Commander will refer his findings to the Chief of Police.

C   This policy is neither intended to suppress the intelligent exercise of initiative or discretion by any officer, nor does it eliminate the duty of all officers to pursue and arrest violators of the law.

3. NON-EMERGENCY OPERATION OF DEPARTMENTAL VEHICLES: Members will comply with motor vehicle laws at all times when operating Town owned, rented, leased or seized vehicles.

A. Employees shall possess a valid Massachusetts Driver's License appropriate to the type of vehicle being driven.

B. Careless, abusive use of police vehicles will result in disciplinary action.

31

    C    Employees will not drive off roadways unless absolutely necessary to perform a police function.

Per order of:

*Dennis R. Mannix*

Dennis R. Mannix
Chief of Police

GENERAL ORDER NO. 89-06

From: Chief Dennis R. Mannix
Subject: Revoked/Suspended Licenses
Date: October 31, 1989
To: All Department Members and Personnel

PURPOSE: The purpose of this order is to reduce the number of people operating motor vehicles after their licenses or right to operate has been revoked or suspended.

POLICY: It is the policy of this Department to cooperate with the Registrar of Motor Vehicles by promulgating procedures for making our roadways safer and to encourage full prosecution for violations of Chapter 90, Section 23 of the General Laws.

PROCEDURES: When an individual is stopped and cited for operating after suspension or revocation:

1. When the vehicle is registered to a suspended/revoked operator.

   A. Confiscate the number plate(s) and registration certificate of the vehicle operated by and registered to the revoked/suspended person and forward them along with the report and the attached affidavit to the Department records room where they will in turn be forwarded to the Registrar so that immediate action to revoke the registration may be taken.

   or:

   B. Do not confiscate the number plate(s) and registration but merely complete the attached affidavit and forward to the Records Room with the customary report for transmission to the Registry so that immediate action may be taken.

2. When the vehicle is not owned by a suspended/revoked operator:

   Follow procedure 1.B above. Upon receipt of the completed affidavit, the Registry will review the appropriateness of taking further action against the owner of the vehicle.

In addition to the above, if the operator has possession of the revoked/suspended license, forward it to the records room with the above mentioned items.

All plates, registrations and licenses will be forwarded by records room personnel to the appropriate office within the Registry of Motor Vehicles.

Per order of -

*Dennis R. Mannix*
Dennis R. Mannix
Chief of Police

Attach. A - Item 5

33



Dennis R. Mannix
Chief of Police

# TOWN OF NATICK
## POLICE DEPARTMENT

Address All Communications to Chief of P...

## REPORT AND AFFIDAVIT OF AN OPERATING AFTER SUSPENSION/REVOCATION INCIDENT

TO: Registrar of Motor Vehicles         RE: CITATION# _____

FROM: _____
      Name of Police Dept/Unit          Address of Dept/Unit

**OPERATOR INFORMATION**                **VEHICLE INFORMATION**

Operator's Name _____         Vehicle Owner(s) If different _____

Address _____                 Address _____

City _____ State _____ Zip _____      City _____ State _____

DOB _____ Exp. Date of Lic. _____     Reg. No. _____ State _____

License #(Indicate Issuing State) _____ Exp. Date of Reg. _____

Be advised that the above-named person was cited for operating the above-referenced vehicle after suspension/revocation of his/her license or right to operate (Ch. 90, s. 23) on:

_____ at _____.
    Date              Location

Subject was ☐ / was not ☐ arrested.

Number plates/Registration were ☐ / were not ☐ confiscated.

                                        Signed under the penalties of
                                        perjury this _____ Day of:
                                        _____ 19___.

_____                 _____
Signature of Chief or                   Signature and Title of Police
Authorized Officer                      Officer Filing the Request

PLEASE FORWARD ALL PLATES AND AFFIDAVITS TO:

Nearest Registry Branch Office, or, Driver Control Section,
100 Nashua Street, Boston 02114.

2 Park Street • Natick, Massachusetts • 01760 • (508) 653-1212 • Fax (508) 651-7298

34



# TOWN OF NATICK
## POLICE DEPARTMENT

Address All Communications to Chief of Police

Dennis R. Mannix
Chief of Police

GENERAL ORDER NO. 89-07

From:     Chief Dennis R. Mannix
Subject:  Spoiled, Mutilated, Voided Citations
Date:     November 2, 1989
To:       All Department Members and Personnel

Massachusetts General Law, chapter 90C, section 2, sets forth the procedure to be followed when a citation is spoiled, mutilated, or voided. Section 2 states, in pertinent part:

> If a citation is spoiled, mutilated or voided, it shall be endorsed with a full explanation thereof by the police officer voiding such citation, and shall be returned to the registrar forthwith and shall be duly accounted for upon the audit sheet for the citation book from which said citation was removed.

In accordance with the above, Department Form #100, together with all copies of the voided citation except the officer's copy, shall be submitted forthwith, through channels, to the Chief of Police. The "Officer's Copy" will remain in the citation book.

Per order of -

*Dennis R. Mannix*

Dennis R. Mannix
Chief of Police

2 Park Street • Natick       Attach. A - Item 6       -12 • Fax (508) 651-7298

35



Dennis R. Mannix
Chief of Police

# TOWN OF NATICK
## POLICE DEPARTMENT

Address All Communications to Chief of Police

Date_____

Registrar of Motor Vehicles
100 Nashua Street
Boston, Massachusetts 02114

Dear Sir:

    I respectfully request that Citation #_____ be voided. Citation #_____ has been issued to replace this voided citation.

    The reason for voiding this citation is_____
_____
_____

Officer issuing citation_____
                                        (name and badge number)

Operator involved_____
_____
                                        (name and address)

Signed under penalties of perjury this _____ day of _____ 19___

Signature of officer voiding citation_____

                               Approved by_____
                                               Chief of Police

Form #100

2 Park Street • Natick, Massachusetts • 01760 • (508) 653-1212 • Fax (508) 651-7298

36