**NATICK POLICE DEPARTMENT**  ORDER NUMBER 90-01
GENERAL ORDER  JANUARY 21, 1990

To:     All Department Members
From:   Chief Dennis R. Mannix

I. The purpose of this policy is to instruct and to guide officers in how and under what conditions an inventory of property which an officer has come in possession of may be made. Inventory searches are made for the following reasons: Protection of the owner's property; Protection of the police from claims and disputes over stolen or lost valuables; Protection of the public and police from dangerous items or instrumentalities; and, to assist in verifying the identity of the property owner.

II. <u>MOTOR VEHICLE INVENTORIES</u>

  A. It is the policy of the Natick Police Department to conduct an inventory of the contents of any vehicle which the department causes to be removed, towed, or stored where the owner/operator is unable to take control of his vehicle due to incapacitation, arrest, or unavailability. The results of the inventory as well as the condition of the vehicle will be recorded on the Vehicle Inventory Report (VIR). Where a motor vehicle is removed at the owner's request and the owner or operator is present, an inventory will not be made.

  B. The inventory search will include all areas of the vehicle where property is normally kept, including the glove compartment and the trunk. Closed or sealed containers will be opened and their contents inventoried. In cases where department personnel have access to a means of opening locked containers (i.e., key, combination, etc.), an inventory will be conducted. Where such access is unavailable, the property will be inventoried as one item and secured with other property, unopened.

Attach. A – Item 7

37

GENERAL ORDER NO. 90-01    INVENTORY SEARCHES          PAGE 2

    C.    Whenever possible, the inventory form shall be filled out prior to the removal of the vehicle. Property of obvious value (money, jewelry, etc.) and items dangerous in and of themselves (firearms, knives, etc.) will be secured at police headquarters for safekeeping. A notation of this action will be made on the VIR. All other miscellaneous property will be recorded on the inventory report and remain in the vehicle. The tow truck operator will sign the VIR, indicating concurrence with the contents of the vehicle.

    D.    Fruits or instrumentalities of a crime and contraband, discovered as a result of the inventory, may be seized and held for further investigation.

    E.    The completed VIR will be attached to the record of investigation, arrest report, or incident card and retained as a department record. Property held for safekeeping pursuant to this policy shall be receipted for in the appropriate portion of the VIR.

    F.    If, for any reason, the officer is not able to conduct the required inventory, an explanation of the non-compliance will be written on the VIR, submitted, and filed in the same manner as a completed VIR. Therefore, whenever a vehicle is towed, removed, etc., as outlined in paragraph IIA, a VIR should be filled out.

III.    PRISONER PROPERTY: Arresting officers will search each prisoner and account for all prisoner property in the following manner:

    A.    An inventory search will be conducted on all property accompanying those persons under arrest or in protective custody. The inventory will include clothing worn, property carried, and shall extend to containers whether locked or sealed, with the same procedure being followed

38

GENERAL ORDER NO. 90-01     <u>INVENTORY SEARCHES</u>     PAGE 3

        for property locked, and for which the conventional means of access is unavailable, as is required under paragraph IIB.

  B.  Prisoner property (except as noted below) will be listed in the prisoner property section of the Arrest Record and will then be placed in a property bag. The prisoner's name (last, first) and DOB will be written on the property bag and money envelopes.

    1. Matches will be discarded.
    2. Prisoners will be allowed to keep Medical Alert necklaces and bracelets.
    3. Officers will describe all items which appear to be gold, silver or diamonds as "yellow metal", "white metal", and "clear stone".
    4. U.S. coin and currency will be placed in a money envelope and taped shut. The total amount will be listed on the outside of the envelope.
    5. Foreign coins or U.S. collector coins and currency will be listed in the property block. Officers will not include their value in the cash block.

Per order –

*Dennis R. Mannix*
Dennis R. Mannix
Chief of Police

Attachment: NPD Form 1009 (VIR)

# NATICK POLICE DEPARTMENT

VEHICLE INVENTORY REPORT

Complaint Number _____
Date _____
Location _____
_____
Officer _____
Towed By _____
Reason Towed _____
_____

Vehicle Description
Year _____
Make _____
Model _____
Registration _____
V>I>N> _____
Condition of Vehicle _____
_____

VEHICLE CONTENTS
INTERIOR _____
_____
_____

GLOVE COMPARTMENT _____
_____

TRUNK _____
_____

VALUABLES HELD FOR SAFEKEEPING _____

OWNER NOTIFIED   YES \_\_\_  NO \_\_\_     LEAPS/NCIC CHECK. YES \_\_\_ NO \_\_

OFFICERS SIGNATURE _____

TOW OPERATORS SIGNATURE _____

SIGNATURE FOR RETURN OF VALUABLES _____

HO

NPD FORM 1009

 **Natick Police Department**          Order Number 90- 03

General Order                          Date: Reissued May 8, 1990

To:       All Department Personnel
From:     Chief Dennis R. Mannix
Subject:  Permanent Details and Overtime Shifts

Effective immediately, so-called "hold-down" or permanent details will be included in the pool of details and assigned as are all other details.

Except in an emergency situation, no officer will be assigned or charged a refusal if such assignment would necessitate working, for any reason, in excess of sixteen straight hours.

Per order -

*Dennis R. Mannix*

Dennis R. Mannix
Chief of Police

Attach. A – Item 8

H1



| Natick Police Department | Order Number 90-04 |
|---|---|
| General Order | Date: June 13, 1990 |

To: All Department Members and Personnel
From: Chief Dennis R. Mannix
Subject: Rape and Sexual Assault Reports

General Law, c. 41, s. 97D provides that, "[a]ll reports of rape and sexual assault or attempts to commit such offenses and all conversations between police officers and victims of said offenses shall not be public reports and shall be maintained by the police departments in a manner which will assure their confidentiality..." (Emphasis added).

In order to balance the rights of the victim with the investigative and crime prevention benefits of informing the public of such incidents, it will be department policy to report each such crime on the complaint log, followed by a "silent report" notation in the narrative section of the log. Releasable information will then be provided to the news media by the public information officer.

Per order -

*Dennis R. Mannix*
Dennis R. Mannix
Chief of Police

Attach. A – Item 9

42



Natick Police Department          Order Number 90-05
General Order                     Date: July 10, 1990

To:      All Department Members and Personnel
From:    Chief Dennis R. Mannix
Subject: Recording of Calls

Effective immediately, all incoming and outgoing radio and telephone traffic in the dispatch area will be tape recorded. All members and employees answering the telephone will state the following:

"Good morning, etc., Natick police, this call is being recorded."

When receiving calls for service the call taker will attempt to ascertain the name, address, and a callback phone number for all calls for service. If an arrestee or any other person is given permission to use any telephone line assigned to the dispatch area, he/she will be advised that his/her call is being recorded.

Per order -

*Dennis R. Mannix*
Dennis R. Mannix
Chief of Police



**Natick Police Department**
General Order

Order Number 90-06
Date: September 17, 1990

---

To: Al Department Members and Personnel
From: Chief Dennis R. Mannix
Subject: Juvenile Contact Cards

Effective immediately, whenever an officer has an official contact with a juvenile, a NPD Form 1034 (Juvenile Contact Card) shall be filled out and forwarded through channels to the Juvenile/Safety Officer.

With the exception of when a traffic citation is issued or an arrest is made, complaints will not be taken out against a juvenile until the case is first reviewed with the Juvenile Officer.

Detailed procedures for handling juveniles are contained in the MPI policy and procedures, "Handling Juveniles".

Per order -

*Dennis R. Mannix*
Dennis R. Mannix
Chief of Police

Attach. A – Item 11

44



**Natick Police Department**  
General Order

Order Number 91-01  
Date: January 18, 1991

To: All Department Personnel  
From: Chief Dennis R. Mannix  
Subject: Handling Bomb Threats

1. Bomb Threats may be numerous and occur for a number of reasons. Since relatively few reported threats actually result in the finding of a bomb or explosive device, officers and dispatchers will follow the procedures outlined in this order and will notify their supervisor immediately upon being informed of such a threat.

   A. <u>Telephone Calls</u> - The person answering the telephone should determine the following information:

   (1) The time the call was received.  
   (2) When is the bomb is going to explode?  
   (3) Where is it right now?  
   (4) What does it look like?  
   (5) What will cause it to explode?  
   (6) Did you place the bomb?  
   (7) Why?  
   (8) What is your address?  
   (9) What is your name?  
   (10) What was the exact wording of the threat?  
   (11) Characteristics of the caller (age, sex, etc.).  
   (12) Record background noises.

   B. <u>Searches</u> - The decision to search the premises, as well as the search itself, will be the responsibility of the person in charge of the property. Officers may advise and give assistance in the search if requested.

   C. <u>Evacuation</u> - The decision to evacuate the premises will be made by the responsible party at the scene.

   (1) If the responsible party decides to evacuate, officers will recommend that the evacuation be completed, including all searchers, at least 15 minutes prior to the time designated by the suspect as the blast time, and remain in effect for at least 15 minutes after the designated time.

   (2) Officers will assist with evacuation and crowd control if requested.

Attach. A – Item 12

45



Natick Police Department  
General Order  

Order Number 91-01  
Date: January 18, 1991

page 2

    (3)    If an officer has reason to believe that an extreme emergency exists, he will take whatever action is necessary to save lives, including and order to evacuate the building.

D.    <u>Explosive/Incendiary Device Found</u> - If an article is found that could be an explosive or incendiary device, officers will assume command. Officers will immediately notify the State Police Fire Marshal's Office. The area will be evacuated and the scene secured. Officers will not handle, nor allow anyone else to handle a suspicious article prior to the arrival of the Bomb Squad.

2.    An Incident Report is required for all bomb threats reported to department members.

Per order -

*Dennis R. Mannix*  
Dennis R. Mannix  
Chief of Police

46

| | |
|---|---|
| Natick Police Department | Order Number 91-04 |
| General Order | Date: March 8, 1991 |

To:        All Department Members and Personnel
From:      Chief Dennis R. Mannix
Subject:   Use of Force

I. **POLICY**

A police officer will be required at times to resort to physical force to enable him to carry out his law enforcement and peacekeeping role. A determination of the proper use of force is often done after the fact and is subjective in nature. The lawful use of force must be controlled so that an officer will not subject himself to civil and criminal liability through the unnecessary use of force. The following procedures are for the benefit of police officers so that they may have more specific standards to guide them.

II. **PROCEDURES**

A.  Use of force means non-deadly force, such as the use of hands, handcuffs or other restraining devices, chemical substances, agents or similar devices or instruments for the emission of gas, and police or riot batons.

   1. Non-deadly force shall mean that degree of force which in the circumstances is neither likely nor intended to cause great bodily harm;

   2. The use of firearms is treated in a separate policy statement: "Use of Firearms."

B.  Non-deadly force may be used by a police officer in the performance of his duty:

   1. when necessary to preserve the peace, prevent commission of offenses, or prevent suicide or self-inflicted injury; or

   2. when necessary to overcome resistance to arrests, to conduct searches and seizures, and to prevent escapes from custody; or

   3. when in self-defense, or defense of another against unlawful violence to his person or property.

Attach. A - Item 13

47

C.     The force used shall be no greater than is necessary and reasonable in a given situation. The amount and degree of force which may be employed will be determined by the surrounding circumstances including, but not limited to:

    1. the nature of the offense;

    2. the behavior of the subject against whom force is to be used;

    3. actions by third parties who may be present;

    4. physical odds against the officer; and

    5. the feasibility or availability of alternative actions.

D.     An officer acting alone may be required to resort to a much greater degree of force than would be necessary if another officer had been present. Therefore, whenever possible, an officer should call for and await assistance, unless immediate action is required.

E.     The preferred means of using force are set forth below in ascending order from the least severe to the more drastic measures. An officer should exhaust every reasonable means of employing the minimum amount of force before escalating to a more severe application of force except where it is necessary to protect himself or another from serious bodily injury or death.

    1. physical strength or skill;

    2. approved non-lethal chemical substance or noxious gas;

    3. approved baton.

F.     A weapon should not be displayed or brandished as a threat unless its actual use in the situation would be proper. This does not prohibit an officer from having a weapon readied when it is anticipated that a weapon may be required.

G.     Officers shall not alter or modify a weapon without the express permission of the Chief. Only weapons authorized by the Chief may be used.

H.     Officers shall be properly trained in the use of weapons such as batons and chemical substances before being authorized to carry such.

48

I. Chemical substances may be used when physical force is necessary:

    1. to protect an officer or other person from an assault; or

    2. to subdue a person who resists arrest; or

    3. to deter persons engaged in riotous conduct.

    It is preferred that chemical substances not be used if resistance is minor and not hazardous, or if physical powers would reasonably achieve the same end.

J. Because of the possibility of being overcome himself, an officer should avoid the use of chemical substances when he is in close proximity to the offender in a confined space.

K. An officer who employs chemical substances as a weapon shall provide treatment for the victim as soon as practicable under the circumstances.

L. The baton may be used by an officer:

    1. in self defense or in the defense of another; or

    2. when it is necessary to subdue a person violently resisting arrest; or

    3. to deter persons engaged in riotous or violent conduct.

    Because of the potential harm, the baton should only be utilized if lesser methods have failed or would be obviously futile.

M. When the use of the baton is necessary, these guidelines shall be followed:

    1. Blows capable of inflicting possibly fatal or permanent injury must be avoided. For example, blows to the head, temple or throat can result in serious injury or even death; blows to the abdomen, groin or kidney areas can also be critical or fatal;

    2. The baton should not be raised above the head to deliver a blow. Overhead swings of the baton are easily blocked and also make it possible for the baton to be taken from the officer and used against him;

    3. Blows from the baton shall be made in a short and snappy manner and shall be directed to the arms and legs. This will temporarily incapacitate the aggressor but will not cause serious bodily harm;

    4. Although the baton is a necessary police weapon, it was never intended to take the place of the service revolver. If deadly force is used or threatened, and human life is endangered, deadly force must be considered as a counter measure. The baton will not suffice in such cases.

49

G.O. 91-04

N.  Following any incident involving the use of force, the officer shall file with the proper authority a report containing the following information:

1. the names and addresses of victims and witnesses;

2. the extent and treatment of injuries, if any;

3. the name of treatment facility and doctor administering treatment;

4. the reasons and circumstances that required the use of force.

Per order -

*Dennis R. Mannix*
Dennis R. Mannix
Chief of Police

50

 | Natick Police Department | Order Number 91-06
--- | --- | ---
 | General Order | Date: July 12, 1991

To: All Department Members and Personnel
From: Chief Dennis R. Mannix
Subject: Dissemination of Employment Information

Effective immediately, inquiries regarding a member's or employee's performance of his or her duties or requests for recommendations from potential future employers will be referred to the Office of the Chief of Police for comment.

Under no circumstances will a department member or employee indicate whether a particular person's employment history or performance was satisfactory or unsatisfactory or release any information whatsoever related thereto.

Per order -

*Dennis R. Mannix*

Dennis R. Mannix
Chief of Police

Attach. A – Item 14

51

| | Natick Police Department | Order Number 91-08 |
|---|---|---|
| | General Order | Date: July 29, 1991 |
| | **Mission Statement** | |

This order establishes the Department Mission Statement, to be incorporated into the existing Department Manual. The Mission Statement is to be placed in the manual immediately following the page delineating the authority for establishing Rules and Regulations for the governance of the Natick Police Department.

This broad value/mission statement was developed by a committee comprised of members of all ranks of the Natick Police Department and with representation from the Natick School Committee, the business community, the Southern Middlesex Opportunity Council (SMOC), the religious community, and the office of the Town Administrator.

In this short statement, we have expressed a desire to improve the quality of life for the citizens and our commitment to department members to provide a work environment which is supportive of this goal. More specific goals and programs, consistent with this statement, will be developed each year and promulgated to department members.

Per order of:

*Dennis R. Mannix*
Dennis R. Mannix
Chief of Police

Attach. A – Item 15

52

| Natick Police Department | Order Number 91-05 |
|---|---|
| General Order | Date: July 29, 1991 |

## Use of Firearms

I. <u>General Considerations and Guidelines</u>: Police officers are issued firearms, and trained in their use, for self protection and for the protection of the public in the community in which they serve. The use of a firearm is the highest degree of force a police officer may apply and the decision to use a firearm, in the performance of his duties, is the most critical judgment a police officer is called upon to make.

This policy reflects the fact that a police officer is authorized to use deadly force whenever it is reasonable and necessary to combat deadly force, used or threatened, if there is imminent danger of death or serious bodily injury to the officer himself, or to any other person unlawfully attacked.

The use of firearms to effect the arrest of a known felon, or to prevent the escape of a fleeing felon, is herein restricted to those offenses where deadly force has been used or threatened and where the police officer has reasonable cause to believe that death or serious bodily injury could result unless the felon is immediately apprehended.

Firearms will not be used if other less drastic means are possible (see departmental policy: "Use of Force"), and when firearms are used, all reasonable precautions will be taken to prevent injury to innocent persons.

No set guidelines for the use of firearms can possibly cover every situation that might arise and every police officer is expected to respond to all such emergencies decisively with the highest level of good judgment and professional competence.

II. <u>Procedures</u>.

    A. Officers are authorized to use a firearm in the following circumstances, if there is no other reasonable alternative available:

        1. to defend himself or another person from unlawful attack when he has reasonable cause to believe there is imminent danger of death or serious bodily injury;

Attach. A – Item 16

53

    3. Officers will not discharge firearms at moving vehicles or suspects fleeing in vehicles.

    4. Officers will not discharge a firearm from a moving vehicle.

    5. In all cases, every precaution will be taken to ensure the safety of the public.

C. Officers will avoid the unnecessary display of firearms and not draw a firearm except when there is justification for its use to accomplish a proper police purpose. In responding to any potentially dangerous situation, such as a robbery or a breaking and entering in progress, an officer should carry his firearm in a position where it can be used speedily and effectively, if necessary.

D. Under Massachusetts General Laws, a police officer is authorized to carry an issued or authorized firearm at all times when on duty and may carry such firearm while off duty within the Commonwealth.

E. Officers will only carry firearms and ammunition issued or authorized by the department. An officer shall not alter or modify his firearm or ammunition in any way without the express permission of the Chief of Police.

F. An officer who injures any person through the discharge of his firearm will ensure that necessary steps are taken to provide the injured person with necessary medical treatment.

G. An officer who discharges his authorized firearm for any reason except for authorized target practice or competition shall, as soon as possible, submit to the Chief of Police a report in accordance with departmental procedures, which will include at least the following information.

    1. the names and addresses of any injured persons and witnesses;

    2. the extent and treatment of any injuries; the hospital where treated and/or the doctor who provided such treatment;

    3. the number of shots fired and the reasons and circumstances that required he use of firearms.

54