

| Natick Police Department | Order Number 91-10 |
| --- | --- |
| General Order | Date: December 17, 1991 |

**Sick Leave Notification**

Effective immediately, the use of Natick Police Department Form #1003 will be discontinued.

In accordance with the agreement between the Town of Natick and I.B.P.O. Locals 311 and 622, "[e]xcept in the case of unusual circumstances, an employee who is to be out sick on a shift shall report such to the <u>Commanding Officer</u> one hour and one-half before the start of the shift and shall report the nature of the illness and place of confinement."(emphasis added). In cases where the Commanding Officer is unavailable the above information may be given to the officer or dispatcher on duty.

Commanding Officers receiving such reports are directed to make an entry in the Administrative Log (code 912) indicating the officer's name, the nature of the illness, the place of confinement, and whether the officer has a scheduled court appearance or detail for which he will be unavailable due to reported illness.

Per order:

*Dennis R. Mannix*

Dennis R. Mannix
Chief of Police

Attach. A – Item 20

88

| Natick Police Department | Order Number 92-04 |
|---|---|
| General Order | Date: March 11, 1992 |

## Field Interview Cards

To:   All Department Members and Personnel

The Field Interview/Observation file of the in-house computer system is now operational. This file can be accessed under "FIELD INTERVIEW SYSTEM" This file will allow officers to learn if other officers are coming into contact with the same people as they are, and the circumstances of the contact. These contacts will generally be less critical than those which would require a report or citation. The file will also provide additional information to officers who only have a last name or partial identifying data.

In order for the system to work, officers coming into contact with persons who should be entered into the FI File must complete the new FIELD INTERVIEW CARD (NPD Form 1038 - available at the front desk), and turn it in to the commanding officer (C.O.). The C.O. will place these card into the assigned file drawer at the desk where they will be entered into the computer by the dispatchers as time allows. The location given on the card should be as specific as possible for the geoprocessor feedback. If there is no exact address, give an approximate number just as you have been doing on your motor vehicle citations.

Officers are instructed to file a FI card whenever they have official contact with a subject who is suspicious, due to the time, location, or any other circumstance that would lead the officer to believe it would be helpful to retain this subject's information. In the "Facts" section, indicate the circumstances of the contact, listing any associates present who should have a separate card filed if their information is available. The computer allows us to link one name with several other names. An incident number is not required to file a F I card. If there is an incident number associated with the contact, you should note this in the "facts" section.

This card will replace of the current Juvenile Contact Cards (NPD Form 1034). They will continue to be made out whenever an officer has an official contact with a juvenile Simply check off "Juvenile" and the card will be forwarded by the C O to the youth officer who will enter it into the F I File

If you file an incident report and charge someone with a criminal offense he will automatically be entered in the computer by records. If the subject is only a suspect, you MUST file a F I Card in addition to the incident report to enter the name into the computer.

**THESE CARDS DO NOT REPLACE AN INCIDENT REPORT**
File an incident report if the situation requires it.

Per order of -

*Dennis R. Mannix*
Dennis R. Mannix
Chief of Police

| | Natick Police Department | Order Number 92-03 |
|---|---|---|
| | General Order | Rev. October 7, 1992 |
| | Authorized Uniform Apparel | |

**To:** All Department Members and Personnel
**From:** Chief Dennis R. Mannix

The purpose of this order is to establish the following items of clothing as authorized uniform apparel. All shirts and jackets purchased after the date of this order will bear the department patch on both sleeves. Sweaters (as described below) worn as outer garments are authorized provided they have the patches on both sleeves, and provided further that badges and name tags are displayed. Item numbers refer to clothing made by Blauer Manufacturing. Substitutions are acceptable if they meet the specifications of the authorized garments.

| Item Number | Description |
|---|---|
| 6000 | Reversible chill-chaser; interior orange with Scotchlite®. |
| 6010TZ | Non reversible chill-chaser with 100mm Thinsulate® lining. |
| 9610TZ | Non reversible chill-chaser with inner lining of Gore-Tex® US101 fabric. Includes a sleeveless zip-out Thinsulate® liner (100 gram torso). |
| 9091Z | Three-quarter length jacket with four front pockets with buttons (Patrolmen/silver; Superior Officers/gold). Gore-Tex® lining. |
| 9030 | Blizzard coat; optional hood; optional Scotchlite® package. |
| 9690 | Gore-Tex® raincoat; full length. Officers may have NATICK POLICE printed on back of orange side of coat. |
| 9691 | Gore-Tex® raincoat; hip-length. Officers may have NATICK POLICE printed on back of orange side of coat. |

Attach. A – Item 22

90

G.O. 92-03 Authorized Uniform Apparel　　　　　　　　　　Page 2
　　　　　　　　　　　　　　　　　　　　　　　　　　　Rev. 10/7/92

| **Item Number** | **Description** |
|---|---|
| 734 | Standard raincoat; reversible with Scotchlite® option. Similar to what we presently wear. |
| 337 | Traffic vest. |
| 9100 | Black Gore-Tex® glove. |
| 9110 | White Gore-Tex® glove with Scotchlite®. |
| 205 | Commando™ lightweight sweater; V-neck, navy, 70% Pil_Trol™ / 30% wool, epaulets, badge tab, name plate patch. |
| 205XCR | same as above except sweater has windproof liner. |
| 210 | Commando™ sweater; V-neck, navy, 70% Pil-Trol™ / 30% wool, epaulets, badge tab, name plate patch. |
| 210XCR | same as above except sweater has windproof liner. |

Per order -

*Dennis R. Mannix*
Dennis R. Mannix
Chief of Police

91

| Natick Police Department | Order Number 91-02 |
|---|---|
| Special Order | Date: November 5, 1991 |
| **Prisoner Prescription Medication** | |

To: All Command Officers, Shift Commanders and Supervisors

Handling prisoners in our custody presents many problems of varying difficulties. One important question which remains "officially" unanswered is whether or not to administer prescription drugs to a person to whom we have been charged with care and custody. The purpose of this order is to provide guidance in this area.

We are required to maintain a lockup by M.G.L. c. 40, §34. This statute was amended by Chapter 493 of the Acts of 1989 to specify:

> For the purposes of this section, the word "maintain" shall include *the provision of any prescribed medication* and nutritionally adequate meals to a person committed to such lockup. (Emphasis added)

The law is clear in that it now requires that we provide detainees with prescription medication. The Department of Public Health is charged with promulgating regulations interpreting this new provision of the law, but such regulations have not yet been issued.

Until such regulations are promulgated by the Department of Public Health, the Shift Commanders/Supervisors will be responsible to see that legally prescribed medication is provided to those in our custody.

Supervisors must be watchful that the prescription medication is prescribed for the person in custody, is clearly marked with dispensing directions, that directions are followed, and that the prisoner is monitored after consumption. In some cases, it may be necessary to send an officer to a prisoner's residence to retrieve the needed medication from a family member. How far we should travel depends on the circumstances. In most cases, a family member should be called and advised of the need for the medication and given the responsibility for delivering the medication to the Shift Commander/Supervisor. In some cases (as with diabetics in need of insulin), it may be better to transport the prisoner under guard to the hospital so that the proper dosage can be administered.

Subject to complying with any regulations to be promulgated by the Department of Public Health, and the issuance of an amended "Handling Prisoners" policy and procedure, Shift Commanders and Supervisors will allow detainees to take prescription medication.

Per order of -

*Dennis R. Mannix*
Dennis R. Mannix
Chief of Police

Attach. A – Item 23

92

| Natick Police Department | Bulletin Number 92-08 |
|---|---|
| Training Bulletin | Date: MAY 18, 1992 |

**Hawkers and Peddlers - Town Regulations**

Mass General Law Ch 101 § 1 through § 34 deals with licensing of Hawkers and Peddlers and Transient Vendors. It requires that a hawker and peddler obtain a State Peddlers license. It also states that **in addition** to having the State License, the hawker or peddler **must comply with any local rules and regulations that have been enacted.**

The Town of Natick enacted Rules and Regulations for hawkers, peddlers and Transient Vendors in 1979. These remain in effect today. A complete copy of these rules are attached.

**The key requirements are:**
1.) Each hawker or peddler MUST have a State License
2.) The vendor must apply for and receive a Town of Natick permit from the Board of Selectmen **prior to selling.** Applications are available at the Selectmen's office and involve a background check by the police department.
3.) Hawking is prohibited on or with in 250 yards of any property of a church, school, or other Town Building. Hawking is prohibited on any Cemetery, public park, playground, or other public facility, or on any historical site.
4.) Hawkers and peddlers may not sell on any public way, and may not be on a sidewalk if it interferes with pedestrian traffic.
5.) Hawking is limited to the hours of 9:00 AM to 5:00 PM and is prohibited on Sundays
6.) Hawkers and peddlers may not cause a vehicle to stop or stand on any public way.
7.) Hawking or peddling is prohibited on the following streets at all times
East and West Central Streets
Main Street and North and South Main Streets

| | | |
|---|---|---|
| Speen St. | Pond St. | Union St. |
| Eliot St. | Marion St., | Bacon St. |
| Walnut St. | Common St. | Park St. |
| Washington St. | Washington Ave. | West St. |
| Summer St. | nor within 500 Ft of any of these streets. | |

(Special permission may be given during Parades ect...)
THESE RULES DO NOT APPLY TO ANY CHARITABLE, FRATERNAL OR EDUCATIONAL ORGANIZATION WHO HAVE WRITTEN PERMISSION FROM THE SELECTMEN TO DISPLAY AND SELL MERCHANDISE ON A TEMPORARY BASIS.

Certain sales, such as the sale of **wild** plants and flowers are exempt from license consult Ch 101. However, they must comply with all other rules concerning locations and hours of sales.

The taking of orders for future delivery, and regular route salesmen are not covered by Ch 101. They are be covered by the Town Solicitors By-Law -- Article XIV section 3.

Attach. A – Item 24

93

| Natick Police Department | Order Number 92-08 |
|---|---|
| General Order | December 7, 1992 |

## Court Appearances

**To:** All Department Members and Personnel
**From:** Chief Dennis R. Mannix

The purpose of this order is to make clear the importance of and therefore the priority that must be assigned to the appearance of officers as witnesses for the Commonwealth in cases arising out of their official duties.

When a court date is set by the District Attorney's office, detailed case preparation is required by the Assistant District Attorney. Witnesses must be summonsed and other evidence prepared to bring an effective prosecution that will result in the desired conviction of the offender.

Most importantly, victims of crime rely on officers of this department to bring before the court and successfully prosecute those who break the law and dramatically affect the peaceful existence of residents and visitors in the Town of Natick.

For the above reasons, officers assigned to appear in court will consider their appearance an <u>absolute priority</u>, taking precedence over school, details, regular days off, vacation days, or other assignments, unless specifically relieved of that responsibility by the Operations Commander, Administrative Services Commander, or the Police Prosecutor. If there is a scheduling conflict, officers will be responsible for reporting the discrepancy to their immediate supervisor who will then report the conflict by making an entry in the administrative log using CAD code #913, Administrative Services Memo.

<u>Unless relieved of their responsibility to appear in court, officers will be held accountable for their timely appearance.</u>

In order that there be no confusion regarding assignments to appear in court, besides the court list posted in the guard room, a separate copy of the court list will be maintained in a folder in the Shift Commander's office. At each roll call Shift Commanders will be responsible for personally notifying affected officers that they are required to attend court, and will initial and date the list next to each officer's name indicating that notification has been made. If an officer is absent from duty on authorized leave and will not return to duty until after the scheduled court date, the officer's Shift Commander will be responsible making the notification to the concerned officer, or notifying Administrative Services via CAD memorandum if unable to contact the officer.

Attach. A – Item 25

94

Officers are reminded of the provisions of the Department Manual, Section I(D)(1)(b), requiring that upon returning to duty from any absence they inform themselves about all new orders, regulations, memoranda and all other important matters governing their assignment.

Per order -

*Dennis R. Mannix*

Dennis R. Mannix
Chief of Police

|  | Natick Police Department | Order Number 93-01 |
|---|---|---|
| | General Order | March 15, 1993 |
| | Accident Reconstruction | |

**To:** All Department Members and Personnel
**From:** Chief Dennis R. Mannix

### PURPOSE

The purpose of this General Order is to define the role of an accident reconstruction specialist in the investigation of motor vehicle accidents and to provide some guidelines to supervisors and officers responding to these calls when the use of an accident reconstruction specialist is recommended.

### RESPONSIBILITIES

A reconstruction specialist is trained to interpret the evidence at the scene, i.e., skid marks, impact points, extent of damage etc., and use these to arrive at an explanation of how the accident occurred. Findings may include minimum speed, direction of travel, and locations of occupants prior to impact. The reconstruction report is not a substitute for the investigating officer's report. It is a supplement to the investigating officer's report. The reconstruction specialist does not take statements or interview witnesses unless more detail than the investigating officer has obtained is necessary. He uses physical data and all other pertinent information supplied to him by the investigating officer to draw conclusions about the accident. The investigating officer must conduct his own investigation, gathering statements of operators and witnesses and reporting them in the accompanying incident report. The investigating officer is responsible for issuing all citations. He may issue citation(s) after consultation with the reconstruction specialist.

### PROCEDURES

The reconstruction specialist will be requested at all fatal motor vehicle accidents and accidents where a fatality is likely. Where there is less than life threatening but serious injury and the investigating officer is unable to determine with reasonable certainty how the accident occurred the reconstruction specialist may be called. Officers should preserve the scene while waiting for the reconstruction specialist.

If vehicles have been moved or waiting for the reconstruction specialist would endanger officers or the public, the investigating officer(s) should take the necessary measurements, mark resting points, and photograph the scene. Vehicles must be towed and secured for later examination. With accurate measurements, photographs, and examination of the vehicle the reconstructionist can make determinations and form opinions.

If there is doubt whether reconstruction is appropriate, contact the Shift Commander or Patrol Supervisor for guidance.

Attach. A – Item 26

96

| Natick Police Department | Order Number 93-03 |
|---|---|
| General Order | December 21, 1993 |

## SAFETY BELT POLICY

**TO:** All Personnel
**FROM:** Chief Dennis R. Mannix

**Purpose.** To establish a policy to assure maximum operator and passenger safety, thus minimizing the possibility of death or injury as a result of motor vehicle crashes. This policy will apply to all personnel operating or riding in department vehicles.

**Discussion.** Research clearly indicates that the use of safety belts has a significant effect in reducing the number of deaths and the severity of injuries resulting from traffic crashes. A law enforcement officer's chance of being involved in a motor vehicle crash is approximately two to 10 times greater than that of the general public. The use of safety restraints reduces this risk of death and serious injury and assists officers in maintaining proper control of their vehicles in pursuit and/or emergency high-speed operations.

**Policy.** To assure the safety of all personnel, safety belts shall be worn by drivers and passengers in all vehicles owned, leased, or rented by the department at all times. This also applies to the operation of privately owned or other vehicles if used on-duty.

**Recommendation.** It is strongly recommended that safety belts be utilized by department personnel and their families at all times in vehicles while in an off-duty capacity to further reduce the risk of death or injury.

**Procedure.** (a) Department personnel shall use the safety belts installed by the vehicle manufacturer properly adjusted and securely fastened when operating or riding in any vehicle so equipped if used while on-duty. (b) Lap belts shall be properly secured in those vehicles equipped with automatic safety belt systems that require the lap portion of the belt be manually secured. (c) The driver of the vehicle is responsible for ensuring compliance by all occupants of the vehicle they are operating. Approved child safety

restraints shall be used for all children of age, size or weight for which such restraints are prescribed by law. (d) No person shall operate a departmental vehicle in which any safety belt in the driver's seating position is inoperable. No person shall be transported in a seating position in which the safety restraint is inoperable. (e) No person shall modify, remove, deactivate or otherwise tamper with the vehicle safety belts except for vehicle maintenance and repair and not without the express authorization of the chief of police. (f) Personnel who discover an inoperable restraint system shall report the defect to the appropriate supervisor. Prompt action will be taken to replace or repair the system. (g) Any person(s) under arrest and being transported in department vehicle(s) is required to be secure in the vehicle by a safety belt in all seating positions for which safety belts are provided by the vehicle manufacturer. Caution: Prisoners who are handcuffed in front have the ability to release the handcuffs using the safety restraints latch plate. (h) An officer operating in an undercover capacity may be exempt only if the officer believes the use of the safety belt will compromise his identity. (i) When arriving at an emergency call or making a vehicle traffic stop, the operator may remove the safety restraint just prior to stopping for quick exit. Caution should be exercised to ensure that during the traffic stop the violator is in fact going to stop. This prevents becoming involved in a pursuit without the use of a safety belt.

**Driver and/or Passenger Negligence.** If negligence or noncompliance with the requirements of this order is displayed, appropriate corrective or disciplinary action shall be initiated as prescribed by department policies.

98