Prior to being questioned regarding alleged personal involvement in criminal activity, a department employee who is under arrest or who is the target of a criminal investigation shall be afforded all applicable constitutional rights, including the right to be represented by counsel.

If this procedure is followed, any voluntary statement made thereafter could be admissible in criminal proceeding, and it may otherwise be used for departmental disciplinary purposes.

A department employee who is being questioned about alleged personal involvement in criminal activity which could result in a criminal prosecution cannot be discharged or otherwise penalized solely for invoking the right to remain silent as guaranteed by the Fifth Amendment, or for refusing to sign a waiver of immunity. An employee who has received the appropriate immunity may be compelled to answer questions narrowly drawn to the incident being investigated and related to his/her on or off duty conduct, and may be disciplined (including discharge) for failure to answer truthfully.

**Departmental Disciplinary Action**

If it is determined as a result of a preliminary investigation, that allegations made against a department employee could result in departmental disciplinary action, the accused employee is entitled to a fair and objective investigation and resolution of the charges made.

All department employees being questioned by an investigating officer must respond fully and truthfully to all questions regarding their performance of official duties or their off-duty misconduct that affects their fitness or ability to remain in the police service. Any failure to answer completely and truthfully to such inquiries may be punished by appropriate disciplinary action, including dismissal from the department.

The official conducting the interrogation must, at the time of the interrogation, specify to the employee being questioned the precise repercussions (i.e., suspension, discharge, or other form of discipline) that will result if the officer fails to respond.

When a department employee is compelled under threat of sanctions to submit a report or to answer questions, that employee receives transactional immunity from criminal prosecution for any offenses to which the compelled testimony relates.

The Supreme Judicial Court has held that Article 12 of the Massachusetts Declaration of Rights requires "transactional" immunity to supplant the privilege against self-incrimination when a public employee is being compelled to answer questions concerning possible criminal activities connected with his/her

7

123

employment. Transactional immunity grants "immunity from prosecution for offenses to which compelled testimony relates."[1]

If the questions specifically, directly, and narrowly relate to the employee's performance of official duties or his/her off-duty conduct which affects the fitness or ability to remain in the police service, and if such employee is informed that he/she will receive transactional immunity from criminal prosecution, he/she must answer or face disciplinary action, including dismissal from the department for refusing to answer such questions.

No double jeopardy exists when a department employee is found guilty in court of criminal charges and is then found guilty of departmental charges after disciplinary hearing, as the department charges are administrative in nature and can be sustained by a "preponderance of the evidence" rather than the criminal court standard of "beyond a reasonable doubt." Departmental charges are separate and distinct from criminal charges and may be brought before, during, or after any criminal prosecution arising out of the same circumstances.

A request by an employee who is the subject of an internal investigation for an attorney or an employee representative to be present will be granted if the investigation is not thereby unduly delayed.

Any interview or questioning should not be prolonged without reasonable rest periods and the opportunity for meals and such other personal necessities as are reasonably required. A department employee shall not be harassed or threatened during this period of questioning.

In conducting investigations of alleged employee misconduct, all appropriate investigative techniques and methods, consistent with legal requirements and necessary concern for the individual rights of the accused employee, should be employed.

## ADMINISTRATIVE INVESTIGATIONS

An administrative investigation should be conducted with the same degree of professional competence as is devoted to a criminal investigation. An employee reasonably suspected of being unfit for duty by reason of alcohol abuse will be requested to take a breathalyzer examination. Upon probable cause as determined by the OIC or another Superior Officer, and on orders of the Chief of Police or his designee, an employee may be required to submit to a medical or laboratory examination to test for drugs and/or alcohol, at the department's expense. This examination must be specifically directed and narrowly related to a particular Professional Standards investigation being conducted by the department.

An employee may also be required to be photographed and may be compelled to stand in a lineup for identification in connection with an administrative investigation, and a refusal may be the basis for an additional

disciplinary charge of refusal to obey a lawful order. Such lineups should be fairly constructed and not unfairly suggestive and should not be used for an administrative investigation where criminal charges are contemplated.

An employee's personal property, including his home, car and other property, is protected from unreasonable search and seizure under both the United States and the Massachusetts Constitutions, and any evidence illegally obtained may not be used as evidence in an administrative proceeding.[2]

Department property furnished to the employee such as desks, lockers, vehicles and computers remains department property at all times and an officer has "no expectation of privacy" in these areas which may be searched at any time without a warrant and without prior notice to employees. Lockers will not be searched randomly.

Under the provisions of M.G.L. c.149, s. 19B, police officers may be required to submit to a polygraph or lie detector test in connection with an internal administrative investigation if such test is conducted by a law enforcement agency in the course of a departmental investigation of criminal activity, and under such circumstances, officers may face disciplinary action for refusal.[3]

Formal complaint interviews with an employee in all internal investigations conducted by the office of Professional Standards may be recorded mechanically or by a qualified stenographer, at the discretion of the Chief or the Officer-in-Charge of Professional Standards. No recording by the employee or his/her agent will be allowed during investigatory interviews, unless authorized by the Chief or the Officer-in-Charge of Professional Standards.

Withdrawn Complaints: If during the process of an internal investigation, the complainant indicates a desire to withdraw the complaint, every effort should be made to ensure that this decision is made voluntarily, and a signed statement to this effect should be obtained from the complainant.

Even though a complaint is withdrawn, a full report of the investigation to date should be prepared for the Chief and his approval obtained for the termination of the investigation.

Any attempt, directly or indirectly, on the part of a department employee to obstruct any internal investigation or to threaten or persuade any complainant to withdraw or abandon his complaint, is specifically prohibited and will be treated most severely.

## REPORT OF INVESTIGATION

At the conclusion of the investigation, a full written report shall be prepared for submission to the Chief, which shall include the following:

9

125

1. the original complaint form;
2. any additional statements taken from the complainant or statements obtained from witnesses;
3. any statements made or reports submitted by the employee under investigation;
4. a summary of all evidence gathered;
5. any mitigating circumstances;
6. an evaluation of the complaint and a definitive statement as to whether the charges made by complainant were:

*Unfounded*: The allegation is false.
*Exonerated*: The incident occurred, but the officer's actions were lawful and proper.
*Not Sustained*: There is insufficient evidence to either prove or disprove the allegation.
*Sustained*: The allegation is supported by sufficient evidence to justify a reasonable conclusion that the alleged misconduct occurred.

The Officer-in-Charge of Professional Standards Investigations shall ensure that all records and reports of such investigations are maintained in a secure area in order to ensure confidentiality.

Upon receipt of the report of investigation, the Chief may take further action as is necessary based upon findings in the particular case.

Every person who has filed a complaint against an employee shall be notified promptly as to the final results of the investigation by mail.

If a disciplinary hearing is deemed necessary, the complainant shall be notified that his/her testimony will be required at that time. If the department employee is cleared of the charges made, he or she shall be officially exonerated in writing.

**CONFIDENTIALITY OF PROFESSIONAL STANDARDS**
In order to ensure that the individual rights of officers who are the subject of a Professional Standards investigation are protected, all materials relevant to that investigation shall be kept strictly confidential and under lock and key by the Officer-in-Charge of Professional Standards. No statement regarding the substance of a Professional Standards Investigation will be made or issued to the media unless the charges have been sustained or exonerated and action has been taken or initiated against the officer or employee.

**LIAISON WITH DISTRICT ATTORNEY**

Any Professional Standards Investigation which may or does result in criminal charges being brought against an officer shall require the District Attorney's Office to be apprised of the case for the purpose of advising on legal

issues and ultimate prosecution, if necessary. Contact shall be made to the Officer-in-Charge of the Professional Standards Section.

## INVESTIGATIVE FILES

A complete file of records on the investigation of all citizen and internal complaints shall be kept in the office of the Officer-in-Charge of Professional Standards. These files shall contain supporting investigative information, i.e. tape recorded interviews, photos, etc. taken during the investigation. These files shall be treated as confidential investigative files.

A copy of the completed investigation summary should be kept in a summary file in the office of the Chief of Police and will be the only source of public information about citizen complaints, other than the statistical log which will be prepared and published annually by the Chief of Police.

## ANNUAL REPORT

The Chief of Police will publish, in the department's Annual Report, a summary of complaint statistics (both citizen complaints and internal complaints), indicating the number of complaints filed (by type of complaint), and the outcome of the investigation undertaken (by outcome classification). In addition, the Annual Report should outline the procedures the public may follow in filing a complaint.

Per order-

*Dennis R. Mannix*
Dennis R. Mannix
Chief of Police

---

[1] Carney v Springfield, 403 Mass. 604, 532 N.E.2d 631 (1988)
[2] Board of Selectmen of Framingham v Municipal Ct. of City of Boston, 373 Mass. 783, 369 N.E. 2d 1145 (1977)
[3] M.G.L. C.149, §19B

11

127

| | | |
|---|---|---|
| ![badge] | Natick Police Department | Memo Number 00-02 |
| | General Order | Date: June 29, 2000 |
| | INCIDENT COMMAND POLICY | |

**TO: ALL SWORN PERSONNEL**

The Incident Command System is used to manage both emergency and non-emergency events. It can be used equally well for both small and large situations.

The system has considerable internal flexibility. It can grow or shrink to meet differing needs. This makes it a very cost-effective and efficient management system.

The ICS system shall be used for police operations whenever three or more officers are assigned to a call.

If the responding officers are all of the same rank, the officer responsible for the report (if any) shall become the Incident Commander. Command may be transferred to a secondary responder if that officer has superior knowledge or experience with the nature of the call.

If a ranking officer is assigned to the call the ranking officer shall become the Incident Commander upon arrival at the scene. If a ranking officer responds to a call not having been assigned by dispatch, the ranking officer may assume command, maintain command or transfer command to the officer on scene with the highest level of knowledge or experience.

If fewer than three units respond to a scene and in the officers' estimation the call warrants it or it appears that the situation is expanding and may need additional resources the ICS system may be implemented immediately.

The Incident Commander shall announce via radio or other devices to all personnel when command is activated and deactivated.

Per order-

*Dennis R. Mannix* (signature)

Dennis R. Mannix
Chief of Police

Attach. A – Item 33

128

General Order      **Natick Police Department**      August 16, 2000

## Patrol Strategy and Data-Driven Management

| | |
|---|---|
| **Background** | The Natick Police Department has historically operated in a sector/beat configuration with officers assigned to each shift responsible for answering calls for service and conducting preliminary investigations of crimes committed during their shift. Although this strategy has been reasonably successful in solving crimes, it has done little by way of prevention of situations that often result in crimes being committed. Over the past seven or eight years, police departments across the country have experimented in using a data-driven management of police resources. This strategy has resulted in significantly better results in lowering the number of crimes committed, the improvement in the overall quality of life in the neighborhoods and more confidence in police departments. |
| **Purpose** | The purpose of this policy is to establish the manner in which the resources of the Natick Police Department will be expended in support of patrol activities. |
| **Policy** | The policy of the Natick Police Department is to work collaboratively using all of the department resources to identify the sources of disorder that result in either criminal activity or a deterioration of the overall quality of life in the neighborhoods. New patrol areas, each staffed with an area commander, two supervisors, and a complement of patrol officers are established to define an area where the team of officers will concentrate their efforts to reduce crime, disorder, and ensure an improved quality of life for all citizens. All department resources, including division commanders, crime analysis personnel, traffic specialists, and investigators will assist area teams in their problem solving efforts. Area Commanders will be responsible for progress reports to the department command staff at monthly meetings. Problem solving strategies will be included in the police department's annual report to the residents of Natick. |

General Order  **Natick Police Department**  August 16, 2000

Supervisory
Roles and
Responsibilities

| Role | Responsibilities |
|---|---|
| Area Commander | The police sergeant designated by the Chief, to oversee all police activity in a designated geographic area. The Area Commander will collaborate with other officers assigned to his area to develop plans to deal with problems in the area. Area Commanders are responsible for overall command of his assigned shift, including scheduling.<br><br>Area Commanders, when staffing allows, will work in the field in the supervisors' vehicle (74). |
| Station Supervisor | The sergeant responsible for public safety dispatch, station security, and processing of all prisoners. |
| Field Supervisor | Whenever two supervisors who are not area commanders are working, the senior sergeant is designated as the Field Supervisor. The junior sergeant will be the station supervisor. When an area commander is absent and a scheduling decision requiring immediate action presents itself, the senior sergeant on duty will make the decision. |

Authorization   Per order:

*Dennis R. Mannix*
Dennis R. Mannix
Chief of Police

Patrol Strategy and Data-Driven Management
G.O. 2000-3
Page 2 of 2

August 16, 2000
Chief Dennis Mannix

/30