# Speed Enforcement

**Definitions**  The following terms are referenced throughout this document.

| Term | Explanation |
|---|---|
| Posted speed limit | The regulatory speed limit, enforceable under G.L. c. 90, s. 18. |
| Average speed | The mean, calculated by adding together all the recorded speeds, then dividing the results by the number of speeds recorded. |
| Reasonable and proper | The speed, enforceable under G.L. c. 90, s. 17, and the speed at which a prudent person would operate a vehicle under existing environmental conditions. Often locally delineated by speed advisory placards affixed to warning signs. |
| Prima facie violations of the fundamental speed law (G.L. c. 90, s. 17) | Unless otherwise posted, greater than:<br>• 50 mph for a distance of a quarter of a mile on a divided highway outside a thickly settled or business district<br>• 40 mph for a distance of a quarter of a mile on any other way outside of a thickly settled or business district<br>• 30 mph for a distance of one-eighth of a mile inside a thickly settled or business district<br>• within a school zone at a rate of speed exceeding twenty miles per hour |

**Background**  Motor vehicle law enforcement, although time consuming and sometimes contentious, is nevertheless a very important component of providing a safe environment for our residents. We are therefore committed to uniformly enforcing traffic regulations throughout the town.

The Traffic section has conducted speed surveys of most of the major roadways in Natick, roadways that are most often the scene of crashes and/or resident complaints. The completed surveys are on file, and the summary results are now available and accessible in our cruiser books. The summary in the cruiser book lists the posted speed limit, if any, the average speed of motorists traveling the roadway, and the speed at which or below 85 percent of motorists are traveling on the roadway. This 85th percentile is believed to be the speed that, absent accident data to the contrary, motorists can safely traverse the roadway.

*Continued on next page*



## Speed Enforcement, Continued

**Background**  It is also the speed that serves as the basis for establishing speed limits under G.L. c. 90 s. 18. That speed, however, is not always the desired speed for a particular street. Other intervening factors unknown and of little concern to state regulatory officials often result in our not requesting posted speed limits under c. 90, s. 18. Instead, we would enforce speed by a reasonable and proper standard under c. 90 s. 17. Advisory speed placards may be placed in these locations to assist officers in making this determination. These intervening factors include neighborhood makeup (many children), roadway design, and other neighborhood safety concerns. Studies conducted by the National Highway Traffic Safety Administration (NHTSA) show that the 15 percent of motorists traveling above the 85th percentile are a significant contributory factor in motor vehicle crashes. These are the violators at whom we are directing our enforcement efforts.

**Enforcement Policy**  The policy of the department is to issue citations with penalty (civil infractions) to those motorists who are determined to be traveling above the 85th percentile speed on any of the roadways listed in the survey handout. NHTSA research reveals that warnings (verbal or written) are ineffective in deterring speeders. Officers should exercise discretion in determining whether a civil infraction or written warning is most appropriate under the existing circumstances where a motorist is traveling below the 85th percentile but nevertheless in excess of the speed limit. Special circumstances related to weather, traffic volume, children playing in the street, cars parked on both sides of the street presenting a hazard for motorists, and light conditions may factor into an officer's decision on whether to cite or warn. Verbal warnings should not be used unless, for example, the motorist is from out of state and unfamiliar with certain local laws. The general rule should be that if you have reason to stop a motorist for a violation, you should at least issue a written warning to document your actions.

We hope that these guidelines provide officers with a rational basis from which to make decisions on whether to cite or warn motor vehicle law violators.

**Authority**  Dennis R. Mannix *[signature: Dennis R. Mannix]*
Chief of Police

# Issued Equipment - Police Whistles

| | |
|---|---|
| **Purpose** | To define department policy concerning the wearing and use of the department issued police whistle. |
| **Background** | Whistles supplement visual signs in attracting a driver's attention. When used properly they are very effective. However, when used too frequently their effectiveness diminishes. |
| **Policy** | The policy of this department is that all officers primarily assigned to patrol duties, as well as those actually performing traffic duty, will wear and utilized an issued police whistle when directing traffic. |
| **Procedure** | When signaling motorists the following whistle signals will be used: |

| STOP | one long whistle blast |
|---|---|
| GO | two short whistle blasts |
| ATTENTION | four or more short sharp whistle blasts |

| | |
|---|---|
| **Placement** | Whistles will be worn on the right side of the officer's outer garment. Whistles will be displayed by attaching the lanyard provided to the right epaulette button and placing the hanger hook centered on the right pocket flap. (Note: the issued nameplate is worn just above the right pocket flap-not on the flap.)<br>Whistles need not be worn on raincoats, leather jackets, or thick sweaters. Whenever the whistle is not worn on these outer garments the whistle must then be worn on the uniform shirt to be ready for use. |
| **Compliance** | Supervisors are required to inspect officers to insure compliance with this directive and to report non-compliance or violations of the policy. |
| **Authority** | Chief Dennis R. Mannix |

# Identification and Prevention of Racial and Gender Profiling

| | |
|---|---|
| **Background** | The Natick Police Department is committed to protecting the constitutional and civil rights of all citizens. Allegations of racial and gender profiling or discriminatory practices, real or perceived, are detrimental to the relationship between police and the communities they protect and serve because they strike at the basic foundation of public trust. This trust is essential to effective community-based policing. Racial and gender profiling are illegal and ineffective methods of law enforcement. Racial profiling results in increased safety risks to officers and citizens and the misuse of valuable police resources. Additionally, such improper methods violate the civil rights of members of the public and may lead to increased exposure to liability. This Department does not endorse, train, teach, support or condone any type of bias, stereotyping or racial and gender profiling by our officers. While recognizing that most officers perform their duties in a professional, ethical and impartial manner, this Department is committed to identifying and eliminating any instances of racial and gender profiling. |
| **Definitions** | *Racial and Gender Profiling:* the practice of detaining or stopping a suspect based on a broad set of criteria which cast suspicion on an entire class of people without any individualized suspicion of the particular person being stopped. (Chapter 228 of the Acts of 2000)<br><br>*Suspect Specific Incident* – An incident in which an officer is lawfully attempting to detain, apprehend, or otherwise be on the lookout for one or more specific suspects who have been identified or described in part by national or ethnic origin, gender or race. (Chapter 228 of the Acts of 2000) |
| **Policy** | It is the policy of the Natick Police Department that, except in "suspect specific incidents," police officers are prohibited from considering the race, gender, national or ethnic origin of members of the public in deciding to detain a person or stop a motor vehicle and in deciding upon the scope or substance of any law enforcement action.<br><br>It is also the policy of the department to:<br>• Provide all people within this community fair and impartial police services consistent with constitutional and statutory mandates;<br>• Assure the highest standard of integrity and ethics among all our members;<br>• Respect the diversity and the cultural differences of all people;<br>• Take positive steps to identify, prevent, and eliminate any instances of racial or gender profiling by our members; and<br>• Continue our commitment to community policing and problem solving, including vigorous, lawful and non-discriminatory traffic enforcement that promotes public safety and strengthens public trust, confidence, and awareness. |

*Continued on next page*

| | |
|---|---|
| **Procedures** | The following measures shall be taken to insure these policy goals are fulfilled: |
| **Prevention of Profiling** | To prevent racial and gender profiling, this department shall:<br>1. Utilize the Criminal Justice Training Council or other certified training programs to help ensure that appropriate employees receive training on racial and gender profiling practices and the standards established by this policy;<br>2. Ensure that this policy is disseminated to all officers, dispatchers and communications employees;<br>3. Train supervisory personnel to monitor police conduct to ensure that the standards of this policy are being carried out by employees under their supervision;<br>4. Review and, where appropriate, revise all procedures that involve the stop, detention, apprehension or search of individuals to ensure that such procedures are in compliance with the provisions of the law and this policy;<br>5. Review all performance recognition and evaluation systems, training curricula, policies and customs of the department to determine if any practice encourages conduct that may support or lead to racial or gender profiling; and<br>6. Educate the public, in conjunction with the Executive Office of Public Safety and the Registry of Motor Vehicles, on what to expect when either stopped or detained by a police officer, as well as police expectations during motor vehicle stops or police detainment, to ensure both officer and citizen safety. |
| **Identification of Profiling** | To identify instances of racial or gender profiling, this department shall:<br>1. Utilize appropriate citizen complaint procedures to document and investigate allegations of racial or gender profiling filed directly with the agency or referred through the Executive Office of Public Safety's statewide toll free complaint number;<br>2. Utilize procedures for the proactive review of performance, complaint and other employment information to assist supervisors in identifying and modifying potentially problematic behavior and to promote professionalism in this department;<br>3. Direct officers to collect data on race, gender and subsequent searches in accordance with the protocol established by the Secretary of Public Safety; and<br>4. Where local conditions warrant, and the financial and technical resources are available, the department will consider whether it may be appropriate to collect additional data or to engage in analysis beyond that required by the legislative mandate to meet local community concerns and needs. |

*Continued on next page*

| | |
|---|---|
| **Enforcement of Profiling Policy** | To enforce the provisions of this policy, this department shall:<br>1. Take appropriate action to address documented incidents of racial or gender profiling;<br>2. Utilize a system of intervention to enable or encourage an officer to undertake a voluntary modification of his or her conduct or performance; and<br>3. Take appropriate measures to correct any institutional practice or policy that has led to the use of racial or gender profiling. |

---

**Issuing Authority**　　*[signature]*
　　　　　　　　　　　Dennis R Mannix
　　　　　　　　　　　Chief of Police

## GENERAL CONSIDERATIONS AND GUIDELINES

This Department is committed to protecting the constitutional and civil rights of all citizens. Allegations of racial and gender profiling or discriminatory practices, real or perceived, are detrimental to the relationship between police and the communities they protect and serve, because they strike at the basic foundation of public trust. This trust is essential to effective community based policing.

Racial and gender profiling are illegal and ineffective methods of law enforcement. Racial profiling results in increased safety risks to officers and citizens and the misuse of valuable police resources. Additionally, such improper methods violate the civil rights of members of the public and may lead to increased exposure to liability. This Department does not endorse, train, teach, support or condone any type of bias, stereotyping or racial and gender profiling by their officers. While recognizing that most officers perform their duties in a professional, ethical and impartial manner, this Department is committed to identifying and eliminating any instances of racial and gender profiling.

## POLICY STATEMENT

A.  It is the policy of the department to:

- Provide all people within this community fair and impartial police services consistent with constitutional and statutory mandates;

- Assure the highest standard of integrity and ethics among all our members;

- Respect the diversity and the cultural differences of all people;

- Take positive steps to identify, prevent, and eliminate any instances of racial or gender profiling by our members; and

- Continue our commitment to community policing and problem solving, including vigorous, lawful and non-discriminatory traffic enforcement that promotes public safety and strengthens public trust, confidence, and awareness.

B.  It is the policy of this department that, except in "suspect specific incidents," police officers are prohibited from considering the race, gender, national or ethnic origin of members of the public in deciding to detain a person or stop a motor vehicle and in deciding upon the scope or substance of any law enforcement action.

## DEFINITIONS

*Racial and Gender Profiling* – Chapter 228 of the Acts of 2000 includes the following definition: the practice of detaining or stopping a suspect based on a broad set of criteria which cast suspicion on an entire class of people without any individualized suspicion of the particular person being stopped.

*Suspect Specific Incident* – An incident in which an officer is lawfully attempting to detain, apprehend, or otherwise be on the lookout for one or more specific suspects who have been identified or described in part by national or ethnic origin, gender or race.

## PROCEDURES

A.  **Prevention of Profiling**

To prevent racial and gender profiling, this department shall:

1.  Utilize the Criminal Justice Training Council or other certified training programs to help ensure that appropriate employees receive training on racial and gender profiling practices and the standards established by this policy;

2.  Ensure that this policy is disseminated to all officers, dispatchers and communications employees;

3.  Train supervisory personnel to monitor police conduct to ensure that the standards of this policy are being carried out by employees under their supervision;

4.  Review and, where appropriate, revise all procedures that involve the stop, detention, apprehension or search of individuals to ensure that such procedures are in compliance with the provisions of the law and this policy;

5. Review all performance recognition and evaluation systems, training curricula, policies and customs of the department to determine if any practice encourages conduct that may support or lead to racial or gender profiling; and

6. Educate the public, in conjunction with the Executive Office of Public Safety and the Registry of Motor Vehicles, on what to expect when either stopped or detained by a police officer, as well as police expectations during motor vehicle stops or police detainment, to ensure both officer and citizen safety.

### B. Identification of Profiling

To identify instances of racial or gender profiling, this department shall:

1. Utilize appropriate citizen complaint procedures to document and investigate allegations of racial or gender profiling filed directly with the agency or referred through the Executive Office of Public Safety's statewide toll free complaint number;

2. Utilize procedures for the proactive review of performance, complaint and other employment information to assist supervisors in identifying and modifying potentially problematic behavior and to promote professionalism in this department;

3. Direct officers to collect data on race, gender and subsequent searches in accordance with the protocol established by the Secretary of Public Safety; and

4. Where local conditions warrant and the financial and technical resources are available, the department will consider whether it may be appropriate to collect additional data or to engage in analysis beyond that required by the legislative mandate to meet local community concerns and needs.

### C. Enforcement of Profiling Policy

To enforce the provisions of this policy, this department shall:

1. Take appropriate action to address documented incidents of racial or gender profiling;

Racial and Gender Profiling Prevention    4

2. Utilize a system of intervention to enable or encourage an officer to undertake a voluntary modification of his or her conduct or performance; and

3. Take appropriate measures to correct any institutional practice or policy that has led to the use of racial or gender profiling.

Natick Police Department

140