General Order                    NATICK POLICE DEPARTMENT                    June 5, 2002

# Criminal Justice Information System Policy

| Purpose | To establish guidelines for the proper operation of fixed, mobile, and portable CJIS terminals; to insure the lawful handling of CORI information that is produced as a result of the use of the CJIS network. |

**System Use**

| | CJIS Use |
|---|---|
| 1. | The use of CJIS terminal is for criminal justice use only |
| 2. | Each operator shall take care to insure that no damage is done to a CJIS terminal, particularly by not consuming food or beverage near a terminal. |
| 3. | Each operator shall immediately report any damage to a CJIS terminal to one's supervisor. It is this agency's responsibility to report an inoperable CJIS terminal to the Field Services Unit of the Criminal History Systems Board (CHSB) as soon as possible. Terminal operators may be held responsible for damage done to a CJIS terminal. |
| 4. | No fixed or mobile terminal shall be modified or altered in any way from its set up configuration, unless it is done by the CHSB or the device's contract vendor, and then only with notification to, and concurrence of, the CHSB. |
| 5. | For safety reasons, no mobile data terminal (MDT) shall be used while the vehicle is in motion. |

**System Access**

| | CJIS Access |
|---|---|
| 1. | All operators of CJIS terminals shall be trained, tested, and certified under procedures set forth by the CHSB before using a terminal and shall be re-certified biennially thereafter. |
| 2. | Each terminal operator shall use one's assigned password when accessing the CJIS network and shall not give the password to anyone under any circumstances. No one shall use the network under another individual's password. |
| 3. | All operators shall log on to the network at the beginning of one's work day and shall log off at the end of one's work day to insure that each operator can not be held responsible for another operator's CJIS transactions. |

Criminal Justice                                                               June 5, 2002
GO 2002-02                                                                Dennis R. Mannix
         —          Attach. A– Item 41    —                                          /52

Provisions

| | Procedure |
|---|---|
| | Each CJIS terminal and the information obtained from it are to be handled in conformity to the policies and guidelines set forth by: |
| 1. | The Massachusetts General Laws |
| 2. | The Code of Massachusetts Regulations |
| 3. | The state's Criminal History Systems Board (CHSB) through its manuals, its training, its CJIS administrative Messages, the information it issues in its Newsfile, and its statements at Regional Working Group meetings. |

| | CORI |
|---|---|
| 1. | The Massachusetts Public Records Law (MGL Ch. 4 § 7) gives the public the right of access to certain public records. However, all CORI information that is obtained on the CJIS network is exempt from public access under the CORI Law (MGL Ch. 6 § 167-178, inclusive). |
| 2. | CORI is information compiled by a criminal justice agency that associates an identifiable individual, to include a juvenile tried as an adult, with an arrest, criminal charge, judicial proceeding, incarceration, rehabilitation or release. |
| 3. | Under the Code of Massachusetts Regulations, only those officials and employees of criminal justice agencies, as determined by the administrative heads of such agencies to require CORI for the actual performance of their criminal justice duties, shall have access to CORI. All such sworn police officers are eligible to receive CORI in the course of their official duties. The officer may share CORI with other officers or agencies with which an investigation is being conducted; this activity must be logged in the agency's CORI Activity Log with the date, time, individual checked, purpose, officer's name, and the agency given the information. The CORI Activity Log is maintained in the Records Department. |
| 4. | Such an officer may only conduct BOP checks:<br>A. As a result of an investigation<br>B. An arrest<br>C. An individual applying for criminal justice employment<br>D. For local licensing purposes - hackney where the police department is the licensing agency, hawkers, peddlers, constables, door-to-door sales people where the municipality requires the police department to regulate, and firearms purposes. |

General Order          NATICK POLICE DEPARTMENT          June 5, 2002

| | |
|---|---|
| 5. | A local municipal agency must apply for CORI certification to the CHSB. If certified by the CHSB, that agency shall submit all requests for CORI to the CHSB and then handle all such information in conformity to the CORI Law. |
| 6. | Anyone who requests a copy of one's CORI from this agency shall be given the form that one fills out to request such information from the CHSB at no charge, or be directed to the CHSB Web Page on the Internet to print the form. |
| 7. | Certain non-criminal justice agencies have been authorized by the CHSB to receive CORI information. Such agencies shall produce a letter to the non-criminal justice agency from the CHSB stipulating this fact when applying for CORI. |
| 8. | All other requests for CORI shall be referred to the Chief's office. |
| 9. | For an officer to lawfully obtain CORI and to then furnish this information to any person or agency not authorized to receive it is a misuse of CORI and may result in criminal and or civil penalties. |
| 10. | All complaints of CORI being improperly disseminated shall be handled as a citizen complaint and the chief shall be advised of the matter. The complainant shall also be advised to fill out the CHSB complaint form for improperly accessed or disseminated CORI. |

| | Interstate Identification Index (III) |
|---|---|
| 1. | Interstate Identification Index (III) checks may only be made for three (3) purposes:<br>A. The administration of criminal justice<br>B. Background check of a person applying for criminal justice employment<br>C. Background check of a person applying for a Firearms Identification Card or a Firearms License to Carry Permit |
| 2. | Whenever III information is disseminated to another criminal justice agency, it must be logged in the agency's Interstate Identification Index (III) Records Check Log with the same information supplied in the CORI Activity Log. Both Logs are maintained in the Records Department. |

Issuing Authority        Dennis R. Mannix
*Dennis R. Mannix* (signature)

Criminal Justice Information System Policy          June 5, 2002
GO 2002-02                                          Dennis R. Mannix     154

Policies and Procedures 300.8     Motor Vehicle Stop Reporting Policy

# MOTOR VEHICLE STOP REPORTING POLICY
# GENERAL CONSIDERATIONS AND GUIDELINES

In the interest of enhanced officer safety and to allow for the timely monitoring of compliance with *Policy & Procedure 10.7 Identification and Prevention of Racial and Gender Profiling* the following policy is provided.

## POLICY STATEMENT

It is the policy of the department to:

- Require all officers to report immediately to dispatch by radio, all motor vehicle stops, and any other officer initiated interaction with persons in a motor vehicle;

- Require dispatchers to create a call with the location of the stop and enter all vehicles stopped by officers unless the officer has done so from the mobile;

- Require supervisors to monitor the activities of officers under their command and insure their compliance with this policy.

## PROCEDURES

### Entering Motor Vehicle Stops

Officers stopping motor vehicles or interacting with persons in motor vehicles will:

1. Call out over the radio the location of the stop or interaction including the vehicle plate or other description if there is no plate;
   **Note:** Officers who are equipped with a mobile data terminal may enter the stop as a self-initiated call and back fill vehicle and owner data if they are able to, provided they advise dispatch over the radio, regardless of who is entering the call data.

2. Dispatchers will enter motor vehicle stops including the vehicle(s) when called in by officers unless they are advised by the officer that he/she will make the entry;

**Attach. A – Item 42**

Natick Police Department

/55

3. Officer are responsible for entering the Racial Profile data as directed in *Policy & Procedure 10.7 - Identification and Prevention of Racial and Gender Profiling* for each vehicle involved in their motor vehicle stops and for notifying dispatch when this is complete so the call can be closed.;

4. Completion of the computer version of the Data Profiling sheet will excuse officers from completing the paper form racial profiling form.

   If a citation is issued, the IMC Racial Profile number (05-xx-RP) **must** be written on the **agency copy** of the citation just above the Court Address box to indicate entry into the IMC system.

5. Dispatchers when reviewing the call before closing it should insure that all racial profiling data has been entered for each vehicle. Advise supervisor of missing or incomplete entries.

6. Supervisors reviewing the log should also verify that this has been done.

7. Officers without computer access are required to complete and submit a paper Racial Profiling form for all stops.

8. All paper Racial Profiling forms will be submitted to and reviewed by a supervisor on duty by the end of the shift. The supervisor will then deliver the forms to the on coming police dispatcher for entry in to the IMC system.

9. The police dispatcher assigned to the next shift will enter the data from the paper forms into the appropriate call, mark the racial profile as entered by placing the IMC Racial Profile number (05-xx-RP) and their initials on the upper right hand corner of the form.

Dennis R. Mannix
Chief of Police
Effective September 20, 2005

Training Bulletin                                                                February 12, 2003

## Unprotected Exposure Reporting Policy

**Background**

The Department of Public Health has developed and promulgated regulations and a standardized **Trip Form** for reporting unprotected exposures to certain dangerous diseases. Because in many cases the patient may only be available for testing for a brief period and such testing must be accomplished in a timely fashion by trained medical personnel, it is the responsibility of the officer who was exposed and his supervisors to insure that an unprotected exposure form is filed in a timely fashion with the appropriate medical personnel.

Any officer who believes that they have suffered an unprotected exposure, such as a needle stick with a bloody needle, should see a physician immediately. Certain prophylactic regimens should be started within hours of an unprotected exposure

**Definitions**

INFECTIOUS DISEASES

The regulations define infectious diseases dangerous to the public health as:

1. Clinical or laboratory evidence of hepatitis B and hepatitis C virus infections;
2. Clinical or laboratory evidence of human immunodeficiency virus (HIV) infection;
3. Meningococcal diseases;
4. Active pulmonary or laryngeal tuberculosis;
5. Haemophilus influenza B (HIB) disease, or; pertussis

UNPROTECTED EXPOSURE DEFINED

The regulations define types of unprotected exposure as:

1. **Puncture wounds** to your skin from contaminated objects (e.g. bloody glass, used needles);
2. **Blood to blood contact** between the patient's blood and your blood (e.g. an open cut on an ungloved hand);
3. **Mucous membrane contact** between patient's blood or bodily fluids (e.g. mouth to mouth resuscitation without a barrier, or patient's blood splashed in the rescuers eyes, nose or mouth)
4. **Inhalation exposure** resulting from close face to face contact with a patient who has coughed or sneezed on the care provider

*Continued on next page*

Training Bulletin					February 12, 2003

## Unprotected Exposure Reporting Policy, Continued

**Reporting Procedures**
*When the Subject is transported to a Hospital*

If you believe you have sustained an <u>unprotected exposure as defined above</u>, notify the EMT, Paramedic, etc. who is transporting the patient to the hospital. As soon as you finish the investigation, go to the hospital where the patient was transported and fill out an Unprotected Exposure Trip Form (available at the hospital or the station).

**The Trip Form is to be signed and left with the hospital personnel.** The hospital personnel receiving the form should sign it also. The officer must request a copy of the signed form to be filed with the incident report relating to the exposure. Support Services will forward a copy to the Board of Selectmen. In cases of air ambulance transport, fill out the Trip Form at the station and fax it to the hospital where the patient was transported.

Law requires the hospital, to notify the pre-hospital care provider (Police Officer, Firefighter, EMT) <u>orally within 48 hours and in writing within 72 hours</u> if the suspected exposure reported on the Trip Form is capable of transmitting an infectious disease. When the exposure is capable of transmitting a disease, the employee has had a positive unprotected infectious disease exposure.

NOTE: Not every suspected exposure is a positive unprotected exposure.

A positive unprotected exposure is considered a work-related injury. Therefore, <u>after receiving notification of a positive unprotected exposure</u> standard procedure for reporting a work related injury must be followed.

The employee must notify his supervisor, file the standard IOD report and have the supervisor complete the form. Submit the completed injury report to administrative services. The Selectmen's Office must be notified within 24 hours of notification of a positive unprotected exposure.

**Reporting Procedures**
*When the Subject IS NOT transported to a Hospital l*

Suspected unprotected exposures from a person not transported to a hospital should be documented by filing a Trip Form along with the department incident report. This report will be evaluated by the Occupational Health Nurse to determine if it was a positive unprotected infectious disease exposure.

*Continued on next page*

Training Bulletin                                                         February 12, 2003

## Unprotected Exposure Reporting Policy, Continued

| | |
|---|---|
| Equipment Cleaning | Whenever a cruiser or cell becomes contaminated by blood or other possibly infectious material, the supervisor shall be notified and it shall be placed out of service until it has been properly cleaned and sanitized. |
| Follow up Medical Evaluation and Treatment | Treatment should be sought within 24 hours of notification of a positive unprotected exposure.<br><br>An employee <u>with a positive exposure</u> may obtain follow-up from any one of the following sources:<br>  A.    The Emergency Department of the hospital where the trip form was left (when positive unprotected exposure to hepatitis B, hepatitis C, or HIV is KNOWN not suspected).<br>  B.    Fallon Health Clinic.<br>  C.    Your own primary care physician.<br><br>In some cases, follow-up may involve securing a baseline blood sample or periodic blood tests of a sensitive nature. It is important that all treatment be confidential, consistent and in keeping with the guidelines of the Center for Disease Control.<br><br>Treatment following a positive Hepatitis B, hepatitis C, or HIV exposure should be initiated AS SOON AS POSSIBLE, preferably within seven days from the time of the exposure.<br><br>If an employee has any questions or concerns about anything related to an unprotected exposure, he/she may contact the nurse listed below for confidential advice and counseling.<br><br>Deb Lada, CANP<br>Health Resources<br>190 North Main Street<br>Natick, MA 01760<br>(508) 655-9766 |
| Issuing Authority | Lt Peter E. Mason  /s/ |



# MASSACHUSETTS
# DEPARTMENT OF PUBLIC HEALTH

## UNPROTECTED EXPOSURE FORM

*(Please print or type)*

| Today's Date / / / / | Incident Date / / / / | Receiving Facility |
|---|---|---|
| Transporting Ambulance Service | | Ambulance Trip Report # |
| Address | | Designated Infection Control Officer (DICO) **LT. PETER MASON** |
| Telephone # for DICO **508-647-9512** | | It is recommended the prehospital emergency care agencies *type or print* in the name *and telephone number* of the current DICO before *blank* forms are provided to their personnel. |

| Patient Information | Rescuer Information |
|---|---|
| Name | Name |
| Incident Location | Address |
| Incident Type  ☐ Medical  ☐ Trauma | City/State/Zip |
| Transportation  ☐ Emergency  ☐ Routine | Day Phone / Evening Phone |
| Check box(es) which best indicate your exposure. *Explain in detail in the spaces provided below.* | Profession / Department/*Employer* |

Exposure Route: ☐ Needlestick  ☐ Open cut  ☐ Bite  ☐ Puncture  ☐ Mouth  ☐ Eye  ☐ Other:
Exposure Type: ☐ Blood  ☐ Sputum  ☐ Saliva  ☐ Other:
Precautions: ☐ Mask  ☐ Eye Wear  ☐ Gown  ☐ Exam gloves (latex, *nitrile*, vinyl)  ☐ Gloves (work type)  ☐ Other: _____
Cleaning: ☐ Hand Washing  ☐ Washing Contaminated Skin  ☐ Other:

Describe the nature of the unprotected exposure *in detail:* (attach additional pages if needed)

Describe the steps taken by the rescuer to minimize the exposure:

*I understand that in the case of certain exposures (e.g. needlestick with a bloody needle) it is crucial for the exposed rescuer to seek immediate medical evaluation for treatment that might reduce the risk of infection. Completion of the Unprotected Exposure Form may be done during or after the medical evaluation.*

*I further understand that I will be informed of an unprotected exposure, only if the patient is diagnosed as having a bloodborne infectious disease dangerous to the public health, as defined in 105 CMR 172.001 and if, in the view of medical personnel, my documented exposure is capable of transmitting that disease.*

Rescuer's Signature: _____  Date: _____

Form Received By: _____  Date: _____

Rev. 11/06/2000

*(Side 1 of 2)*  *(Instructions and Information on Reverse)* *( COPY BOTH SIDES! )*

160

## Massachusetts Department of Public Health
## Unprotected Exposure Form

An Unprotected Exposure Form should be completed for any prehospital emergency care worker (e. g. an EMT, firefighter, police officer, or corrections officer) who believes he/she may have had an unprotected exposure to a patient's blood or *other contaminated* body fluid(s) in the course of attending, assisting or transporting a person to a health care facility as part of his/her professional duties. It is the responsibility of each care provider to complete and file a form with the receiving facility.

If you believe you may have had an unprotected exposure, *you should seek immediate medical evaluation for possible prophylactic immunization and/or treatment, as indicated.* You must provide the information on this form to the facility which received the patient *from whom you received the exposure.* Ambulance *personnel* or other emergency care providers having an unprotected exposure must complete a form on arrival and leave it at the health care facility with the patient. Other individuals shall file their own forms with the receiving facility within 24 hours of the unprotected exposure.

The health care facility will review the information, which you provide and will determine if you have sustained an unprotected exposure as defined in DPH regulations. If the patient to whom you were exposed is diagnosed as having a bloodborne infectious disease dangerous to the public health, and if you sustained an unprotected exposure which, in the opinion of the health care facility, is capable of transmitting such a disease, the facility shall provide oral notification within forty-eight (48) hours of the diagnosis and written notification within seventy-two (72) hours of the diagnosis. This notice shall be given to the designated infection control officer for your agency who *must* be listed on the unprotected exposure form. Upon notification, the designated infection control officer shall notify you. The notice shall include the appropriate precautions and actions which you should take, the identity of the disease to which you were exposed, necessary precautions to prevent the transmission of the disease to others, and instructions to contact a physician for medical follow-up. NOTE: The health care facility's determination that you have had an unprotected exposure does NOT necessarily indicate that you have contracted an infectious disease. The report from the health care facility to the designated infection control officer to you is confidential and is governed by M.G.L. c.111, §111C and DPH regulations 105 CMR 170.000, 171.000 and 172.000.

*N.B. – Due to the time it may take to diagnose a patient with an infectious disease, or the possibility that a patient may never be diagnosed, and the time it may take to notify you of the exposure, the Department recommends that anyone who believes they have suffered an unprotected exposure, such as a needlestick with a bloody needle, should see a physician immediately. Certain prophylactic regimens should be started within hours of an unprotected exposure.*

### INSTRUCTIONS:

PLEASE PRINT CLEARLY

- Complete all information on the form.
- In the shaded areas, check all boxes that apply:
  - the exposure route to you of a patient's blood or bodily fluid(s).
  - the type of the patient's bodily fluid(s) to which you were exposed.
  - *body substance isolation* precautions you used (even if they were breached).
  - post incident cleaning you performed.
  - if you checked any "Other" box(es), explain in the space(s) *provided*.
- In the blank **narrative** sections explain fully the exposure and any treatment you have obtained. Use additional blank sheets, if necessary, and staple *them* to the form. The more accurately you explain the circumstances, the easier it will be for the facility personnel to evaluate your exposure.
- EMT's must also leave a copy of the ambulance trip record at the receiving facility.
- Each EMT and other prehospital emergency medical health care *providers who have* sustained an unprotected exposure must file his/her own form. The form(s) shall be submitted to the receiving health care facility upon patient arrival or within 24 hours.
- Transportation or treatment of the patient(s) must not be delayed in order to complete the form(s).
- *Make a copy for your own records and/or for your designated infection control officer, in accordance with your employer's policies and procedures.*

DO NOT SEND THE ORIGINAL FORM OR A COPY TO THE DEPARTMENT OF PUBLIC HEALTH!

(Side 2 of 2)                                                                                      11/6/2000

161