THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Robert F. Murphy, III, Lead Plaintiff for
Patrol Officer Plaintiffs, et al. and,

Brian C. Grassey, Lead Plaintiff for
Superior Officer Plaintiffs, et al.,

      Plaintiffs,

      v.

Town of Natick, et al.

      Defendants

USDC Case No.:  04-11996 RGS

**PLAINTIFFS' REPLY IN RESPONSE TO DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON
WAGE CALCULATION ISSUES**

Pursuant to the Scheduling Order, Plaintiffs submit this Reply in response to Defendants'

opposition to Plaintiffs' Motion For Summary Judgment filed on October 27, 2006 pertaining to

wage calculation issues.

**REPLY POINT #1:  Employer Bears Burden of Proof.**

The burden of proving an exception to the general rule that all remuneration shall be

included in the regular rate falls upon the employer asserting the exception, not the employee,

contrary to the point raised at page 2 (Part I.A.) of Defendants' memorandum.  See  Agawam,

350 F.3d at 294, citing Idaho Sheet Metal Workers v. Wirtz, 383 U.S. 190, 209 (1966).

**REPLY POINT #2:  Community Service, Assignment,
Inservice and Compstat Differentials do
not fall under any exception.**

Contrary to the citation-free argument of Defendants at pages 2-4 of their memorandum,

there is no exception to the general rule requiring inclusion of all remuneration paid to

employees in the regular rate, simply because compensation is paid at an interval other than every week.  This argument was rejected by the First Circuit in Agawam, 350 F.3d at 295 ("annual longevity payment" must be included in regular rate).  Further, Defendants engage in semantics and claim as well that the Community Service differential is "more like a gift as a reward for service".  However Defendants fail to reconcile the undisputed fact that such payment is made pursuant to a contractual requirement, without employer discretion, and they fail to reconcile the discussion of longstanding regulations by the First Circuit in Agawam which have long established that bonus payments promised to employees (i.e., here by labor contract) are patently compensation that must be included in the regular rate.  Id.; see also  Haber v. Americana Corporation, 378 F.2d 854 (9th Cir. 1967) (bonuses paid per requirement, rather than employer discretion, must be included in regular rate).  The same citation-free argument is made regarding Compstat Technology differential and it is equally unavailing.

With respect to Inservice Training Differential, Defendants claim at page 4 of their memorandum that it must be excluded from the regular rate because it is an "incentive payment", and because the payment is made only after the officer accomplishes such inservice training and only to "reimburse[]" them for costs of such training.  Defendants cite no cases supporting this proposition.  In addition, Quinn Bill payments are defined by statute as "incentive payments" and they are accrued only after the specified level of education is obtained, just like the Inservice Training Differential.  G.L. c. 41, §108L (entitled "Career Incentive Pay Program"); see also Rooney v. Yarmouth, 410 Mass. 485, 487 (1991) ("a career incentive pay program").  Defendants fail to reconcile that, in spite of these common features, Agawam held that Quinn Bill Education pay must be included in the regular rate.  Regarding the claim that the differential is simply reimbursement that is true only in the sense that it is compensation paid in exchange

for effort expended to obtain such inservice training.  Sgt. Lauzon's testimony cited by

Defendants does not indicate otherwise.

**REPLY POINT #3:  <u>Adverse inference against employer for
lack of payroll records.</u>**

Defendants at page 6-7 of their memorandum address the fact that officers may receive

contractual overtime at times where they may not be entitled to FLSA overtime.  While this is

true, it does not undermine the conclusion that where officers actually work more than 40 hours

per week, they are entitled to FLSA overtime for those hours.  The indisputably accurate

paybooks of Sgt. Fitzpatrick establish these facts and provide the basis for making this

calculation.  The Town's clamor about the possibility that the actual hours worked are not

recorded is not the problem of the Plaintiffs; it is the problem of the employer.  Any ambiguity in

the records under the FLSA, caselaw, and its regulations must be resolved against the employer.

<u>See</u> FLSA §211(c); 29 C.F.R. §516.1 to 516.6; <u>Anderson v. Mt. Clemens Pottery Co</u>., 328 U.S.

680, 687, (1946) (same); <u>O'Brien v. Town of Agawam</u>, 440 F. Supp. 2d 3, n. 10 (2003) (same);

<u>Reich v. Waldbaum Inc</u>., 833 F. Supp. 1037 (S.D.N.Y. 1993) (employer that fails to complete

proper records will find it nearly impossible to rebut such prima facie case established by

generalized employee testimony).  Since the employer has introduced no contrary documents on

summary judgment, the paybooks of Sgt. Fitzpatrick are conclusive.

**REPLY POINT #4:  <u>"Unpaid" Wages should be calculated
and liquidated damages based upon
liability for such unpaid wages; FLSA
§207(h) offsets applied at most on weekly
basis as offset in week accrued only.</u>**

Defendants correctly assert at pages 7-9 (Part I.B.3) that FLSA §207(h) permits an

employer to offset the amount owing for FLSA overtime by the premium component of

contractual overtime paid for hours worked under 40 in the seven day work period.  However,

the overreaching claim of Defendants at pages 9-12 (Part I.B.4) that the employer may use offsets accrued in one week to offset damages on a cumulative basis for unpaid wages in subsequent weeks or years is without basis.[1]

In considering this issue the Court may initially note that three Circuits—the Fourth, the Sixth, and the Seventh—have held that there should be a week by week application of offsets rather than a cumulative offset over several weeks or years; the Ninth Circuit has reached the same conclusion in context of minimum wage claims; and two additional District Court rulings (including one from an additional Circuit (8th Circuit)) have also held that such offsets are limited to the week accrued in accord with rulings of the Fourth, the Sixth, and the Seventh Circuit Courts of Appeals.  See  Roland Elec. Co. v. Black, 163 F.2d 417, 420-21 (4th Cir. 1947) (issued prior to adoption of Section 207(h) in 1947, and then cited with approval after 1947 by

---

[1] Before reviewing the law relating to this issue, it should be noted that the issue of liability for "unpaid wages" is distinct from the issue of the extent to which offsets under §207(h) are to be applied in calculating the remedy.  Section 216(b) provides for liquidated damages not on the amount owing after offset, but upon the total liability for "unpaid" wages (the employer "shall be liable to the . . . employees affected in the amount of their. . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages").  29 U.S.C. §216(b).  The term "unpaid" is a term of art and as shown in the text at Reply Point #4 at Section C, it relates to payment that is not made, or untimely made under the regulations.  Thus, liquidated damages are mandatory and calculated in relation to the employer's total liability for unpaid wages as held by the Supreme Court in Brooklyn Sav. Bank. v. O'Neil, 324 U.S. 697, 710-11 (1945); Biggs v. Wilson, 1 F.3d 1537, 1541-42 (9th Cir. 1993) (reciting this principle) cert. denied., 510 U.S. 1081 (1994); see also  Reich v. Newspapers of New England, Inc., 834 F. Supp. 530, 542 (D.N.H. 1993), aff'd, 44 F.3d 1060 (1st Cir. 1995).  For the above reasons, the offset issue under Section 207(h) discussed in this section is not germane to reducing the amount of liquidated damages, but instead at most germane to ascertaining whether there are any offsets applicable to the remedy otherwise.  To find otherwise, would permit an employer to make a lump sum payment on the eve of the lawsuit for all backwages, even if such payment was made after months and years of delay, and have no liquidated damages for such delay.  The actual and intangible damage to employees for such non-payment (delayed payment) would be completely at odds with the purposes of the FLSA in general, and Congressional intent in establishing liquidated damages.  See H. Rep. No. 99-331, 99th Cong., 1st Sess. 10 (1985); Overnight Motor Transport. Co. Inc. v. Missel, 316 U.S. 572, 583 (1942) (liquidated damages are for purposes of "compensation to an aggrieved employee for losses that [may be] too obscure and difficult of proof for estimate").

the Tenth Circuit in <u>Dunlop v. Gray-Goto, Inc.</u>, 528 F.2d 792, 794 (10th Cir. 1976) which

reviewed <u>Roland</u> and other cases on point as detailed in the margin);[2] <u>Herman v. Fabri-Centers

of Am., Inc.</u>, 308 F.3d 580, 590 (6th Cir. 2002) <u>cert. denied</u>, 537 U.S. 1245 (2003) (finding offset

only on a weekly basis and overruling prior District Court ruling in <u>Abbey v. City of Jackson</u>,

883 F. Supp. 181, 184-87 (E.D. Mich. 1995)); <u>Howard v. City of Springfield</u>, 274 F.3d 1141,

1147-49 (7th Cir. 2001) (weekly offsets only); <u>Nolan v. City of Chicago</u>, 125 F. Supp. 2d 324,

332 (N.D. Ill. 2000 [within 7th Circuit]) (same); <u>Bell v. Iowa Turkey Growers Coop.</u>, 407 F.

Supp. 2d 1051, 1063 (S.D. Io. 2006 [within 8th Circuit]) (same); <u>see also</u> <u>Biggs v. Wilson</u>, 1 F.3d

1537, 1539-53 (9th Cir. 1993) (weekly offsets in context of minimum wage claim).

In contrast to this, contrary to the claims of Defendants, there is actually only one Circuit—

the Fifth Circuit—that has ruled in favor of cumulative offset, but to a much more limited degree

than argued by Defendants.  The Fifth Circuit there was, in effect, satisfied because the offset

was recurring and regularly paid in advance of the week of the shortfall, as explained in greater

---

[2] In <u>Dunlop</u> the Tenth Circuit addressed  Section 207(h) in the following context and noted the
validity of the reasoning in <u>Roland.</u>  In so doing, the Court reinforced the position of Plaintiffs
here, and cited other cases that lend support to that position:

> Our holding that the fringe benefits with which we are here concerned may not be
> credited against overtime pay required by the Act would appear to be in accord with
> the general case law on the subject.  For cases holding that bonuses are not to be
> credited against an employee's claim for overtime pay, see, by way of example,
> <u>Bable v. T.W. Phillips, Gas and Oil Company</u>, 287 F.2d 21 (3d Cir. 1961) and
> <u>Roland Electrical Co. v. Black</u>, 163 F.2d 417 (4th Cir. 1947).  In <u>Rigopoulos v.
> Kervan</u>, 140 F.2d 506, 507 (2d Cir. 1943) the Second Circuit stated that 29 U.S.C.
> §207 "plainly contemplates that overtime compensation shall be paid in the course
> of employment and not accumulated beyond the regular pay day."  And in <u>Brennan
> v. Heard</u>, 491 F.2d 1, 4 (5th Cir. 1974) the Fifth Circuit observed that "setoffs
> against back pay awards deprive the employee of the cash in hand' contemplated by
> the Act. . . ."

<u>Dunlop</u>, 528 F.2d at 794.

detail in the margin.[3]  Singer v. City of Waco, 324 F.3d 813, 826 (5th Cir. 2003).  And, there is

one District Court decision from the Fifth Circuit in Hesseltine v. Goodyear Tire & Rubber Co.,

391 F. Supp 2d 509 (E.D. Tex. 2005), extensively quoted by Defendants, which reached the

same conclusion because it was required to follow Fifth Circuit precedent of Singer.  With

respect to , Alexander v. U.S., 32 F.3d 1571, 1576-77 (Fed. Cir. 1994) and Kohlheim v. Glynn

County, 915 F.2d 1473, 1481 (11th Cir. 1990), they are mistakenly identified by Defendants in

their memorandum (as well as mistakenly identified by the District Court in Hesseltine, 391 F.

Supp. 2d at 522 and the Fifth Circuit in Singer, 324 F.3d at 827) as reaching the same conclusion

as the Fifth Circuit in Singer.  That is not accurate.  Those cases do not discuss the issue of

whether offsets should be applied on a weekly or cumulative basis under Section 207(h), as

explained in the margin.[4]  Thus, in the end, Defendants position is actually supported in part by a

_____

[3]  The Fifth Circuit in Singer expressly found that, in context of a recurring pattern of work
period of 96 actual hours worked and 120 hours actually worked there was a marginal
underpayment of approximately $6.60 in the 120-hour period and a substantial overpayment
of $126.20 in the following 96-hour work period.  324 F.3d at 826.  Because of this recurring
pattern, the Court found that the underpayments in the 120-hour period were not "late" payments
(i.e., triggering liability) but instead the overage in the 96-hour periods were "overpayments as
pre-payments" of overtime.  Id. at 828.  The Court therefore was focused on the recurring nature
of the payment pattern, and that in successive pay periods there was regularly an overpayment
followed in the very next pay period by underpayment which completely offset the prior pay
period's overpayment.  Singer did not sanction a multi-month or multi-year offset formula as
suggested by Defendants.  Nor did Singer even remotely address the legislative history and
regulatory arguments that the Sixth Circuit in Fabri-Centers reviewed in scholarly fashion.  Thus,
Singer is not persuasive and not shown to be applicable to the current case.

[4]  With respect to Alexander v. U.S., 32 F.3d 1571, 1576-77 (Fed. Cir. 1994) the sole
issue was whether offsets were permitted at all under Section 207(h) for a particular
form of premium pay.  The record in that case showed that the employer (the federal
government) reconciled the FLSA overtime owing on a weekly basis and the Court
did not address the propriety of that method versus cumulative method of applying
offsets.  Id. at 1572-73, and 1576.  Likewise Kohlheim v. Glynn County, 915 F.2d
1473, 1481 (11th Cir. 1990) found in favor of an offset for two distinct levels of
overtime pay (which was the issue), without commenting on whether the offset
should be applied cumulatively or on a week by week basis.  Id.  In so finding the

single Fifth Circuit ruling in <u>Singer</u> (and a single District Court ruling in <u>Hasseltine</u> of the Fifth Circuit which was obliged to follow <u>Singer</u>).

Accordingly the authorities are weighted fairly heavily in favor of Plaintiffs' position that weekly offsets are only permitted under Section 207(h). In addition, a review of the reasoning of the courts in those cases shows that the Sixth Circuit in <u>Fabri-Centers</u> by far provided a thorough, scholarly, persuasive analysis of each element relating to the interpretation of the statutory provision in question, FLSA §7(h). <u>Howard</u> and <u>Roland</u> provide a similar detailed analysis. On the other hand, <u>Singer</u> and the other courts cited by Defendants in support of their position at best reach their conclusion with cursory analysis, and without reconciling the legislative history, DOL Opinions letters, and other points set forth by the Sixth Circuit in <u>Fabri-Centers</u>.

With the foregoing in mind, Plaintiffs set forth the reasons why the Court here should adopt the persuasive opinion of the Sixth Circuit in <u>Fabri-Centers</u> and find that offsets may be applied only within the same pay period that the offset is accrued. The starting point for that analysis is the relevant language of §7(h) of the FLSA, 29 U.S.C. 207(h), which provides:

---

Court simply stated the following conclusion without offering any further rationale: "The FLSA mandates that 'extra' compensation paid by an employer be credited toward overtime compensation due. . . . [T]o clear up any confusion we hold that the county should be allowed to set-off <u>all</u> previously paid overtime premiums, not just those equal to or greater than 1 1/2 times the regular rate, against overtime compensation found to be due and owing during the damages phase of the trial." <u>Id.</u> Moreover, the Court's ruling on that issue (allowing an offset for premium pay that did not amount to 1.5 times the regular rate) is at odds with DOL Opinion Letter on that issue. <u>See</u> DOL Opinion Letter dated October 25, 2006, 1996 DOLWH LEXIS 37 (holding that premium compensation at 125% of regular rate should be counted in regular rate under Section 207(e)(5) to (7). This analysis of those two cases is also in accord with the position taken by the Secretary of Labor in her Brief filed in <u>Fabri-Centers.</u> ("Both of those decisions refer to Section 7(h), but neither says anything directly about the question at issue here -- whether crediting under Section 7(h) may occur outside of the work week in which the premiums were earned.").

> Extra compensation paid as described in paragraphs (5), (6), and (7) of subsection (e) shall be creditable toward overtime compensation payable pursuant to this section.

29 U.S.C. §207(h).  This statutory language is silent as to when the crediting which it allows may take place, and therefore it is subject to interpretation on that issue.  <u>Nationsbank of North Carolina, N.A. v. Variable Annuity Life Insurance Co., et al</u>., 513 U.S. 251, 257 (1995).

As shown next, Plaintiffs' interpretation that Section 7(h) permits offsets only within the work week or work period in which the contractual premiums were paid is supported by:  **(A)** longstanding interpretation of the Administrator of the DOL Wage and Hour Division in Opinion Letters and in the Brief filed by the DOL Administrator in <u>Fabri-Centers</u>; **(B)** Legislative History reflecting Congressional purpose of Section 7(h); and, **(C)** the context of the Fair Labor Standards Act in which Section 7 (h) appears.  <u>Fabri-Centers</u>, 308 F.3d at 586-93; <u>see also</u> Brief For the Secretary of Labor filed in <u>Fabri-Centers</u>, 2001 U.S. 6th Cir. Briefs 3080, 2002 U.S. 6th Cir. Briefs LEXIX 47 (hereinafter "DOL Brief"), attached hereto as Attachment A.

### A.    Longstanding Interpretation By DOL Administrator And "Auer Deference".

The Administrator of the Wage and Hour Division has always interpreted Section 7(h) as applying on a workweek or work period basis.  There are at least three opinion letters which reflect this.  The first is a DOL Opinion Letter dated December 23, 1985 in which the Deputy Administrator stated, <u>inter alia</u>:

> We wish to point out that surplus overtime premium payments, which may be credited against overtime pay pursuant to section 7 (h) of [the] FLSA, may not be carried forward or applied retroactively to satisfy an employer's overtime pay obligation in future or past pay periods.

1985 WL 304329, page 3, 1985 DOLWH LEXIS 2, page *8, Attachment B; <u>id.</u> at 592.

The second and third letters are DOL Opinion Letters dated December 2 and December

20, 1966, where the DOL Administrator stated that,

> the extra compensation provided by the premium rate paid for such
> daily overtime hours may be credited, pursuant to section 7 (h) of
> the Act, toward any overtime compensation payable under section
> 7(j) [and 7(k)] for hours worked in excess of 80 in such period.

1966 DOLWH LEXIS 270 at page *2and 1966 DOLWH LEXIS 298 at page *2, Attachments C

and D; Fabri-Centers, 308 F.3d at 592; DOL Brief LEXIS at *8-12, Attach. A.  These two

opinions are germane even though they relate to Section 7(j) and 7(k).  Section 7(j) allows for the

use of an overtime standard of 80 hours in a 14-day work period for employees of hospitals.

Employees of public agencies engaged in fire protection and law enforcement duties may also be

paid on the basis of work periods rather than work weeks, as provided in Section 7(k), 29 U.S.C.

207(k).  Whether Section 7(h) is applied on a weekly basis to overtime computed under Section

7(a) or applied on a work period basis to overtime computed under the work periods authorized

by Sections 7(j) or 7(k), it is clear that crediting over a period of months or years is inconsistent

the Administrator's interpretation of Section 7(h), 29 U.S.C. §207(h), as reflected in these

longstanding letters and the DOL Brief.  DOL Brief LEXIS at *9, Attach. A.

The persuasive force of the opinion letters (and DOL Brief in Fabri-Centers which

reiterates this analysis of those letters) is not lessened by the fact that the opinion letters were

directed to third parties rather than Defendant Town of Natick.  Id. at 592-93; United States v.

Mead Corp., 533 U.S. 218, 235 (2001).  "When faced with a problem of statutory construction,

federal courts should show 'great deference to the interpretation given the statute by the officers

or agency charged with its enforcement."  Fabri-Centers, 308 F.3d at 592 (citing and quoting

from Udall v. Tallman, 380 U.S. 1, 16 (1965)).  As shown in Part C below of this section and the

DOL Brief, the regulations do not plainly and unambiguously resolve this issue, although they

clearly imply an interpretation as advanced by Plaintiffs here and the Secretary of Labor in Fabri-Centers. Under those circumstances, deference to agency letters and the DOL Brief filed in Fabri-Centers is appropriate under Auer v. Robbins, 519 U.S. 452, 461 (1997) and referred to now as "Auer deference". See, Christensen v. Harris County, 529 U.S. 576, 587-588 (2000), holding that "Auer deference . . . is warranted only when the language of the regulation is ambiguous", and finding that "Auer deference" was not applicable there only because "[n]othing in the regulation even arguably require[d]" the position advanced by the DOL." Here, there is at least an "arguable" basis for an interpretation of the regulations set forth here at Part C of this section and in the DOL Brief in Fabri-Centers. Accordingly, Auer deference should be afforded to the position of the DOL as expressed in such DOL opinion letters and the DOL Brief in Fabri-Centers. Moreover, even assuming arguendo that the regulations do not even arguably address this issue–and Plaintiffs in no way concede that point–even under Christensen the DOL Opinion Letters and the DOL Brief in Fabri-Centers are "'entitled to respect' [but not "Chevron deference]. . . to the extent that those interpretations have the 'power to persuade.'" Christensen v. Harris County, 529 U.S. 576. 587-88 (2000) (referencing Chevron v. Natural Resources Def. Council, Inc., 467 U.S. 837, 843 (1984)). Cf. Christenson, at 529 U.S. 589-90 (in his concurring opinion, Justice Scalia argued that the majority should have found full Chevron deference appropriate for DOL Opinion Letters and DOL Brief regardless of the clarity of the regulations).[5]

**B.    Legislative History of 29 U.S.C. §207(h).**

The Court should also look to legislative history relating to Section 7(h) and the closely related Section 7(e)(5)(6) and (7) to clarify the Congressional intent under Section 7(h). Johnson v. U.S., 120 S. Ct. 1795, 1805 (2000) ("[The court's] obligation is to give effect to congressional

---

[5] See also, Defendants' memorandum at page 17, note 7, wherein it acknowledges this latter point regarding the special detail issue.

purpose so long as the congressional language does not itself bar that result.").  In doing so the Court will find that legislative history as well supports limiting offsets to the work period in which the offset was accrued.  The congressional purpose behind the enactment of FLSA Sections 7(e)(5), (6), and (7), as well as the closely related provision at Section 7(h), was to provide a measure of fairness to the employer.  Congress considered it unfair to require the inclusion in the regular rate of pay for overtime purposes of contractual premiums not required by the Act, thereby making the employer pay "overtime on overtime."  See S. Rep. No. 81-402 (1949).  Likewise, Congress considered it fair for employers to be given credit for the contractual premiums against the statutory overtime they might owe.  Id.; Fabri-Centers, 308 F.3d at 586-89; DOL Brief LEXIS at *12-14, Attach. A.

In enacting these sections of the FLSA in 1949, Congress was responding to the Supreme Court's decision in Bay Ridge Co. v. Aaron, 334 U.S. 446 (1948).  In that case the Supreme Court required the maritime employer to pay stevedores statutory overtime compensation based upon a "regular rate" that included contractual premium compensation (i.e., "overtime on overtime").  Thus, the enactment of FLSA Sections 7(e)(5), (6) and (7) and Section 7(h) one year later in 1949 cured the problem of the FLSA overtime rate being calculated with inclusion of contractual premiums that were not required by statute in the regular rate.  Since the problem that was being solved by Congress was viewed as being confined to a single workweek, Section 7(h) should be interpreted to allow crediting on the same workweek basis.  See Amendments to the Fair Labor Standards Act of 1938, Hearings Before the Committee on Education and Labor House of Representatives, 81st Cong., 158-60 (1949) (testimony of Walter E. Maloney, Representing the National Federation of American Shipping, Inc.).  As described below, it would be unfair to employees if the crediting permitted by Section 7(h) is not limited to situations

where statutory overtime is worked and contractual premiums are paid in the same week.  Fabri-Centers, 308 F.3d at 586-88; DOL Brief LEXIS at *13-14, Attach. A.

> **C.     The FLSA as a whole and its implementing regulations demonstrate that "Auer Deference" is required and in any event support limiting offsets to the workweek accrued.**

Plaintiffs' interpretation of Section 7(h) and that of four Circuit Court rulings referenced above in Fabri-Centers, Roland, Howard, and Biggs are also consistent with the principle that, unless otherwise statutorily modified, the overtime provisions of the FLSA, including crediting which forms a part of those provisions, are to be applied on a weekly basis.  However the Defendants' interpretation contradicts the statutory and regulatory scheme for the computation and payment of overtime.  The terms of the FLSA do not unambiguously answer the question at issue here, but they establish the seven-day workweek as the applicable time frame for the computation of overtime at §7(a), 29 U.S.C. 207(a) ("No employer shall employ any of his employees. . . for a workweek longer than forty hours unless such employee receives [overtime] compensation for his employment in excess of the hours above specified.").

Moreover, with respect to calculation of overtime the DOL has issued regulations, inter alia, from 29 C.F.R. §§778.103 to 778.106,[6] which define how overtime should be calculated in relation to the work week or work period, but do not expressly reiterate that such regulations relate to the overtime-calculation principle set forth at §7(h) at issue here.  Since those regulations convey general principles relating to calculating overtime, and that computations should be based upon the principle that each "workweek stands alone" (see 29 C.F.R. §778.105 –

---

[6] The regulations in these section in seriatum are entitled "The workweek as the basis for applying Section 7(a)"; "Each workweek stands alone"; and "Determining the workweek"); and 29 C.F.R. 778.106 ("The general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends.".

text in margin),[7] the regulations are (at least arguably) applicable to §7(h).  Accordingly, when

Section 7(h) is interpreted in light of statutory and regulatory provisions, the position of

Plaintiffs here and the DOL in <u>Fabri-Centers</u> is fully supported.  Therefore, <u>Auer</u> deference to the

above-referenced DOL Letters and DOL Brief is required.  Regardless, such contextual reading

is permitted and required to clarify the ambiguity of §7(h).  <u>Holloway v. United States</u>, 526 U.S.

1, 6 (1999) ("In interpreting the statute at issue, we consider not only the bare meaning' of the

critical word or phrase but also its placement and purpose in the statutory scheme.'"); <u>Fabri-</u>

<u>Centers</u>, 308 F.3d at 589-90; DOL Brief LEXIS at *14-17, Attach. A.

    Also, the interpretation advanced by Plaintiffs is supported because Defendants' position,

if permitted, could/would lead to abuses of the overtime provisions of the FLSA.  For example,

an employer could choose to pay premiums not required by the statute during a week in January

when no FLSA overtime is worked, in anticipation of the busy season several months or years

later.  If the employee then worked FLSA overtime during a week in a subsequent month or even

two or three years later for which compensation would ordinarily be due, the employer would not

have to pay that employee anything if the January payments in the first year equaled or exceeded

the FLSA overtime requirement, because the employer could then take credit for those earlier

premium payments.  Even worse, an employer could take a gamble that there would be greater

overtime two to three years later, and if it did not happen, then simply make a lump sum payment

---

[7] 29 C.F.R. §778.105 entitled "Each workweek stands alone" reads:  "The Act takes a single workweek as its standard and does not permit averaging of hours over 2 or more weeks.  Thus, if an employee works 30 hours one week and 50 hours the next, he must receive overtime compensation for the overtime hours worked beyond the applicable maximum in the second week, even though the average number of hours worked in the 2 weeks is 40. This is true regardless of whether the employee works on a standard or swing-shift schedule and regardless of whether he is paid on a daily, weekly, biweekly, monthly or other basis. The rule is also applicable to pieceworkers and employees paid on a commission basis. It is therefore necessary to determine the hours worked and the compensation earned by pieceworkers and commission employees on a weekly basis."

to the employee three years after the week in which the overtime was accrued.  Under Defendants' theory these schemes are possible, yet they violate 29 U.S.C. §207(a)'s unambiguous mandate that employers pay overtime compensation for work performed in excess of 40 hours in each and every workweek.  As the DOL has stated, "Surely, this temporal disconnect between the work actually performed and the compensation received is not what Congress intended by allowing for crediting under Section 7(h)."  DOL Brief LEXIS at *17.

Concern for such abuse as discussed in the previous paragraph is exactly the scenario about which the court in Nolan v. City of Chicago was concerned in finding that offsets are limited to the week in which they are accrued, Nolan, 125 F. Supp. 2d at 331-32, as well as by the DOL Deputy Administrator in the DOL Opinion Letter dated December 23, 1985 in which the Deputy states inter alia that premium pay "may not be carried forward or applied retroactively to satisfy an employer's overtime pay obligation in future or past pay periods." 1985 DOLWH LEXIS 2 at *8, Attach. B.  This delay in the payment of overtime compensation would not only be contrary to the Section 7 framework based on the workweek, but also the requirement that FLSA wages be paid promptly.  See, e.g.  Biggs v. Wilson, 1 F.3d 1537, 1539-53 (9th Cir. 1993) (14 days delay unlawful), cert. denied, 510 U.S. 1081 (1994).

Biggs (noted above) is relevant to this analysis.  There the Ninth Circuit dealt with the question of when, under Section 6(a) of the Act, 29 U.S.C. §206(a) (minimum wage requirement), an employer's late payment of wages constituted a violation of the FLSA.  Section 6(a) like Section 7(h) has no express language specifying when it is to be applied.  To clarify the ambiguity the Ninth Circuit examined the statutory scheme as a whole and concluded that the workweek standard is the appropriate period, finding that "the obligation [to pay minimum wage] kicks in once an employee has done covered work in any workweek," and "if a payday has

14

passed without payment, the employer cannot have met his obligation to pay.'" Biggs, 1 F.3d at 1539. The Ninth Circuit then noted that Section 16(b) makes employers liable for unpaid wages and liquidated damages and that this further reinforced the need for a definite time for knowing when wages become "unpaid". If a date certain were not established for the operation of Section 6(a) "liquidated damages would be meaningless" because it would be impossible to calculate the amount of liquidated damages or prejudgment interest (which is paid in lieu of liquidated damages) owed by an employer who fails to pay the required wages Id. at 1540. The Court also found support from this because the FLSA has a statute of limitations, for which a specific starting time must be established if it is to be applied. Id.; see also Fabri-Centers, 308 F.3d at 591; DOL Brief LEXIS at *18-20, Attach. A. The reasons for using a workweek standard in the application of Section 6 (a) are consistent with using that standard in the application of Section 7 (h) as well. Accordingly, Defendants' argument which would allow for crediting under Section 7(h) for payment of future contractual premiums weeks, months or years later against current FLSA overtime obligations would result in the same evils the court was trying to cure in Biggs.

Defendants' vigorous complaints about "windfall" to employees, in context of the foregoing analysis, is shown to be a self-serving, baseless claim that ignores the principles underlying the FLSA. Allowing for offsets only in the week accrued is not "punishment" of the employer or a "windfall" to the employee when an employer decides, for whatever business or other reasons of its own, to pay more than the statute requires. The employer is only required to pay FLSA overtime. In this case the union negotiated premium compensation that in some instances as described by Defendants provides an appropriate offset under Section 207(h). And, while the Town of Natick may freely choose to pay non-statutorily required premiums such as those provided for in the collective bargaining agreements, just as many employers choose to pay

more than the minimum wage required by the statute, there is no basis for saying that this choice

on the employer's part should affect the operation of the statute, which is clear in setting out each

workweek "standing alone" as the appropriate measure of time for the payment of overtime, and

is reasonably interpreted in turn as setting out the workweek as the appropriate measure for any

crediting against such overtime.  There are many instances where the employer voluntarily

chooses to enter into a transaction with employees that is not required by the FLSA.  As the DOL

pointed out in its Brief in Fabri-Centers,

> Such transactions do not affect the operation of the statute and do
> not create a "windfall" and the position of Plaintiffs as well should
> not be construed as creating one.  See, e.g., Brennan v. Heard, 491
> F.2d 1, 4 (5th Cir. 1974) (employer could not set off against wages
> owed to the employees the value of goods it gave them because "to
> clutter these proceedings with the minutiae of other employer-
> employee relationships would be antithetical to the purpose of the
> Act.").

DOL Brief LEXIS at *20-21, Attach. A; see also  Fabri-Centers, 308 F.3d at 592.  Based upon

the foregoing the District Court should reject Defendants' cumulative offset claim.[8]

### REPLY POINT #5:  Town Details Issue.

As articulated in Plaintiffs' principal memorandum, Plaintiffs contend that Town details

do not fall under the "special detail" exemption of Section 207(p) because, in effect, the Town is

a single employer.  The Town is the appointing authority under G.L. c.31, has one payroll

system; has one pension system under G.L. c.31; is the sole bargaining agent and funding source

for all labor contracts under G.L. c.150E, §§1, 6, 7(b); and the Town's own interests are

---

[8]  Defendants' "One Example" involving Officer Murphy should be rejected.  The Defendants
have not itemized the calculations; the calculations do not reflect FLSA overtime for Town
details; and they apparently include offsets for total contractual overtime premiums beyond the
workweek accrued.  At best, the employer's argument justifies that the Court sustain each
element of Plaintiffs' Motion For Summary Judgment, and add an additional element relating to
the an offset under Section 207(h) in the workweek accrued as described above and establish a
time frame for submission of exact calculations to the court.

inextricably intertwined by each "paid detail" worked in service of each of its departments. That the Town is the centerpiece of all operations, financing, and allocation decisions to each department is reinforced by the Massachusetts Department of Revenue ("DOR"), which defy Defendants' opposition argument that the Town is somehow equal to its departments and/or that it does not have absolute control over them. See, Attach. E (DOR Summary of Natick); Attach. F (DOR "Cherry Sheet" – itemizing state aid to the Town, and showing no aid to individual departments but instead providing the town with aid in general and aid earmarked for specific purposes such as "police career incentive pay"); Attach. G ("Municipal Stability Analysis" which shows evaluation of Town as whole, rather than separate analysis of departments). Given the clarity of those indisputable facts Plaintiffs therefore contend that there is no scenario by which the Town can establish that the DPW as compared to the Police Department as compared to the Town Clerk etc. are separate and independent employers.

In an effort to undermine that analysis, the Town provides a quotation from a Senate Report relating to adoption of Section 207(p). The Town in effect claims that the Report unambiguously declares a per se rule that any detail worked for any department of any town is work for a separate and independent employer. The Defendants load more cargo on that Senate Report than it can withstand. On the one hand it is true that the Report states that exempt special details could include extra employment "from a school board" or "from a promoter to furnish crowd control at a rock concert". S. Rep. No. 99-159 (1985). That language does not clearly and unambiguously state that the "school board" is connected or controlled in any way by the town or whether it is a school board from another town. Given the possible variations in the relations between towns, cities, authorities and states on a nationwide basis, Defendants' claim that such Senate Report comment indicated a per se rule is not persuasive or justified.

Accordingly, although the Senate Report may be considered, it does not end the inquiry. DOL regulations and Opinion Letters are also relevant under the doctrine of "Auer deference" referred to above.  The regulations of the DOL, rather that establishing a per se, rule instead at 29 C.F.R. §553.227(c) state "Whether two employers are, in fact, separate and independent can only be determined on a case-by-case basis."  Given that the regulation is ambiguous on the issue of whether or not the specific situation presented here should be deemed a "separate and independent" employer situation under 29 U.S.C. §207(p), the DOL Opinion Letter dated October 10, 1985 cited at page 16 of the primary brief submitted by Plaintiffs should be deferred to.  Therefore, the application of those criteria, not the ambiguous comment of the Senate Report, controls the analysis and those six criteria all establish that the Town is a single employer and that its departments are not separate and independent of the Town.

Defendants also cite Nolan v. City of Chicago, 125 F.Supp. 324 (N.D. Ill. 2000) and an April 2006 DOL Opinion letter at page 15-16 of their memorandum, and extensively discuss Nolan at footnote 8 on page 17.  Defendants claim that Nolan (and the DOL letter) stands for the proposition that work for any of the Town's various departments is work for a separate and independent employer.  The Town's own discussion of that case belies its argument since the Town's discussion of that case highlights the reasons why it is distinguishable.  Unlike the situation presented in Nolan (and DOL Opinion letter cited by Defendants) here the payroll is administered by the Town's personnel department for all departments, the funding source for all Departments is from the Town coffers, and there is one retirement system under G.L. Chapter 32, §3 (defining availability of state pension for all state and municipal employees).  (Attach. E, F, and G)  Unlike Nolan, the officers here are not working for the Massachusetts analog of the Chicago Housing Authority, e.g., they are not working details for the Massachusetts Turnpike

Authority, Massachusetts Water Resources Authority, and/or the Massachusetts Bay

Transportation Authority, institutions created by separate statutes.  This case is distinguishable

from <u>Nolan</u> and the April 2006 DOL Opinion Letter cited by Defendants.

Regarding this issue Plaintiffs also commend to the attention of the Court the lengthy

discussion of the District Court in <u>Johnson v. Unified Government of Wyandotte</u>, 127 F. Supp.

2d 1181 (D. Kan. 2000) <u>aff'd</u>, 180 F. Supp. 2d 1192 (D. Kan. 2001), also cited by Defendants.

That case also undermines the Town's position.  In that case, the Court engaged in a very

detailed analysis of a massive volume of facts that were before the court upon motions for

summary judgment on the Section 207(p) issue.  The court in <u>Johnson</u> found that summary

judgment was not warranted because of the existence of fact issues relating to:  (1) the extent to

which employees of the primary employer obliged employees to perform regular duties while

working for the purported separate employer, <u>id.</u> at 1188-90; (2) whether the six factors

identified in the DOL Opinion letter demonstrated that the two entities were actually "separate

and independent", <u>id</u>. at 1189-90; (3) the extent which the primary employer "control[ed] the job

duties" of the police officer when working paid details for the housing authority, <u>id.</u> at 1190-

1193; (4) the extent which the primary employer had financial control over the purported

separate entity, <u>id.</u> at 1193-95; and (5) the legal relationship between the two, <u>id.</u> at 1195-1196.

At a minimum, that case shows that there is no <u>per se</u> rule, as claimed by Defendants arising

from the ambiguous comments in the Senate Report.

Wherefore, the Court should find that nothing argued by the Town or advanced as

supposed rebuttal fact,[9] undermines the conclusion that summary judgment should be granted in

favor of Plaintiffs on the Town Detail issue.

---

[9]  The Town's rebuttal facts are derived from the Chief's affidavit but it does not refute the facts asserted
by Plaintiffs.  The Chief's Second Affidavit at ¶¶3-5, 9, 11 at best shows that the Town is the centerpiece

**REPLY POINT #7:** **Chief's Affidavit Should Be Stricken To the Extent It Contradicts His Deposition Testimony Where He Testified That He Has Not Observed Whether Or Not Superior Officers Have Worked An Additional Thirty Minutes (At Least) Per Shift.**

The Town cites the Second Affidavit of Chief Dennis Mannix in support of its argument against Plaintiffs' claim that there is no genuine material issue as to the fact that Superior Officer Plaintiffs work at least a half hour extra per shift, without compensation. His deposition established that he had no first hand observations of this. Attach H at 366-384, especially at 384:14 to 23. The Chief's contradictory affidavit therefore should be disregarded. Dambreville v. City of Boston, 945 F. Supp 384, 386 (D. Mass. 1996) (striking contradictory affidavit).

## CONCLUSION

Based upon the foregoing, the Court should find that nothing argued by Defendants in opposition to Plaintiffs' Motion For Summary Judgment filed on October 27, 2006 undermines the conclusion that Plaintiffs' Motion should be granted, with the additional proviso that the computation methodology applied include offsets under 29 U.S.C. §207(h) in the week accrued, as discussed above.

---

of all funding and this is also shown by Attachments E, F, and G herein, and that the Town allocates funds to each department and the Town Meeting approves the budget for each of the Town's departments. To the extent that the Town in its memorandum states (without any cited factual support) that each department separately negotiates at "arms length", this is mere rhetoric. Other than stating the "buzz words" about "arms length" negotiation, the Town offers no details as to what the supposed separate entities are negotiating about or the outcome of that negotiation. Indeed, under G.L. c.150E, the union negotiates with the Town (the labor contracts are between the Town and the union, not the police department and the union as shown by the union contracts in the summary judgment record) and the Town in those negotiations establishes the detail rate that will be paid to each officer. There are no separate negotiations with each department and any deal reached must be approved by the Town Meeting. G.L. c.150E, §7(b). The Town's claim that its departments are negotiating at "arms length" therefore is a farce, and a claim that should be rejected as without any adequate factual citation or support.

Respectfully submitted,

For Plaintiffs,

By Plaintiffs' Counsel:


/s/ Jack J. Canzoneri
Jack J. Canzoneri, BBO #564126
McDonald, Lamond & Canzoneri
Cordaville Office Center
153 Cordaville Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600

Dated:  December 7, 2006

## CERTIFICATE OF SERVICE

I, Jack J. Canzoneri, hereby certify that I have this day via the Electronic Case File system, served a copy of the foregoing Plaintiffs' Reply In Response To Defendants' Opposition To Plaintiffs' Motion For Summary Judgment On Wage Calculation Issues upon opposing counsel John P. Flynn, Jr. Esq., Karis North, Esq., Kathryn Murphy, Esq., and Geoffrey B. McCullough, Esq., Murphy, Hesse, Toomey & Lehane, LLP, 300 Crown Colony Drive, P.O. Box 9126, Quincy, Massachusetts  02269.

Dated:  December 7, 2006              /s/ Jack J. Canzoneri
                                      Jack J. Canzoneri