2001 U.S. 6th Cir. Briefs 3080, *; 2002 U.S. 6th Cir. Briefs LEXIS 47, **

LEXSEE 2001 U.S. 6TH CIR. BRIEFS 3080

Go To U.S. Circuit Court Opinion

ELAINE L. CHAO, Secretary of Labor, n1 United States Department of Labor, Plaintiff-Appellant, v. FABRI-CENTERS OF AMERICA, INC. and ALAN ROSSKAMM, Defendants-Appellees.

n1 Pursuant to Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Elaine L. Chao, Secretary of Labor, has been substituted for Alexis M. Herman, former Secretary of Labor, as appellant.

NO. 01-3080

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

2001 U.S. 6th Cir. Briefs 3080; 2002 U.S. 6th Cir. Briefs LEXIS 47

October 17, 2002

Appeal from the District Court for the Northern District of Ohio

# Initial Brief: Appellant

**TITLE:** [**1] BRIEF FOR THE SECRETARY OF LABOR

**TEXT:** [*1]

**STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION**

The district court had subject matter jurisdiction over this case pursuant to section 17 of the Fair Labor Standards Act, ("FLSA" or "Act"), 29 U.S.C. 217, and 28 U.S.C. 1331 and 1345. This court has jurisdiction to review the district court's [*2] decision pursuant to 28 U.S.C. 1291.

**STATEMENT OF THE ISSUE**

Whether an employer's contractual premium payments to an employee, which are excluded from the employee's regular rate of pay when computing overtime under the Fair Labor Standards Act, may be credited at any time during the two-year claim period against statutory overtime owed by the employer, rather than in the same workweek the overtime compensation was earned.

**STATEMENT OF THE CASE**

**A. Nature of the Case**

The Secretary of Labor brought this enforcement action under section 17 of the Fair Labor Standards Act, 29 U.S.C. 201 *et seq.*, in the United States District Court for the Northern District of Ohio to enjoin Defendants [**2] Fabri-Centers of America, Inc. and Alan Rosskman from violating sections 7, 11(c), 15(a)(2) and 15(a)(5) of the FLSA. Section 7 requires employers to pay covered employees for hours worked longer than 40 in a week at a rate not less than one an done-half times the regular rate at which they are employed. 29 U.S.C. 207(a). Section 11(c) requires covered employers to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions of employment maintained by him, . . ." 29 U.S.C. 211(c). Section 15(a) (2) makes it unlawful for any person "to violate any of the provisions of section 206 or 207 of [*3] this title," 29 U.S.C. 215(a) (2), and section 15(a) (5) makes it unlawful "to violate any of the provisions of section 11 (c). . . ." 29 U.S.C. 215(a)(5). Section 17 of the FLSA, 29 U.S.C. 217, gives district courts jurisdiction to "restrain violations of section 15." 29 U.S.C. 217.

### B. Statement of Facts (Course of Proceedings)

The operative facts in this case decided on summary judgment [**3] are undisputed. The employer (hereinafter "FCA") owns and operates retail stores offering fabrics, notions, and crafts. It also maintains a warehouse and distribution center. Pursuant to FCA's collective bargaining agreement, the warehouse employees were paid a "base rate," a higher "average rate" for work performed away from their home in the warehouse, and bonuses geared to the amount of work performed. FCA did not dispute that it was in violation of the overtime requirements of the FLSA when it based the employees' overtime compensation only on the "base rate," but did not use the "average rate" and did not include the bonuses in the employees' regular rate of pay when computing their overtime.

FCA also paid contractual daily overtime after eight hours in a day and double-time for work performed on Sunday. The Secretary did not dispute that these payments were excludable, under sections 7(e)(5) and 7(e)(6) of the FLSA, 29 U.S.C. [*4] 207(e)(5) and 7(e)(6), from inclusion in the regular rate of pay when computing the employees' overtime. The Secretary also did not dispute that these contractual premiums could be credited, under section 7(h), 29 U.S.C. 207 [**4] (h), against FLSA overtime owed to the employees.

It was the position of the Secretary, however, that such crediting may only take place on a week-by-week basis, as opposed to crediting the total premiums paid to the total overtime owed over the entire claim period. It is stipulated that under the Secretary's interpretation the overtime owed is $ 545,262.21, while under the district court's interpretation the employer owes $ 431, 948.58.

### C. The District Court's Decision

The court agreed with the employer's interpretation of section 7(h) "based upon the plain language of § 207(h), existing case law, and the legislative history of section 207." Decision and Order, page 10. Relying on the plain language of the statute, the court quoted section 7(h) and then stated: "The Court fails to find any qualifying language in the statute limiting credits on a workweek basis." The court concluded that nothing in the Secretary's regulations, as well as in section 7 itself, required it "to read a qualifier into clear statutory language." Decision and Order, page 11-12. The court also relied on Abbey v. City of Jackson, 883 F. Supp. 181 (E.D. Mich. [*5] 1995), [**5] which allowed firefighters to credit contractual overtime paid in one work period against overtime worked in another work period. Finally, the district court concluded that there was a "dearth . . . of legislative history" supporting the Secretary's interpretation. Thus, the district court concluded that because the statute does not expressly establish that crediting must operate on a workweek basis, it must be read as providing that it does not so operate. In this regard, the court stated that "the DOL fails to produce any authority indicating that the Court should read workweek limitations into § 207(h)." Decision and Order, page 13.

### SUMMARY OF ARGUMENT

The district court incorrectly concluded that premium payments which were creditable against overtime owed under the Fair Labor Standards Act could be credited against overtime accrued at any time during the two-year claim period, rather than in the week in which they were paid. The crediting allowed by section 7(h) was not intended by Congress to take place over an extended period of time, and to allow such extended crediting is unfair to employees.

The premium payments at issue are those which fall within the types [**6] of payment described in sections 7(e)(5), (6), and (7) [*6] of the FLSA. By the terms of those provisions, these payments are excluded from the employees' regular rate of pay when the employees' overtime accrued under the FLSA is computed. In addition, these payments may be credited, under section 7(h) of the FLSA, against the employees' accrued FLSA overtime. Because section 7(h) is ambiguous as to when this crediting may take place, that question should be decided on the basis of the intent of Congress in enacting section 7(h), as reflected in the Secretary of Labor's longstanding interpretation, and on the basis of the context of section 7(h) in the overtime provisions of the Act. When these principles are applied to the interpretation of section 7(h), the crediting may take place only in the workweek or work period during which both the premiums and FLSA overtime are paid and accrued.

When Congress passed these provisions, it was seeking to remedy a problem that arose when employers made payments not required by the FLSA to employees in the same weeks that the employees worked overtime under the FLSA. The problem was eliminated if the premium payments were excluded from the [**7] computation of overtime and credited against FLSA overtime accrued in the same week. Section 7(h) should be interpreted in a manner consistent with the problem it was intended to remedy.

The effect of the district court's decision is to allow an [*7] employer to make contractual payments to an employee and then wait weeks, months, or years to count these payments against overtime which comes due to that employee under the FLSA. This delay in the crediting is unfair to the employee and is inconsistent with the intent of Congress, the Department of Labor's interpretation of the Act, and the context in which the overtime provisions of the Act operate. Nolan v. City of Chicago, No. 98 C 435, 2000 WL 1898596 at *8. (N.D. Ill., Dec. 22, 2000). Sections 7(e)(5), (6), and (7) and section 7(h) were passed out of fairness to employers so that they would not have to pay "overtime on overtime," and so that they could receive credit for payments they made that were not required by the FLSA.

It is unfair to employees, however, to allow the compensation for overtime accrued in a particular workweek under the FLSA to be canceled out by premium payments made to employees [**8] weeks, months, or years prior to that week, under what may have been entirely different circumstances.

**STATEMENT OF THE STANDARD OF REVIEW**

The question before the district court was legal in nature, with no genuine issue of material fact; therefore, the case was properly resolved by summary judgment. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, (1986); Campbell v. Grand Trunk Western Railroad Company, No. 99-2245, 2001 WL 65078 (6th Cir. January 29, [*8] 2001). The standard for this court's review of the district court's ruling is *de novo*. *See* Campbell v. Potash Corporation of Saskatchewan, Inc., Nos. 99-5074, 99-5077, 99-5079, 2001 WL 86352 (6th Cir. February 2, 2001).

**ARGUMENT**

**THE DISTRICT COURT MISCONSTRUED THE PROVISION OF THE FLSA WHICH ALLOWS EMPLOYERS CREDIT AGAINST EMPLOYEES' OVERTIME FOR CONTRACTUAL PREMIUMS PAID BY THE EMPLOYER**

The statutory language at issue in this case is section 7(h) of the FLSA, 29 U.S.C. 207(h), which provides:

> Extra compensation paid as described in paragraphs (5), (6), and (7) of subsection (e) shall be [**9] creditable toward overtime compensation payable pursuant to this section.

29 U.S.C. 207(h). This statutory language is silent as to when the crediting which it allows may take place, making this statutory language subject to interpretation with respect to this issue. Nationsbank of North Carolina, N.A. v. Variable Annuity Life Insurance Co., et al., 513 U.S. 251, 257 (1995). On the basis of the longstanding interpretation of the Administrator of the Wage and Hour Division, the Congressional purpose for which section 7(h) was enacted, and the context in the Fair Labor Standards Act in which section 7 (h) operates, the crediting allowed by that provision of the Act should be limited to the work week or work period in which the section 7(e) premiums were paid.

The Administrator of the Wage and Hour Division has always [*9] interpreted section 7(h) as applying on a workweek or work period basis. Thus, in an opinion letter dated December 23, 1985, the Deputy Administrator stated:

> We wish to point out that surplus overtime premium payments, which may be credited against overtime pay pursuant to section 7 (h) of [the] [**10] FLSA, may not be carried forward or applied retroactively to satisfy an employer's overtime pay obligation in future or past pay periods.

1985 WL 304329, page 3 (DOL Wage-Hour, December 23, 1985). And in opinion letters dated December 2 and December 20, 1966, the Administrator stated that "the extra compensation provided by the premium rate paid for such daily overtime hours may be credited, pursuant to section 7 (h) of the Act, toward any overtime compensation payable under section 7(j) for hours worked in excess of 80 in such period." (Emphasis added.) Wages-Hours 66-69 CCH-WH P30, 524 and P30,527. Section 7(j) is a statutory provision which allows for the use of an overtime standard of 80 hours in a 14-day work period for employees of hospitals. Employees of public agencies engaged in fire protection and law enforcement duties may also be paid on the basis of work periods rather than work weeks, as provided in section 7(k), 29 U.S.C. 207(k). Whether section 7(h) is applied on a weekly basis to overtime computed under section 7(a) or applied on a work period basis to overtime computed under the work periods authorized by sections 7(j) [**11] or 7(k), crediting over a period of months or years is inconsistent the Administrator's interpretation of section [*10] 7(h).

This court has recognized that Wage-Hour opinion letters are entitled to a degree of deference, albeit not the highest form, according to their consistency with past opinions and their power to persuade. See Reid v. Miss Paula's Day Care Center, Inc., 37 F.3d 1191, 1194 (6th Cir. 1994) ("Because DOL's Wage and Hour Administrator is the primary federal authority entrusted with determining the FLSA's scope, these interpretations [set forth in a Wage-Hour opinion letter and Wage-Hour's Field Operations Handbook], while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which the courts and litigants may properly resort for guidance.") (internal quotation marks omitted). See also Christensen v. Harris County, 120 S. Ct. 1655, 1662-63 (2000); Skidmore v. Swift, 323 U.S. 134, 140 (1944). n2

---

n2 In Kilgore v. Outback Steakhouse of Florida, Inc., 160 F.3d 294, 302-03 (6th Cir. 1998), this court refused to give binding effect to two Wage-Hour opinion letters, concluding, consistent with the principles set forth in Skidmore, that "they do not explain the statutory source for the limitation [on the amount a tipped employee could be required to contribute to a tip pool] that they create." In contrast here, the Administrator's interpretation is focused on a particular portion of section 7 of the Act.

---

[**12]

[*12] The Administrator's longstanding interpretation of the intent of Congress as to how section 7(h) should operate is supported by a very recent decision, Nolan v. City of Chicago, No. 98 C 4335, 2000 WL 1898596 (N.D. Ill., Dec. 22, 2000), involving the issue of when crediting under section 7(h) is to take place for law enforcement officers subject to section 7(k).

There the court concluded that "the Department of Labor regulations, which support a prompt payment of overtime, make a period by period credit appropriate." 2000 WL 1898596, at *8. The court also stated that "the importance Congress, the regulations, and the courts have placed on the prompt payment of overtime leads this Court to conclude that the offsets to which the City is entitled should be calculated on a pay period by pay period basis." Id.

Section 7(h) should be interpreted in light of the congressional purposes behind its enactment. "[The court's] obligation is to give effect to congressional purpose so long as the congressional language does not itself bar that result." Johnson v. U.S., 120 S. Ct. 1795, 1805, n.10 (2000). The congressional [**13] purpose behind the enactment of sections 7(e)(5), (6), and (7), in combination with section 7(h), was, in fundamental terms, fairness to the employer. It was considered unfair to require the inclusion in the regular rate of pay for overtime purposes of contractual premiums not required by the [*13] Act, thereby making the employer pay "overtime on overtime." See S. Rep. No. 81-402 (1949). It was also considered fair to employers to give them credit for the contractual premiums they paid against the statutory overtime they might owe. *Id*.

Congress was acting in response to the Supreme Court's decision in Bay Ridge Co. v. Aaron, 334 U.S. 446 (1948), which required the stevedoring industry to pay statutory overtime compensation that was computed with the inclusion of contractual premiums ("overtime on overtime"). There was testimony from the maritime industry indicating that stevedores routinely worked in excess of 40 hours in a workweek and were entitled to contractual premiums in the same week. Thus, the problem of statutory overtime which included in the computation of the regular rate those contractual premiums, which were not required by the statute, [**14] was cured by the enactment of sections 7(e)(5), (6) and (7) and section 7(h). Since the problem that was being solved by Congress was viewed as being confined to a single workweek, section 7(h) should be interpreted to allow crediting on the same workweek basis. See Amendments to the Fair Labor Standards Act of 1938, Hearings Before the Committee on Education and Labor House of Representatives, 81st Cong., 158-60 (1949) (testimony of Walter E. Maloney, Representing the National Federation of American Shipping, Inc.). As described below, it would be unfair to employees if the crediting permitted by section 7(h) is not [*14] limited to situations where statutory overtime is worked and contractual premiums are paid in the same week.

There is further legislative history of section 7(h), which informative and is consistent with the Administrator's interpretation of that provision. In S. Rep. 81-402, at 4 (1949), in explaining the background for the enactment of the section 7(e) exclusions from the regular rate and the section 7(h) crediting provision, there is a reference to paragraphs 13, 69, and 70 of Wage and Hour Interpretative Bulletin No. 4. That Bulletin contains specific [**15] examples regarding the permissibility of crediting contractual premiums against statutory overtime owed to employees. It is significant that these examples use a Monday through Sunday, seven-day workweek as the basis for their computations. No broader credit is implied.

Wage-Hour's interpretation of section 7(h) is consistent with the principle that, unless otherwise statutorily modified, the overtime provisions of the FLSA, including crediting which forms a part of those provisions, are to be applied on a weekly basis. The district court's interpretation is at odds with the statutory scheme for the computation and payment of overtime and could potentially lead to abuses of the overtime provisions of the FLSA.

The terms of the FLSA, despite not directly answering the [*15] question at issue here, establish the seven-day workweek as the applicable time frame for the computation of overtime. See 29 U.S.C. 207(a) ("No employer shall employ any of his employees who in any workweek is engaged in commerce . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified [**16] at a rate not less than one and one-half times the regular rate at which he is employed.") (emphases added). See also 29 C.F.R. 778.103-105 (where the Secretary's regulations dealing with overtime pay are entitled, seriatim, "The workweek as the basis for applying section 7(a)"; "Each workweek stands alone"; and "Determining the workweek") (emphases added); and 29 C.F.R. 778.106 ("The general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends.") (emphases added). The Secretary believes that section 7(h) should be interpreted in light of where it appears in the statutory context. Holloway v. United States, 526 U.S. 1, 6 (1999) ("In interpreting the statute at issue, we consider not only the bare meaning' of the critical work or phrase but also its placement and purpose in the statutory scheme.'" (citations omitted); Franklin Federal Savings Bank v. Director, Office of Thrift Supervision, 927 F.2d 1332, 1339 (6th Cir. 1991) ("Our conclusion . . . is, moreover, strengthened by an analysis of [*16] nearby provisions. When analyzing [**17] the meaning of a particular provision, we can also look at the statutory framework in which the provision is embedded).

It follows logically that the crediting provision at 29 U.S.C. 207(h) be construed in the context of, and applied in the same manner as, the computation provision. If the crediting allowed by section 7 (h) is not applied in the same manner, abuses of the overtime provisions of the FLSA could occur. Thus, as a practical matter, an employer could choose to pay premiums not required by the statute during a week in January when no FLSA overtime is worked, in anticipation of the busy season in June. If the employee then worked FLSA overtime during a week in June for which compensation would ordinarily be due, the employer would not have to pay that employee anything if the January payments equaled or exceeded the FLSA overtime requirement, because the employer could then take credit for those earlier premium payments. This scheme violates section 7(a)'s unambiguous mandate that employers pay overtime compensation for work performed in excess of 40 hours in each and every workweek.

Moreover, it is simply unfair for an employee's compensation for [**18] overtime work performed to turn, for example, on premiums received possibly one, two, or five years prior to that work, when the employer may have had a long-defunct collective bargaining agreement or its own policy by which employees were [*17] paid premiums but worked no statutory FLSA overtime. Surely, this temporal disconnect between the work actually performed and the compensation received is not what Congress intended by allowing for crediting under section 7(h).

Similarly, in light of the district court's expansive reading of section 7(h), an employee could very well work FLSA overtime during a week in January, and the employer, anticipating a busy season in June with long workdays and the payment of contractual premium payments, could conceivably defer the payment of the overtime required by the FLSA from January to June, and then take credit for the premium payments against the overtime due. Although we recognize that this does not represent the express situation addressed by the district court in this case, it is a possible scenario once the workweek is vitiated as the proper time frame for the payment of overtime. And this was exactly the scenario about which the court [**19] in Nolan, *supra*, was concerned:

> To place this issue in context, the court posits the following hypothetical. Assume an Officer worked 181 hours in a pay period in 1997 and was underpaid his FLSA overtime. Assume further the same Officer received double or triple time for working holidays or extra shifts during a pay period in 1998, an amount in excess of the FLSA overtime required. According to the City, the FLSA extra pay in 1998 should be offset against any FLSA underpayments in 1997. The Court disagrees.

2000 WL 1898596 *7. This delayed payment of statutory overtime is also a possibility contemplated by the Deputy Administrator's [*18] 1985 opinion letter, which states that premium pay "may not be carried forward or applied retroactively to satisfy an employer's overtime pay obligation in future or past pay periods." This delay in the payment of overtime compensation would not only be contrary to the section 7 framework based on the workweek, but would also

be in violation of the requirement that FLSA wages be paid promptly. See Biggs v. Wilson, 1 F.3d 1537, 1539-53 (9th Cir. 1993) (delay of 14 days in the payment of [**20] wages owed under the statute is a violation of the FLSA), cert. denied, 510 U.S. 1081 (1994).

Biggs dealt with the question of when, under section 6(a) of the Act, 29 U.S.C. 206(a) (minimum wage requirement), an employer's late payment of wages constituted a violation of the FLSA. Section 6(a), like section 7(h), has no express language specifying when it is to be applied. For several reasons relevant to the question in the instant case, however, the court, looking at the statutory scheme as a whole, concluded that the workweek standard is the appropriate period for measuring the application of section 6(a). The Ninth Circuit, pointing to the language of section 6(b), 29 U.S.C. 206(b) (specifying the workweek as the appropriate standard), first stated that "the obligation [to pay the minimum wage] kicks in once an employee has done covered work in any workweek," and "if a payday has passed without payment, the employer cannot have met his [*19] obligation to pay.'" Biggs, 1 F.3d at 1539 (emphasis added). The court then noted that section 16(b) makes employers liable for unpaid wages and [**21] liquidated damages. "Unless there is a due date after which minimum wages become unpaid, imposing liability for both unpaid minimum wages and liquidated damages would be meaningless." Id. It would also, according to the Ninth Circuit, not be possible to calculate the amount of liquidated damages or prejudgment interest (which is paid in lieu of liquidated damages) owed by an employer who fails to pay the required wages if a date certain were not established for the operation of section 6(a). Id. at 1540. In the words of the court, "Prejudgment interest cannot be calculated without an amount certain owing from a day certain." Id. Similarly, according to the court, the fact that the FLSA has a statute of limitations, for which a specific starting time must be established if it is to be applied, further buttresses the argument against an indefinite, later point of payment. Id.

The reasons for using a workweek standard in the application of section 6 (a) are apposite to using that standard in the application of section 7 (h) as well. See 29 C.F.R. 778.106 (timely payment of overtime). The district court's decision, which potentially allows under section 7(h) [**22] for crediting the payment of future contractual premiums against current FLSA overtime obligations, could result in the very same evils the [*20] court was trying to cure in Biggs.

The district court in this case relied on another district court opinion, Abbey v. City of Jackson, 883 F. Supp. 181, 186-87 (E.D. Mich. 1995), in reaching its conclusion. That court, as alluded to above, concluded that limiting crediting to the week of payment "punishes the employer without regard to whether it was attempting to avoid its obligation" to pay overtime, and provides the employees with a "windfall." It is not, however, "punishment" of the employer or a "windfall" to the employee when an employer decides, for whatever business or other reasons of its own, to pay more than the statute requires. The employer is only required to pay FLSA overtime. And, while the employer may freely choose to pay non-statutorily required premiums, just as many employers choose to pay more than the minimum wage required by the statute, there is no basis for saying that this choice on the employer's part should affect the operation of the statute, which is clear in setting out the workweek [**23] as the appropriate measure of time for the payment of overtime, and is reasonably interpreted in turn as setting out the workweek as the appropriate measure for any crediting against such overtime. **There are many instances where the employer voluntarily chooses to enter into a transaction with it employees that is not required by the FLSA. Such transactions do not affect the operation of the statute and do not create a "windfall." See**, [*21] **e.g., Brennan v. Heard, 491 F.2d 1, 4 (5th Cir. 1974) (employer could not set off against wages owed to the employees the value of goods it gave them because "to clutter these proceedings with the minutiae of other employer-employee relationships would be antithetical to the purpose of the Act."**

The district court in Abbey cites Alexander v. The United States, 32 F.3d 1571 (Fed. Cir. 1994), and Kohlheim v. Glynn County, Georgia, 915 F.2d 1473 (11th Cir. 1990), in support of its interpretation of section 7(h). Both of those decisions refer to section 7(h), but neither says anything directly about the question at issue here -- whether crediting under [**24] section 7(h) may occur outside of the work week in which the premiums were earned.

It is significant that the court in Abbey, in determining whether the premium at issue qualified for exclusion from the regular rate under section 7(e)(5), cited a 1998 opinion of the Administrator for support, and referred to Skidmore and 29 C.F.R. 778.4 (reliance on interpretations) to indicate that the opinion letter should be resorted to for guidance.

However, the court in Abbey found no Department regulation, or any other interpretation, to support a different reading of section 7(h) than the one it reached. See 883 F. Supp. at 186. By contrast, in the instant case, there are available Wage-Hour opinion letters directly addressing the issue at hand. In [*22] addition, while the Department's regula-

tions do not have a provision specifically dealing with section 7(h), Nolan, *supra*, tells us that the overall context of 29 C.F.R. 778.103-106, referenced above, supports the Secretary's position.

The Abbey court also discredited a case relied upon by the employees in that case, Roland Electrical Co. v. Black, 163 F.2d 417 (4th Cir. 1947), [**25] cert. denied, 333 U.S. 854 (1948), on the grounds that it was decided before the enactment of section 7(h) in 1949. Roland held, in reference to overtime compensation, that payments in excess of the amount required by the statute to an employee for work done in certain weeks do not relieve the employer from the obligation to compensate the employee for deficiencies in other weeks, stating "that the Act takes as its standard a single workweek consisting of seven consecutive days." 163 F.2d at 421 (citations omitted). While recognizing that the decision did not address crediting (as it preceded the enactment of section 7(h)), we question the Abbey court's conclusion as to the total inapplicability of Roland. As discussed below, there is nothing in the legislative history of the enactment of section 7(h) to indicate that Congress intended to overrule the broad principle stated in Roland. The decision in Roland also appears viable in light of the decision, after the 1949 enactment of section 7(h), in Dunlop v. Gray-Goto, Inc., 528 F.2d 792, 794 (10th Cir. 1976). In Dunlop, the Tenth Circuit, addressing [*23] [**26] section 7(h) in a somewhat different context than the one presented here, n3 stated:

> n3 The payments at issue in Dunlop did not qualify as exclusions from the regular rate under sections 7(e)(5), (6), and (7).

> Our holding that the fringe benefits with which we are here concerned may not be credited against overtime pay required by the Act would appear to be in accord with the general case law on the subject. For cases holding that bonuses are not to be credited against an employee's claim for overtime pay, see, by way of example, Bable v. T.W. Phillips, Gas and Oil Company, 287 F.2d 21 (3d Cir. 1961) and Roland Electrical Co. v. Black, 163 F.2d 417 (4th Cir. 1947). In Rigopoulos v. Kervan, 140 F.2d 506, 507 (2d Cir. 1943) the Second Circuit stated that 29 U.S.C. § 207 "plainly contemplates that overtime compensation shall be paid in the course of employment and not accumulated beyond the regular pay day." And in [**27] Brennan v. Heard, 491 F.2d 1, 4 (5th Cir. 1974) the Fifth Circuit observed that "setoffs against back pay awards deprive the employee of the cash in hand' contemplated by the Act. . . ."

Thus, the Tenth Circuit, which considered section 7(h) post Roland, and cited Roland favorably, apparently did not consider Roland to be a dead letter.

Finally, the district court below stated: "The DOL fails to produce any authority indicating that the Court should read workweek limitations into § 207(h)." Decision and Order, page 13. In so stating, the court seemed to be implying that it is the Secretary's burden, on behalf of the employees, to prove that the workweek should form the basis for crediting contractual [*24] premiums under 7(h). But because of the nature of section 7(h), the burden is on the employer in this case to prove that the crediting allowed by that provision is not restricted to a workweek or work period basis.

Section 7(h), as a limitation on the amount of overtime to which an employee is entitled under section 7(a), should be read *in pari materia* with sections 7(i), 7(j), and 7(k), which are also overtime-limiting provisions. [**28] United States v. Stauffer Chemical Co., 684 F.2d 1174, 1184 (6th Cir. 1982) ("In interpreting the meaning of one provision of an act it is proper that all other provisions in *pari materia* also be considered"); affirmed, U.S. v. Stauffer Chemical Co., 464 U.S. 165 (1984). These special overtime provisions are treated as partial overtime exemptions and, as such, are construed narrowly. See, e.g., O'Neal v. Barrow County Board of Commissioners, 980 F.2d 674 (11th Cir. 1993). n4 Indeed, it is well-settled law that all FLSA exemptions are to be construed narrowly against the employer attempting to utilize them. See Moreau v. Klevenhagen, 508 U.S. 22, 33 (1993); Salyer v. Ohio Bureau of Workers' Compensation, 83 F.3d 784, 786 (6th Cir.), cert. denied, 519 U.S. 964 (1996). The Secretary similarly considers section 7(h) to operate in the [*25] nature of a partial exemption to the fullest reach of the overtime provisions of the Act, thereby requiring that it, too, be construed narrowly with the burden of proof on the employer attempting to take advantage [**29] of it. Such a narrow construction requires application of the "workweek" principles advanced by the Secretary herein.

n4 The First Circuit, in Martin v. Coventry Fire District, 981 F.2d 1358 (1st Cir. 1992), while ruling against the Secretary on the issue of whether section 7(k) could be applied retroactively, did not state that that section was not an exemption provision.

**CONCLUSION**

For the foregoing reasons, the decision of the district court should be reversed.

Respectfully submitted,

JUDITH E. KRAMER

Acting Solicitor of Labor

STEVEN J. MANDEL

Associate Solicitor

PAUL L. FRIEDEN

Counsel for Appellate Litigation

LEIF G. JORGENSON

 [*26]  BENJAMIN T. CHINNI

Associate Regional Solicitor

Attorney

Office of the Solicitor

U.S. Department of Labor

200 Constitution Avenue, N.W.

Washington, D.C. 20210

(202) 693-5555

ELAINE L. CHAO, Secretary of Labor, n1 United States Department of Labor, Plaintiff-Appellant, v. FABRI-CENTERS OF AMERICA, INC., Defendants-Appellees.

n1 Pursuant to Rule 43(c) (2) of the Federal Rules of Appellate Procedure, Elaine L. Chao, Secretary of Labor, has been substituted for Alexis M. Herman, former Secretary of Labor.

NO. 01-3080

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

2001 U.S. 6th Cir. Briefs 3080; 2001 U.S. 6th Cir. Briefs LEXIS 5

July 10, 2001

Appeal from the District Court for the Northern District of Ohio

# Reply Brief: Appellant

**TITLE:** [**1]  **FINAL REPLY BRIEF FOR THE SECRETARY OF LABOR**

**TEXT:** [*1]

As the Secretary demonstrated in her opening brief, the district court erred in concluding on summary judgment that section 7(h) (2) of the Fair Labor Standards Act, 29 U.S.C. 201, *et seq.*, 207(h) (2) ("FLSA" or "Act"), allows crediting of premium payments in a workweek other than the week in which they were paid. The Secretary believes that crediting of contractual premiums against statutory overtime accrued in prior or subsequent weeks is an interpretation contrary to the overall  [*2]  context in which section 7 (h) (2) appears in the Act, is contrary to the legislative history of section 7 (h)(2) in terms of the problem it was intended to resolve, and is inherently unfair to employees. The responsive brief of the employer Fabri-Centers of America, Inc. ("Fabri-centers") presents no justification for crediting beyond the workweek; nevertheless, several points raised warrant reply.

1. Fabri-centers attempts somehow to give present life to statutory language that no longer exists. It is not disputed that the statutory language which now appears in section 7 (h) (2), 29 U.S.C. 207 [**2] (h) (2), is the result of the Supreme Court's decision in Bay Ridge Operating Co. v. Aaron, 334 U.S. 446 (1948), which required employers, in their view, to "pay overtime on overtime," as a result of contractually required premiums being paid in the same weeks employees worked overtime. Congress responded to what employers saw as the unfairness resulting from a portion of that decision by first passing Public Law 81-177, 81st. Cong., 1st. Sess., July 20, 1949. That statute contained the language relied upon by Fabri-centers, which referred to credit for contractual premiums paid by employers "toward any premium compensation . . ." due an employee under section 7 of the Act. Emphasis added. Fabri-centers' position in this case is based on an interpretation relying on this "any."

However, the "any" relied upon by Fabri-centers as a basis  [*3]  for its position had a short life. Soon thereafter Congress passed the much more extensive revisions of the Fair Labor Standards Act in Public Law 81-393, 81st. Cong., 1st Sess., October 26, 1949, which created the statutory language in effect at the present time allowing credit for contractual premiums "toward overtime [**3] compensation payable pursuant to this section." Thus, the "any" central to Fabri-centers argument was dropped from the statutory provision now at issue.

Fabri-centers would have the court interpret the present statutory language (which it describes as merely a "repackaged" version of the earlier statutory language) on the basis of the "ghost" of the "any" which does not appear in the current statute, and has not been in the law since 1949. n2 Much of the legislative history relied upon by Fabri-centers is keyed to this obsolete statutory language.

> n2 The Secretary is not prepared to accept that the term "any" is unambiguous, as suggested by Fabri-center, but, in any event, the effect of that term is moot in light of its subsequent elimination.

[*4] But, if anything, the change in the statutory provision now at issue which occurred between Public Law 81-177 and Public Law 81-393 supports the Secretary's interpretation of section 7 (h) (2), not the position put forward by Fabri-centers. Common sense and precedent [**4] dictate that statutory language which has been repealed should not be treated as controlling. n3 Where Congress has included specific language in an earlier version of a bill and deleted it prior to enactment, it may be "presumed" that the rejected language was not intended to have effect. Russello v. United States, 464 U.S. 16, 23-24 (1983). This [*5] presumption against the applicability or effect of language which Congress has specifically discarded should be even stronger where Congress has put specific language into positive law and then removed it from a statute. It also does Congress a disservice to speak of its legislative enactments as "repackaging." If rescinded statutory language is determined to always have an effect on present law, how could Congress ever make meaningful changes in the law.

> n3 Fabri-center's ghost may be benign, in contrast to the ghost of Banquo:
>
> > Avaunt, and quit my sight! Let the earth hide thee. Thy bones are marrowless; thy blood is cold;
> > Thou has no speculation in those eyes Which thou dost glare with.
>
> Macbeth, Act 3, Scene 4. Fabri-center cites no cases for this ghost theory allowing the repealed language of a past statute to control a living present statute. Fabri-center cites Addison v. Huron Stevedoring Corp., 96 F. Supp. 142, 169 (S.D. N.Y. 1950), but that court was comparing the provisions of Public Law 81-177 and 81-393 which are now sections 7(e)(6) and (7), and was not comparing what is now section 7 (h) (2) in the two statutes.

[**5]
2. Whatever the effect of the "any" in Public Law 81-177 would have been, that is not the statutory language that is now applicable. And despite the efforts of Fabri-center to rely on the literal language of the present statute as clearly supporting its position, the literal language of the statute is ambiguous, and does not support Fabri-centers' position. The applicable statutory language provides for credit toward overtime compensation "payable" pursuant to section 7. Fabri-center considers the term "payable" unambiguous, to be read as "payable at any time." But the term "payable" is anything but unambiguous. *See* Truillo v. Cyprus Amax Mineral Company Retirement Plan Committee, 203 F.3d 733, 737 (10th Cir. 2000) (the term "payable" under the Employee Retirement Income Security Act "means capable of being paid; suitable to be paid; admitting or demanding payment; justly due; legally enforceable.'" citing Black's Law Dictionary 1128 (6th ed. [*6] 1990)). Thus, on the basis of dictionary definitions, it is mistaken to conclude that the term "payable" unambiguously relates to time of payment. Because the term is ambiguous, it must be interpreted by [**6] the context of where it appears in the statute taken as a whole, and by consideration of its legislative history with regard to the problem it was intended to solve. The overall context of section 7 in which section 7 (h) (2) appears involves the workweek. n4 The problem resulting from Bay Ridge, *supra*, which the present section 7(h)(2) was enacted to remedy involved employees who routinely received a contractual premium and worked statutory overtime in the same week. In addition, the decision of the district court unfairly requires an employee to keep his or her personal employment "books" open for months or years in order to know if he or she has been paid correctly.

> n4 Section 7 (a) and 7 (l) expressly adopt 40 hours in the workweek as the overtime standard. To infer that by not expressly keying section 7(h)(2) to the workweek Congress did not intend that provision to operate on a workweek basis is to, in effect, infer a form of exemption from the full requirements of section 7. Such presumption of an exemption is incorrect. *See* Herman v. Palo Group Foster Home, Inc., 183 F.3d 468, 471-72 (6th Cir. 1999).

[**7]

3. Rather than accepting the Secretary's interpretation as being based on her good-faith view of the correct technical operation of the statute, Fabri-center implies that this position is somehow coercive. n5 The correct interpretation and application [*7] of section 7 (h) does not create, through the machinations of the Secretary, a "windfall" for employees.

n5 "Big brother" was not required to submit his claims to an impartial court, as in the instant case.

There are many instances where employers pay more to employees than the statute requires. This would include all instances where covered, nonexempt employees are paid an hourly rate or its equivalent higher than the minimum wage. But when an employer decides to exceed the requirements of the Act this decision should not control the operation of the Act. If it did, an employer which paid twice the minimum wage this week would not owe anything next week for the same number of hours. There is no support for operation of the Act on that basis. In some [**8] instances an employer may make section 7(e)(5), (6) or (7) payments which are not balanced by statutory overtime in the same week. But such a choice by the employer does not create a "windfall" that affects the operation of the statute any more than paying in excess of the minimum wage creates a "windfall." An employer must comport with the requirements of the Act rather than the actions of the employer controlling the operation of the statute. *See* Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 741 (1981) (" The Fair Labor Standards Act was not designed to codify or perpetuate [industry] customs and contracts . . ," quoting Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 602-603 (1944)) . Payments which are in excess of the requirements of the Act are welcomed, but they do [*8] not drive the operation and interpretation of the Act.

**CONCLUSION**

For the foregoing reasons, as well as for the reasons discussed in the Secretary's opening brief, the decision of the district court should be reversed.

Respectfully submitted,

HOWARD RADZELY

Acting Solicitor of Labor

STEVEN J. MANDEL [**9]

Associate Solicitor

PAUL L. FRIEDEN

Counsel for Appellate Litigation

LEIF G. JORGENSON

Attorney

Office of the Solicitor

U.S. Department of Labor

200 Constitution Avenue, N.W.

Washington, D.C. 20210

(202) 693-5555

**CERTIFICATE OF SERVICE**

I certify that copies of this Final Reply Brief for the Secretary were served on the following individual by deposit in the United States mail this 10th day of July, 2001.

Keith L. Pryatel, Esq.
Kastner Westman & Wilkins LLC
3480 West Market Street

Suite 300
Akron, Ohio 44333

    LEIF G. JORGENSON

    Attorney

    Office of the Solicitor

    United States Department of Labor

    200 Constitution Avenue, N.W.

    Suite n-2716

    Washington, D.C. 20210

    (202) 693-5555

    **CERTIFICATE OF COMPLIANCE**

    I certify pursuant to Fed. R. App. P. 32 (a) (7) (C) that this Proof Brief for the Secretary of Labor complies with the type-volume limitations of Fed. R. App. P. 32(a) (7) (B). This brief contains lines of text in monospaced typeface; it has been prepared using Corel WorkPerfect 8 and Courier 12 point font.

    LEIF G. JORGENSON

    Attorney