THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Robert F. Murphy, III, Lead Plaintiff for Patrol Officer Plaintiffs, et al. and Brian C. Grassey, Lead Plaintiff for Superior Officer Plaintiffs, et al., Plaintiffs v. Town of Natick, Natick Police Department, and Dennis R. Mannix, in his capacity as Chief of Police, Defendants | Docket No.: 04-11996RGS |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' CROSS MOTION
FOR SUMMARY JUDGMENT**

Defendants Town of Natick ("Town"), Natick Police Department (the "Department"), and Dennis R. Mannix, Chief of Police (collectively "Defendants") Oppose Plaintiffs' Cross-Motion for Summary Judgment. The Plaintiffs, 56 Patrol and Superior Officers ("Officers") have not demonstrated that they are entitled to Summary Judgment.

Furthermore, as discussed in Defendants' Motion for Partial Summary Judgment, summary judgment against some of the Plaintiffs is appropriate in this case. The Fair Labor Standards Act ("FLSA") does not apply to the class of Plaintiffs identified in the Complaint as Superior Officers (Sergeants and Lieutenants) because those employees were and are "exempt" employees as that term is defined in the FLSA. The FLSA does not apply to the Patrol Officers who perform the job duties of Detectives, and whose duties fall within the FLSA definition of exempt administrative employees. Therefore, Plaintiffs' Cross-Motion for Summary Judgment should be denied, and Defendants' Motion for Partial Summary Judgment should be granted.

1

## ARGUMENT

**I.     The Rule Remains that Superior Officers May Be Exempt Executive Employees Under the FLSA.**

Plaintiffs claim, in their Memorandum in Support of their Cross Motion ("Plaintiffs' Cross-Motion Memo"), that Defendants' Motion for Partial Summary Judgment applies to all of the Natick Police Officers.  This is incorrect.  As Defendants' papers demonstrate, their Motion for Partial Summary Judgment applies only to the Superior Officers of the Natick Police Department, i.e., any Officer with a rank of Sergeant or Lieutenant, and to the few Officers at the Patrol Officer rank who are assigned as Detectives (hereinafter "Detectives").  Defendants did not move for judgment with respect to the remaining Patrol Officers.

In attempting to expand the reach of Defendants' Motion, Plaintiffs seek to muddy the distinctions between the Patrol Officers, the Detectives, and the Superior Officers, in order to argue that they perform essentially the same functions.  This is not true, as is demonstrated by the documents submitted in connection with Defendants' Memorandum in Support of its Motion for Partial Summary Judgment ("Defendants' SJ Memo."), which is incorporated by reference, herein.  Plaintiffs further attempt to compress the "old" and the "new" regulations into one garbled standard, and to provide excerpts from the 2004 Department of Labor ("DOL") comments to the new FLSA regulations, in a manner which misrepresents the context and breadth of those comments.[1]  Both sets of regulations apply here, as set forth in parts II.A and II.B of Defendants' SJ Memo.

---

[1]     As part of its rulemaking responsibilities under the Administrative Procedures Act, the DOL is required to discuss comments received on draft regulations, as part of the preamble to the final regulation.  These comments are instructive, but do not have the actual force of law.

Plaintiffs also appear to compress the standard for exemption as an executive employee into the standard for exemption as an administrative employee. While there are some similarities between the two standards, they require different and distinct proofs, particularly with respect to the use of discretion by an employee. Finally, Plaintiffs' attempt to set forth a per-se rule that all Superior Officers are so-called "working foremen" and as such are never exempt executive employees is incorrect, and does not represent the applicable law.

The current state of the law remains that Officers who perform supervisory or managerial duties, such as the Natick Superior Officers, can and indeed are often found to be exempt executive and/or administrative employees, as those terms are defined in the FLSA. Contrary to Plaintiffs assertions, Defendants are not claiming that all Police Officers are exempt, or that there is a per-se rule that all Superior Officers are exempt. However, Defendants do submit that the state of the law with regard to the exempt status of Superior Officers is well settled. Most particularly, Defendants note that in the most recent case on FLSA overtime in this Circuit, the exempt status of the Superior Officers was hardly even at issue. See O'Brien v. Agawam, 350 F. 3d 279, 292-94 (1st Cir. 2003) (concluding that all of the Agawam officers who held "supervisory rank" - i.e., Special Sergeant, Sergeant, Lieutenant, or Captain, were employed in a bona fide executive capacity and thus exempt from the overtime protections of the FLSA). Plaintiffs, notably, do not even discuss or attempt to distinguish this decision.

## A.  The Preamble to the 2004 "New" Regulations is Not Law.

The preamble to the 2004 "new" DOL regulations is not authoritative law. Plaintiffs mis-cite the preamble as the actual regulation, which is incorrect and misleading. When DOL promulgated the 2004 revised rule, it included responses to comments in the preamble, and in discussing those comments, indicated that the revision *might* impact the analysis of whether

supervisory police officers were exempt executive employees. <u>See</u> 69 FR 22129, 22130.

However, DOL's prefatory language is in no way controlling on the courts. <u>See</u> <u>e.g.</u>, <u>HRI, Inc.</u>

<u>v. EPA</u>, 198 F.3d 1224 (10th Cir. 2000); <u>General Motors v. Ruckelshaus</u>, 742 F.2d 1561 (D.C.

Cir. 1984); <u>Mabee v. White Plains Pub. Co.</u>, 327 U.S. 178, 90 L. Ed. 607 (1946); <u>Wirtz v.</u>

<u>Steepleton Gen. Tire Co.</u>, 330 F.2d 804 (6th Cir. 1964); <u>Goldberg v. Sorvas</u>, 294 F.2d 841 (3d.

Cir. 1961). The impact of that language must also be evaluated in the context in which it

appears, in this case, as a procedurally mandated response to comments on the draft rule.

 Even if the preamble language is persuasive here, it is replete with discussion, omitted by

Plaintiffs, which demonstrates that Superior Officers may indeed be classified as exempt

executive employees. The 2004 revisions to the FLSA regulations does not change the law,

which, when applied to the facts here shows that the Superior Officer Plaintiffs are exempt

executive employees.

 What DOL did do in the preamble, is to provide its opinion on various court decisions in

the police area, most of which are not discussed by Plaintiffs, who rely on a bevy of non-police

related, District Court cases, in support of their Cross-Motion. DOL did not attempt to interpret

these cases, nor did it attempt to show that the decisions finding that superior officers were

exempt were incorrect. DOL states: "the Department has no intention of departing from the

established case law." 69 Fed. Reg. 22122, 22129. The DOL did accurately point out that the

focus in this kind of analysis is on the primary job duties. "Federal courts have found high-level

police and fire officials to be exempt executive or administrative employees only if, in addition

to satisfying the other pertinent requirements, such as directing the work of two or more other

full time employees as required for the executive exemption, their *primary duty*[2] is performing managerial tasks such as evaluating personnel performance; enforcing and imposing penalties for violations of the rules and regulations; making recommendations as to hiring, promotion, discipline, or termination; coordinating and implementing training programs; maintaining company payroll and personnel records; handling community complaints, including determining whether to refer such complaints to internal affairs for further investigation; preparing budgets and controlling expenditures; ensuring operational readiness through supervision and inspection of personnel, equipment, and quarters; deciding how and where to allocate personnel; managing the distribution of equipment; maintaining inventory of property and supplies; and directing operations at crime, fire, or accident scenes, including deciding whether additional personnel or equipment is needed." 69 Fed. Reg. at 22130 (internal citations omitted) (emphasis added). In a footnote to this comment, DOL states: "Some police officers . . . treated as exempt executives under the current regulations may be entitled to overtime under the final rule because of the additional requirement that an exempt executive must have the authority to 'hire or fire' other employees . . . " Id. at fn. 8. Given these statements, DOL has not created a blanket rule that Sergeants and Lieutenants can never be exempt executives.[3]

This conclusion is borne out by the 2005 DOL Opinion Letter cited in Defendants' initial papers, and which was issued after the new regulations were promulgated. This Opinion concluded that a group of Lieutenants were exempt, finding that the Lieutenants' duties of

---

[2]    The "primary duty" analysis, which is of key import to the determination of exempt status, is discussed and analyzed more fully in Part II, *infra*.

[3]    The Supreme Court has repeatedly confirmed DOL's "broad authority to 'defin[e] and delimi[t]' the scope of the exemption for executive, administrative and professionals employees." Auer v. Robbins, 519 U.S. 452, 456 (1997); see also Addison v. Holly Hill Fruit Products, Inc., 322 U.S. 607, 613 n.6 (1944) (authority given to define and delimit the terms "bona fide executive, administrative, professional").

deploying units, planning and coordinating special units, training officers, maintaining police records, conducting performance appraisals, discipline, reviewing officers' work, and assisting in the budget process were all managerial in nature. FLSA Op. Ltr. 2005-40 (10/14/05). Contrary to Plaintiffs' assertions, there is no new rule that all Sergeants and Lieutenants are exempt. Instead, as demonstrated above, the law and the regulations clearly allow for the classification of Superior Officers as exempt executive and/or administrative employees.

**B.      The Mode of Analysis Set Forth in the <u>Auer v. Robbins</u>, 65 F. 3d 702, Applies Here.**

Plaintiffs' spend a significant amount of time in their brief distinguishing the <u>Auer</u> case. Again, the Plaintiffs' misrepresent the Defendants arguments, as even a cursory reading of the papers shows. While Defendants' noted that <u>Auer</u> was affirmed by the Supreme Court, the discussion relied upon the holdings and conclusions from the Eighth Circuit opinion. <u>See</u> Ds SJ Memo at pp. 8-14. In <u>Auer</u>, the Eighth Circuit performed a case-by-case, factually intensive analysis of the whether several different types of superior officers were exempt executives. The analysis is thoughtful, thorough, and provides this Court with a persuasive mode of analysis for viewing the dispute at bar. Even the DOL is persuaded that <u>Auer</u> is, and remains good case law.[4] In the preamble to the 2004 regulation revision so heavily relied on by the Plaintiffs, DOL uses the <u>Auer</u> analysis as its key in setting forth how management duties, including the primary duty analysis, should be conducted. 69 Fed. Reg. 22122, 22186 ("<u>See</u> <u>also</u> <u>Auer v. Robbins</u>, 65 F. 3d

---

[4]      Plaintiffs insert a throw-away line into their argument and state "given the regulatory changes of August 23, 2004, the Eighth Circuit's 1995 ruling in <u>Auer</u> has even less persuasive force." Def's Memo on X-Motions at 9. This is nonsense. Even if the new regulations set forth an entirely new scheme (and they did not), such regulations do not apply retroactively. Plaintiffs continue to be confused about just what law applies to their case. Although they filed their claim after the effective date of the new regulations, their exempt status, and any potential back pay award, is governed by the regulations in force up to the effective date of the new regulations. Defendants' previous brief clearly sets forth the applicable standards. <u>See</u> Ds SJ Memo at pp. 4-6, 16-18.

702, 712 (8th Cir. 1995) ("if an employee spends less than 50% of his time on managerial duties he is not presumed to have a primary duty of nonmanagement"), aff'd on another issue, 519 U.S. 452 (1997). The final rule retains this current language with only minor editorial changes."). Auer is the standard to which the DOL looks in analyzing this issue, and is applicable here.

### C.    Other Cases Cited By Defendants Are Persuasive.

Plaintiffs' attempts to minimize the importance of the other cases cited by Defendants also fails. They do not point to one additional case which supports their position, and which applies the law and regulations to Police Officers, because there isn't much law to support their position. The argument that Superior Officers are not exempt executive employees, when their primary purpose, and the reasons underlying the chain of command, is to supervise and manage, is plainly absurd.

Defendants' only truly relevant case is Jackson v. San Antonio, 2006 WL 2548545 (W.D. Tex.) (Aug. 31, 2006). Plaintiffs' pin much of their argument on the Jackson decision from the Western District of Texas, which is of little precedential value. Their reliance on this case, which sets forth a misstatement of the law, demonstrates their lack of understanding of the current state of the law and regulations.

Because Plaintiffs cannot distinguish Defendants' cases on the law or the facts, they attempt to distinguish them based on the procedural posture of the decisions. This too, is a futile effort. The points of law set forth in Defendants' cases are undisputed. The facts themselves are undisputed, although Plaintiffs attempt to create a dispute, which is superficial, and only one of characterization. Given that the law and the facts are undisputed, the procedural posture of the cases is unimportant, and should not hinder this Court from applying the legal principles outlined in Auer and Defendants' other cases to the undisputed facts here, and finding that the

Defendants' are thus entitled to Summary Judgment on the exempt status of the Superior

Officers.

### D.    "Working Foreman" is the Incorrect Analysis to Apply.

Plaintiffs argue that the "working foreman" analysis applies to this case. The working

foreman regulation does not go nearly as far as the Plaintiffs claim, does not apply to the Natick

Superior Officers because of the nature of their duties, and must also be taken in context with the

regulatory scheme as a whole. In their brief, Plaintiffs appear to argue that the working foreman

regulation creates a per-se rule, making it impossible for police officers to be exempt executives.

This is again incorrect. In analyzing the DOL regulations, Plaintiffs conveniently leave out any

mention of the "concurrent work" regulation, which qualifies the working foreman rule. The

concurrent work regulation, 29 C.F.R. § 541.106,[5] says, in relevant part, that the concurrent

performance of exempt and nonexempt work duties does not disqualify an employee from

exempt status if the (executive test) is otherwise met, and the employee's executive functions are

their "primary duty." These determinations are made on a case by case basis, based on the

primary duty factors set forth in 29 C.F.R. § 541.700.

Determining whether exempt functions are a primary duty depends on: (1) the relative

importance of exempt duties, (2) amount of time spent on duties, (3) freedom from direct

---

[5]  Sec. 541.106  Concurrent duties.

(a) Concurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements of Sec. 541.100 are otherwise met. Whether an employee meets the requirements of Sec. 541.100 when the employee performs concurrent duties is determined on a case-by-case basis and based on the factors set forth in Sec. 541.700. Generally, exempt executives make the decision regarding when to perform nonexempt duties and remain responsible for the success or failure of business operations under their management while performing the nonexempt work. In contrast, the nonexempt employee generally is directed by a supervisor to perform the exempt work or performs the exempt work for defined time periods. An employee whose primary duty is ordinary production work or routine, recurrent or repetitive tasks cannot qualify for exemption as an executive.

supervision, (4) how the employee is paid for their exempt work.  29 C.F.R. § 541.700 (a), (b).

The primary duty analysis is discussed more fully in Part II.A, *infra*.

    The working foreman concept has been analyzed in a few public safety cases, and is not

a bar to finding superior officers exempt executives.  In <u>Wise v. City of Norfolk</u>, 215 F.3d 1324

(4th Cir. 2000) (unpublished), the court found that fire lieutenants were exempt because their

supervision duties were dominant, even though the duties were integrated with their nonexempt

tasks (i.e., they supervised at the same time they were also working side by side with the

officers).  The supervisors assigned tasks, allocated resources, and managed fire scenes, even

while performing fire fighter tasks alongside the firefighters.  Similarly, in <u>Anderson v. City of</u>

<u>Cleveland</u>, 90 F. Supp. 2d 906 (E.D. Tenn. 2000), a case previously cited by Defendants, the

District Court found that the analysis of whether employees were working foremen was

"designed to fit the factory floor, not suited to the law enforcement context," and found that

lieutenants who evaluated sergeants, reviewed sergeants' evaluations of patrol officers, received

a higher salary than officers, made budget and shift assignment allocations, were exempt despite

the fact they worked alongside officers in the field.

    The Natick Superior Officers have as their primary duty many of these responsibilities,

including the authority and responsibility to assign tasks, allocate resources, manage crime

and/or accident scenes, and evaluate and oversee Patrol Officers.  In addition, they are more

highly paid than Patrol Officers.  The Fourth Circuit has held that these types of duties,

performed alongside the officers being supervised, do not disqualify superior officers from being

exempt executive employees.  There are more than enough undisputed facts here, that this Court

should follow the Fourth Circuit, and the other courts that have come to the same conclusion.  <u>See</u>

<u>West v. Arundel City</u>, 137 F.3d 752 (4th. Cir. 1998) (Lieutenants who worked in the field, but

supervised officers simultaneously, were exempt executives); <u>Shockley v. Newport News</u>, 997 F.2d 18 (4th Cir. 1993) (Police sergeants supervised and assigned equipment, assigned tasks, and worked alongside the officers at scenes, and were held exempt despite a claim they were "working supervisors" entitled to overtime); <u>Quirk v. Baltimore Cty, MD.</u>, 895 F. Supp 773 (D. Md. 1995) (EMT captains are exempt when they were the on-site managers for other ranks, even as they performed EMT duties.  They exercised independent discretion in evaluating subordinates, managing equipment, directing employees in the field, and were higher paid than officers).

    **II.**    **The Superior Officers Are Exempt Executives Because Their Primary <u>Duty is Management.</u>**

        **A.**    **Primary Duty Analysis.**

"Primary Duty" as recently defined by the DOL means the principal, main, major or most important duty that the employee performs. 29 C.F.R. § 541.700.  Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole.

In revising the FLSA regulations in 2004, the DOL specifically rejected the proposition that the regulations, current or new, require a 50% bright-line test for "primary duty."   As the DOL noted, ". . . commenters fail to take account of the existing regulations and federal case law. . ." 69 Fed. Reg. 22122, 22185.  Most noteworthy, and ignored by the Plaintiffs, is the fact that in defining primary duty the DOL relied specifically on the Eighth Circuit decision in the <u>Auer</u> case, as discussed in *supra*, Part I.B.  The key piece to that discussion notes that an

employee who spends less than 50% of his time on managerial duties, is not presumed to have a primary duty of nonmanagment. Id. at 22186.

For decades, the current regulations have created a presumption of exempt status for employees crossing the 50-percent threshold, while recognizing no presumption of nonexempt status for those who do not cross the threshold. 29 C.F.R. § 541.103. As the regulations stated:

Sec. 541.103  Primary duty.

A determination of whether an employee has management as his primary duty must be based on all the facts in a particular case. The amount of time spent in the performance of the managerial duties is a useful guide in determining whether management is the primary duty of an employee. In the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time. Thus, an employee who spends over 50 percent of his time in management would have management as his primary duty. Time alone, however, is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty if the other pertinent factors support such a conclusion. Some of these pertinent factors are the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the relationship between his salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor. For example, in some departments, or subdivisions of an establishment, an employee has broad responsibilities similar to those of the owner or manager of the establishment, but generally spends more than 50 percent of his time in production or sales work. While engaged in such work he supervises other employees, directs the work of warehouse and delivery men, approves advertising, orders merchandise, handles customer complaints, authorizes payment of bills, or performs other management duties as the day-to-day operations require. He will be considered to have management as his primary duty. In the data processing field an employee who directs the day-to-day activities of a single group of programmers and who performs the more complex or responsible jobs in programming will be considered to have management as his primary duty.

29 C.F.R. § 541.103.

The 2004 regulations do not change the thrust of this analysis:

Sec. 541.700  Primary duty.

(a) To qualify for exemption under this part, an employee's "primary duty" must be the performance of exempt work. The term "primary duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the  employee.

(b) The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.

(c) Thus, for example, assistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register. However, if such assistant managers are closely supervised and earn little more than the nonexempt employees, the assistant managers generally would not satisfy the primary duty requirement.

29 C.F.R. § 541.700.

These new regulations, viewed as a whole and applied to the facts, only further clarify

that the Natick Superior Officers are exempt employees.  Donovan v. Burger King, 672 F.2d 221

(1st Cir. 1982), a case cited by Plaintiffs, supports that conclusion.  As the First Circuit states:

The supervision of other employees is clearly a management duty. See 29 C.F.R. § 541.102(b). The fact that Burger King has well-defined policies, and that tasks are spelled out in great detail, is insufficient to negate this conclusion. Ensuring

that company policies are carried out constitutes the "very essence of supervisory work." <u>Anderson v. Federal Cartridge Corp.</u>, 62 F. Supp. 775, 781 (D. Minn. 1945), <u>aff'd</u>, 156 F.2d 681 (8th Cir. 1946); <u>see also</u> <u>Wells v. Radio Corp. of America</u>, 77 F. Supp. 964 (S.D.N.Y. 1948). While it may be that the assistant managers do not exercise sufficient discretionary powers to satisfy the long test requirement, 29 C.F.R. § 541.1(d), that requirement is not part of the short test. It cannot be denied that the supervisory work of the assistant managers qualifies as management under the regulations.

The more difficult question is whether such work is their "primary duty." The regulation states that "(i)n the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time." 29 C.F.R. § 541.103. There are two problems with this guideline. First, the more natural reading of "primary" is "principal" or "chief," not "over one-half." <u>Marshall v. Burger King Corp.</u>, 504 F. Supp. 404 (E.D.N.Y. 1980), cross-appeals pending. Second, a strict time division is somewhat misleading here: one can still be "managing" if one is in charge, even while physically doing something else. The 50 percent rule seems better directed at situations where the employee's management and non-management functions are more clearly severable than they are here.

<u>Donovan</u>, 672 F. 2d. at 226. The court goes on to conclude: "[t]his example makes it quite clear that an employee can manage while performing other work, and that this work does not negate the conclusion that his primary duty is management." <u>Id</u>. When read in context with the concurrent work regulations, Plaintiffs' argument that the Superior Officers cannot be supervisors because they are engaged in work similar to that of the Patrol Officers, fails. The specific job duties and responsibilities of the Superior Officers, their pay scale, job description, the expectations of the Chief, and their role in the command structure of the Department all point to the conclusion that they are exempt executive employees.

**B.    Hiring or Firing in the Civil Service Context.**

Plaintiffs argue that, with respect to hiring or firing in the Civil Service context, Defendants cannot meet the primary duty requirement because they are too constrained by the

13

requirements of the Civil Service system, or because hiring, firing or promotion happens too infrequently within the Department. Natick does participate in the Civil Service system, by virtue of the Town's election to do so, and as acknowledged in Defendants' earlier briefing. However, this election does not mean that there is no discretion involved in the hiring or firing process, nor does DOL contemplate such. In the preamble to the 2004 regulations, the DOL directly responded to the concerns expressed by the New York State Police (and other public sector employers) that in the civil service context the additional regulatory requirements regarding "particular weight" be given to the input of exempt employees into hiring, or firing, or disciplinary action would compromise the exempt status of these various employees who have been classified as exempt. The DOL explicitly rejected the proposition, stating:

> The Department has evaluated these comments and, as noted above, has included a definition of the term "particular weight" in section 541.105. That definition clarifies that an executive does not have to possess full authority to make the ultimate decision regarding and employee's status, such as where a higher level manager or a personnel board makes the final hiring, promotion, or termination decision. . . .

> . . . [W]e have determined that this requirement should not pose a hardship since public sector supervisory employees provide recommendations as to hiring, firing or other personnel decisions that are given "particular weight" to the extent allowed under civil service laws and thus may meet this requirement for exemption. [As the nation Board Association comments, although state law may vest the school board with the exclusive authority to discharge an employee, such and action is precipitated by a department supervisor who evaluates the employee's performance and recommends the action, and the superintendents recommendation to the board is based on the department supervisor's recommendation.]

69 Fed. Reg. 22122, 22131. Given this interpretation of the regulation, and the Chief's Affidavits which demonstrate that he does indeed give particular weight to the input of his Superior Officers in hiring, or firing, or promotion, Plaintiffs' arguments fail. The fact that the

Department rarely is in need of new officers, or that promotion almost always happens from within the ranks, is a credit to the Department, as opposed to being a reason to find the Superior Officers non-exempt.  The Superior Officers of the Natick Police Department have management as their primary duty, and as such, are exempt executive employees.  As a result, Plaintiffs' Cross Motion for Summary Judgment should be denied, and Defendants' Motion for Partial Summary Judgment should be granted.

### II.    The Undisputed Facts Demonstrate that the Superior Officers are Exempt Executives.

As set forth in more detail in Defendants' SJ Memo, there is no actual dispute of material fact that the Superior Officers of the Natick Police Department perform duties which, when analyzed under the applicable law and regulations, classify them as supervisors and managers. Even if the Court gives credit to Plaintiffs' arguments that they may be performing some of their managerial duties in conjunction with more routine police work, the primary function of these Sergeants and Lieutenants is to supervise the Patrol Officers.  To argue otherwise is to turn the concept of promotions on their head, and to eviscerate the Chain of Command.

Many of the Superior Officers have submitted affidavits which purport to swear and affirm that they are not supervisors, and that they do nothing more than provide guidance, feedback, and support to the Patrol Officers, based on routine, mechanical, cook-book like formulas.  The Superior Officers may wish to minimize the importance of their supervisory roles by setting out a blizzard of minutia which have only minor relevance to the material facts, but the Court should not be guided by their self-perceptions.  Chief Mannix, in his Third Affidavit, sets forth general principles which contradict these affidavits.  See generally Third Affidavit of Mannix ("3rd Aff. Mannix").  The undisputed facts, the structure of the Department, and the role,

15

responsibilities, and authority of the Superior Officers demonstrate that the system itself relies heavily on their managerial role.

One recurring theme in Plaintiffs' Cross-Motion is that because the Superior Officers rely on "techniques passed down from one generation of police officers to another," "standards of the police academy," and other guidelines for developing expertise in police procedures, they do not apply independent discretion. There is no authority, however, that supports this proposition. Using that standard, physicians and lawyers do not exercise independent discretion since they learn their trade from previous "generations" of professionals and resort to reliance on manuals and guidance in the course of their work.  The <u>Auer</u> case and others cited do not address this issue, contrary to Plaintiffs' assertions, because the very issue is not worthy of being addressed. Common sense dictates that in every state, in every police department, Sergeants and Lieutenants learn from prior generations of police, and their work (especially in a paramilitary-type organization), is highly regulated, yet the cases make no legitimate claim that those superior officers were not using independent discretion.[6]  Further, the regulations do not state or require that supervisors must make up their own rules, in order to be exercising discretion, and acting as a manager.

In fact, the Superior Officers are trained specifically as Supervisors, and in the exercise of that discretion, a significant fact missing from the latest round of affidavits.  For example, Lieutenant Mabardy and Sergeants O'Callaghan and Longtine were trained at the FBI National Academy for Law Enforcement, training that focuses on law enforcement leadership and

---

[6]    Nothing in the regulation setting forth the executive exemption requires the exercise of independent discretion as an element of that status.  This requirement is limited to the regulation dealing with the administrative exemption.

management. 3rd Aff. of Mannix ¶¶ 18-19.   Most of the other Sergeants and Lieutenants except perhaps the most recently promoted, have attended some form of training specifically geared to supervision and management, in the law enforcement context, including the Mass Police Leadership Institute, the Command Training Program at the New England Institute of Law Enforcement Management, and the Senior Management Institute for Police. Id.  All however, left these facts out of their Affidavits.

The structure of command and the independence of their work, also leads to the conclusion that the Superior Officers are exempt.  The Sergeants who are Station Supervisors direct the Patrol Officers out on Patrol, including directing them to other areas, or to respond to specific situations within their area. 3rd Aff. Mannix ¶¶ 13-15.  When Sergeants are Patrol Supervisosr, they are not confined to one of the three area assignments, but have responsibility for all of the Patrol Officers, whichever area they happen to be assigned to. Id.  The Sergeant has the freedom to move among and around the three areas, based on his or her own use of discretion, and evaluation of need. Id. By contrast, the Patrol Officers are assigned to a specific area, and must seek approval before they move from that area.  Further, Sergeants who are the Patrol Supervisor direct any of the Patrol Officers out on Patrol, including directing them to other areas, or to respond to specific situations within their area. Id.  All Superior Officers have the authority to direct Patrol Officers to specific areas, specific patrols, or to respond to specific situations. Id.

Chief Mannix, who has the opportunity to opportunity to observe how the Superior Officers conduct themselves during the course of their shifts, notes that their principal duty and responsibility within the Department is to manage the Patrol Officers, in accord with their job

17

duties and description, the rules and regulations of the Department, and his own expectations as Chief of the Department. Id. ¶¶ 16-17.

Specifically, as part of their duties as managers, the Superior Officers collectively engage in the following tasks:

    a.   enforcing compliance with the rules and regulations of the Department;

    b.   making recommendations as to hiring, promotion, discipline, or termination;

    c.   coordinating and implementing training programs;

    d.   maintaining Department payroll and personnel records;

    e.   handling community complaints, including determination whether to refer such complaints for further investigation;

    f.   preparing budgets;

    g.   ensuring operational readiness through supervision and inspection of personnel, equipment, and quarters;

    h.   deciding how and where to allocate personnel in response to specific needs and situations;

    i.   managing the distribution of equipment;

    j.   maintaining inventory of property and supplies;

    k.   and directing operations at crime or accident scenes, including deciding whether additional personnel or equipment is needed.

3rd. Aff. Mannix ¶ 17.

Superior Officers have received that rank by virtue of their seeking and receiving advancement.  Promotion takes place in accord with the Civil Service process, and each

applicant must sit for the Civil Service Promotional exam (for Sergeant, Lieutenant). Id. ¶ 20.

Successful applicants are chosen because they scored well, and demonstrated proficiency, in,

among other things, the ability to supervise. Id. The reading list for the current promotional exam

includes two (out of five) recommended materials dealing with supervision, *Police*

*Administration*, 6th ed. 2005, and *Supervision of Police Personnel*, 6th ed. 2001. Id.

The Plaintiffs attempt to argue that because they are given a cookbook of instructions,

their ability to utilize discretion is so constrained that they virtually do not have to think or react,

in order to carry out their job duties.  Police work is hardly done by recipe, and as Chief Mannix

points out, utilizing discretion is an important component of the Superior Officer's duties.  While

he agrees that their work is to be done within the rules, regulations, policies, and procedures of

the Commonwealth of Massachusetts, the Town of Natick, and the Department, the policies and

procedures are guidelines, which do not address every situation and outcome. Id. ¶¶ 21-22.  The

Superior Officers have discretion within the Department to do many things, including evaluation

of whether Patrol Officer assignments are to be changed in response to a current need or

situation, whether actions of a Patrol Officer constitute conduct unbecoming, or a more minor

infraction of the rules, resulting in nothing more than verbal counseling. Id.

The Superior Officers have discretion in evaluating candidates for Patrol Officer, or for

promotion.  Even if the interviews begin with "assigned" questions every Superior Officer

present is expected to use his or her judgment in evaluating the answers to the questions, asking

follow-up questions, and in pulling together all of the information presented to discuss the

candidates. Id. ¶ 23. And each Superior Officer does indeed ask follow-up questions and evaluate

the candidates.  Not every question or recommendation is followed, in hiring, or firing, or

promotion, or discipline, but the Chief affirms that he does indeed take those points and

questions into consideration. Id. ¶ 24.  Often, the input of the Superior Officers is the basis for further investigation or questioning.  All of that information is important in determining the Department recommendation, and the Superior Officer's input is given significant weight in coming to such a recommendation.

## CONCLUSION

Therefore, for all the reasons stated above, Plaintiffs' Cross Motion for Summary Judgment should be denied, and Defendants' Motion for Partial Summary Judgment should be granted.  Therefore, Defendants' respectfully request that this Court:

A.  Issue an Order denying Plaintiffs' Motions;

B.  Issue an Order which grants partial Summary Judgment on behalf of Defendants;

C.  Award Defendants attorneys fees and its costs in defending this action; and

D.  Award Defendants any other relief that it determines to be just and proper.

Respectfully submitted,

Defendants, TOWN OF NATICK,
NATICK POLICE DEPARTMENT, and
DENNIS R. MANNIX, CHIEF OF POLICE

By their attorneys,

/s/  John P. Flynn
John P. Flynn, BBO# 172640
Geoffrey B. McCullough, BBO# 558207
Kathryn M. Murphy, BBO#564789
Karis L. North, BBO # 648998
MURPHY, HESSE, TOOMEY & LEHANE, LLP
300 Crown Colony Drive, Suite 410
Quincy, MA 02169
(617) 479-5000

Dated: December 7, 2006

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be send to those indicated as non registered participants on December 7, 2006.

<u>/s/ John P. Flynn</u>
John P. Flynn