UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Robert F. Murphy, III, Lead Plaintiff for
Patrol Officer Plaintiffs, et al. and,

Brian C. Grassey, Lead Plaintiff for
Superior Officer Plaintiffs, et al.,

    Plaintiffs,

    v.

Town of Natick, et al.

    Defendants

USDC Case No.:  04-11996 RGS

**DEFENDANTS' STATEMENT OF DISPUTED MATERIAL FACTS IN RESPONSE
TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS IN SUPPORT
OF PLAINTIFFS CROSS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1, Defendants' submit this Statement of Disputed Material Facts in Response to Plaintiffs' Statement of Material Facts in Support of Plaintiffs' Cross Motion for Summary Judgment.

Defendants' statement is limited to only those facts newly set forth by Plaintiffs in support of their Cross Motion for Summary Judgment filed on November 20, 2006, and referred to as "Additional Cross Motion Points."  Each response below under the heading "Defendants' Responses to Additional Cross Motion Points" correlates to the enumerated paragraphs of Plaintiffs' November 20, 2006 submission.

To the extent that a great portion of Plaintiffs' allegedly disputed "facts" set forth in paragraphs 1-53 constitute argument and are more suited for Memoranda of Law than Statements of Fact, Defendants' object generally, and move that all such argument be stricken.

## DEFENDANTS' RESPONSES TO ADDITIONAL CROSS MOTION POINTS

54.     Patrol Officers including all detectives do not perform any managerial or administrative work.  The vast majority of the work of patrol officers is actual police itself.  No patrol officers participate in any process relating to hiring, firing, promotion, discipline, or causing any changes in working conditions.  Patrol officers do not direct the work of others.  Patrol officers are not in control of any portion of the budget or discretionary funds and they do no work in functional areas such as tax, finance, accounting; budgeting; auditing, safety and health; personnel management; human resources; employee benefits; labor relations; public relations; government relations; computer network, internet and database administration; and legal and regulatory compliance.  (Ex. 3 at ¶¶11(a), 11(b); Ex. 5-7 at ¶¶ 13(a), 13(b)).

**Defendants' Response:** Agreed as to Patrol Officers generally.  The portion of the response that deals with Detectives is not material to the issue of whether the Detectives are exempt administrative personnel.  Defendants do not assert that Detectives are exempt executive employees.

55.     Patrol officers including all detectives do not maintain production records or appraise employee productivity and efficiency.  Patrol officers do not handle employee complaints or grievances.  Patrol officers do not apportion work and they do not determine the type of materials, supplies, or tools to be used in the course of an employee's duty. (Ex. 3 at ¶¶11(a), 11(b); Ex. 5-7 at ¶¶ 13(a), 13(b))

**Defendants' Response:** Agreed as to Patrol Officers generally.  Defendant is not claiming that Patrol Officers are exempt employees, and these issues are not material to the question of whether the Detectives are exempt Administrative personnel.

56. The deposition testimony of Chief Mannix shows that facts attested to in his affidavit are without adequate foundation and otherwise fail to demonstrate the non-exempt status of the Plaintiffs, as follows:

**Defendants' Response:** This statement is purely argument, and should be stricken.

a. Throughout his deposition the Chief testified that the specific weight that he would accord to input from superior officers was purely a subjective decision that he made, that it was codified no where, and that any weight he decided to accord such input was subject to an overriding arbitrary consideration of whether he subjectively believed that his own experience, knowledge and judgment was more reliable and should supersede that of the superior officer offering such input. (Ex. 18 at 75-76, 86-88, 110-111, 125, 174, 268-269, 275, 311) The Chief has no first hand knowledge of the majority of the actual job duties performed by Superior Officers on a day-to-day basis. (Ex. 18 at 343, 356-365)

**Defendants' Response:** Agreed that there is no specific rule or regulation that assigns how much weight the Chief gives to the input from his Superior Officers. Disagree that the absence or presence of such a rule or regulation is material to the issues in this litigation. Further, the Chief has testified extensively that he gives the input of his Superior Officers significant weight. Aff Mannix ¶¶ 33-34, 41, 44-46. 48, 54-56; 3rd Aff. Mannix ¶ 24.

The Chief has many occasions to observe the Superior Officers in the course of their job duties, and regularly makes such observations. Further, the Chief regularly interacts with his staff and is fully informed about their job duties, on a day-to-day basis. 3rd. Aff. Mannix ¶¶ 16-17. His actual testimony on the pages cited by Plaintiffs states that the Chief does not have knowledge of the specific minutes and hours that each Superior Officer spends directing subordinates, but he provided much specific testimony on those same pages as to the job duties

he has observed his Superior Officers performing.  Further, the Chief testified that on a daily basis he monitors the radio communications between and among the patrol supervisors, the patrol officers, and the dispatchers; he gets information passed on to him from other supervisors, dispatchers, or lieutenants; he makes his own observations when he is out and about in Town, or interacting with personnel in the station; and on occasion, he also responds to serious incidents. P's Ex. 18 at 334-336.

        b.    The Chief admits that he cannot recall any discussions with Command Staff member Sgt. Lauzon and Sgt. Fitzpatrick about internal promotions.  (Ex. 18 at 137-139)

**Defendants' Response:** Denied. What the Chief testified to was that he could not recall whether either Sergeant Fitzpatrick or Sergeant Lauzon provided input on the promotion of Patrol Officer Hoffman to Sergeant. The Chief stated: "I don't recall.  And all of those not recalling are because I don't recall if he was at that meeting.  Had he been at the meeting, he would have given some comment." P's Ex. 18 at 138-39.

        c.    The Chief admits that he does not solicit information about new hire candidates from anyone other than Command staff.  (Ex. 18 at 94-95)

**Defendants' Response:**  The Chief has testified extensively about the review and investigation process, which includes input from Sergeant investigators, who are not members of the Command staff. Aff. Mannix ¶¶ 41, 44.  Further, in his deposition, the Chief noted that "if someone had information about a particular candidate, they would certainly be welcome to share that information with me." Ps' Ex. 18 at 94.

        d.    The Chief is either uncertain about or admits that superior officers do not have the delegated authority to suspend.  (Ex. 18 at 286-288)

**Defendants' Response:**  The Chief was clear that Superior Officers have the authority to relieve someone from duty, which is a type of suspension.  His actual testimony is: "They [referring to the Superior Officers] have delegated authority to relieve somebody, again, which is whether with or without pay, would depend on the circumstances and it would depend specifically on the reason for being sent home.  That could be incorporated as part of a suspension.  And I think it would be defined as a suspension by the individual.  I would consider it a suspension from duty.  It wouldn't be with pay." Ps' Ex. 18 at 287.

      e.    The Chief admits that in at least the past 5 years he has no recollection that a Sergeant has ever investigated the misconduct of another police officer. (Ex. 18 at 322)

**Defendants' Response:**  Denied.  His actual testimony was that he could not recall the specifics instances, but "I know there have been a number of them." P's Ex. 18 at 322.  Further, he was certain that Lieutenants Pagliarulo, Mason, and Mabardy have all handled such investigations. Ex. 18 at 322-24.

      f.    The Chief admits that TSO Sgt. Lauzon doesn't directly supervise any officers, that no officers report directly to him and that Sgt. Lauzon has no line responsibility for officers. (Ex. 18 at 354)

**Defendants' Response:** Agreed in that Sergeant Lauzon has staff officer responsibilities, and not a line command.  Denied that he does not supervise any officers.  The Chief has testified that Sergeant Lauzon "is engaged in a staff capacity through lateral communication with other supervisors.  He's engaged in the direction of other patrol officers." P's Ex. 18 at 354.

      g.    The Chief admits that it is not a job duty of Lieutenants (the core of his Command Staff) to provide him with input on promotions. (Ex. 18 at 151)

5

**Defendants' Response:** Disagree. The Chief's testimony demonstrates that he expects the Lieutenants to provide him with input on promotions. P's Ex. 18 at 151. Further, the Chief noted in that same line of questioning, that he relies "very heavily on their opinions on virtually everything we do, whether it's patrol assignment or assignments to detectives or it's promotions." Id.; See also Aff Mannix ¶¶ 33-34, 41, 44-46. 48, 54-56; 3rd Aff. Mannix ¶ 24.

      h.    The Chief admits that no superior officer has ever been disciplined for failing to submit an employee of the month nomination. (Ex. 18 at 267)

**Defendants' Response:** Agreed. Further responding, the Chief testified that while he has not disciplined any Superior Officer for failing to submit nominations for Employee of the Month, he has "spoken to them in a group setting in staff meetings and indicated to them that I believe that they should be able to find someone that has performed in an exemplary manner over the period of a month." P's Ex. 18 at 267.

57.    The difference in pay between a patrol officer and a superior officer is less than 20%. (Plaintiffs' Nov. 1 Appendix of Exhibits at Ex. 1, 2.)

**Defendants' Response:** Denied, to the extent that such characterization represents the difference in pay scale between every Patrol Officer, and every Superior Officer. The pay scale documents speak for themselves, and to the extent Plaintiffs are making a specific comparison, Defendants are unable to respond without more specifics of any such comparison provided.

58.    Lt. Mabardy worked as the Community Services Officer from at least September 2001 to August 2002. There were no employees assigned to the Community Services Division at that time other than himself. He directed no employees in that area.[1] The position did not

---

[1] There was an approximate three-month period that then-Patrol Officer (now Sergeant) Cara Rossi-Cafarelli was assigned to this area in the later stages of a pregnancy. Because she was new to the area (and temporary) he did guide her on how to help him, and among other things she aided in organizing his files and making calls to community groups. [Footnote from Plaintiffs original statement, but renumbered].

require supervision of any employees. He was the liaison between different communities, organizations, and towns and the Police Department. The Chief decided the programs that would be provided to the community. The programs that were run were not new ideas. One time Chief Mannix summarized this aptly when he told Lt. Mabardy that he was not "reinventing the wheel". This is true to the extent that these types of programs were already established and they were adopting them and formatting them for use in the Town. As a Community Services Officer Lt. Mabardy did not participate in interviewing and selecting Department employees; he did not set or adjust rates of pay and hours of work; he did not direct any employee's work; he did not maintain production records for use in supervision or control; he did not appraise employee productivity and efficiency for the purpose of recommending promotions or other changes in status; he did not handle employees' complaints and grievances; he did not plan any employee's work except to the limited extent that he would implement programs and once in a while have to coordinate the work for that program; he did not determine or set the work techniques to be used; he did not participate in apportioning the work among the workers, except in the occasional situation when he was coordinating a community project; and he did not participate in determining the type of materials, supplies, or tools to be used in the course of an employee's duties. Rather, by far, the vast sum of the work that he did as Community Services Officer had to do with interacting with the community and establishing links between such groups and the Police Department. (Ex. 4 at ¶9(a), 9(b))

**Defendants' Response:** Denied, as to the characterization of comments made by the Chief. Further, the period earlier than September 2002 is not relevant to the issues in this litigation.

59.     From September 2001 through November 2003 Lt. Pagliarulo was a Sergeant Detective. In this position he did not perform the same duties as a Patrol Sergeant. As a Sergeant Detective he primarily worked with one other detective, Jack Doherty. Nominally, he was Doherty's supervisor but he typically spent less than a half hour per day engaging in any supervision of Doherty or monitoring his work. Instead, the overwhelming majority of his time was spent functioning as a plainclothes detective. He investigated domestic abuse crimes, identity theft crimes and credit card fraud. He would do victim follow-ups and provide information regarding crime prevention, credit repair and other possible action a victim might take. The work he performed as a Sergeant Detective was guided by the General Laws of the Commonwealth, information about longstanding special techniques of police work that he learned at the Police Academy, Natick Police Rules, Regulations, Policies, Procedures and General Orders, and what he had been taught by his predecessors. (Ex. 3 at 7(c))

**Defendants' Response:** Agreed, to the extent that a Sergeant of Detectives had duties different from a Patrol Sergeant. Defendants' disagree as to the characterization of then-Sergeant Pagliarulo's job as a "nominal" supervisor. A Sergeants' principal duty is supervision of those at the Patrol Officer rank. See DSOF ¶¶ 5-7, 19-21. Further, the period earlier than September 2002 is irrelevant for purposes of this litigation.

        Respectfully submitted,

        Defendants, TOWN OF NATICK,
        NATICK POLICE DEPARTMENT, and
        DENNIS R. MANNIX, CHIEF OF POLICE

        By their attorneys,

        /s/  John P. Flynn
        John P. Flynn, BBO# 172640
        Geoffrey B. McCullough, BBO# 558207
        Kathryn M. Murphy, BBO#564789
        Karis L. North, BBO # 648998
        MURPHY, HESSE, TOOMEY & LEHANE, LLP
        300 Crown Colony Drive, Suite 410
        Quincy, MA 02169
        (617) 479-5000

Dated: December 7, 2006


## CERTIFICATE OF SERVICE

    I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be send to those indicated as non registered participants on December 7, 2006.

        /s/ John P. Flynn
        John P. Flynn