THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Robert F. Murphy, III, Lead Plaintiff for
Patrol Officer Plaintiffs, et al. and,

Brian C. Grassey, Lead Plaintiff for
Superior Officer Plaintiffs, et al.,

      Plaintiffs,

      v.                                                      USDC Case No.:  04-11996 RGS

Town of Natick, et al.

      Defendants

**PLAINTIFFS' MEMORANDUM IN SUPPORT
OF INTERIM PROPOSED FORM OF JUDGMENT**

### I.      Introduction

Pursuant to the Court's order of September 25, 2007 Plaintiffs submit this memorandum in support of their interim proposed form of judgment set forth below.  In Part II below Plaintiffs set forth the facts relevant to this calculation, and in Part III identify the methodology and legal issues relating to such calculations.

### II.      Facts

**A.  Background**

    1.       Plaintiffs retained a consultant named Patricia Slate to perform the interim calculation of damages set forth in this submission.

    2.       Ms. Slate's background is set forth in greater detail in her affidavit filed with this memorandum, hereafter cited as "Aff Slate at ¶__".  (Aff Slate at ¶¶1-4.)  Among other things her affidavit shows that she worked for the Department of Labor ("DOL") in the Wage and Hour

1

Division ("WHD") including mainly in the Boston district for thirty-four (34) years from 1973 until 2007, at which time she retired.  During her thirty-four year career she was routinely involved in applying the methodology of DOL/WHD in calculating overtime damages.  (Aff Slate at ¶3.)  The calculations that she performed here are in accordance with that same methodology, except as modified by the court order.  (Aff Slate at ¶4.)  For example, she applied a cumulative offset for premium overtime as per the Court's September 25, 2007 order in this case, even though the DOL/WHD during her thirty-four year tenure has always applied that offset *only* on a weekly basis.  (Id.)

**B.     Sources of Data Used by Ms. Slate**

3.     In preparing her damages calculations Slate used the documents provided by the Town during discovery.  (Aff Slate at ¶¶5-12 and Exhibits A, B, C and D attached thereto.)  This includes not only the documents attached to her affidavit cited in the prior sentence, but also documents previously submitted via hard copy appendix delivered to the court by Plaintiffs with Plaintiffs' motion for summary judgment filed in October 2006.  Said appendix shall hereinafter be cited as "Pl. 10/06 Appx. at ___."  Documents from Plaintiffs' October 2006 Appendix in this regard include the affidavit of Sgt. Leo Fitzpatrick (Pl. 10/06 at Exh. 29), as well as Exhibits A and B attached to Sgt. Fitzpatrick's affidavit, (Pl. 10/06 Appx. at Exh. 29 at Exhibits A and B attached thereto.) (Aff Slate at ¶¶10-12.)  The content of all such Town source documents is summarized in greater detail below and Slate's affidavit.

4.     There is one preliminary point to emphasize regarding the original Town documents used by Slate.  Of all the documents used by Slate, the original EXCEL Paybooks of Sgt. Fitzpatrick are the *foundation* of her damages calculations.  (Aff Slate at ¶¶5, 13-22.)

5.      In that regard, Sgt. Leo Fitzpatrick is the Administrative Officer of the Police Department and on a weekly basis he inputted and calculated data relating to payroll for employees in the Town's police department, and then transferred that data from a document known as an "EXCEL Paybook" to Town Hall for transfer to the Town's computer system and use in generating payroll checks.  (Pl. 10/06 Appx. at Exh. 29 and ¶4; Aff Slate at ¶10.)  These paybooks prepared by Sgt. Fitzpatrick on a weekly basis are referred to herein as the "original EXCEL Paybooks" and in the record before the court in this action. (Pl. 10/06 Appx. at Exh. 29 at Exhibit A of Slate's affidavit; and Exhibit A submitted with this motion).[1]  Sgt. Fitzpatrick's original EXCEL Paybooks are the *foundation* of Slate's computations because Slate's calculations are on EXCEL spreadsheets that incorporated all such electronic data from the original EXCEL Paybooks, and then she modified them and added computations for damages. Accordingly, Slate's damages spreadsheets are referred to herein as Slate's "modified EXCEL Paybooks on damages".  (Aff Slate at Exh. A – CD ROM – folder for Slate's spreadsheets; and Exhibits 1 and 2 attached hereto – PDF version of computation section of such EXCEL spreadsheets.)  Exhibit A was delivered to the court physically, outside of the ECF system.

## C.      Preparation Of Ms. Slate's Modified EXCEL Paybooks On Damages

6.      In preparing her modified EXCEL Paybook on damages, Slate did not re-input such data from the original EXCEL Paybooks. (Aff Slate at ¶13.)  Rather, she created a spreadsheet that modified the original files by relocating some cells in the original EXCEL Paybooks from their original location to different locations and adding new columns for

---

[1]  For the court's convenience, one folder in Exhibit A of Slate's Affidavit contains EXCEL Paybooks prepared by Sgt. Fitzpatrick for FY02 to FY05 that were previously provided to the court with Plaintiffs' October 2006 motion for summary judgment in hard copy Appendix of Exhibits.  (Pl. 10/06 Appx. at Exhibit A of Exhibit 29.)

purposes of computations.  (Id.)  Slate testifies in her affidavit that she used the above process,

"rather than re-inputting original data, so that the original entries would be preserved on the

EXCEL worksheet and merely relocated for more effective use in computing damages and, more

importantly, to limit the possibility for human error if original entries were re-inputted."  (Id.)

      7.     Slate prepared modified EXCEL Paybooks on damages based upon both a two

year and three year statute of limitations subject to the issue of willfulness being determined in

the next stage of these proceedings.  (Aff Slate at ¶28 and Exh. A attached thereto.)  Slate's

modified EXCEL Paybooks on damages are presented to the court in two formats.  First they are

included in a folder on a CD ROM delivered to the court in the native software program that she

used, EXCEL, so that the court has the opportunity to view the actual arithmetic formulas in each

column of cells if the court so desires.  (Aff Slate at Exh. A, folder Slate spreadsheets.)  In

addition, Slate's modified EXCEL Paybooks on damages are submitted as PDF documents per

the court's electronic filing protocols as an attachment to this memorandum as Exhibits 1 and 2

attached hereto.[2]

      8.     Slate also prepared a second type of spreadsheet that summarizes her voluminous

damages calculations.  She prepared one such summary for the two year statute of limitations

and another for the three year statute of limitations.  These summary reports appear as well in

both the native EXCEL format in which they were prepared, (Aff Slate at Exh. A, Slate

spreadsheets folder), as well as in PDF form attached to this memorandum as Exhibits 3 and 4.

---

[2] Note that the PFD version captures only columns AM to CJ where damages computations are
made, and not the columns to the left which are simply source data from the original EXCEL
Paybooks.  The columns to the left of column AM that contain such original source data,
nevertheless, can be viewed, if so desired, on the actual EXCEL spreadsheets of Slate on Exhibit
A CD ROM of her Affidavit.

9.      Plaintiffs commend Slate's affidavit at ¶¶13-22 to the court's attention for careful review for detailed information on how Slate modified the original EXCEL Paybooks to derive her damages calculations, (Aff Slate at ¶¶13-22); and ¶¶23-29 of Slate's affidavit for a comprehensive understanding of the foundation and basis for all calculations that she relied upon in calculating damages and an explanation of each column and formula used on her spreadsheet as well as its relationship to the original EXCEL Paybooks, (Aff Slate at ¶¶23-29).  Finally, in this regard as well Plaintiffs respectfully direct the Court to Slate's modified EXCEL Paybooks on damages both in the native EXCEL format and PDF formats, submitted with this memorandum.  (Exhibits 1-2 attached hereto as PDF; Aff Slate at Exh. A for EXCEL format.)

**D.      Conclusions From Slate's Modified EXCEL Paybooks**

10.      In her affidavit, Slate testifies to the following conclusion:  "The bottom line of the foregoing calculations is that for the period dating back *three years* from the time the lawsuit was filed to November 2007, Patrol Officer Plaintiffs as a group were underpaid $308,234.03 for straight time on overtime, and $64,731.34 for overtime premiums, for total backpay damages of $372,965.36.  Pursuant to the Court's liquidated damages ruling, this amount is doubled for total damages of $745,930.72.  This encompasses applying a cumulative offset regardless of when such offset was incurred for premium compensation."  (Aff Slate at ¶26 and at Exh. A attached thereto; Exh. 1 and 3 attached to this memorandum)

11.      In her affidavit, Slate testifies to the following further conclusion:  "The bottom line of the foregoing calculations for the period dating back *two years* from the time the lawsuit was filed to November 2007, Patrol Officer Plaintiffs as a group were underpaid $269,169.08 for straight time on overtime, and $64,336.31 for overtime premiums, for total backpay damages of $333,505.39.  Pursuant to the Court's liquidated damages ruling, this amount is doubled for total

damages of $667,010.79.  Again, this encompasses applying a cumulative offset regardless of when such offset was incurred for premium compensation." (Aff Slate at ¶27 and at Exh. A attached thereto; Exh. 2 and 4 attached to this memorandum)

12.    With regard to the specific dollar amount owing to each Patrol Officer Plaintiff, Slate testifies in her affidavit that, based upon her application of the methodology used by the Department of Labor during her thirty-four year career and as modified by the court's ruling in this case, (Aff Slate at ¶4 and ¶28), the Patrol Officers Plaintiffs are owed backpay for underpayment of FLSA overtime wages for a three year and two year statute of limitations as follows:

### Three Years Statute Of Limitations Period

| NAME | ST for OT due | Premium for OT | Total Damages | Doubled Liquidated Damages |
|---|---|---|---|---|
| Arena, Edward | 14,999.64 | 0.00 | 14,999.64 | 29,999.28 |
| Blanchard, Elizabeth M | 3,801.57 | 0.00 | 3,801.57 | 7,603.14 |
| Bosselman, Brian A | 8,197.92 | 189.58 | 8,387.49 | 16,774.99 |
| Brogan, Daniel R | 21,065.75 | 0.00 | 21,065.75 | 42,131.50 |
| Conaway, Brett | 4,546.20 | 3,209.38 | 7,755.58 | 15,511.16 |
| Coughlin, Amy | 1,090.49 | 0.00 | 1,090.49 | 2,180.98 |
| Delehanty, Kevin J | 18,906.00 | 0.00 | 18,906.00 | 37,812.00 |
| Doherty, Jr, John W | 10,523.90 | 0.00 | 10,523.90 | 21,047.80 |
| Fitzgerald, K | 14,371.07 | 2,445.88 | 16,816.95 | 33,633.91 |
| Fitzpatrick, L | 1,024.93 | 387.13 | 1,412.06 | 2,824.12 |
| Forde, Vincent | 14,408.25 | 3,933.81 | 18,342.07 | 36,684.14 |
| Frissore, John C | 578.84 | 415.06 | 993.90 | 1,987.80 |
| Gaieski, A | 446.50 | 0.00 | 446.50 | 892.99 |
| Geissler, William A | 245.35 | 0.00 | 245.35 | 490.70 |
| Graham, Jr, Allan W | 5,121.41 | 0.00 | 5,121.41 | 10,242.82 |
| Hall, Ryan | 573.36 | 0.00 | 573.36 | 1,146.73 |
| Halloran, Jr, Richard P | 4,938.91 | 844.21 | 5,783.11 | 11,566.23 |
| Harper, Howard L | 1,996.51 | 0.00 | 1,996.51 | 3,993.02 |
| Haswell, John P | 3,811.52 | 542.51 | 4,354.02 | 8,708.05 |
| Hayes, Joseph N | 8,290.60 | 1,351.41 | 9,642.01 | 19,284.02 |

| | | | |
|---|---|---|---|
| **Heffler, Elizabeth R** | 8,055.04 | 0.00 | 8,055.04 | 16,110.07 |
| **Hoffman, Jr, Robert A** | 13,554.00 | 3,904.19 | 17,458.19 | 34,916.39 |
| **Howard, Chad** | 4,523.37 | 6,269.05 | 10,792.42 | 21,584.84 |
| **Ingham, Brian D** | 12,655.28 | 0.00 | 12,655.28 | 25,310.56 |
| **Jennings, Leonard** | 1,653.66 | 0.00 | 1,653.66 | 3,307.31 |
| **Kelley, Keren** | 928.60 | 1,433.19 | 2,361.78 | 4,723.57 |
| **Keohane, James F** | 8,481.89 | 6,690.75 | 15,172.64 | 30,345.29 |
| **Keraissey, Edward** | 1,785.56 | 2,812.78 | 4,598.34 | 9,196.68 |
| **Lacerra, Scott** | 2,708.36 | 3,134.11 | 5,842.46 | 11,684.93 |
| **Lanoue, Greg** | 3,725.59 | 4,037.71 | 7,763.30 | 15,526.59 |
| **Linton, James M** | 1,973.22 | 0.00 | 1,973.22 | 3,946.44 |
| **McDonnell, Douglas** | 2,225.41 | 0.00 | 2,225.41 | 4,450.81 |
| **Morrill, Diane** | 3,832.62 | 0.00 | 3,832.62 | 7,665.24 |
| **Murphy, III, Robert F** | 3,497.37 | 0.00 | 3,497.37 | 6,994.74 |
| **Nguyen, Toan** | 1,240.68 | 0.00 | 1,240.68 | 2,481.37 |
| **Ordway, James M** | 5,294.12 | 0.00 | 5,294.12 | 10,588.25 |
| **Payne, Sr, Ryan** | 331.33 | 2,442.74 | 2,774.07 | 5,548.14 |
| **Peros, Arthur** | 8,434.69 | 2,755.67 | 11,190.36 | 22,380.73 |
| **Quilty, James P** | 10,692.15 | 0.00 | 10,692.15 | 21,384.29 |
| **Richardson, Ronald D** | 8,994.05 | 0.00 | 8,994.05 | 17,988.10 |
| **Rodriquez, Christian** | 5,773.45 | 4,447.97 | 10,221.42 | 20,442.84 |
| **Rossi-Cafarelli, Cara M** | 1,098.07 | 0.00 | 1,098.07 | 2,196.14 |
| **Salis, S Christopher** | 24,725.34 | 7,746.33 | 32,471.68 | 64,943.35 |
| **Smith, Scott** | 5,448.82 | 1,223.04 | 6,671.87 | 13,343.73 |
| **St Hilaire, M** | 2,863.29 | 1,381.67 | 4,244.96 | 8,489.92 |
| **Sutherland, J** | 12,338.34 | 477.40 | 12,815.74 | 25,631.49 |
| **Thurston, Joseph** | 2,487.47 | 0.00 | 2,487.47 | 4,974.95 |
| **Vieira, Richard** | 3,522.77 | 2,655.76 | 6,178.53 | 12,357.07 |
| **Vitale, Thomas W** | 3,889.50 | 0.00 | 3,889.50 | 7,779.00 |
| **White, Robert J** | 2,561.25 | 0.00 | 2,561.25 | 5,122.50 |
| **Grand Total** | 308,234.03 | 64,731.34 | 372,965.36 | 745,930.72 |

## Two Years Statute Of Limitations Period

| NAME | ST for OT due | Premium for OT | Total Damages | Doubled Liquidated Damages |
|---|---|---|---|---|
| **Arena, Edward** | 12,977.56 | 0.00 | 12,977.56 | 25,955.13 |
| **Blanchard, Elizabeth** | 3,468.73 | 0.00 | 3,468.73 | 6,937.45 |

| M | | | | |
|---|---|---|---|---|
| Bosselman, Brian A | 7,828.29 | 50.77 | 7,879.06 | 15,758.12 |
| Brogan, Daniel R | 18,869.10 | 0.00 | 18,869.10 | 37,738.19 |
| Conaway, Brett | 4,546.20 | 3,209.38 | 7,755.58 | 15,511.16 |
| Coughlin, Amy | 974.28 | 0.00 | 974.28 | 1,948.55 |
| Delehanty, Kevin J | 17,814.52 | 0.00 | 17,814.52 | 35,629.04 |
| Doherty, Jr, John W | 9,100.16 | 0.00 | 9,100.16 | 18,200.32 |
| Fitzgerald, K | 14,371.07 | 2,445.88 | 16,816.95 | 33,633.91 |
| Fitzpatrick, L | 355.94 | 588.19 | 944.13 | 1,888.27 |
| Forde, Vincent | 12,755.69 | 4,054.89 | 16,810.58 | 33,621.16 |
| Frissore, John C | 578.84 | 415.06 | 993.90 | 1,987.80 |
| Gaieski, A | 446.50 | 0.00 | 446.50 | 892.99 |
| Geissler, William A | 245.35 | 0.00 | 245.35 | 490.70 |
| Graham, Jr, Allan W | 4,022.84 | 0.00 | 4,022.84 | 8,045.68 |
| Hall, Ryan | 573.36 | 0.00 | 573.36 | 1,146.73 |
| Halloran, Jr, Richard P | 4,297.53 | 958.50 | 5,256.02 | 10,512.05 |
| Harper, Howard L | 1,516.74 | 0.00 | 1,516.74 | 3,033.48 |
| Haswell, John P | 3,470.39 | 558.34 | 4,028.73 | 8,057.46 |
| Hayes, Joseph N | 6,067.92 | 1,221.81 | 7,289.74 | 14,579.47 |
| Heffler, Elizabeth R | 4,618.02 | 0.00 | 4,618.02 | 9,236.03 |
| Hoffman, Jr, Robert A | 9,805.13 | 4,403.14 | 14,208.27 | 28,416.53 |
| Howard, Chad | 4,523.37 | 6,269.05 | 10,792.42 | 21,584.84 |
| Ingham, Brian D | 10,973.78 | 0.00 | 10,973.78 | 21,947.56 |
| Jennings, Leonard | 1,406.48 | 0.00 | 1,406.48 | 2,812.97 |
| Kelley, Keren | 928.60 | 1,433.19 | 2,361.78 | 4,723.57 |
| Keohane, James F | 6,990.71 | 6,625.16 | 13,615.87 | 27,231.74 |
| Keraissey, Edward | 1,063.47 | 2,725.00 | 3,788.47 | 7,576.94 |
| Lacerra, Scott | 2,708.36 | 3,134.11 | 5,842.46 | 11,684.93 |
| Lanoue, Greg | 3,725.59 | 4,037.71 | 7,763.30 | 15,526.59 |
| Linton, James M | 1,694.31 | 0.00 | 1,694.31 | 3,388.62 |
| McDonnell, Douglas | 827.71 | 0.00 | 827.71 | 1,655.43 |
| Morrill, Diane | 3,422.84 | 0.00 | 3,422.84 | 6,845.67 |
| Murphy, III, Robert F | 3,241.02 | 0.00 | 3,241.02 | 6,482.05 |
| Nguyen, Toan | 1,240.68 | 0.00 | 1,240.68 | 2,481.37 |
| Ordway, James M | 4,112.87 | 0.00 | 4,112.87 | 8,225.74 |
| Payne, Sr, Ryan | 331.33 | 2,442.74 | 2,774.07 | 5,548.14 |
| Peros, Arthur | 7,089.28 | 3,370.15 | 10,459.43 | 20,918.86 |
| Quilty, James P | 9,231.29 | 0.00 | 9,231.29 | 18,462.58 |
| Richardson, RonaldD | 7,923.59 | 0.00 | 7,923.59 | 15,847.18 |
| Rodriquez, Christian | 5,773.45 | 4,447.97 | 10,221.42 | 20,442.84 |
| Rossi-Cafarelli, Cara M | 623.17 | 0.00 | 623.17 | 1,246.35 |

| | | | | |
|---|---|---|---|---|
| **Salis, S Christopher** | 22,852.20 | 7,258.22 | 30,110.43 | 60,220.85 |
| **Smith, Scott** | 4,603.98 | 1,181.21 | 5,785.20 | 11,570.39 |
| **St Hilaire, M** | 1,630.69 | 1,177.33 | 2,808.02 | 5,616.04 |
| **Sutherland, J** | 12,338.34 | 477.40 | 12,815.74 | 25,631.49 |
| **Thurston, Joseph** | 2,487.47 | 0.00 | 2,487.47 | 4,974.95 |
| **Vieira, Richard** | 2,781.54 | 1,851.10 | 4,632.64 | 9,265.28 |
| **Vitale, Thomas W** | 3,702.08 | 0.00 | 3,702.08 | 7,404.17 |
| **White, Robert J** | 2,236.72 | 0.00 | 2,236.72 | 4,473.44 |
| **Grand Total** | 269,169.08 | 64,336.31 | 333,505.39 | 667,010.79 |

(Aff Slate at ¶28 and Exhibit A - Slate's spreadsheet folders, "summary" of damages EXCEL spreadsheets; see also Exhibits 3 and 4 attached hereto for PDF version.)

13.    Further adjustment of damages must be done to account for missing paid time off data from July 1, 2007 to present, and missing wage data from November 2007 to the date of eventual final judgment figures.  (Aff Slate at ¶29.)

### III.    Argument

At this stage, per the court's procedural ruling, the parties are submitting "interim" proposed forms of final judgment.  Plaintiffs begin by discussing the legal basis for the methodology applied by Plaintiffs in computing damages in Part A, and in Part B Plaintiffs address an anticipated dispute relating to what constitutes a Town detail.

### A.    General Discussion Of Methodology Applied In Slate's Modified EXCEL Paybooks.

Slate's modified EXCEL Paybooks contain columns from Column A to Column CJ (left to right of spreadsheet).  The data in Columns A through AL are drawn from the original EXCEL Paybooks.  This data is directly the source for computations of damages which appear farther to the right on the modified EXCEL Paybooks on damages from Columns AM to CJ.  Exhibits 1 and 2 (PDF version) focus on the computation area in columns AM to CJ, whereas the actual

modified EXCEL Paybooks on damages (EXCEL version) at Exh. A of Slate's Affidavit show all such columns. The focus of this discussion is on the computation area in columns AM to CJ.

1.    **Two components of overtime rate.**

One premise of the calculations is that there are two components to the FLSA overtime rate, the straight time component ("ST component") and the premium component ("P component") of the overtime rate. For example, if the employee was entitled to $30 per hour, the ST component would be $20/hr and the P component $10/hr. Both elements must be computed in determining the backpay owing to employees. The Court in this case recognized that the overtime rate is comprised of two such components in its September 25, 2007 ruling at pages 10-11: "The FLSA specifically permits an employer to offset the amount owing for FLSA overtime by the 'premium component' of any overtime paid to an officer pursuant to a contractual agreement. 29 U.S.C. §207(h)."

2.    **ST component of overtime.**

With regard to the ST component the first question is whether the Patrol Officer Plaintiffs performed more than one type of services. It is important to determine this because it has a bearing on the ST component for overtime owing for such services. In particular, the FLSA regulations contemplate that an employee may perform "two or more different types of work for which different nonovertime rates of pay (of not less than the applicable minimum wage) have been established." 29 C.F.R. §778.115.

In this case Patrol Officer Plaintiffs historically have performed two distinct types of work: (1) work directly as a police officer performing police duties as part of regular police officer positions with the Town's police department; and (2) paid details performed on behalf of the Town to police (i.e., monitor, attend, observe) activity performed on behalf of the by Town

by Town employees or by private contractors hired by the Town. (Pl. 10/06 Appx. at Exh. 29; Aff Slate at ¶25, BD.)

With regard to paid details, they are paid at a flat rate separate and distinct from the base wage and wage augments paid for regular police work. (Id.) Thus the flat detail rate *is* the ST component for overtime owing for details; they are one and the same. Consequently, there are no damages in the category of unpaid ST component for overtime for Town details because officers have been paid at the applicable, single flat ST rate for such paid detail work.

This is not the case for ST component for regular police overtime work paid to Patrol Officer Plaintiffs because there is a difference between what was paid and what should have been paid. In particular, the ST component for regular police overtime per the Court's September 25, 2007 ruling is the base wage plus all applicable wage augments divided by the number of hours such base wage and wage augments are intended to compensate, *whereas* in practice the Town did not compensate officers for overtime in this manner. (See footnote 11 of Court's September 25, 2007 ruling, directing parties to "O'Brien v. Town of Agawam, 440 F. Supp. 2d 3, 11-12 (D. Mass. 2006) for guidance on the correct method for calculating the regular rate.") Thus, each hour of regular police overtime resulted in damages in the category of the non-payment of the ST component of overtime owing for such regular police overtime work.

The underpayment of the ST component of overtime for regular police overtime is stated at Column CH of the modified EXCEL Paybooks on damages. (Aff Slate at ¶25 and Exh. A – folder for Slate's spreadsheets; Exh. 1 and 2 attached hereto.) The figure in Column CH is calculated as follows: The ST component for regular police overtime is calculated in columns AO to AR, *with column AR stating the specific ST component dollar amount owing for each hour of regular police overtime that week.* (Id.) The rate in column AR is then applied in

columns AX to BB for each hour of regular police overtime to find the total ST component that *should* have been paid for each of four categories of overtime (day, night, day funded by grant, night funded by grant, and court). (Id.) Columns AS to AW of the modified EXCEL Paybooks on damages compute the ST component *actually* paid for regular police overtime. (Id.) This is a function of taking two thirds of the actual overtime paid as set forth in columns AD to AH. (Id.)

Finally, the damages spreadsheet summarizes these computations and finds the damages by setting forth the total of all columns relating to what was *actually* paid at column CC (sum of column AS to AW) and the total amount of all columns relating to what *should have been* paid at column CD (sum of column AX to BB). (Id.) Column CH states the damages for the underpayment of ST component of overtime by taking the difference between these two columns, Column CD (should have bee paid) minus Column CC (was actually paid). (Id.)

Further discussion is required relating to Column AR to the extent it encompasses application of a specific direction in the ruling of Judge Ponsor, adopted by the court in this case at footnote 11 of the September 25th ruling. At bottom, Judge Ponsor required that the FLSA regular rate be calculated in relation to the hours that the rate was *intended to compensate* (annual salary divided by hours per year), and not necessarily the total hours worked in an individual work week with variations from week to week. Agawam, 440 F.Supp. at 11-12.

Further, in that case the Court in Agawam found that the base wages and augments were intended to compensate officers for 1950 hours per year. Therefore Judge Ponsor's ruling in Agawam required taking the annual amount of such wage augments and base wages and dividing it by 1950 hours to find the FLSA regular rate, rather than taking the base wages and wage augments paid each week (which are the same amount each week) and dividing it by the specific hours worked that week (32 hours versus 40 hours versus 24 hours etc.). Id. Judge Ponsor's

ruling has the result of creating a stable ST rate for OT throughout every pay period during the year, rather than a ST rate for OT that fluctuates each week based on variation in the hours worked.  Id.  He found such a fluctuating ST rate for OT not consistent with the parties intent because the wages and augments were paid based upon a given set of hours that would be worked every year, regardless of whether the 4-2 schedule resulted in the employee working 32 versus 40 hours in a particular 7-day work period.  Id.  Judge Ponsor reasoned as follows:

> This approach to calculating regular rate, while superficially appealing on the facts of this case, is inapplicable.  Plaintiffs were not hired 'with the understanding' that weekly salary would cover a fixed schedule of workweeks with alternating lengths.  Rather, Plaintiffs are paid based on an annual salary that both parties agree is intended to compensate 1950 hours.  *Weekly distribution of an annual salary does not convert it into a "weekly salary" for purposes of this regulation.*

(Id. at 12 – emphasis added.)

Applying that rationale here, the base wages and wage augments are intended to compensate officers for roughly 1946.56 hours per year.  This is based upon language in the collective bargaining agreement which calls for a specific annual salary to be paid (in weekly installments) based upon officers working a schedule that has varying hours of regular shifts from week to week, but ultimately averages 1946.56 hours per year.  (Pl. 10/06 Appx. at Exh. 1-2; see also Aff. Slate at ¶25, AR and at ¶¶7-9.)  It is also based upon the analysis Slate described in her affidavit at ¶25, AR, and her annual hours analysis chart attached to her affidavit as an EXCEL file on Exhibit A and attached here as a PDF file as Exhibit 5.  Thus 1946.56 is used (divided into annual salary plus wage augments) in column AR to compute the ST component rate for all regular police overtime hours.  (Aff Slate at ¶25, AR, and Exh. A – Slate's spreadsheet folder and file named Annual Hours Analysis; see also Exhibit 5 attached hereto which is PDF version of same.)

3.    **P component of overtime.**

The second facet in the calculation of damages is to compute P component of overtime owing for each hour worked over forty in a week. While the FLSA does not require the same ST component to be paid for different classifications of overtime work, it does require the same P component to be paid for all overtime. 29 C.F.R. §778.115. It is the P component of overtime that is subject to being offset by contractual premiums under 29 U.S.C. §207(h). See also, Court's Sept. 25, 2007 ruling at page 10 stating:

> As the First Circuit held in <u>Agawam</u>, "only the *premium* portion of the contractual overtime rate (that is, the amount in excess of the employee's regular rate) is deemed 'overtime' pay and may be offset against any statutory overtime liability in the same week."

Consequently, in order to compute this P component requires taking the weighted average of all ST paid in a week. 29 C.F.R. §778.115. In the damages spreadsheet this is calculated by adding the ST component applicable for regular police duties for all regular police hours (regular shift and overtime), plus the ST component applicable for details (which is the flat detail rate) for all Town detail hours, and then dividing this by the total hours worked (hours of regular police work and Town details). The resulting weighted average is the FLSA hourly regular rate, half of which is to be used for purposes of calculating the P component owing for each hour of overtime.

The underpayment of the P component of overtime for regular police overtime and Town details is stated at Column CJ. (Aff Slate at ¶25; Aff Slate at Exh. A, Slate spreadsheets folder; and Exhibits 1-2 attached hereto.) The figure in Column CJ is based upon a comparison of what was paid versus what should have been paid. (Id.) The calculations in that regard are set forth as follows:

14

P component actually paid. The damages spreadsheet at Column CE states the P

component actually paid.  (Id.)  Column CE is the sum of the P component for regular police

overtime that was actually paid in columns BF to BK.  (Id.)  The figures in BF to BJ are one

third of the actual overtime paid as stated in columns AF to AG, and BK is half of the holiday

pay in column X where an officer was eligible for Thanksgiving or Christmas holiday premium

(said premium paid in the amount of a half of a day's pay) for actually working on those

holidays.  (Id.)  The total amount of such P component is computed because premium

compensation paid *for work performed* is an offset to premium overtime liability as stated in

FLSA Section 7(h) and as found by the court here.  29 U.S.C. §207(h).  Cf.  29 C.F.R. §778.219

(see discussion in margin regarding this regulation).[3]

---

[3]  There are two forms of holiday pay.  One type of holiday pay, as referenced in the text, is
holiday premium that is paid *only if* the officer actually worked Thanksgiving or Christmas.  As
noted it is accounted for in Slate's affidavit and her damages spreadsheets as premium
compensation paid that week and included in the computations for purposes of premium offsets
under 29 U.S.C. §207(h).  However, there is a second type of holiday pay that is paid to officers
that is properly excluded from the analysis.  That is, officers are paid certain holiday pay for each
holiday *regardless of whether* the officer works the holiday (Aff Slate at ¶25 regarding columns
BE and BK, and at Exh. A Slate EXCEL spreadsheets; see also Exh. 1 and 2 attached hereto.)
Such holiday compensation appears in original paybooks and was grayed out in the computation
area because under the FLSA regulations, 29 CFR §778.219, it is not to be considered part of the
regular rate nor an offset against overtime premiums.  (Id.)  The regulation in pertinent part
reads:  "(a) Sums payable whether employee works or not. As explained in § 778.218, certain
payments made to an employee for periods during which he performs no work because of a
holiday or vacation are not required to be included in the regular rate because they are not
regarded as compensation for working. Suppose an employee who is entitled to such a paid idle
holiday or paid vacation foregoes his holiday or vacation and performs work for the employer on
the holiday or during the vacation period. If, under the terms of his employment, he is entitled to
a certain sum as holiday or vacation pay, whether he works or not, and receives pay at his
customary rate (or higher) in addition for each hour that he works on the holiday or vacation day,
the certain sum allocable to holiday or vacation pay is still to be excluded from the regular rate.
It is still not regarded as compensation for hours of work if he is otherwise compensated at his
customary rate (or at a higher rate) for his work on such days. Since it is not compensation for
work it may not be credited toward overtime compensation due under the Act." 29 CFR
§778.219.

In addition, per the court's order, the P component actually paid is totaled on a cumulative basis so that any damages owing are offset by the total premiums actually paid, regardless of when the premium was earned.  (Aff Slate at ¶25; Aff Slate at Exh. A, Slate spreadsheets folder; and Exhibits 1-2 attached hereto.)  Thus, for example, premiums that are in excess of what the FLSA requires earned in September 2001 (assuming a three year limitations period) are considered as an offset for any underpayment that occurred throughout the entire damages period up to present, even six years later in year 2007.  (Id.; see also Aff Slate at ¶4.)

P Component that should have been paid.  The damages spreadsheet also calculates the P Component that should have been in Column CD.  (Id.)  This includes half of the rate set forth in Column CA multiplied by the total overtime hours worked that week.  (Id.)  Column CA is a very important column in that it computes the weighted average of the ST component paid for *all* hours (both regular police pay and town detail pay) divided by the total hours worked (both regular police hours and town detail hours).  (Id.)  Half of that amount is the P component that should be paid for each hour of overtime worked.  (Id.)  Because the FLSA regular rate stated in Column CA includes all appropriate wage augments as per the court's ruling, it is higher than the actual P component paid because the Town has not been including all wage augments in calculating premium compensation owing.

Damages:  Difference between P component paid versus what should have been paid.

Column CJ takes the difference between what was actually paid for P component overtime (column CE) and what should have been paid for P component overtime (column CD). (Id.)  This results in a figure for total amount paid for P component, or, if a negative integer, then an offset for premiums, said offset being carried as required by the court cumulatively throughout the entire damages period rather than on a week by week basis.  (Id.)

B.    **Town Police Details Are Work On Behalf Of The Town
Regardless Of Whether The Detail Officer Is Detailing
Work Performed On Behalf Of The Town By
<u>Employees Or Private Contractors.</u>**

There may be a dispute between the parties as to whether *all* details performed on behalf of a Town department are *Town* details within the meaning of the court's ruling.  In its computations the Plaintiffs included all Town details regardless of whether the Town assigned its own employee or an outside contractor to perform the work for which a detail officer is paid to attend.  (Aff Slate at ¶¶11-12; Pl. 10/06 Appx. at Exh. 29 at ¶¶5-9.)

The Court should reject the Town's argument in this regard.  Indeed, it is another spin on an argument rejected by the Court in its September 25, 2007 ruling.  In rejecting the Town's previous version of this argument, the Court held:

> The issue is not whether the police department is managed and budgeted separately from the Town's other departments, but whether the Town itself is an entity separate from its own police department.

(Sept. 25 ruling at pages 5-6.)  Here, it is likewise true that the issue is not whether the patrol officers on paid details are policing work performed by the Town's own employees versus sub-contractors hired by the Town through the DPW, but whether the Town itself is responsible for the work that is being policed by the Patrol Officer Plaintiff on a paid detail.  The identity of the agent that performs the work on behalf of the Town is inconsequential; what matters is that the work is performed by and at the behest of the Town and is being detailed by a paid detail officer who is a Town employee.

Based upon the foregoing analysis, the Court should find that Slate's calculations properly include all situations where Patrol Officer Plaintiffs worked paid details on behalf of the Town, regardless of whether the Town executed that project directly by its employees or by a

sub-contractor hired by the Town.  (Aff Slate at ¶¶11-12; Pl. 10/06 Appx. at Exh. 29 at ¶¶5-9.)

As established by the affidavit of Sgt. Fitzpatrick, his method of isolating Town details based

upon generating a no-administrative-fee listing is accurate since Town details, unlike other

vendors, are not charged an administrative fee (with limited exceptions accounted for by Sgt.

Fitzpatrick in his affidavit and Slate in her computations).  (Pl. 10/06 Appx. at Exh. 29 at ¶8 and

Exh. B attached thereto; Aff Slate at ¶12 and Exhibit D attached thereto.)  The Town's argument

to the contrary should be rejected.

<h3 style="text-align:center;">IV.    Conclusion</h3>

Based upon the foregoing Plaintiffs respectfully submit the foregoing in support of their

proposed interim form of final judgment per the Court's order, pending and subject to the

resolution of the willfulness issue.  Accordingly, Plaintiffs further respectfully request that the

Court adopt the Interim Form Of Final Judgment in the Appendix of this memorandum pending

resolution of the willfulness issue.

Respectfully submitted,
For Plaintiffs,

By Plaintiffs' Counsel:


*/s/ Jack J. Canzoneri*
Jack J. Canzoneri, BBO #564126
McDonald, Lamond & Canzoneri
Cordaville Office Center
153 Cordaville Road, Suite 320
Southborough, Massachusetts 01772
(508) 485-6600

Dated:  February 5, 2008

## LOCAL RULE 7.1 CERTIFICATION

The undersigned certifies that counsel have conferred in good faith at a meeting at Defendants' counsel's office on the matter of the proposed form of interim judgment and based upon that conferral have decided that they would file separate proposed forms of judgment in accordance with the court's order, for review by the court and opposing counsel, pending resolution of the willfulness issue.

*s/Jack J. Canzoneri*
Jack J. Canzoneri

**Appendix A**

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

Robert F. Murphy, III, Lead Plaintiff for
Patrol Officer Plaintiffs, et al. and,

Brian C. Grassey, Lead Plaintiff for
Superior Officer Plaintiffs, et al.,

     Plaintiffs,

     v.                                                       USDC Case No.:  04-11996 RGS

Town of Natick, et al.

     Defendants

---

**PLAINTIFFS' PROPOSED INTERIM RULING ON JUDGMENT
PENDING RESOLUTION OF THE WILLFULNESS ISSUE**

It is Ordered, Adjudged and Decreed by the Court that final judgment in this case shall

issue following resolution of the willfulness issue, and that such final judgment shall conform to

the following:

1.     The Order of the Court dated September 25, 2007 shall be incorporated in all

respects in the final judgment.

2.     If a two year statute of limitations is determined, then damages shall be for a

period dating back *two years* from the time the lawsuit was filed, and Patrol Officer Plaintiffs as

a group were underpaid $269,169.08 for straight time on overtime, and $64,336.31 for overtime

premiums, for total backpay damages of $333,505.39, through the pay period ending November

6, 2007.  Pursuant to the Court's liquidated damages ruling, this amount shall be doubled for total

damages of $667,010.79.  As per the Court's order dated September 25, 2007, this encompasses

applying a cumulative offset regardless of when such offset was incurred for premium

compensation.  Accordingly, if a two year statute of limitations is concluded, then the final

judgment shall reflect that the following amounts shall be owed to each Patrol Officer Plaintiff

through the pay period ending November 6, 2007:

<u>**Two Years Statute Of Limitations Period**</u>

| NAME | ST for OT due | Premium for OT | Total Damages | Doubled Liquidated Damages |
|---|---|---|---|---|
| Arena, Edward | 12,977.56 | 0.00 | 12,977.56 | 25,955.13 |
| Blanchard, Elizabeth M | 3,468.73 | 0.00 | 3,468.73 | 6,937.45 |
| Bosselman, Brian A | 7,828.29 | 50.77 | 7,879.06 | 15,758.12 |
| Brogan, Daniel R | 18,869.10 | 0.00 | 18,869.10 | 37,738.19 |
| Conaway, Brett | 4,546.20 | 3,209.38 | 7,755.58 | 15,511.16 |
| Coughlin, Amy | 974.28 | 0.00 | 974.28 | 1,948.55 |
| Delehanty, Kevin J | 17,814.52 | 0.00 | 17,814.52 | 35,629.04 |
| Doherty, Jr, John W | 9,100.16 | 0.00 | 9,100.16 | 18,200.32 |
| Fitzgerald, K | 14,371.07 | 2,445.88 | 16,816.95 | 33,633.91 |
| Fitzpatrick, L | 355.94 | 588.19 | 944.13 | 1,888.27 |
| Forde, Vincent | 12,755.69 | 4,054.89 | 16,810.58 | 33,621.16 |
| Frissore, John C | 578.84 | 415.06 | 993.90 | 1,987.80 |
| Gaieski, A | 446.50 | 0.00 | 446.50 | 892.99 |
| Geissler, William A | 245.35 | 0.00 | 245.35 | 490.70 |
| Graham, Jr, Allan W | 4,022.84 | 0.00 | 4,022.84 | 8,045.68 |
| Hall, Ryan | 573.36 | 0.00 | 573.36 | 1,146.73 |
| Halloran, Jr, Richard P | 4,297.53 | 958.50 | 5,256.02 | 10,512.05 |
| Harper, Howard L | 1,516.74 | 0.00 | 1,516.74 | 3,033.48 |
| Haswell, John P | 3,470.39 | 558.34 | 4,028.73 | 8,057.46 |
| Hayes, Joseph N | 6,067.92 | 1,221.81 | 7,289.74 | 14,579.47 |
| Heffler, Elizabeth R | 4,618.02 | 0.00 | 4,618.02 | 9,236.03 |
| Hoffman, Jr, Robert A | 9,805.13 | 4,403.14 | 14,208.27 | 28,416.53 |
| Howard, Chad | 4,523.37 | 6,269.05 | 10,792.42 | 21,584.84 |
| Ingham, Brian D | 10,973.78 | 0.00 | 10,973.78 | 21,947.56 |
| Jennings, Leonard | 1,406.48 | 0.00 | 1,406.48 | 2,812.97 |
| Kelley, Keren | 928.60 | 1,433.19 | 2,361.78 | 4,723.57 |
| Keohane, James F | 6,990.71 | 6,625.16 | 13,615.87 | 27,231.74 |
| Keraissey, Edward | 1,063.47 | 2,725.00 | 3,788.47 | 7,576.94 |
| Lacerra, Scott | 2,708.36 | 3,134.11 | 5,842.46 | 11,684.93 |

| | | | |
|---|---|---|---|
| Lanoue, Greg | 3,725.59 | 4,037.71 | 7,763.30 | 15,526.59 |
| Linton, James M | 1,694.31 | 0.00 | 1,694.31 | 3,388.62 |
| McDonnell, Douglas | 827.71 | 0.00 | 827.71 | 1,655.43 |
| Morrill, Diane | 3,422.84 | 0.00 | 3,422.84 | 6,845.67 |
| Murphy, III, Robert F | 3,241.02 | 0.00 | 3,241.02 | 6,482.05 |
| Nguyen, Toan | 1,240.68 | 0.00 | 1,240.68 | 2,481.37 |
| Ordway, James M | 4,112.87 | 0.00 | 4,112.87 | 8,225.74 |
| Payne, Sr, Ryan | 331.33 | 2,442.74 | 2,774.07 | 5,548.14 |
| Peros, Arthur | 7,089.28 | 3,370.15 | 10,459.43 | 20,918.86 |
| Quilty, James P | 9,231.29 | 0.00 | 9,231.29 | 18,462.58 |
| Richardson, Ronald D | 7,923.59 | 0.00 | 7,923.59 | 15,847.18 |
| Rodriquez, Christian | 5,773.45 | 4,447.97 | 10,221.42 | 20,442.84 |
| Rossi-Cafarelli, Cara M | 623.17 | 0.00 | 623.17 | 1,246.35 |
| Salis, S Christopher | 22,852.20 | 7,258.22 | 30,110.43 | 60,220.85 |
| Smith, Scott | 4,603.98 | 1,181.21 | 5,785.20 | 11,570.39 |
| St Hilaire, M | 1,630.69 | 1,177.33 | 2,808.02 | 5,616.04 |
| Sutherland, J | 12,338.34 | 477.40 | 12,815.74 | 25,631.49 |
| Thurston, Joseph | 2,487.47 | 0.00 | 2,487.47 | 4,974.95 |
| Vieira, Richard | 2,781.54 | 1,851.10 | 4,632.64 | 9,265.28 |
| Vitale, Thomas W | 3,702.08 | 0.00 | 3,702.08 | 7,404.17 |
| White, Robert J | 2,236.72 | 0.00 | 2,236.72 | 4,473.44 |
| Grand Total | 269,169.08 | 64,336.31 | 333,505.39 | 667,010.79 |

3.      If a three year statute of limitation is established, then damages will be calculated dating back *three years* from the time the lawsuit was filed.  In that case Patrol Officer Plaintiffs as a group were underpaid $308,234.03 for straight time on overtime, and $64,731.34 for overtime premiums, for total backpay damages of $372,965.36.  Pursuant to the Court's liquidated damages ruling, this amount is doubled for total damages of $745,930.72.  As per the Court's order dated September 25, 2007, this encompasses applying a cumulative offset regardless of when such offset was incurred for premium compensation.  Accordingly, if a three year statute of limitations is concluded, then final judgment shall reflect that the following amounts shall be owed to each Patrol Officer Plaintiff through the pay period ending November 6, 2007:

**Three Years Statute Of Limitations Period**

| NAME | ST for OT due | Premium for OT[4] | Total Damages | Doubled Liquidated Damages |
|---|---|---|---|---|
| Arena, Edward | 14,999.64 | 0.00 | 14,999.64 | 29,999.28 |
| Blanchard, Elizabeth M | 3,801.57 | 0.00 | 3,801.57 | 7,603.14 |
| Bosselman, Brian A | 8,197.92 | 189.58 | 8,387.49 | 16,774.99 |
| Brogan, Daniel R | 21,065.75 | 0.00 | 21,065.75 | 42,131.50 |
| Conaway, Brett | 4,546.20 | 3,209.38 | 7,755.58 | 15,511.16 |
| Coughlin, Amy | 1,090.49 | 0.00 | 1,090.49 | 2,180.98 |
| Delehanty, Kevin J | 18,906.00 | 0.00 | 18,906.00 | 37,812.00 |
| Doherty, Jr, John W | 10,523.90 | 0.00 | 10,523.90 | 21,047.80 |
| Fitzgerald, K | 14,371.07 | 2,445.88 | 16,816.95 | 33,633.91 |
| Fitzpatrick, L | 1,024.93 | 387.13 | 1,412.06 | 2,824.12 |
| Forde, Vincent | 14,408.25 | 3,933.81 | 18,342.07 | 36,684.14 |
| Frissore, John C | 578.84 | 415.06 | 993.90 | 1,987.80 |
| Gaieski, A | 446.50 | 0.00 | 446.50 | 892.99 |
| Geissler, William A | 245.35 | 0.00 | 245.35 | 490.70 |
| Graham, Jr, Allan W | 5,121.41 | 0.00 | 5,121.41 | 10,242.82 |
| Hall, Ryan | 573.36 | 0.00 | 573.36 | 1,146.73 |
| Halloran, Jr, Richard P | 4,938.91 | 844.21 | 5,783.11 | 11,566.23 |
| Harper, Howard L | 1,996.51 | 0.00 | 1,996.51 | 3,993.02 |
| Haswell, John P | 3,811.52 | 542.51 | 4,354.02 | 8,708.05 |
| Hayes, Joseph N | 8,290.60 | 1,351.41 | 9,642.01 | 19,284.02 |
| Heffler, Elizabeth R | 8,055.04 | 0.00 | 8,055.04 | 16,110.07 |
| Hoffman, Jr, Robert A | 13,554.00 | 3,904.19 | 17,458.19 | 34,916.39 |
| Howard, Chad | 4,523.37 | 6,269.05 | 10,792.42 | 21,584.84 |
| Ingham, Brian D | 12,655.28 | 0.00 | 12,655.28 | 25,310.56 |
| Jennings, Leonard | 1,653.66 | 0.00 | 1,653.66 | 3,307.31 |
| Kelley, Keren | 928.60 | 1,433.19 | 2,361.78 | 4,723.57 |
| Keohane, James F | 8,481.89 | 6,690.75 | 15,172.64 | 30,345.29 |
| Keraissey, Edward | 1,785.56 | 2,812.78 | 4,598.34 | 9,196.68 |
| Lacerra, Scott | 2,708.36 | 3,134.11 | 5,842.46 | 11,684.93 |
| Lanoue, Greg | 3,725.59 | 4,037.71 | 7,763.30 | 15,526.59 |
| Linton, James M | 1,973.22 | 0.00 | 1,973.22 | 3,946.44 |
| McDonnell, Douglas | 2,225.41 | 0.00 | 2,225.41 | 4,450.81 |
| Morrill, Diane | 3,832.62 | 0.00 | 3,832.62 | 7,665.24 |
| Murphy, III, Robert | 3,497.37 | 0.00 | 3,497.37 | 6,994.74 |

| F | | | | |
|---|---|---|---|---|
| Nguyen, Toan | 1,240.68 | 0.00 | 1,240.68 | 2,481.37 |
| Ordway, James M | 5,294.12 | 0.00 | 5,294.12 | 10,588.25 |
| Payne, Sr, Ryan | 331.33 | 2,442.74 | 2,774.07 | 5,548.14 |
| Peros, Arthur | 8,434.69 | 2,755.67 | 11,190.36 | 22,380.73 |
| Quilty, James P | 10,692.15 | 0.00 | 10,692.15 | 21,384.29 |
| Richardson, Ronald D | 8,994.05 | 0.00 | 8,994.05 | 17,988.10 |
| Rodriquez, Christian | 5,773.45 | 4,447.97 | 10,221.42 | 20,442.84 |
| Rossi-Cafarelli, Cara M | 1,098.07 | 0.00 | 1,098.07 | 2,196.14 |
| Salis, S Christopher | 24,725.34 | 7,746.33 | 32,471.68 | 64,943.35 |
| Smith, Scott | 5,448.82 | 1,223.04 | 6,671.87 | 13,343.73 |
| St Hilaire, M | 2,863.29 | 1,381.67 | 4,244.96 | 8,489.92 |
| Sutherland, J | 12,338.34 | 477.40 | 12,815.74 | 25,631.49 |
| Thurston, Joseph | 2,487.47 | 0.00 | 2,487.47 | 4,974.95 |
| Vieira, Richard | 3,522.77 | 2,655.76 | 6,178.53 | 12,357.07 |
| Vitale, Thomas W | 3,889.50 | 0.00 | 3,889.50 | 7,779.00 |
| White, Robert J | 2,561.25 | 0.00 | 2,561.25 | 5,122.50 |
| Grand Total | 308,234.03 | 64,731.34 | 372,965.36 | 745,930.72 |

4.      The Town of Natick will pay further backpay and liquidated damages from the pay period ending November 6, 2007 as set forth in the above tables of damages, until such date that the Town begins paying officers overtime in accordance with the Court's memorandum and order dated September 25, 2007 and this judgment.

5.      The claims of the Superior Officer Plaintiffs in the final judgment shall be dismissed for the reasons set forth in the September 25, 2007 memorandum and order of the Court.

6.      After resolution of the willfulness issue, Plaintiffs' counsel shall submit a petition for attorneys fees and costs incurred in this matter at a date to be determined by the court.

7.      None of the foregoing constitutes a final judgment from which appeal may be taken.  Rather, this constitutes an interim ruling on what the final judgment shall be, when it is issued and subject to resolution of the willfulness issue.

It is so ORDERED, ADJUDGED and DEGREED,


This _____ day of _____, 2008


_____

Honorable Richard G. Stearns