THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Robert F. Murphy, III, Lead Plaintiff for
Patrol Officer Plaintiffs, et al. and,

Brian C. Grassey, Lead Plaintiff for
Superior Officer Plaintiffs, et al.,

      Plaintiffs,

      v.

Town of Natick, et al.

      Defendants

USDC Case No.:  04-11996 RGS

**AFFIDAVIT OF PATRICIA SLATE**

I, Patricia Slate, hereby affirm the following based upon personal

knowledge and belief under oath as set forth at the conclusion of this affidavit:

**A.**    **Background**

**1.**    I reside in Newton, Massachusetts at 12 Regina Road.

**2.**    My formal education includes a Bachelor of Arts in Mathematics,

cum  laude from Vanderbilt University in 1971, and graduate courses in

business, statistics, regression analysis from Boston College in 1975-77.

**3.**    I was employed by the National Labor Relations Board in

Cleveland, Ohio as a field examiner from 1971 to 1973.  Then I transferred to a

position in Boston, Massachusetts with the U. S. Department of Labor (DOL)

Wage and Hour Division (WHD) for thirty-four (34) years from 1973 until I

retired in 2007.  I began my employment as a field investigator with the

1

DOL/WHD, then as Assistant District Director and my final position with the DOL/WHD was as Regional Enforcement Coordinator for the Northeast (Philadelphia) Region.  My experience during my thirty-four years with the DOL/WHD entailed the following:

(a)   As an investigator, recovered more than $1 million per year in back wages, primarily FLSA;

(b)   Testified in court resulting in enforcement of FLSA payment requirements;

(c)   Drafted FLSA opinion letters and the revised (yet unpublished) Field Operations Handbook Chapter on the 541 white collar exemption;

(d)   Promoted, developed and provided compliance assistance outreach to attorney, employer and worker groups through presentations, panel discussions and workshops;

(e)   Initiated and supervised employer's self audits;

(f)   Collaborated with Regional Solicitor in assessing and developing potential litigation cases, including analytical reports, evaluation of evidence and testimony, and the reconstruction of missing and fraudulent records

(g)   Coordinated all government contract and H-1B nonimmigrant employment enforcement activities and compliance assistance through out New England

(h)   Developed regional and district office strategic plans to further the Agency's enforcement goals;

(i)   Developed and led training to managers and investigators nationwide:  basic FLSA; advanced FLSA including 541, litigation investigations, off-the-clock hours of work; Family and Medical Leave; government contracts; H-1B nonimmigrant employment.

2

4.    Based upon my thirty-four years of employment with the federal government in the DOL/WHD in Boston, Massachusetts I have extensive experience in examining payroll, determining whether employees have been compensated with straight time and overtime in compliance with the FLSA, and applying the computation methodology of the DOL/WHD within the First Circuit to determine specific damages owing (if any) to employees. The calculations that I performed here are in accordance with that same methodology, except as modified by the court order.  In particular I followed the specifications of the Court in this case in its ruling dated September 25, 2007 and, as directed by the Court in footnote 11 of the September 25th ruling, I followed Judge Ponsor's opinion in O'Brien v. Town of Agawam, 440 F. Supp. 2d 3, 11-12 (D. Mass. 2006).  Among other things this included direction from the aforementioned ruling in Agawam to the method for calculating the regular rate.  Also, I applied a cumulative offset for premium overtime as ruled by the court in this case (and Judge Ponsor in Agawam), even though the DOL/WHD during my thirty-four year tenure has always applied that offset *only* on a weekly basis.

### B.    Sources For Data Used In Damages Calculation

5.    Attached hereto as **Exhibit A** is a CD ROM containing three folders containing EXCEL files.  One such folder is labeled "Pat Slate EXCEL Spreadsheets."  This folder contains five EXCEL spreadsheets on damages that I prepared to calculate back pay owing in this case, explained in greater detail below.  The second folder is entitled "Original Paybooks *Initial* Production FY02

to May 24 2005" which I understand are original EXCEL spreadsheets *initially* produced by the Town during discovery and it contains EXCEL files referred to by the parties as "Paybooks".  Each EXCEL Paybook is prepared by the Police Department's Administrative Officer Leo Fitzpatrick, and each contains Sgt. Fitzpatrick's week by week inputting of data and calculation of payroll for police department employees.[1]  The third folder is entitled "Original Paybooks *Supplemental* Production May 25 2005 to Nov 6 2007" and it contains further original EXCEL Paybooks of Sgt. Fitzpatrick that I understand were produced more recently by the Town as a *supplement* in discovery, with updated EXCEL Paybook data from May 25, 2005 to November 6, 2007.  The following three tables more specifically explain the contents of each of the three folders on **Exhibit A** CD ROM, attached hereto:

---

[1] The documents in this folder were previously provided to the court with Plaintiffs' October 2006 motion for summary judgment in hard copy Appendix of Exhibits that Plaintiffs filed in support of that motion Exhibit A of Affidavit-Exhibit 29 of that Appendix.  They are included in this CD ROM for the sake of convenience for the court.

**Exh. A FOLDER:**
**"Pat Slate EXCEL Spreadsheets"**

| Name of EXCEL File | Contents |
|---|---|
| "Pl Three Year Interim Damages Calc" | Interim calculation of damages using a three year statute of limitations (i.e., starting three years prior to date that lawsuit was filed) |
| "Pl Two Year Interim Damages Calc" | Interim calculation of damages using a two year statute of limitations (i.e., starting two years prior to date that lawsuit was filed) |
| "Pl Three Year Interim Summary of Damages" | Summary stating total damages per patrol officer plaintiff using three year statute of limitations |
| "Pl Two Year Interim Summary of Damages" | Summary stating total damages per patrol officer plaintiff using three year statute of limitations |
| "Annual Hours Analysis" | Calculation applying the method required by Judge Ponsor in his ruling and adopted by court here for regular rate (for regular shifts) listed in column AR of both interim calculation of damages, showing that the annual salary is compensation for a patrol officer working 1946.56 hours per year |

**Exh. A FOLDER:**
**"Original Paybooks Initial Production FY02 to May 24 2005"**

| Name of EXCEL File | Contents |
|---|---|
| Paybook FY02 | Sgt. Fitzpatrick's week by week entry and calculation of payroll FY02 |
| Paybook FY03 | Same as above for FY03 |
| Paybook FY04 | Same as above for FY04 |
| Paybook FY05 | Same as above for FY05 to May 25, 2005 |

**Exh. A FOLDER:**
**"Original Paybooks Supplemental Production May 25 2005 to Nov 6 2007"**

| Name of EXCEL File | Contents |
|---|---|
| Paybook FY05 May 25 2005 to end of FY | Sgt. Fitzpatrick's week by week entry and calculation of payroll FY05, from May 25, 2005 to end of FY05 |
| Paybook FY06 | Sgt. Fitzpatrick's week by week entry and calculation of payroll FY06 |
| Paybook FY07 | Same as above for FY07 |
| Paybook FY08 to 11/6/07 | Same as above for FY08, to 11/6/07 |

Each of the aforementioned EXCEL documents is explained in greater detail below.

**6.**     In preparing my calculations I used original data from the original EXCEL Paybooks of Sgt. Leo Fitzpatrick, referenced above.

**7.**     In calculating damages it is necessary to determine the regular shifts that each officer was scheduled to work for each week of the damages period.  Because of the interplay of a 7-day calendar week and the 6-day work cycle of officers on a 4-2 schedule, officers on a 4-2 schedule work a pattern of *five regularly scheduled shifts for four consecutive weeks and four regularly scheduled shift for two consecutive weeks.*  This pattern repeats every six weeks.

**8.**     Plaintiffs' counsel provided me with a document referred to by the parties as a "color calendar" and I understand that this document was provided during discovery by the Town for the entire damages period.  The color calendar shows that there are three different 4-2 schedules, each starting the 4-2 schedule on a different day of the week with each of the three groups denoted with a different color on the calendar.  By way of example I am including the color calendar for 2007, which is attached hereto as **<u>Exhibit B</u>**.  The remaining color calendars may be produced if necessary for verification should that be necessary.  I further understand that a few plaintiffs work a so-called administrative schedule of 5 days on 2 days off rather than a 4-2 schedule as discussed above, and officers on a 5-2 administrative schedule are not required to work on holidays.

6

**9.**     The above-mentioned assignments to particular color group on 4-2 schedule or assignment to administrative 5-2 schedule are set forth on a schedule assignment document provided by the Town, attached hereto as **Exhibit C**.  The schedule assignment document, **Exhibit C**, states the name of each plaintiff, as well as 4-2 schedule pattern or 5-2 administrative schedule that each plaintiff was assigned from 2001 to present.  I used this data in calculating damages where I needed to determine how many days per week an officer was scheduled for each week of the damages period.

**10.**     I understand from my review of Sgt. Fitzpatrick's affidavit-- submitted by plaintiffs as Exhibit 29 of Plaintiffs' Appendix of Exhibits submitted to the court as part of its October 2006 motion for summary judgment--that the Town's payroll department generates weekly payroll from Sgt. Fitzpatrick's EXCEL Paybooks.  Plaintiffs' Appendix in that regard shall hereinafter be cited as "Pl. 10/06 Appx."  (Pl. 10/06 Appx. at Exh. 29 at ¶4.) With regard to this, Plaintiffs' counsel provided me with hard copies of such Town payroll documents that the Town produced during discovery.  Among other things these Town documents contained a special section indicating how many hours of paid time off and time off without pay each patrol officer plaintiff took each week for categories such as e.g. sick time, vacation time, or personal day.  This information is relevant to determining whether the officer worked *as scheduled* pursuant to the 4-2 (or 5-2) pattern assigned to such officer, or whether the officer worked fewer shifts due to taking a paid or unpaid day off as shown on the hard copy payroll documents of the Town.  Given the volume

of these Town documents they are not attached to this affidavit, but they may

be produced as necessary should verification be required.  I used the paid and

unpaid time off listed on these documents as well in calculating the actual

hours worked every week in computing interim proposed damages.

      **11.**    I understand from my review of the aforementioned affidavit of Sgt.

Fitzpatrick that he also maintains an additional business record of data

regarding all paid details worked by police officers of the Natick Police

Department including information as to the name of the officer who worked the

detail, date, hours, and billing code for the Town department or vendor on

whose half the police detail was procured.  (See Pl. 10/06 Appx. at Exh. 29 at

¶¶5-9, Sgt. Fitzpatrick Aff.)  This information is kept in an electronic database

on a software program called "ACCESS".  (Id.)  From this database Sgt.

Fitzpatrick is able to run a query and isolate on certain aspects of this data

relating to paid details.  (Id.)  I used this data as well in preparing my backpay

calculations.

      **12.**    In defining "Town details", I have excluded vendors from outside

the Town that appear on the no-administrative fee query listing generated by

Sgt. Fitzpatrick for the reasons explained by Sgt. Fitzpatrick in his affidavit at

¶8.  (See Pl. 10/06 Appx. at Exh. 29 at ¶8; and Exhibit D attached hereto).[2]

The remaining details listed on the ACCESS query have been included in my

---

[2]  In particular, as explained in greater detail in Sgt. Fitzpatrick's affidavit
referenced above, he identified a few outside (non-town) vendors that
nevertheless appeared on the no-administrative-fee report due to special
arrangement between the Town and a select few outside vendors by which they
pay no administrative fee.

modified EXCEL Paybook on damages as Town details.[3]  This includes the

details reported at Exhibit B of Exhibit 29 (Sgt. Fitzpatrick's' affidavit) of

Plaintiffs' October 2006 Appendix, as well as a supplemental report of Town

Details produced by the Town more recently which has updated data on town

details to the fall 2007, attached hereto as **Exhibit D**.

### C.    General Information On Adjustments To Original EXCEL Paybooks In Preparation Of Modified EXCEL Paybooks On Damages.

**13.**    In preparing her damages calculations Ms. Slate[4] used the original

data entries of Sgt. Fitzpatrick from his weekly EXCEL Paybooks, (Pl. 10/06

Appx. at Exh. 29 at Exhibit A; and **Exhibit A** submitted with this motion), but

relocated some cells from their original location to different locations.  *The*

*above process was used, rather than re-inputting original data, so that the*

*original entries would be preserved on the EXCEL worksheet and merely*

*relocated for more effective use in computing damages and, more importantly, to*

*limit the possibility for human error if original entries were re-inputted.*  The

manner of such relocation of data is explained below.

**14.**    To understand how Ms. Slate relocated the original data from Sgt.

Fitzpatrick's original EXCEL Paybooks, it is important initially to understand

how data was organized on the original EXCEL Paybooks.  The original EXCEL

---

[3] The supplemental list was necessary to bring the data up to as current as possible since the list submitted on October 27, 2006 (obviously) did not encompass Town details worked after that date.

[4] For the sake of convenience I shall refer to myself in the third person as "Ms. Slate" for the balance of this affidavit.

Paybooks of Sgt. Fitzpatrick were divided into four quadrants and each worksheet or "tab" (in the jargon of the EXCEL software program) generally represented one workweek.  (Pl. 10/06 Appx. at Exh. 29 at Exhibit A attached thereto; and **Exhibit A** submitted with this motion.)  The quadrants of the original paybook worksheets are identified here as "NW" (North West), "NE" (North East), "SW" (South West), and "SE" (South East).  (Id.)  They appeared as follows on the original EXCEL Paybooks for each week.

| Colum. A to L | Colum. M to X |
|---|---|
| NW | NE |
| SW | SE |

(Id.)[5]

**15.**    The following is a general description of data in each quadrant. NW quadrant data reported additional hours of work for which the employees were to be paid additional compensation.  (Id.)  Typically this NW quadrant filled the columns from A to L.  (Id.)   In the original EXCEL Paybooks there was no indication of the regularly scheduled hours an officer worked, or whether an officer took a paid day off. (Id.)  There was no need to track actual regular shift hours in the original EXCEL Paybooks because overtime was paid for all hours over the standard workday and because patrol officer received the same salary

---

[5]  There was some variation in the original paybooks comparing FY05 onward to the paybooks for the prior fiscal years.  In particular, from FY05 onward there was an extra column added to the NW quadrant and SE quadrant labeled "court" for court overtime.  This column was not used in the pre-FY05 EXCEL Paybooks.

to compensate them for their regular shifts regardless of how many regular shift hours they worked that particular week. (Id.) Turning attention to the NE quadrant (generally columns M to X) of the original EXCEL Paybooks, this quadrant set forth rates of pay. (Id.)

16.    The SW quadrant, starting at approximately row 69, contained a variety of nonuseful information, and the SE quadrant calculated wages for the hours worked in the NW quadrant and rates of compensation in the NE quadrant. (Id.)

17.    Each of the three useful quadrants (NW, NE and SE) listed each employee in alphabetical order. (Id.) Employees other than Patrol Officer Plaintiffs were removed from the worksheet in preparing this submission. (Id.)

18.    As mentioned above, the original EXCEL Paybooks did not track the exact number of regular shift hours each patrol officer worked each week, but instead tracked only overtime and detail hours. Thus, in order to determine the number of regular shift hours a patrol officer worked each week, it was first determined whether the employee was scheduled base hours of thirty two or forty hours that week. This was determined by reference to the color calendars and the schedule assignment documents discussed above that indicate which employees were assigned to which group. **(Exh. B; Exh. C.)** For the sake of clarity and consistency, the column in Ms. Slate's modified EXCEL Paybook on damages sets forth the base hours for each plaintiff for each week using a color shading for those cells that corresponds to the color for the group to which the employee was assigned. Then there is an

accounting for overtime hours worked for the police department, and "town details" which the court ruling of September 25th indicated should be considered for purposes of the FLSA overtime computations.  Ms. Slate then subtracted from these hours, the total hours that the employee was off duty on paid time off, as listed on the hard copy payroll reports of the employer.

**19.**    In preparing her modified EXCEL Paybook on damages, Ms. Slate moved the SE quadrant from the original Paybooks up so that it would adjoin the NE quadrant to the right.  Thus the modified EXCEL Paybook was configured from left to right, as follows:

| Colum. A to X | Colum. Y to AL | Colum.  AM to end |
|---|---|---|
| NW . . .NE | SE | Computation area of Expert |

The Computation area in columns AM to the end is the area where the original paybook data was configured by Ms. Slate to compute the interim damages total.[6]

**20.**    Further relocation of data from the original EXCEL Paybook to the modified EXCEL Paybook prepared by Ms. Slate was that all eight workbooks (one for each fiscal year) were combined into one worksheet.  In this format the rows could be sorted by workweek ending date or employee name for a consolidated view of all the original data.  In their original location such sorting

---

[6] Note that the Paybooks for FY02, FY03 and FY04 did not contain a column entitled "Court".  This column began to appear from FY05 onward.  The reference in the table for the NW and NE quadrants as being located in columns A to X relates to FY05 onward; in the prior fiscal years the NW and NE quadrants were from A to W.

of data was not possible because the data was spread out over eight separate EXCEL workbooks, with data for each week on separate worksheets (i.e., separate "tabs").

21.    Most additions to the regular rate were specified on a weekly basis in the NE quadrant portion of the original EXCEL Paybooks, such as shift differential, longevity, educational incentives, specialists and comstat. However, nondiscretionary community service compensation was only entered as an annual lump sum if and when it was earned and paid.  This required that paid community service be allocated over the workweeks in the fiscal year to determine the FLSA overtime rate in which it was earned/paid, usually 52 weeks, but sometimes less in the initial and terminal year.  The community service column at the end of the SE quadrant was converted to weekly earnings and a tan color used for the column.   Inasmuch as the court ruled that "school" compensation should not be included in the regular rate, no weekly distributions were calculated, and the column was grayed out.

22.    At the end of every fiscal year (June 30), the payroll workweek was often divided into two partial workweeks, together equaling the 7 day workweek.  At the end of FY's 2002, 2005, 2006 and 2007, the wages and hours were combined into their proper single workweek.  However, at the end of FY's 2003 and 2004, the employer created a six day workweek and an eight day workweek.  This has been highlighted in the records, but it has not been changed inasmuch as there is insufficient information provided to correct this. Thus they are being treated as regular workweeks.

### D.    Explanation of Calculation for Each Column

**23.**    Columns A through X of Ms. Slate's attached, modified EXCEL damages Paybook are from the NW and NE quadrants of the original EXCEL Paybook.  The only change to those cells is that a blank column that separated the NW and NE quadrants in the original EXCEL Paybooks was deleted in preparing Ms. Slate's modified EXCEL Paybook on damages.  Columns A through X contain original EXCEL Paybook data as follows:

A    "EMPNO" - employee number.

B    "PPE" - pay period ending date is a column that Ms. Slate added that corresponds with the week designated on the worksheet ("tab") for that week in the original EXCEL Paybooks.  In the original EXCEL Paybooks this column was not necessary because the computations were prepared on a weekly basis, with one worksheet (or "tab") per week.  However, when Ms. Slate consolidated all data from the original EXCEL Paybooks for all weeks of each year to a single worksheet on the modified EXCEL Paybooks it required that this column (identifying the pay week) be inserted.

C    "Name" - name of patrol officer plaintiff for whom calculation is made for that week.

D    "OTDAY" - overtime hours on day shift.

E    "OTNIGHT" - overtime hours on night shift.

F    "OTGRDAY" - overtime hours on day shift, per grant funding.

G    "OTGRNGT" - overtime hours on night shift, per grant funding.

H      "COURT" - overtime hours for time in court.  This column did not appear in the FY02 to FY04 original EXCEL Paybooks, but it did appear in the FY05 to end EXCEL Paybooks.  Since the EXCEL Paybooks for all fiscal yeas were consolidated, it was necessary to use this column to account for this data from FY05 onward.

I      "DETAIL" - total hours working paid details (town and private).

J      "HOLIDAY" - pay that officer is paid for holidays, regardless of whether the officer works holiday.

K      "SCHOOL" - differential paid for inservice education.

L      "COMM SVC" - differential for community service.

M      "NAME" - repeated, as per column C.

N      "BASESAL" - base salary, i.e., one week's worth of annual salary.

O      "DIFFER" - shift differential if applicable for such officer that week.

P      "TOTSAL" - the sum of base salary and shift differential as stated in columns N and O.

Q      "LONGEV" - differential paid for tenure in the police department, applicable from January 13, 2004 onward.

R      "SPCOMP" - differential paid to patrol officers who work special assignments such as assignment as detectives.

S    "P + Q" - is the label in the original and has been retained here.  In both the original and the damages worksheet it refers to the sum of longevity and specialist differential.[7]

T    "CS/TECH" - refers to "compstat technology" differential that officers are paid.

U    "DEGREE" - refers to Quinn Bill education incentive pay that officers receive depending on the level of their college education.

V    "OTDAY" - is the overtime rate for day shift overtime that was applied if the officer worked day shift overtime.

W    "OTNIGHT" - is the overtime rate for night shift overtime that was applied if the officer worked night shift overtime.

X    "HOL RATE" - is the rate to be paid to an officer for each holiday regardless of whether they work and is a function of taking one fifth of the weekly base salary plus shift differential as stated in column P.  Officers receive this amount for each holiday except for Thanksgiving where they receive twice this amount as holiday pay.  In addition, officers may qualify to receive extra premium compensation on Thanksgiving or Christmas holidays where they actually work those holidays.  Such premium compensation is half of the holiday pay amount stated in this column where an officer is eligible to receive

_____

[7] However, due to the addition of the pay period ending column to the original EXCEL Paybook when creating the modified EXCEL Paybook damages worksheet, the columns have shifted one letter to the right.  Thus P (longevity) and Q (specialist differential) of the original EXCEL Paybook now appear in column Q (longevity) and R (specialist differential) of the modified EXCEL Paybook that computes damages.

such premium compensation for working such Thanksgiving and/or Christmas holidays (i.e., the premium is half of one fifth of the base salary).

**24.**    The next columns Y through AL of Ms. Slate's modified EXCEL Paybook on damages are a re-location of cells of the original EXCEL Paybooks in columns M through X of the SE quadrant.  Columns Y through AL in the attached modified EXCEL Paybook on damages contain original EXCEL Paybook data as follows:

<u>Y</u>    "NAME" - restatement of name as in column C.

<u>Z</u>    "TOTSAL" - restatement of total salary figure (base plus differential) in column P.

<u>AA</u>    "Long + SPCOMP" - is a restatement of the sum of longevity and specialist differential located above as column S.

<u>AB</u>    "DEGREE" - restatement of the education incentive in column U.

<u>AC</u>    "CS/TECH" - restatement of the sum of the compstat technology differential listed in column T.

<u>AD</u>    "OTDAY" - is the actual overtime paid to the officer for day overtime during the week listed.

<u>AE</u>    "OTNIGHT" - is the actual overtime paid to the officer for night overtime during the week listed.

<u>AF</u>    "OTGRDAY" - is the actual overtime paid to the officer for day overtime per grant funding during the week listed.

<u>AG</u>    OTGRNGT" - is the actual overtime paid to the officer for night overtime per grant funding during the week listed.

AH    "COURT" - is the actual overtime paid for court appearances.

AI    "DETAIL" - is the actual amount paid to the officer for working all details during the week listed.  This includes both town and private details.

AJ    'HOL" - is the actual amount paid to the officer for holiday pay during the week listed including any premiums for working Thanksgiving or Christmas.

AK    "SCHOOL" - this is the differential actually paid for inservice training that the Court ruled should be excluded from the regular rate and it is therefore shaded in gray since it is not used in the computations of damages.

AL    "COMM SVC" is one week's worth of the annual amount paid to officers for community service.  It is shaded in orange/beige because the figures in this column were changed from an annual payment in the original Excel Paybook to a weekly amount in Ms. Slate's modified EXCEL Paybook on damages.

**25.**    Continuing to the right in this description of the modified EXCEL Paybook on damages, the columns from column AM to the right is the area where Ms. Slate applied the methodology ordered by the Court, using the original data from the columns to the left, and it is the section where damage calculations are made.  In this section there are some columns which draw data from the original EXCEL Paybooks.  These columns are denoted by use of a general heading above such columns--"payroll".  Where new calculations are added they are labeled "calculations" and they include calculation of damages. The data in columns AM to CJ are as follows:

18

AM    "PPE" - restatement of pay period ending date as listed in column B.

AN    "Name" - restatement of name of patrol officer plaintiff as listed in column C.

AO    "Base + Diff" - is a restatement of sum of the regular base wages plus any shift differential paid to the officer for that week as listed column P.

AP    "L+D+CS/T+COM SVC" - total paid to the officer that week (or if annual, one week's worth) longevity, Degree (Quinn Bill), compstat technology, and community service differentials.

AQ    "Total base + augments" - total of all compensation paid to the officer as listed in columns AO plus AP.

AR    "Average hourly rate B + A" - is a very important new column.  It is a calculation applying the method required by Judge Ponsor in his ruling and adopted by court here by footnote 11 of the September 25, 2007 ruling.[8]  The figure listed in column AR is the sum in column AQ (total base plus augments) multiplied by 52 weeks to derive an annual total, divided by 1946.56 hours. The divisor of 1946.56 hours is based upon the following computations and analysis:  The total hours scheduled for each of the three groups were totaled for the period work week ending 9/4/2001 through 11/6/2007.  Each group worked 12,096 hours during those years.  These hours were divided by the 324

---

[8] Under the Ponsor ruling, the regular shift compensation should be calculated by dividing the annual salary by the total hours in a year for which such annual salary was intended to compensate.  Judge Ponsor he ruled that this was the appropriate way to proceed rather than using a different demoniator every week based upon the regular hours worked that week.

workweeks in this period and then multiplied by 52.14 (the number of weeks in a year) for an average of 1946.56 hours per year. The worksheet labeled "Annual Hours Analysis" presents this in greater detail and is included on the EXCEL file on the CD Rom attached hereto as **Exhibit A.**

AS to AW     "*Actual* ST OT Day/Night . . ." - a computation of the straight time ("ST") component of the *actual* overtime paid to the officer that workweek. Under the FLSA and the court's ruling in this case, overtime compensation should be conceptualized as having two components, a straight time component and a premium component. These columns list the straight time component for overtime *actually* paid. Since there are several categories of overtime (day, night, and day/night funded by grants) denoted on the original EXCEL Paybooks, the straight time compensation in this section as well is divided into multiple columns. The straight time component of overtime *actually* paid to the officer is calculated by identifying the cell from the original EXCEL Paybook (located at "AD" on the modified EXCEL Paybook on damages) that contained the total actual overtime paid to the employee and taking two-thirds of that amount. By taking two thirds of the overtime actually paid, Ms. Slate isolated the ST component of overtime *actually* paid. This is because two thirds of the actual overtime paid to employees is the straight time component of the overtime actually paid. For example, if the overtime paid to the employee was listed as one hour at $30, then two thirds of $30 would be taken to derive a straight time component of the actual overtime paid of $20.

20

AX to BB    "*Correct* ST OT Day/Night . . ." - a computation of the straight time ("ST") component of overtime that *should have been* paid to the officer that workweek and thus is referred to as "*Correct* ST OT".  This is a function of multiplying the correct regular rate as specified in column "AR", per the order of Judge Ponsor incorporated by the court in this matter in footnote 11, by the total number of hours listed at Column D, E, F G and H of the modified EXCEL Paybook for overtime hours (same original columns C to G).

BC    "Total Detail pay" - contains cells copying the original dollar amount from column AI paid to the officer that week for <u>all</u> details.

BD    "FLSA Detail Pay" - contains a formula which multiples the total hours of *Town* details as listed on Column "BS" (shaded in blue to the right) by the detail rate in effect at time.  The detail rate per hours in effect at the time was a manual entry in the mathematical formula in the cells in this column and is reflected by the Paybooks as explained in the margin.[9]  The town detail hours in column BS used for this calculation is entered based upon the data in the ACCESS database query/report of Sgt. Fitzpatrick which isolates *Town* detail from other details discussed above.[10]

---

[9] Paybooks show total detail pay and total details hours and therefore the hourly amount can be determined by dividing total hours of details into total detail pay that week.

[10] There is a dispute between the parties as to whether *all* details performed on behalf of a Town department are *Town* details within the meaning of the court's ruling.  The Town details in this column include *all* Town details regardless of whether the Town employees directly perform the work on behalf of the Town that is attended by a detail officer, or whether employees of an outside contractor hired by the Town perform the work attended by a detail officer.

BE     "Holiday pay" - this column is the same as AJ, shaded in gray, sets forth compensation for holidays that is paid to officers, regardless of whether they work a holiday.  Since this column includes all holiday pay that is paid regardless of whether the officer worked, it is excluded from the calculation of the FLSA regular rate and overtime owing.

BF to BJ     "*Actual* 1/2T OTDays/Nights etc." - As noted above, Plaintiffs have divided overtime *actually* paid to officers into two components, a straight time component and a premium component.  As mentioned above, the straight time component is derived by taking two thirds of the actual amount of overtime paid.  Accordingly, the premium component of overtime is calculated by taking the remaining one third of the overtime paid and that is the computation that is performed in these cells.  Since the premium component of overtime paid to an employee in FLSA jargon is often referred to as "half time" ("half" the regular rate), the heading for this column describes the premium component as half time (or "1/2T OT").

BK     "Holiday Premium" - as explained above, there are times when an officer receives premium wage compensation if the officer actually works a holiday.  This is separate and independent from the type of holiday pay that is always paid to an officer regardless of whether the officer works the holiday.  This column isolates holiday premium money paid to an officer for actually working a holiday.  This was calculated by subtracting the holiday pay that is paid regardless of whether the officer works from the total holiday pay.  The result is the premium amount paid for time spent actually working the holiday,

if any, and such amount appears in this column and is incorporated in the FLSA calculations.

BL    "Base hours" - is a listing of the actual hours the officer was *scheduled* to work that week, taking into account whether the officer was on an administrative schedule of 5-2, which would indicate 40 hours each week (except for holidays), or 4-2 which would indicate 32 hours or 40 hours, depending on which color group the officer was assigned.  The column is shaded in color to correspond with the same color assigned to that group on the "color calendar", noted above, which lists the four or five days that the officer was scheduled to work each week.

BM to BQ - "OT Day/Night etc." - is a listing of overtime hours the officer worked that week under each category (day, night, court, and if funded by grant money).  The data in this section is copied directly from the original EXCEL Paybook entries at columns D to H mentioned above.

BR    "Detail Hr" - is a listing copied from the original EXCEL Paybook of *all* detail hours worked that week as listed in column I.  The column is in gray because only the Town detail portion of total detail hours is used to determine total hours worked in a week.

BS    "Town detail hr" - as noted in the discussion of Column BD above, this column isolates the hours of Town details which per the Court's order should be counted as hours worked under the FLSA.

BT to BX - "Time off report", "sick", "vacation hrs", etc. - these columns identify the hours that the officer took off on the week as paid time off or time

off without pay.  This data is from the time off reports on the hard copy payroll data provided by the Town.  These hours are used to determine the total hours actually worked.

BY    "Total HW" - is the total hours *actually* worked.  It is a function of adding up total base hours that the officer was scheduled to work that week (which takes into account rotation through the 4-2 schedule), overtime hours, and town details hours, and then subtracts total hours for paid time off.

BZ    "Total *Corrected* ST earnings for HW" - this column states the total ST earnings for all categories of hours *actually* worked.  This includes hours *actually* worked for regular and non-detail overtime shifts (ST component only) at the rate in column AR.[11] With regard to Town details, the formula adds the total dollars paid for Town details which is entirely a ST rate (i.e., hours of Town details identified in column BD multiplied by the detail rate then in effect).

CA    "FLSA RR" - this is another very important column.  It represents a calculation of the actual FLSA regular rate that *should have been used* during the week to determine the amount of the OT premium ("half time rate") owing per hour of overtime worked that week.  The FLSA Regular Rate in this column is computed by taking the total corrected straight time earnings that week

---

[11] Note that the total ST component for overtime is also identified in columns AX to BB, itemized there by category of overtime (day, night, day/night granted funded). As reviewed in greater detail above, columns AX to BB represent multiplying the total overtime hours of overtime by the corrected straight time rate in Column AR to state the total straight time component for overtime that *should* have been paid.

(column BZ) divided by the total hours *actually* worked for the Town that week (column BY):  BZ/BY.  Note that this complies with the direction of Judge Ponsor in that it multiplies the column AR hourly rate by all the straight time and overtime hours, then adds the straight time paid for town details (which is a separate rate), and divides the total of both by total hours that week listed in column BY.[12]

CB    "ST for OT earned" - is the sum of columns AX to BB, which is the straight time component that *should have* been paid for regular (non-detail) overtime shifts, such amount being a function of multiplying the regular rate for regular shifts and regular overtime shifts at column AR by total overtime hours.

CC    "ST for OT pd" - is the sum of columns AS to AW, which is two thirds of the overtime *actually* paid, which, as explained above is the computation necessary to isolate the ST component of the overtime compensation paid.

CD    "1/2T for OT earned" - is a listing of the half time (premium component) for overtime *that should have been* paid.  The figure in this column is the result of a formula which finds no premium (half time) owing if the officer worked less than 40 hours per week under the FLSA, in which case a zero

---

[12] Thus the column AR regular rate is $27.33 in the first week of the damages period, but the FLSA RR in this column is one penny less at $27.32 because of the affect of the slightly lower detail rate.  Later in the damages period when the straight time rate for details is higher than the straight time rate used for regular shifts and regular overtime shifts in Column AR, the final regular rate for purposes of calculating overtime half time rate in this column (i.e., column CA) is somewhat higher.

would be entered to represent no overtime owing under the FLSA. If the officer worked more than 40 hours in the week, then each hour over 40 hours is multiplied by half of the FLSA regular rate in <u>Column CA</u>. The result is the total overtime premium that *should* have been paid.

    <u>CE</u>    "1/2T for OT pd" - is a listing of the half time (premium component) for overtime *actually* paid as listed in columns BF to BK. As noted above, the actual premium paid is calculated by taking one third of the total overtime paid.

    <u>CF</u>    Blank column inserted to provide space before calculation of bottom line damages.

    <u>CG</u>    "NAME" - is a restatement of the name of the patrol officer plaintiff.

    <u>CH</u>    "ST for OT due" - is a listing of the difference between column CB (ST for OT that should have been paid) and column CC (ST for OT actually paid). The result is the damages for underpayment of the ST component of overtime earned by officers each week.

    <u>CI</u>    "NAME" - is a restatement of the name of the patrol officer plaintiff.

    <u>CJ</u>    "Premium Due" - is a listing of the difference between Column CD (premium component for overtime that should have been paid for overtime worked) and CE (premium component of overtime *actually* paid for overtime worked). The result is the damages for underpayment of the premium component of overtime earned by officers each week. Since the total premium owing is a function of adding the total premium paid minus premium that should have been paid, it encompasses the Section 7(h) offset for premium

26

compensation paid.  Since the Court ruled that the premium offsets should be considered cumulatively regardless of when incurred, negative integers are included in order to take into account such cumulative offset, even if that meant that damages incurred in 2002 were offset by premium overtime paid as late as five years later in 2007.

26.    The bottom line of the foregoing calculations is that for the period dating back *three years* from the time the lawsuit was filed to November 2007, Patrol Officer Plaintiffs as a group were underpaid $308,234.03 for straight time on overtime, and $64,731.34 for overtime premiums, for total backpay damages of $372,965.36.  Pursuant to the Court's liquidated damages ruling, this amount is doubled for total damages of $745,930.72.  This encompasses applying a cumulative offset regardless of when such offset was incurred for premium compensation.

27.    The bottom line of the foregoing calculations for the period dating back *two years* from the time the lawsuit was filed to November 2007, Patrol Officer Plaintiffs as a group were underpaid $269,169.08 for straight time on overtime, and $64,336.31 for overtime premiums, for total backpay damages of $333,505.39.  Pursuant to the Court's liquidated damages ruling, this amount is doubled for total damages of $667,010.79.  Again, this encompasses applying a cumulative offset regardless of when such offset was incurred for premium compensation.

28.    Based upon my application of the methodology described above and as set forth on the modified EXCEL Paybooks on damages attached hereto

on **Exhibit A**, I conclude that the patrol officers plaintiffs are owed backpay for underpayment of FLSA overtime wages as set forth on the following tables for a three year and two year statute of limitations:

## Three Years Statute Of Limitations Period

| NAME | ST for OT due | Premium for OT[13] | Total Damages | Doubled Liquidated Damages |
|---|---|---|---|---|
| Arena, Edward | 14,999.64 | 0.00 | 14,999.64 | 29,999.28 |
| Blanchard, Elizabeth M | 3,801.57 | 0.00 | 3,801.57 | 7,603.14 |
| Bosselman, Brian A | 8,197.92 | 189.58 | 8,387.49 | 16,774.99 |
| Brogan, Daniel R | 21,065.75 | 0.00 | 21,065.75 | 42,131.50 |
| Conaway, Brett | 4,546.20 | 3,209.38 | 7,755.58 | 15,511.16 |
| Coughlin, Amy | 1,090.49 | 0.00 | 1,090.49 | 2,180.98 |
| Delehanty, Kevin J | 18,906.00 | 0.00 | 18,906.00 | 37,812.00 |
| Doherty, Jr, John W | 10,523.90 | 0.00 | 10,523.90 | 21,047.80 |
| Fitzgerald, K | 14,371.07 | 2,445.88 | 16,816.95 | 33,633.91 |
| Fitzpatrick, L | 1,024.93 | 387.13 | 1,412.06 | 2,824.12 |
| Forde, Vincent | 14,408.25 | 3,933.81 | 18,342.07 | 36,684.14 |
| Frissore, John C | 578.84 | 415.06 | 993.90 | 1,987.80 |
| Gaieski, A | 446.50 | 0.00 | 446.50 | 892.99 |
| Geissler, William A | 245.35 | 0.00 | 245.35 | 490.70 |
| Graham, Jr, Allan W | 5,121.41 | 0.00 | 5,121.41 | 10,242.82 |
| Hall, Ryan | 573.36 | 0.00 | 573.36 | 1,146.73 |
| Halloran, Jr, Richard P | 4,938.91 | 844.21 | 5,783.11 | 11,566.23 |
| Harper, Howard L | 1,996.51 | 0.00 | 1,996.51 | 3,993.02 |
| Haswell, John P | 3,811.52 | 542.51 | 4,354.02 | 8,708.05 |
| Hayes, Joseph N | 8,290.60 | 1,351.41 | 9,642.01 | 19,284.02 |
| Heffler, Elizabeth R | 8,055.04 | 0.00 | 8,055.04 | 16,110.07 |
| Hoffman, Jr, Robert A | 13,554.00 | 3,904.19 | 17,458.19 | 34,916.39 |
| Howard, Chad | 4,523.37 | 6,269.05 | 10,792.42 | 21,584.84 |
| Ingham, Brian D | 12,655.28 | 0.00 | 12,655.28 | 25,310.56 |
| Jennings, Leonard | 1,653.66 | 0.00 | 1,653.66 | 3,307.31 |
| Kelley, Keren | 928.60 | 1,433.19 | 2,361.78 | 4,723.57 |
| Keohane, James F | 8,481.89 | 6,690.75 | 15,172.64 | 30,345.29 |
| Keraissey, Edward | 1,785.56 | 2,812.78 | 4,598.34 | 9,196.68 |
| Lacerra, Scott | 2,708.36 | 3,134.11 | 5,842.46 | 11,684.93 |
| Lanoue, Greg | 3,725.59 | 4,037.71 | 7,763.30 | 15,526.59 |
| Linton, James M | 1,973.22 | 0.00 | 1,973.22 | 3,946.44 |
| McDonnell, Douglas | 2,225.41 | 0.00 | 2,225.41 | 4,450.81 |
| Morrill, Diane | 3,832.62 | 0.00 | 3,832.62 | 7,665.24 |

[13] Note that on the modified EXCEL Paybooks on damages on Exhibit A, the total at the bottom of the spreadsheet for premium overtime is less than the grand total listed on this table. That is because the modified EXCEL Paybook on damages calculates a negative integer for some officers for premium compensation owing where offsets exceeded what the FLSA required that they be paid, whereas on this table such officers are listed with a zero because each officer's totals must be calculated separately (one officer's total should not affect another's) and because no officer is required to reimburse the Town for being paid more premium compensation than required by the FLSA.

| | | | |
|---|---:|---:|---:|
| **Murphy, III, Robert F** | 3,497.37 | 0.00 | 3,497.37 | 6,994.74 |
| **Nguyen, Toan** | 1,240.68 | 0.00 | 1,240.68 | 2,481.37 |
| **Ordway, James M** | 5,294.12 | 0.00 | 5,294.12 | 10,588.25 |
| **Payne, Sr, Ryan** | 331.33 | 2,442.74 | 2,774.07 | 5,548.14 |
| **Peros, Arthur** | 8,434.69 | 2,755.67 | 11,190.36 | 22,380.73 |
| **Quilty, James P** | 10,692.15 | 0.00 | 10,692.15 | 21,384.29 |
| **Richardson, Ronald D** | 8,994.05 | 0.00 | 8,994.05 | 17,988.10 |
| **Rodriquez, Christian** | 5,773.45 | 4,447.97 | 10,221.42 | 20,442.84 |
| **Rossi-Cafarelli, Cara M** | 1,098.07 | 0.00 | 1,098.07 | 2,196.14 |
| **Salis, S Christopher** | 24,725.34 | 7,746.33 | 32,471.68 | 64,943.35 |
| **Smith, Scott** | 5,448.82 | 1,223.04 | 6,671.87 | 13,343.73 |
| **St Hilaire, M** | 2,863.29 | 1,381.67 | 4,244.96 | 8,489.92 |
| **Sutherland, J** | 12,338.34 | 477.40 | 12,815.74 | 25,631.49 |
| **Thurston, Joseph** | 2,487.47 | 0.00 | 2,487.47 | 4,974.95 |
| **Vieira, Richard** | 3,522.77 | 2,655.76 | 6,178.53 | 12,357.07 |
| **Vitale, Thomas W** | 3,889.50 | 0.00 | 3,889.50 | 7,779.00 |
| **White, Robert J** | 2,561.25 | 0.00 | 2,561.25 | 5,122.50 |
| **Grand Total** | 308,234.03 | 64,731.34 | 372,965.36 | 745,930.72 |

## Two Years Statute Of Limitations Period

| NAME | ST for OT due | Premium for OT | Total Damages | Doubled Liquidated Damages |
|---|---|---|---|---|
| Arena, Edward | 12,977.56 | 0.00 | 12,977.56 | 25,955.13 |
| Blanchard, Elizabeth M | 3,468.73 | 0.00 | 3,468.73 | 6,937.45 |
| Bosselman, Brian A | 7,828.29 | 50.77 | 7,879.06 | 15,758.12 |
| Brogan, Daniel R | 18,869.10 | 0.00 | 18,869.10 | 37,738.19 |
| Conaway, Brett | 4,546.20 | 3,209.38 | 7,755.58 | 15,511.16 |
| Coughlin, Amy | 974.28 | 0.00 | 974.28 | 1,948.55 |
| Delehanty, Kevin J | 17,814.52 | 0.00 | 17,814.52 | 35,629.04 |
| Doherty, Jr, John W | 9,100.16 | 0.00 | 9,100.16 | 18,200.32 |
| Fitzgerald, K | 14,371.07 | 2,445.88 | 16,816.95 | 33,633.91 |
| Fitzpatrick, L | 355.94 | 588.19 | 944.13 | 1,888.27 |
| Forde, Vincent | 12,755.69 | 4,054.89 | 16,810.58 | 33,621.16 |
| Frissore, John C | 578.84 | 415.06 | 993.90 | 1,987.80 |
| Gaieski, A | 446.50 | 0.00 | 446.50 | 892.99 |
| Geissler, William A | 245.35 | 0.00 | 245.35 | 490.70 |
| Graham, Jr, Allan W | 4,022.84 | 0.00 | 4,022.84 | 8,045.68 |
| Hall, Ryan | 573.36 | 0.00 | 573.36 | 1,146.73 |
| Halloran, Jr, Richard P | 4,297.53 | 958.50 | 5,256.02 | 10,512.05 |
| Harper, Howard L | 1,516.74 | 0.00 | 1,516.74 | 3,033.48 |
| Haswell, John P | 3,470.39 | 558.34 | 4,028.73 | 8,057.46 |
| Hayes, Joseph N | 6,067.92 | 1,221.81 | 7,289.74 | 14,579.47 |
| Heffler, Elizabeth R | 4,618.02 | 0.00 | 4,618.02 | 9,236.03 |
| Hoffman, Jr, Robert A | 9,805.13 | 4,403.14 | 14,208.27 | 28,416.53 |
| Howard, Chad | 4,523.37 | 6,269.05 | 10,792.42 | 21,584.84 |
| Ingham, Brian D | 10,973.78 | 0.00 | 10,973.78 | 21,947.56 |
| Jennings, Leonard | 1,406.48 | 0.00 | 1,406.48 | 2,812.97 |
| Kelley, Keren | 928.60 | 1,433.19 | 2,361.78 | 4,723.57 |
| Keohane, James F | 6,990.71 | 6,625.16 | 13,615.87 | 27,231.74 |
| Keraissey, Edward | 1,063.47 | 2,725.00 | 3,788.47 | 7,576.94 |
| Lacerra, Scott | 2,708.36 | 3,134.11 | 5,842.46 | 11,684.93 |
| Lanoue, Greg | 3,725.59 | 4,037.71 | 7,763.30 | 15,526.59 |
| Linton, James M | 1,694.31 | 0.00 | 1,694.31 | 3,388.62 |
| McDonnell, Douglas | 827.71 | 0.00 | 827.71 | 1,655.43 |
| Morrill, Diane | 3,422.84 | 0.00 | 3,422.84 | 6,845.67 |
| Murphy, III, Robert F | 3,241.02 | 0.00 | 3,241.02 | 6,482.05 |
| Nguyen, Toan | 1,240.68 | 0.00 | 1,240.68 | 2,481.37 |
| Ordway, James M | 4,112.87 | 0.00 | 4,112.87 | 8,225.74 |
| Payne, Sr, Ryan | 331.33 | 2,442.74 | 2,774.07 | 5,548.14 |
| Peros, Arthur | 7,089.28 | 3,370.15 | 10,459.43 | 20,918.86 |
| Quilty, James P | 9,231.29 | 0.00 | 9,231.29 | 18,462.58 |
| Richardson, Ronald D | 7,923.59 | 0.00 | 7,923.59 | 15,847.18 |
| Rodriquez, Christian | 5,773.45 | 4,447.97 | 10,221.42 | 20,442.84 |
| Rossi-Cafarelli, Cara M | 623.17 | 0.00 | 623.17 | 1,246.35 |

| | | | |
|---|---|---|---|
| **Salis, S Christopher** | 22,852.20 | 7,258.22 | 30,110.43 | 60,220.85 |
| **Smith, Scott** | 4,603.98 | 1,181.21 | 5,785.20 | 11,570.39 |
| **St Hilaire, M** | 1,630.69 | 1,177.33 | 2,808.02 | 5,616.04 |
| **Sutherland, J** | 12,338.34 | 477.40 | 12,815.74 | 25,631.49 |
| **Thurston, Joseph** | 2,487.47 | 0.00 | 2,487.47 | 4,974.95 |
| **Vieira, Richard** | 2,781.54 | 1,851.10 | 4,632.64 | 9,265.28 |
| **Vitale, Thomas W** | 3,702.08 | 0.00 | 3,702.08 | 7,404.17 |
| **White, Robert J** | 2,236.72 | 0.00 | 2,236.72 | 4,473.44 |
| **Grand Total** | 269,169.08 | 64,336.31 | 333,505.39 | 667,010.79 |

**(Exh. A)**[14]

---

[14] Premium OT damages are approximately $240,000 (doubled) if there was a week by week offset rather than cumulative Section 7(h) offset for a three year statute of limitations, and approximately $200,000 more (doubled) if there was a week by week offset for a two year statute of limitations.

**29.**    Further adjustment of damages must be done to account for missing paid time off data from July 1, 2007 to present, and missing wage data from November 2007 to the date of eventual final judgment figures.

Sworn to, under the pains and penalties of perjury this 2nd day of February, 2008:

_s/ Patricia Slate_
Patricia Slate