THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Robert F. Murphy, III, Lead Plaintiff for Patrol Officer Plaintiffs, et al. and, <br><br> Brian C. Grassey, Lead Plaintiff for Superior Officer Plaintiffs, et al., <br><br>  Plaintiffs, <br><br>  v. <br><br> Town of Natick, et al. <br><br>  Defendants | USDC Case No.:  04-11996 RGS |

**PLAINTIFFS' OBJECTIONS TO DEFENDANTS'
INTERIM CALCULATION OF DAMAGES**

## I. Introduction

On February 5, 2008 the parties each submitted a proposed interim form of judgment to the court, and in doing so provided separate calculations of back pay for each plaintiff.  There is a wide gap between the parties as to total back pay owing due to variation in their methodology used to calculate back pay.  For example, applying a two year statute of limitations the parties have divergent computations (doubling damages per court ruling) as follows:

| **Plaintiffs 2 Year** | **Defendants 2 Year** | **Difference** |
|---|---|---|
| $481,938[1] | $112,432 | $369,506 |

---

[1] Note that the two year statute of limitations total for Plaintiffs is about $119,000 less than Plaintiffs' computations previously submitted to the court.  This lowering of Plaintiffs' damages computations is due to a recent further correction to Plaintiffs' computations.  Defendants are aware of this and Plaintiffs will later submit a motion to reflect this modification when the parties have completed their discussion of one

1

Thus for the two year statute of limitations the parties are approximately $369,000 apart, and for a three year statute of limitations they would be even farther apart.[2] In the argument section below, Part II, Plaintiffs identify and object to each discrepancy in Defendants' calculations to the extent that they depart from the method applied by Plaintiffs. Attached hereto is an affidavit of Plaintiffs' computations expert Patricia Slate who attests to the factual basis for these objections.

## II. OBJECTIONS

**Objection #1:** **Defendants' Extrapolation Of Payroll Through December 31, 2007 Is Unnecessary, And In Any Event Extrapolation Through Calendar Year 2007 Requires Multiplication Of The Amount Owing Under Defendant's Calculations By 110.4362%, Not 109.45%.**

Defendants at page two of their memorandum state that they extrapolated damages through December 31, 2007. Plaintiffs object to extrapolation where, as here, an actual calculation is able to be performed. Plaintiffs therefore have proposed that damages be calculated to as close to present as possible (Plaintiffs calculated damages to pay period ending

---

another's computations. In the meantime, it is sufficient to note that there is still a wide gap between the parties, even with this modification.

[2] Plaintiffs calculated back pay for 50 plaintiffs because they included back pay for Jason Sutherland who is the subject of a currently pending motion to be added as consentee. Defendants calculated back pay for 49 plaintiffs because they excluded Officer Sutherland pending the court's decision on said motion. The back pay that Plaintiffs contend is owing to Officer Sutherland, doubled, is about $25,000 and, therefore, this does not account for the large difference in the parties calculations. However, Plaintiffs calculated back pay only through the last date for which data was provided by the Town, pay period ending November 6, 2007, whereas the Town extrapolated back pay through December 31, 2007 (an additional seven weeks).

November 6, 2007), and that the remaining damages be calculated and continue to be calculated until the Town, at some future date, modifies its payroll practices to conform to FLSA standards. (Slate Aff. at ¶¶2-5.)

Second, although Plaintiffs object to Defendants' extrapolation, it should be noted that Defendants' memorandum contains a contradiction as to the proper extrapolation computation. At the top paragraph of page two of Defendants' memorandum they extrapolated by dividing the amount owing for the partial 57.5 month period by .9055. Assuming extrapolating was acceptable—and we in no way concede that point—this would be an acceptable mathematical method of extrapolating damages from the 57.5 months partial period to the full 63.5 months full period (57.5 div. by 63.5 = .9055) *only if officers were paid at the same rate the entire time.* Since officers rates of pay increased over time, it is not fair to extrapolate from earlier years with lower rates of pay to find income that would be paid in 2007. (Id.)

In addition, even if it were acceptable to extrapolate from years with lower rates of pay, Defendants confuse the issue in the third paragraph of page two of their memorandum by stating that they extrapolated by multiplying the total by 109.45%. This is incorrect. The following example involving Murphy demonstrates the flaw in Defendants' computations in this regard. Defendants find that Murphy is owed $309.32 for the 57.5 month period and they extrapolate a final figure of $341.60. (See Exhibit A of Def. Memo. Int. Damages.) If $309.32 is divided by .9055, the correct result is found, $341.60. However, if the extrapolation was computed by multiplying the 57.5 month

partial period by 109.45%, as the Defendants state in the last paragraph of page 2 of their damages memorandum, then the result would be $338.55.[3] (Id.)

In summary, Plaintiffs object to any extrapolation of damages as proposed by Defendant's in their interim damages submission where, as here, a full and accurate computation is possible and was done by Plaintiffs. Second, Plaintiffs object to extrapolation because it has a flaw in that years of lower income are used to extrapolate income in 2007 when income was higher. This would artificially lower the damages in the later, extrapolated period. Third, Defendants' memorandum explains its extrapolation method with conflicting information as to the formula for extrapolation; the method described by Defendants that would involve multiplying by 109.45% should be rejected.  (Id.)

>**Objection #2:   Defendants' Allocation Of The Annual Community Service Stipend To A Single Pay Period Rather Than Allocating It Over The Entire Year In Which It Was Earned Is Improper And Violates 29 C.F.R. §785.209.**

In its computation of damages Defendants state at page 3 of their memorandum on damages, footnote 6, that wage augments "were added into the total only on the date paid and not spread out over the year." Plaintiffs object to this and Plaintiffs in their own computations have allocated all wage

---

[3] If this method (of multiplying by a percentage) was used then the correct multiplier would be 110.4362% (i.e., $309.32 x 110.4362% = $341.60).

4

augments over an annual, 52 week period, rather than to a single week. (Slate Aff. at ¶¶6-8.)

Under FLSA regulations, a one time payment of money that constitutes regular income must be spread over the period in which it was earned. In this case the period over which to allocate a one time payment is the contract year during which the officer qualified for the stipend, and it would be incorrect to attribute that one week payment of a stipend entirely to that week for purposes of calculation of FLSA overtime, as Defendants have done here. See 29 CFR §785.209 (Method of inclusion of bonus in regular rate) and 29 CFR 785.120 (Deferred commission payments not identifiable as earned in particular workweeks). As implicit in such regulations, the idea of crediting payment in one arbitrary pay period when the employer issues the payment is not acceptable. The effect of this would be to hugely increase the regular rate in that particular workweek and would increase the overtime rate only in that week if the office happened to work overtime the week that the differential was paid. An employer could easily avoid all overtime relating to wage augments by paying them all in one single week, and choose the week based upon when it noted that the employee worked no overtime. (Id.)

For the above reasons, Plaintiffs object to Defendants' calculations to the extent that Defendants have failed to allocate the annual Community Service Stipend as a weekly amount for purposes of computing the FLSA regular rate in violation of FLSA regulations. (Id.)

**Objection #3:    Defendants' Have Improperly Divided Wage Augments By 40 Hours/Week Rather Than Following The Courts' Order (footnote 11) That Base Pay And Augments Are Based Upon The Year And <u>Not Fluctuating Weeks.</u>**

At page 4 of its memorandum on damages Defendants explain that they totaled the "wage augments paid that week . . . and divided by 40 to provide the addition to the hourly rate due to the augments (sum of augments/40 = hourly rate attributable to augments)." (Def. Memo. Int. Damages at page 4.) Plaintiffs object to this and state that, in accordance with the Court's September 25, 2007 ruling, and Judge Ponsor's specific ruling on this issue cited in footnote 11 of the Court's September 25th ruling, the parties were expressly required to evaluate the issue of the period for which the compensation was intended to compensate. In this case, as explained in greater detail in Plaintiffs' memorandum in support of its proposed interim form of judgment, the parties must divide the total annual salary including all wage augments by 1946.56, not 2080 per year as Defendants have done. Defendants have no basis whatsoever to divide the weekly salary payment by 40 (2080 per year) where the annual salary is based upon working 1946.56 per year, yet this is what Defendants did. Defendants' approach artificially lowers the regular rate by dividing the regulation compensation by a higher denominator and this in turn results in a corresponding overtime premium that is lower than required by the FLSA. This is inconsistent with the Court's specific direction on this issue in footnote 11 of its ruling on the motions for summary judgment. (Slate Aff. at ¶¶9-10.)

Based upon the foregoing Plaintiffs object to Defendants' calculations where Defendants allocate weekly salary based upon dividing 40 hours into the weekly salary, rather than by dividing the annual salary by the total hours it "was intended to compensate", 1946.56, as required by this Court (See footnote 11 of Court's September 25, 2007 ruling, directing parties to O'Brien v. Town of Agawam, 440 F. Supp. 2d 3, 11-12 (D. Mass. 2006).) (Id.)

> **Objection #4:** **Defendants Allocate Overtime Hours At Tab A Of Each Exhibit To A Pay Period One Week Later Than The Pay Period In Which The Hours Were Actually Worked, While Leaving Other Data In The Correct Pay Period, And This Results In A Systematic Erroneous Calculation Of Total Hours Worked Each Pay Period.**

With regard to this point, Plaintiffs present the following example from the Check Date column 9/2/2003 of Defendants' charts for Robert Murphy (Exh. 1, Tab A): Defendants find 16 hours of overtime on the Check Date 9/2/2003, as well as 8 hours of vacation time, for a net of 48 total hours worked, 8 hours of overtime. However, the 8 hours of vacation and the 16 hours of overtime did not transpire in the same pay period. Rather, in the prior week Murphy worked the 16 hours of overtime, and in the next pay period he took the paid vacation day off. Therefore, contrary to Defendants' findings, Murphy actually was due 16 hours of overtime, not 8 hours. *Defendants' have found 8 hours of overtime for the column 9/2/03 rather than 16 hours that he actually worked only by the expedient of applying the vacation day from one week, to the prior week when he worked the 16 hours of overtime, even though this is not the way the officer's schedule occurred.* In the discussion

7

which follows Plaintiffs explain why this inaccuracy persists through all of Defendants' calculation of hours worked each week. (Slate Aff. at ¶¶11-17.)

Defendant's charts, Exhibits 1 to 49, at Tab A, have a section (at the top of each page) that states additional hours worked. Along the top of each page is a date, such as "9/25/2001", "10/2/2001", "10/9/2001", "10/16/2001", etc., in a row that is entitled "Check Date". Below this Defendants list seven (7) categories of overtime: "Holiday-Day", "Holiday-Night", "OT Day", "OT Night", "Court OT Day Rate", "Patrol Officers Detail", "Lieuts/Sergs Details". According to Defendants, a number listed in any of these rows indicates the number of hours of overtime paid on the paycheck issued on that "Check Date" under that category. (Id.)

Overtime paid in a paycheck issued on a pay date is compensation for overtime hours worked in a pay period that ended *seven days earlier*, not on the date the paycheck was issued. For example, the pay period is seven days starting on a Wednesday and ending on a Tuesday, and the check date is one week after the Tuesday that ended the pay period. In particular, e.g., Check Date of Tuesday November 27, 2001 listed on Defendants' charts is compensation for the pay period Wednesday November 14 to Tuesday November 20, 2001. However, on Defendants' charts, overtime hours compensated for on the *check date* 11/27/01 is allocated as though it were hours worked on the PPE *ending* 11/27/01 (Nov. 21 to 27), even though said overtime was actually worked seven days earlier on the PPD *ending* 11/20/01 (Nov. 14 to 20). (Id.)

8

If all data were equally shifted one week forward or backward, the inaccuracy would be less concerning. But other data listed under the column for each Check Date is correctly located in that column. In this regard, it should be remembered that officers on a 4-2 schedule work a pattern of four consecutive weeks of regular shifts comprising 40 hours (5 shifts in 7 day period), followed by two consecutive weeks of regular shifts comprising 32 hours (4 shifts in 7 day period). Defendants' charts use the expression "base hours" at the twentieth (20th) row for this concept of "base hours" and "base hours" are represented in a pattern of 40-40-40-40-32-32, every six weeks. Defendants' have added gray shading to the cells in this row where the officer was scheduled 32 base hours. In addition, the category on Tab A of Defendant's charts contains entries for hours of paid time off, "Sick Day", "Vacation", and "Personal Day" and this is also properly entered in said column. (Id.)

Based upon the foregoing the Court should find that Defendants' computations contain a systematic inaccuracy that results in overtime hours worked, paid days off (sick, vacation, personal), and base hours (4-2 schedule pattern) *of the same pay period* being placed in *two different pay periods*. The upshot of that is that Defendant's resulting computation of hours worked is inaccurate for all weeks and so is Defendants' resulting calculation of overtime. For Defendants' charts to have an accurate methodology two changes would be necessary: (1) the heading "Check Date" would have to be changed to read "Pay Period Ending Date" (or "PPE"); and (2) hours of overtime logged under the

9

categories from "Holiday-Day", "Holiday-Night", "OT Day", "OT Night", "Court OT Day Rate", "Patrol Officers Detail", "Lieuts/Sergs Details" would have to be *moved one column to the left to the prior pay period.*[4]  For this reason Plaintiffs object to Defendants' damages charts.  Since Plaintiffs' computation of damages do not contain this defect, the Court should adopt Plaintiffs' damages calculations.  (Id.)

> **Objection #5:  Defendants Have Failed To Include Details Worked On Behalf Of The Town By Contractors Hired By The Town To Execute Town Work, And Have Improperly Limited Town Details To Town Work Executed Only By Town Employees.**

Defendants have applied an improper approach to identify Town details. They have excluded details from its list of Town details where the Town work is executed by contractors retained by the Town to perform such work, and instead limited Town details to instances where such Town work is executed by Town employees.  For the reasons set forth in Plaintiffs' memorandum filed in support of Plaintiffs' proposed interim damages, Plaintiffs object to Defendants' failure to include all such Town details in the damages calculations and submit that the Court should adopt the calculations of Plaintiffs which include all such details as Town details.  In short, the defining factor of a Town detail is not the identity of the workers that are performing the work being observed by the detail officer; it is the identity of the entity for whom such work is being

---

[4] The other way to modify Defendants' charts would be to leave the paycheck ending date as is, and do the reverse:  (1) leave the overtime hours where they are; (2) move the paid time off and base hours (4-2 schedule pattern) one column to the right.

10

performed. Since the Town owns the work being performed, regardless of whether it is performed by Town employees or contractors retained by the Town, the officer observing such work on a detail is performing a Town detail. Therefore, the Court should find that the Town has improperly excluded these later types of details (Town work performed by contractors retained by the Town) from the list of Town details. (Slate Aff. at ¶18.)

**Objection #6:    Defendants' Extrapolation Of 2002 Data Is Unnecessary And In Any Event Was Performed With An Inaccurate Computation Methodology.**

At the top of page 5 of its memorandum Defendants state: "The totals for 2002 were multiplied by .25, to account for the fact that only approximately 25% of the 2002 (9/15/02-12/31/02) is at issue in this filing." This extrapolation (i.e., in addition to the extrapolation of payroll from June 30 to December 31, 2007) is completely necessary. We have data to directly compute this period and no extrapolation is necessary. Therefore Plaintiffs object to such extrapolation of 2002 payroll. (Slate Aff. at ¶¶19-21.)

Second, assuming that a 2002 extrapolation was necessary—and we in no way concede that point—Defendants have used an inaccurate calculation to extrapolate. Defendants took the 2002 payroll computations and then took 25% of that amount to find payroll for the period 9/15/02 to 12/31/02. Twenty-five percent (25%) of a year is three months, yet the period contemplated from September 15 to December 31, 2002 is three and a half months (3.5 months). If extrapolation were to be performed, it would be based upon the following formula: 3.5 months/12 months = 29.2%. (Id.)

Based upon the foregoing Plaintiffs object conceptually to the need to even extrapolate payroll for the period 9/15/02 to 12/31/02 when the actual data exists and the payroll may be computed directly. Further assuming <u>arguendo</u> that extrapolation were to be performed, and there is no rationale basis to do so, the multiplier should be 29.2%, not 25% as used by Defendants. (Id.)

>**Objection #7:** **Defendants' Handling Of Compensation For Town Details Is Objectionable In Two Respects: (1) The Defendants Have Improperly Failed To Include Straight Time Paid For Town Details In Computing The FLSA Regular Rate And Corresponding FLSA Overtime Premium In Violation Of 29 C.F.R. §778.115; And (2) The Defendants Have Used The Straight Time Paid For Town Details As An Offset To FLSA Overtime Premiums Owing Even Though Section 207(h) And The Court In Its September 25, 2007 Ruling Ordered That Only The Premium Component Of Overtime May Be Used As An Offset To Overtime Liability Under <u>The FLSA.</u>**

There are two elements to this objection arising from the Defendants' computations as related to Town details. Each is addressed in turn. (Slate Aff. at ¶¶23-27.)

First, turning to page 8 of Defendants' memorandum on damages, Defendants explain the method by which Defendants computed any underpayment of overtime for Town detail shifts. That explanation shows that Defendants have failed to include the straight time (flat rate) paid for town details in computing the FLSA regular rate, half of said FLSA regular rate being

the premium owing for each hour of overtime. Rather, Defendants have calculated the regular rate only by including regular shift (non-detail shift) compensation and wage augments. The FLSA regulations require that a "weighted average" of two straight time rates be used where an employee, as here, performs two distinct types of work. See 29 C.F.R. §778.115 (take weighted average of all straight time earned in a week where there are two straight time rates and divide by total hours worked). Plaintiffs on the other hand have complied with 29 C.F.R. §778.115 by correctly including all regular compensation, including straight time paid for regular shifts and straight time paid for detail shifts, and then dividing that amount by the total hours worked in the week to derive the FLSA regular rate in column CA of Ms. Slate's modified EXCEL Paybook on damages. Plaintiffs object to Defendants failure to compute back pay for Town details as required by the FLSA regulations. This defect in Defendants' calculations results in all overtime damages calculations being inaccurate for each Plaintiff for each week of the damages period. (Id.)

The following calculation shows that the Defendants' method of calculating overtime for Town details as described in the above paragraph would result in a computation of back pay for details that is $77.11 less than what it should be, as computed by Plaintiffs:

| | |
|---|---|
| Calculating "weighted average": | 40 regular shift hours @ 29.35 = $1174<br>12 hours @ 32.00 =     $384<br>Total ST =              $1558<br>Div. by 52 hrs = $29.86 FLSA regular rate |
| OT premium | ½ times $29.86 times 12 ot hours = $179.77 due, not $102.66 as computed by Defendant. |

(Id.; Slate Aff at ¶¶26-27.)

Second, in addition, at page 8 of the Defendants' memorandum, the Defendants' computations show that Defendants have used the straight time paid for Town details as an offset for the overtime premium owing. Defendants find that the total overtime rate is $40.56, and assuming that this were correct (and for the reasons stated above it is not), this implies that two third of that amount, $27.04, is regular compensation (ST component), and one third of that amount, $13.52, is the premium compensation (P component). Since Plaintiffs were paid *no premium* for each hour spent working Town details, the amount owing per hour, using Defendants' calculations, would be $13.52 per hour damages, not $8.56 per hour damages, as Defendants compute for the Check Date 11/7/2003 on page 8 of their memorandum. In effect, by finding a damages rate per hour representing the difference between what the overtime rate would be only in relation to regular shift hours (excluding detail hours), and the straight time paid for details, the Defendants are effectively using the straight time paid for Town details as an FLSA 29 U.S.C. Section 207(h) offset.

As directed by the Court in its September 25, 2007 ruling, only the premium component of compensation paid may be used as an offset under Section 207(h). (Id.)

Based upon the analysis above, Plaintiffs object to the Defendants' handling of Town details in its computation of damages in the two respects defined above. Plaintiffs computation of damages do not contain these errors and should be adopted.

### III.   CONCLUSION

Based upon the foregoing, as well as the analysis set forth in Plaintiffs' memorandum of law in support of its proposed interim calculation of damages, and the affidavit of Patricia Slate attached hereto, Plaintiffs respectfully submit the foregoing seven (7) objections to the Defendants' calculation of damages and request that the Court adopt the interim damages calculations of Plaintiffs.

    Respectfully submitted,

    For Plaintiffs,

    By Plaintiffs' Counsel:

    */s/ Jack J. Canzoneri*
    Jack J. Canzoneri, BBO #564126
    McDonald, Lamond & Canzoneri
    Cordaville Office Center
    153 Cordaville Road, Suite 210
    Southborough, Massachusetts 01772
    (508) 485-6600

Dated: March 29, 2008

## RULE 7.1 CERTIFICATION

I, Jack J. Canzoneri, hereby certify that I have conferred and have attempted in good faith to resolve or narrow the issue in the above-captioned matter and that counsel were unable to reach agreement. Opposing counsel has advised that Defendants' will respond to this motion.

Dated:  March 29, 2008          */s/ Jack J. Canzoneri*
                                Jack J. Canzoneri


## CERTIFICATE OF SERVICE

I, Jack J. Canzoneri, hereby certify that I have this day via the Electronic Case File system, served a copy of the foregoing upon opposing counsel John P. Flynn, Jr. Esq., Karis North, Esq., Kathryn Murphy, Esq., and Geoffrey B. McCullough, Esq., Murphy, Hesse, Toomey & Lehane, LLP, 300 Crown Colony Drive, P.O. Box 9126, Quincy, Massachusetts  02269.

Dated:  March 29, 2008          */s/ Jack J. Canzoneri*
                                Jack J. Canzoneri