THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Robert F. Murphy, III, Lead Plaintiff for Patrol Officer Plaintiffs, et al. and, <br><br> Brian C. Grassey, Lead Plaintiff for Superior Officer Plaintiffs, et al., <br><br>     Plaintiffs, <br><br>     v. <br><br> Town of Natick, et al. <br><br>     Defendants | USDC Case No.:  04-11996 RGS |

**AFFIDAVIT OF PATRICIA SLATE
REGARDING OBJECTIONS TO DEFENDANT'S
CALCULATION OF BACKPAY**

I Patricia Slate depose and affirm the following:

1.    I provided an affidavit previously in this litigation and my prior affidavit is incorporated for purposes of my background.  The testimony below is based upon my review of the Town's damages computations filed with the court and its memorandum of law and affidavits attached thereto explaining those computations.  For the sake of convenience there are headings in this affidavit below which correlate the paragraphs of my testimony in this affidavit with each enumerated objection set forth in Plaintiffs' memorandum of law in support of its objections.

1

Objection No. 1

2. At the top paragraph of page two of Defendants' memorandum Defendants state that they extrapolated by dividing the amount owing for the partial 57.5 month period by .9055. Although I do not believe such extrapolation is necessary, assuming it was, this would be a correct mathematical method of extrapolating damages from the 57.5 months partial period to the full 63.5 months full period (57.5 div. by 63.5 = .9055).

3. However, extrapolation is not proper here because officers' rates of pay increased over the damages period. Therefore an extrapolation would be based upon income from earlier years with lower rates of pay to find income that would be paid in 2007 and 2008 when officers were paid at higher rates. The result would be an extrapolation which would understate the backpay amounts.

4. In addition, even if it were acceptable to extrapolate from years with lower rates of pay, Defendants state in the third paragraph of page two of their memorandum that Defendants extrapolated by multiplying the total known backpay by 109.45%. However, this would *not* result in an accurate extrapolation. The following example involving Murphy demonstrates the flaw in Defendants computations in this regard. Defendants find that Murphy is owed $309.32 for the 57.5 month period and they extrapolate a final figure of $341.60. (See Exhibit A of Def. Memo. Int. Damages.) If $309.32 is divided by .9055, the correct result is $341.60. However, if the extrapolation was computed by multiplying the 57.5 month partial period by 109.45%, as the

2

Defendants state in the last paragraph of page 2 then the result would be $338.55, about three dollars less than the result if the correct computation is performed. If this method (of multiplying by a percentage) was used then the correct multiplier would be 110.4362% (i.e., $309.32 x 110.4362% = $341.60).

5. I see no reason that an extrapolation is necessary at this point since data is available, such as that which I used through November 7, 2007 in my own computations, which permits a calculation of the actual amount owing to present.

Objection No. 2

6. In its computation of damages Defendants state at page 3 of their memorandum, footnote 6, that wage augments "were added into the total only on the date paid and not spread out over the year." Plaintiffs in their own computations have allocated all wage augments over an annual, 52 week period, rather than to a single week.

7. The Department of Labor during my thirty-four year tenure there would take a one time payment of money that constitutes regular income and allocate that income over the period in which it was earned, which in this case is the contract year during which the officer qualified for it, rather than attributing it to the pay week in which it was paid as Defendants have done here. This is in accordance with FLSA regulations. See 29 CFR §785.209 (Method of inclusion of bonus in regular rate) and 29 CFR 785.120 (Deferred commission payments not identifiable as earned in particular workweeks).

8.    The idea of crediting payment in one arbitrary pay period when the employer issues the payment is not acceptable. The effect of this would be to hugely increase the regular rate in that particular workweek and would increase the overtime rate only in that week if the office happened to work overtime the week that the differential was paid. An employer could easily avoid all overtime relating to wage augments by paying them all in one single week, and choose the week based upon when it noted that the employee worked no overtime.

Objection No. 3

9.    At page 4 of its memorandum Defendants explain that they totaled the "wage augments paid that week . . . and divided by 40 to provide the addition to the hourly rate due to the augments (sum of augments/40 = hourly rate attributable to augments)." (Def. Memo. Int. Damages at page 4.) This is not the method that I applied in computing backpay. Instead, I applied the methodology required by the Court's September 25, 2007 ruling, and Judge Ponsor's specific ruling on this issue cited in footnote 11 of the Court's ruling. Consequently, the total annual base salary must be divided by the hours they were intended to compensate or 1946.56 hours, as explained in my prior affidavit.

10.    Based upon my review of the collective bargaining agreement and payroll records, under no circumstances can the base salary be conceptualized as compensation for 2080 hours per year as Defendants' have done in their calculations. In particular 2080 hours is the traditional 40-hour-per week, 5-

4

day per week, work week, and for the reasons stated in my prior affidavit that traditional workweek is not applicable here. Therefore, Defendants have no basis whatsoever to divide the weekly salary payment by 40 (2080 per year) where the annual salary is based upon working 1946.56 per year. The result of Defendants' approach is that the regular rate is artificially lowered by dividing the regulation compensation by a higher denominator and this in turn results in a corresponding overtime premium that is lower than required and in violation of the Court's specific direction on this issue in footnote 11 of its ruling on the motions for summary judgment.

Objection No. 4

11. Defendants allocate overtime hours at Tab A of each exhibit that they filed in support of their damages computations to a pay period one week later than the pay period in which the hours were actually worked while leaving other data in the correct pay period, and this results in a systematic erroneous calculation of total hours worked each pay period.

12. The following example from the Check Date column 9/2/2003 of Defendants' charts for Robert Murphy (Exh. 1, Tab A) illustrates this issue: Defendants find 16 hours of overtime on the Check Date 9/2/2003, as well as 8 hours of vacation time, for a net of 48 total hours worked, 8 hours of overtime. However, the 8 hours of vacation and the 16 hours of overtime did not transpire in the same pay period. Rather, in the prior week Murphy worked the 16 hours of overtime, and in the next pay period he took the paid vacation day off. Therefore, contrary to Defendants' findings, Murphy actually

was due 16 hours of overtime, not 8 hours.  *Defendants' have found 8 hours of overtime for the column 9/2/03 rather than 16 hours that he actually worked only by the expedient of applying the vacation day from one week, to the prior week when he worked the 16 hours of overtime.*  In the discussion which follows I explain why this inaccuracy persists through all of Defendants' calculation of hours worked each week.

13.    Defendant's charts, Exhibits 1 to 49, at Tab A, have a section (at the top of each page) that states additional hours worked.  Along the top of each page is a date, such as "9/25/2001", "10/2/2001", "10/9/2001", "10/16/2001", etc., in a row that is entitled "Check Date".  Below this Defendants list seven (7) categories of overtime:  "Holiday-Day", "Holiday-Night", "OT Day", "OT Night", "Court OT Day Rate", "Patrol Officers Detail", "Lieuts/Sergs Details".  According to Defendants, a number listed in any of these rows indicates the number of hours of overtime paid on the paycheck issued on that "Check Date" under that category.

14.    Overtime paid in a paycheck issued on a pay date is compensation for overtime hours worked in a pay period that ended *seven days earlier*, not on the date the paycheck was issued.  For example, the pay period for this employer is seven days starting on a Wednesday and ending on a Tuesday, and the check date is one week after the Tuesday that ended the pay period.  In particular, e.g., Check Date of Tuesday November 27, 2001 listed on Defendants' charts is compensation for the pay period Wednesday November 14 to Tuesday November 20, 2001.  However, on Defendants' charts, overtime

hours compensated for on the *check date* 11/27/01 is allocated as though it were hours worked on the PPE *ending* 11/27/01 (Nov. 21 to 27), even though said overtime was actually worked seven days earlier on the PPD *ending* 11/20/01 (Nov. 14 to 20).

15.   If all data were equally shifted one week forward or backward, the inaccuracy would be less concerning.  But other data listed under the column for each Check Date is correctly located in that column.  In this regard, it should be remembered that officers on a 4-2 schedule work a pattern of four consecutive weeks of regular shifts comprising 40 hours (5 shifts in 7 day period), followed by two consecutive weeks of regular shifts comprising 32 hours (4 shifts in 7 day period).  Defendants' charts use the expression "base hours" at the twentieth (20th) row for this concept of "base hours" and "base hours" are represented in a pattern of 40-40-40-40-32-32, every six weeks.  Defendants' have added gray shading to the cells in this row where the officer was scheduled 32 base hours.  In addition, the category on Tab A of Defendant's charts contains entries for hours of paid time off, "Sick Day", "Vacation", and "Personal Day" and this is also properly entered in said column.

16.   The result of the foregoing error in Defendants' configuration of data is that Defendants' computations contain a systematic inaccuracy that results in overtime hours worked, paid days off (sick, vacation, personal), and base hours (4-2 schedule pattern) *of the same pay period* being placed in *two different pay periods*.  The resulting computation of hours worked is inaccurate

7

for all weeks and so is Defendants' resulting calculation of overtime. For Defendants' charts to have an accurate methodology two changes would be necessary: (1) the heading "Check Date" would have to be changed to read "Pay Period Ending Date" (or "PPE"); and (2) hours of overtime logged under the categories from "Holiday-Day", "Holiday-Night", "OT Day", "OT Night", "Court OT Day Rate", "Patrol Officers Detail", "Lieuts/Sergs Details" would have to be *moved one column to the left to the prior pay period.*[1]

Objection No. 5

18.    Upon reviewing the calculations of Defendants it appears that Defendants have apparently excluded details from its list of Town details where the Town work is executed by contractors retained by the Town to perform such work, and instead limited Town details to instances where such Town work is executed by Town employees.

Objection No. 6

19.    At the top of page 5 of its memorandum Defendants state: "The totals for 2002 were multiplied by .25, to account for the fact that only approximately 25% of the 2002 (9/15/02-12/31/02) is at issue in this filing." This extrapolation (i.e., in addition to the extrapolation of payroll from June 30 to December 31, 2007 mentioned above) is not necessary. We have data to directly compute this period and no extrapolation is necessary.

---

[1] The other way to modify Defendants' charts would be to leave the paycheck ending date as is, and do the reverse: (1) leave the overtime hours where they are; (2) move the paid time off and base hours (4-2 schedule pattern) one column to the right.

20. Assuming that a 2002 extrapolation was to be performed, however, Defendants have used an inaccurate calculation to extrapolate. Defendants took the 2002 payroll computations and then took 25% of that amount to find payroll for the period 9/15/02 to 12/31/02. Twenty-five percent (25%) of a year is three months, yet the period contemplated from September 15 to December 31, 2002 is three and a half months (3.5 months). If extrapolation were to be performed, it would be based upon the following formula: 3.5 months/12 months = 29.2%.

21. The result of this is that Defendants' extrapolation for 2002 is inaccurate.

Objection No. 7

23. Turning to page 8 of Defendants' memorandum, Defendants explain the method by which Defendants computed any underpayment of overtime for Town detail shifts. That explanation shows that Defendants have failed to include the straight time (flat rate) paid for town details in computing the FLSA regular rate, half of said FLSA regular rate being the premium owing for each hour of overtime. Rather, Defendants have calculated the regular rate only by including regular shift (non-detail shift) compensation and wage augments. The FLSA regulations require that a "weighted average" of two straight time rates be used where an employee, as here, performs two distinct types of work. See 29 C.F.R. §778.115 (take weighted average of all straight time earned in a week where there are two straight time rates and divide by total hours worked). On the other hand when I computed backpay I complied

9

with 29 C.F.R. §778.115 by correctly including all regular compensation, including straight time paid for regular shifts and straight time paid for detail shifts, and then dividing that amount by the total hours worked in the week to derive the FLSA regular rate in column CA of my modified EXCEL Paybook on damages. This defect in Defendants' calculations results in all overtime damages calculations being inaccurate for each Plaintiff for each week of the damages period.

24. At page 8 of the Defendants' memorandum, the Defendants' computations show that Defendants have used the straight time paid for Town details as an offset for the overtime premium owing. Defendants find that the total overtime rate is $40.56, and assuming that this were correct (and for the reasons stated above it is not), this implies that two third of that amount, $27.04, is regular compensation (ST component), and one thirds of that amount, $13.52, is the premium compensation (P component). Since Plaintiffs were paid *no premium* for each hour spent working Town details, the amount owing per hour, using Defendants' calculations, would be $13.52 per hour damages, not $8.56 per hour damages, as Defendants compute for the Check Date 11/7/2003 on page 8 of their memorandum.

25. By finding a damages rate per hour representing the difference between what the overtime rate would be only in relation to regular shift hours (excluding detail hours), and the straight time paid for details, the Defendants effectively use the straight time paid for Town details as an FLSA 29 U.S.C. Section 207(h) offset. As directed by the Court in its September 25, 2007

ruling, only the premium component of compensation paid may be used as an offset under Section 207(h).

26. These two flaws in Defendants' computations of overtime for details have resulted in further, significant defects in the calculation of damages. The computation of damages that I prepared does not contain these errors.

27. The following calculation shows that the Defendants' method results in a computation of premium compensation owing for details that is $77.11 less than what it should be, as computed by Plaintiffs:

| | |
|---|---|
| Calculating "weighted average": | 40 regular shift hours @ 29.35 = $1174 |
| | 12 hours @ 32.00 =     $384 |
| | Total ST =              $1558 |
| | Div. by 52 hrs = $29.86 FLSA regular rate |
| OT premium | ½ times $29.86 times 12 ot hours = $179.77 due, not $102.66 as computed by Defendant. |

Affirmed this 27th day of March, 2008 under the pains and penalties of perjury:
*s/Patricia Slate*
Patricia Slate
12 Regina Road
Newton, Massachusetts