THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

NO. 04- 11996-RGS

————————————————————— )
Robert F. Murphy, III, Lead Plaintiff for        )
     Patrol Officer Plaintiffs, et al.            )
                                                      )
and                                             )
                                                      )
Brian C. Grassey, Lead Plaintiff for             )
     Superior Officer Plaintiffs, et al.          )
            Plaintiffs,                        )
                                                      )
v.                                              )
                                                      )
Town of Natick, et al.                           )
            Defendants.                        )
————————————————————— )

**<u>DEFENDANTS' OBJECTIONS TO PLAINTIFFS' PROPOSED INTERIM
DAMAGES FILING AND RESPONSE TO PLAINTIFFS' OBJECTIONS TO
DEFENDANTS' PROPOSED INTERIM DAMAGES FILING</u>**

      Defendants, Town of Natick, Natick Police Department, and Chief Dennis R.

Mannix (in his capacity as Chief of Police) (collectively "Defendants" or "Town"),

respectfully submit the following objections to Plaintiffs' Proposed Interim Form of

Judgment filing, and a response to Plaintiffs' objections to Defendants' Proposed Interim

Form of Judgment (a.k.a. "damages") filing.

      The parties submitted Proposed Interim Forms of Judgment to this Court on

February 5, 2008.  Those filings included comprehensive calculations of damages owed

to each eligible Plaintiff, explanation of the methodologies utilized in making those

calculations, and the underlying documentation supporting the calculations.  The

Proposed Interim Forms of Judgment encapsulated a 2-year "look back" period and

included liquidated damages, pursuant to this Court's Memorandum and Order on

Summary Judgment of September 24, 2007 ("Order"). On March 29, 2008 Plaintiffs filed Objections to Defendants' Calculations of Backpay. Today Defendants' file their own Objections to Plaintiffs' Calculations, as well as a Response to Plaintiffs' Objections.

## I. Objections to Plaintiffs' Interim Damages Filing

### A. Improper Calculation of the Overtime Liability.

#### 1. There Are No Damages Available for Non-FLSA OT Hours.

Plaintiffs' submission to the Court includes a substantial element of damages for contractual overtime which is non-FLSA overtime. They have included and calculated damages based on non-FLSA overtime. In terms of the actual calculations, this means that if a Plaintiff only actually worked 30 hours in a work week, but because of the Collective Bargaining Agreement ("CBA") was entitled to and was paid for 8 hours of contractual overtime within that 30 hours, Plaintiffs' calculation includes an element of damages based on that 8 hours of contractual overtime, which is clearly *not* FLSA overtime. Under no circumstances are Plaintiffs' entitled to any damages on any hour which is a non-FLSA overtime hour. These must be removed from the calculation.

It is clear from the face of the Complaint, the Summary Judgment pleadings, and the Court's Order that non-FLSA overtime hours are not and were never at issue in this case. Plaintiffs' calculations are wholly unsupported in law and fact, and directly in opposition to this Court's Order which limited the Plaintiffs' damages to recovery of unpaid FLSA overtime, *only*.

2.    **The Base Regular Hourly Rate Was Never At Issue In this Litigation and is Not a Damages Amount.**

This litigation is a case which deals with the inclusion of multiple wage augments utilized to calculate the FLSA "regular rate" for purposes of calculating FLSA overtime.[1] At issue is the inclusion of wage augments in the FLSA overtime payment to Plaintiffs The base regular rate used for calculating overtime (prior to including any augments), has never been at issue in this case, and it is improper to raise it for the first time in this damage analysis.  This case is not and never has been about recalculating that base regular rate, i.e., the Plaintiffs' base regular rate which is set through the CBAs.[2] Plaintiffs' damages calculations attempt to add in an issue which was never litigated, and seemingly seek an increase in the base regular rate in order to enhance their damages.

Plaintiffs' Proposed Interim Form of Judgment filed on March 8, 2008, as well as their Objections to Defendants' filing of March 29, 2008 attempt to create facts and extend the potential damages far beyond those which were ordered by this Court, or previously contested in this case.  In particular, the Plaintiffs attempt to recalculate their base regular rate and thus artificially inflate their damages.

The base regular rate is the base rate, prior to any augments being included, which was used by the Town to calculate overtime due to Plaintiffs on a weekly basis.  The base rate used by the Town to calculate overtime was never an issue in this litigation, and cannot be raised as a new issue now.  The Order is clear, that the FLSA "regular rate" must include various wage augments which the Plaintiffs sought to have included and

---

[1] Other issues in this litigation, including the reclassification of details as regular hours worked are discussed elsewhere.  The question of the exemption of Superior Officers is not at issue for purposes of this filing.

[2] References to the CBAs, which are part of the Summary Judgment record, are limited to those setting forth the terms and conditions of employment for the Patrol Officer Plaintiffs only.

which the Court ruled were proper wage augments for inclusion in the calculation of the

FLSA regular rate – i.e., the longevity pay, career-incentive pay, assignment differentials,

community service pay, and CompStat pay. Order at 3-4.  The Court did not order, nor

was it asked to rule upon, a different calculation of the base rate used by Defendants.

   The scope of the relief which may be awarded to Plaintiffs is limited to the issues

raised in Plaintiffs' Complaint, the various Summary Judgment pleadings, and the Court's

opinion on Summary Judgment.  These documents make clear that the damages analysis

in this case focuses on three calculations, only.  The Plaintiffs attempt to add damages

and make elaborate calculations based upon some new base regular rate is an attempt to

add issues and ideas that are not before this Court, were not litigated and are not part

of the Court's Order and thus should not be permitted.

   The damages at issue in this case involve three items:

   a.  For augments, a calculation of what additional overtime would have been due

if the augments were included in the regular hourly rate of pay for FLSA overtime hours.

See Amended Complaint, Count I, ¶ 16 ("Defendants have violated and continue to

violate the FLSA by failing and refusing to pay in a willful and intentional manner to pay

Plaintiffs the proper amount in cash overtime compensation due them under the FLSA

and its implementing regulations, *specifically by failing to include multiple wage

augments that Plaintiffs received in calculating the 'regular rate' and corresponding

FLSA overtime rate*.") (emphasis added).

   b.  For reclassification of certain work to regular town work from special detail

work; a calculation of the difference between the amount the Plaintiffs were paid when

the work was classified and paid as details and the amount the Plaintiffs would have been

paid if that same work had been classified and paid as regular work hours at the regular rate, including overtime where that work pushed their total hourly work to over 40 hours in a work week. <u>See</u> Amended Complaint, Count II, ¶ 19(b) ("Defendants have violated and continue to violate the FLSA by failing and refusing in a willful and intentional manner: . . . (b) to pay Plaintiffs at the applicable overtime rate under the FLSA for time spent working Town and forced details.").[3]

c. The total credits available to the Town where the Town paid the Plaintiffs overtime by contract where it is not required under the FLSA. <u>See</u> Memorandum and Order on Cross-Motions for Summary Judgment at 12 (9/25/07) ("The Town is entitled to credit the premium portions of all contractual overtime payments on a cumulative basis as earlier specified.")

In their Motion for Summary Judgment Plaintiffs moved for Summary Judgment and argued that Defendants' improperly calculated the FLSA regular rate by failing to include certain wage augments and differentials into that regular rate. Plaintiffs' Motion for Summary Judgment at ¶ 1(a), (b). Their Motion, and their supporting briefs *never* contests the base regular rate. Certainly that issue was never raised because it is also not addressed in Defendants' briefing either.

At oral argument, the Court went over the issues in contention, and asked the parties to sign off on that list. That list of issues never included the recalculation of the base regular rate, which Plaintiffs attempt to do here. With regard to the FLSA overtime calculation, the litigation was limited to the issue of whether or not augments should be

---

[3] Plaintiffs have conceded that there are no forced details in Natick.

included, and had nothing at all to do with whether or not a different base hourly rate

should have been used – the base hourly rate used was and is *undisputed.*

Finally, the Court's Order is clear. It states: "Plaintiffs are entitled to have all

wage augments included in the calculation of their regular rate, and to be paid FLSA

overtime for performing Town Details." Order at 12. The Order extends to the

recalculation of the FLSA regular rate used for calculating overtime, but does not address

recalculation of the base hourly rate because it was never at issue in this litigation.

Where the Court directs the parties to the <u>Agawam</u> case for instruction on methodology

for calculating the FLSA regular rate, it does so in the context of including wage

augments and utilizing the appropriate methodologies only. This court never ordered that

base hourly rate be recalculated in a vacuum, so as to mirror <u>Agawam</u>. As set forth in

more detail in part I.A.3. *infra*, some of the material facts in <u>Agawam</u> are different than

the material facts in this case.

Plaintiffs recalculations of base regular rate and subsequent adjustments to all

overtime hours for what they claim are increased regular hourly rates are issues and

damages not ever set forth in the Complaint or Summary Judgment briefings, not the

subject of the current litigation, far beyond the scope of the current litigation, and not

ordered by this Court. Plaintiffs' attempts to increase their damages award via this wholly

new issue should be rejected.

3.     **Plaintiffs Improperly Inflate Their Damages
Calculation by Improperly Utilizing an Annual Hours
Worked Which Is Not Part of This Contract.**

Damages available to the Plaintiffs are limited to the additional overtime which

would have been paid if augments, ordered by the Court to be included, were in fact

included in overtime.  Defendants object to Plaintiffs calculation in this regard which is

based on a 1944.56 annual hours worked basis.   Plaintiffs base this analysis on a

reference in the Court's Order directing the parties to an opinion from the <u>Agawam</u>

litigation for opinion for guidance on how to calculate the FLSA regular rate, not to

determine the facts of this case. Order at 12, n. 11.   In <u>Agawam</u>, the court looked to the

collective bargaining agreement to determine the number of hours worked by the

Plaintiffs in the year.  The same should be done here.

Plaintiffs' argue that Defendants have "no basis whatsoever" to divide the weekly

salary payment by 40.  This is patently incorrect.  The Defendants' analysis and

methodology is correctly based on the applicable Collective Bargaining Agreement(s)

("CBAs"), ongoing payment practices, and the allegations set forth in Plaintiffs'

Complaint.

Under the applicable CBAs, and payment practices, the Natick Officers are paid

for and considered to work 40 hours per week, even if they actually work less hours.[4]

Their annual salaries, and calculation of overtime are based on a 40-hour work week, and

the negotiated-for CBAs specifically state that their base hourly rate "shall be determined

by dividing the weekly salary by 40 hours."

This is an entirely different factual situation than the facts in the <u>Agawam</u> case

---

[4] It is perfectly appropriate under the FLSA for an employer to pay an employee for more hours than
actually worked.

where there was no dispute that the CBA in that case intended to pay the officers for 1950 hours annually. See O'Brien v. Agawam, 350 F. 3d 279, 282 (1st Cir. 2006); see also O'Brien v. Agawam, 440 F. Supp. 2d 3, 11 (D. Mass. 2006) ("[I]t is undisputed that Plaintiffs' annual salary is actually based on 1950 hours per year, . . ."). Here, the parties agreed, or it has certainly never previously been in dispute, that the Plaintiffs are paid for a 40-hour work week. See Amended Complaint ¶ 11 ("Plaintiffs are scheduled to work a forty-hour work week, . . ."); see also CBAs at Art. VI. There is absolutely no reference to an expected or contracted for annual "hours worked" in the Natick CBAs.

This Court's Order referred the parties to Agawam for guidance in calculating the regular rate, but never required the parties to use the exact number of hours of worked per year as the basis for the damages calculation, as set forth in Agawam. To be useful in this case, the guidance drawn from Agawam must be applicable to the specific facts of this case. As outlined above, there is a major difference between the facts in Agawam and the facts here - namely, here, there is no contractual provision which states that Plaintiffs are paid based on an annual expectation of 1950 hours worked. The Natick CBA is silent as to the total number of annual hours worked, but does specifically state that the Plaintiffs are paid based on a 40-hour workweek, the actual payment practices reflect that fact, and the Plaintiffs also recognized this fact in their Amended Complaint.

The Defendants' methodology in calculating the FLSA overtime due more properly compensates Plaintiffs based on the facts of *this* case, and consistent with Agawam. That methodology takes into account the guidance from Agawam, and more closely than the Plaintiffs' figures applies the guidance from Agawam in a thoughtful and accurate manner. As stated by Judge Ponsor, "the measuring rod for statutory liability

remains the individual workweek." <u>Agawam</u>, 440 F. Supp. 2d at *12.

### B. Calculation Methodology for Details

#### 1. Improper Use of the Detail Rate to Calculate the Overtime Rate

Plaintiffs improperly add *detail pay rates* (as opposed to the regular hourly rate used for regular work hours) to the regular rate determination to determine FLSA overtime due resulting from the reclassification of certain details. The actual issue before the Court with respect to FLSA overtime pay attributable to details is determining the proper measure of damages based on the Court's reclassification of certain details as regular hourly work, as opposed to detail work (which hours are not included as regular work time).

That the Plaintiffs cannot manipulate the damages figures such that they receive a windfall is a well-established principle of law in the First Circuit. Nor can they succeed in their claim that the Town may not offset payment for detail hours at the higher detail rate, which when reclassified become hours worked at the regular hourly rate. Instead, the issue of a remedy under the FLSA, which is a distinct determination from liability, is based on equitable principles. <u>See  Lupien v. City of Marlborough</u>, 387 F. 3d 83, 88-90 (1st Cir. 2004). In <u>Lupien</u>, the Court discussed both its <u>Agawam</u> decision, and its opinion in <u>Roman v. Marietta Construction</u>, 147 F. 3d 71 (1st Cir. 1998) and specifically recognized that remedies apply equitable principles. In discussing <u>Roman</u>, the Court found that as party of a remedy, it was permissible to offset (or partially offset) FLSA liability with paid time off. Here, the same concepts apply. It is equitable to allow the Town to offset FLSA liability for details reclassified as regular hours worked, eligible for

FLSA overtime, with the difference in pay between details (which is paid at a premium rate) and the regular hourly base rate.

To establish the correct measure of damages here, the hours are simply reclassified as regular work hours and paid as though they were regular hourly work, at their regular rate, not at the detail rate. Then, those increased work hours are evaluated to determine what amount of money the Plaintiffs would have received had the work been classified according to the Court's opinion in the first instance. As discussed above, the Town may then take an equitable credit for what was actually paid *above* the regular hourly rate.

Plaintiffs again attempt to artificially inflate their damages by including the detail rate into the regularly hourly rate of pay, based on an argument that they may use a "weighted average" of two straight time rates where an employee "performs two distinct types of work." This argument should be rejected straight out of the box because Plaintiffs are trying to have their cake and eat it as well. Plaintiffs have argued successfully for the fact that "special details" worked for the Town are in fact not details at all but are regular town work. The clear result of this argument is that hours worked which were formerly worked as details, and paid as details, are now reclassified and worked and paid as regular work hours, which are then eligible for FLSA overtime. As a result, the straight time rate which applies to detail work is the exact same straight time work which applies to regular police work – since it is classified as the same work. This concept is supported by language in the CBAs which states: "Compensation for Extra Paid Details provided for in Article XVIII shall not be covered by this Article." CBA Art. VI (referring to section of Art. VI which specifies the overtime rate).

As in any damages calculation, the goal is to make the Plaintiffs whole and provide them with liquidated damages on that "make whole" amount. The damage analysis is not supposed to provide the Plaintiffs with an unintended windfall. "The FLSA's aim is that Plaintiffs are entitled to be made whole, not to a windfall at Defendant's expense." Ayers v. SGS Control Services, 2007 WL 3171342 (S.D.N.Y.), (quoting Lupien v. City of Marlborough, 38 F.3d 83 (1st Cir. 2004)); see also Roman v. Marietta Const., 147 F.3d 71 (1st Cir. 1998); Bell v. Turkey Growers Corp., 407 F. Supp 2d 1051 (S.D. Iowa 2006) (all cases dealing with fluctuating work week calculations); Johnson v. Martin, 473 F.3d 220 (5th Cir. 2006) (back wages in a FLSA retaliation case); Howard v. City of Spring, IL 274 F.3d 1141 (7th Cir. 2001).

The damages calculation for reclassifying certain work time as regular hours worked for the Town, as opposed to detail hours which are not included in regular hours worked for the Town, is straightforward. As outlined in Defendants' Proposed Interim Form of Judgment, those hours are reclassified and a determination is made as to what the officer would have received if the time was paid as regular work time, including any overtime pay, as opposed to what the officer received having those hours paid as non-work time at the detail rate.

The Plaintiffs attempt in their calculation to be paid overtime based on an increase to their overall hourly rate for the week by including the higher detail rate as part of their regular hourly rate, thus increasing their regular rate for overtime purposes. This methodology is not only inconsistent with the Court's Order and the Plaintiffs' Complaint and previous arguments, it also creates an unintended and unfair windfall to the Plaintiffs not anticipated by a true reclassification of the hours. It incorrectly suggests that the

Plaintiffs can be paid at a higher detail rate even where the work is determined not to be "detail" work under the contract.

When a police officer performs work outside of his or her regular shift, under the FLSA that work is compensated in one of two ways, depending upon whether the time is worked as part of regular town work time or as detail work. See 29 U.S.C. § 207(p)(1). A full analysis of this discussion appears in the Summary Judgment briefs in this matter.

    a.    If the work is regular town police work, it is compensated based on the employee's regular hourly rate of pay; it is paid at an overtime rate established by the contract; and it is included in hours worked for purposes of determining FLSA overtime hours.

    b.    If the work is "special detail" work, it is not part of regular police work, it is paid under the contract at a separate higher detail rate; overtime is never paid for hours classified as detail work; and the FLSA does not require that details be included in regular work time. See 29 U.S.C. § 207(p)(1).

The Plaintiffs claimed in this case that certain work performed by them for the Town was improperly classified by the Town and paid as "detail" work. The Plaintiffs claimed that this work should have been paid to them as though it were regular work time, as it was performed for the Town or its subdivisions, and thus should have been included in hours worked for purposes of determining FLSA overtime. See Complaint Count II, ¶ 19(b). In other words, the Plaintiffs claimed that this Town work was not detail work at all but was regular hourly work subject to FLSA overtime.

Plaintiffs sought to have this court reclassify this work out of the detail category, and reclassify it to regular hours worked; paid at the employees regular rate (not detail

rate) and paid at an FLSA overtime rate where it placed the Plaintiff is a situation of working FLSA overtime.

The Court accepted the Plaintiffs argument with regard to certain categories of this Town detail work, determined that it was regular work time, and that is was not properly classified as detail work because it was performed for the Town.  The Order required the work be reclassified to regular work time, paid at the regular rate, and paid at an appropriate FLSA overtime rate where the work was performed in instances where the employee was in an FLSA overtime situation.

Under a proper damages analysis, and consistent with other cases where the Courts have deemed work classified as detail work to in fact be regular work time, the Defendants were required to reclassify the "detail" time to regular work time, in order to determine what the officers pay should have been, if paid at their regular hourly rate, including overtime where applicable.  In other words, if a Plaintiff worked 8 hours performing work which this Court deemed to be regular work time, and not detail time as it was paid, the proper calculation of damages would be to reclassify the hours to regular work time, and determine what the amount of pay the employee would have received had he or she been paid her regular rate, plus FLSA overtime where appropriate.   The difference between that number and the amount paid to the Plaintiff under the misclassification of the work as detail work would be the damage calculation.  The example set forth below (which is not based on any one Plaintiff, but is only a generic example) is illustrative of this point.

> If a Plaintiff worked 8 hours in performing a job that was classified by the Town as "detail" work and Plaintiff's detail rate was $30 per hour, then Plaintiff was paid $240 for performing this 8 hour detail.  At this time,

detail work was paid separately, and not counted towards
FLSA overtime.

The Plaintiff then filed a complaint alleging that the
8 hours paid to him as detail work was actually regular
work time, and should have been paid to him as regular
work, including overtime where the hours performing this
work caused the employee to exceed 40 hours of work in
the workweek.  A court agreed that certain details should
be reclassified as Town Details.

The Plaintiff's regular hourly rate for non-detail
work was $22 per hour.  Assuming this 8 hours was all
worked during overtime hours, once reclassified it should
have produced total income to the Plaintiff of $264 (8 X 22
X 1.5).  As a result, the damages to the Plaintiff for
improper classification of the work as detail work, not
subject to or included in regular work time, is $24 for this
assignment. ($240 paid as detail work, less the $264 that
should have been paid if the work were classified as regular
work time/FLSA overtime).

Using the numbers above, instead of determining what the 8 hours of work would
have been paid at if it had been classified as Plaintiffs allege, and despite the fact that is
should have been paid at the regular hourly rate, the Plaintiffs still try to use the inflated
detail rate to determine damages.  Further, the Plaintiffs seem to use this inflated regular
hourly rate to increase their overtime in general on all hours worked that week, including
hours unrelated to the detail. In other words, it appears the Plaintiffs are claiming that
they were paid $30/hour for the 8 hour detail.  When it is "reclassified" they claim that
the rate at which this reclassified work is paid remains the "detail" rate, so that when the
hours are included in hours worked, and takes the Plaintiff over 40 hours/week, then their
FLSA OT rate would be ($30 X 1.5) = $45/hour.  For 8 hours of work, that would result
in a total due of $360, and an inflated damages calculation of $96.  Compared to the $24
of damages potentially awarded under the proper analysis, set forth above and in

Defendants' filing, it is clear that the Plaintiffs' calculations are grossly and improperly inflated and should be rejected.

As set forth in the example above, the Plaintiffs are trying to have it both ways. They are asking the Court to endorse a damages analysis that does not reflect what would have happened had the work not been misclassified as detail work, and an analysis which could never happen in the future when the work is classified as regular work time as opposed to detail time.  In short, the Plaintiffs are asking this Court still allow them to use the higher detail rate as their regular rate of pay for this reclassified work, which they themselves have argued should not have applied.  In other words, using the example above, the Plaintiffs would not reclassify the work and pay it as regular work time, but instead, they ask the Court to provide them time and one half of the detail rate.  Or, they included the higher detail rate (which they claim should not have been paid) to create an artificially inflated regular rate of pay and damages.

### 2.    Improper Inclusion of Subcontractor Work into Town Details.

Plaintiffs improperly reclassify more details than this Court has allowed, as Town Details.  In the Summary Judgment papers the Plaintiffs' argued for the concept that any detail worked for a department of the Town was work for the Town, and thus creditable as regular hours worked, no separate detail work.  In defining these "Town Details" the Plaintiffs also appear to now assert that "Town Details" include work performed by private subcontractors to the Town.  This assertion goes beyond the scope of the of this Court's Order.

In that ruling the Court specifically limited its ruling on "Town Details" to work performed directly for other Town entities, outside the Police Department.  As noted in

the Order, "it is nonetheless apparent from the parties' submissions that the Town is not and cannot be deemed an entity 'separate and independent' from any of its constituent departments." Order at 5. Therefore, "Town Details" are only those worked for other departments of the Town, not those worked for private subcontractors.

The examples analyzed by the Court further bolster this argument. In rendering its decision, the Court mentions traffic and crowd control at events held by the Town Recreation Department, the Department of Public Works, and by Natick High School. Order at 4. Nowhere in the Order is "private subcontractors" even mentioned or specifically dealt with. Here, Plaintiffs are trying to do nothing more than bootstrap further hours and situations not contemplated by the Court's Order into their damages analysis. This Court should reject that attempt.

## C.     Improper Allocation of Community Service Pay

Plaintiffs improperly allocate the Community Service ("CS") pay over the entire year in which it was earned. Defendants allocated the CS pay to the pay period in which it was actually paid. While the overall impact in the actual damages calculation is likely to be *de minimis*, Defendants' methodology is the one which is more firmly grounded in the facts and the applicable regulations.

Plaintiffs argue incorrectly that the CS pay should be allocated over the entire year, once it was actually earned in that year. In making this argument, Plaintiffs attempt to correlate CS pay with bonus pay or deferred commissions, yet do so incorrectly.[5]

Under the undisputed terms of the CBA, CS pay is a once-a year payment made when an officer completes eight or more actual hours of community service work which

---

[5] Plaintiffs also cite to the incorrect portion of the regulations. 29 CFR 785.209 and 29 CFR 785.120 do not exist. The applicable regulations are found at 29 CFR 778.209 and 778.120.

is pre-approved by the Chief. CBA at Art. XXXV. Once those eight hours are completed, and the proper paperwork is submitted by the Officer, the annual payment is made. The payment is only made to the officer when earned, which means it can be awarded at any time during the pay year, but it must be awarded when it is earned and there is no discretion as to when it is paid. If the required amount of hours are not accrued the payment is not made.

Under the correct damages analysis the CS pay may be allocated either: (1) by crediting it in the week it which earned, or (2) by crediting it in the week in which it was paid and then allocated backward over the pay periods in which it was actually earned.

The applicable regulation states:

> No difficulty arises in computing overtime compensation if the bonus covers only one weekly pay period. The amount of the bonus is merely added to the other earnings of the employee (except statutory exclusions) and the total divided by total hours worked.

29 CFR 778.209 (a).

Or,

> Under many bonus plans, however, calculations of the bonus may necessarily be deferred over a period of time longer than a workweek. In such a case the employer may disregard the bonus in computing the regular hourly rate until such time as the amount of the bonus can be ascertained. Until that is done he may pay compensation for overtime at one and one-half times the hourly rate paid by the employee, exclusive of the bonus. When the amount of the bonus can be ascertained, it must be apportioned back over the workweeks of the period during which it may be said to have been earned. The employee must then receive an additional amount of compensation for each workweek that he worked overtime during the period equal to one-half of the hourly rate of pay allocable to the bonus for that week multiplied by the number of statutory overtime hours worked during the week.

29 CFR 778.209(a). Similarly, under the deferred commission scheme, there are various methods available to allocate the additional monies paid, most of which are

grounded in the concept of fairness and reasonableness.

           Using Plaintiffs' analysis, CS pay should be allocated back only to those time periods where the actual volunteer work was performed, which earned the bonus. The CS pay is not precisely like an arbitrary or discretionary bonus, or precisely like a deferred commission.  CS pay is an addition to pay which, as described above is available to the employee when and only when it has been earned. There is no employer discretion involved in the payment.

        Plaintiffs attempt to infer that Defendants have any control over when CS pay is paid, and in so doing can manipulate that payment so as to avoid paying extra overtime. That is entirely untrue.  CS pay is paid as soon as it is earned, and, as described above, the only person with control over when CS pay is paid is the officer who must earn the CS pay.  As a result, the Town's methodology of accounting for CS pay in the pay period for which it was earned is justified based on the character of CS pay, and the discretion available in the regulations.  In the alternative, the Town believes it would also be appropriate to allocate the CS pay to the weeks in which it was actually earned.

II.    **Response to Plaintiffs' Objections**

    A.    **Extrapolation (Objection #1)**

Defendants extrapolated data as a time saving matter and a place-holder, where, at the time the calculations were performed, data was collected through the end of the Town fiscal year, 6/30/07.  Defendants agree that actual data should be utilized, and once a final methodology is agreed upon Defendants will update their calculations.

    B.    **Allocation of Community Service Pay (Objection #2)**

See Defendants' Objections to Plaintiff's Calculations in Part I.C, *supra*.

    C.    **Period Upon Which Wage Augments Are Calculated (Objection #3).**

See Defendants' Objections to Plaintiff's Calculations in Part I.A.2, *supra*.

    D.    **Matching Of Overtime Hours and Other Hours (Objection #4)**

Here, Defendants' calculations are based on the actual pay records and documents which were available to the Town.  The impact of this decision to rely on these records will have a minimal/negligible impact on the Plaintiffs.  Based on some limited recalculations, for some Plaintiffs it may minimally increase or decrease the damages.

    E.    **Additional "Town Details" (Objection #5)**

See Defendants Objections to Plaintiffs' Calculations in Part I.B.2, *supra*.

    F.    **Extrapolation of 2002 Data Unnecessary (Objection #6)**

As in Objection 1 above, Defendants extrapolated data as a time saving matter and a place-holder.  Defendants agree that actual data should be utilized, and once a final methodology is agreed upon Defendants will update their calculations.

G.     **Details and Straight-Time Overtime (Objection #7)**

<u>See</u> Defendants Objections to Plaintiffs' Calculations in Part I.A.2 and Part 1.B.1,

*supra.*

**WHEREFORE,** Defendants object to Plaintiffs' Damages filing and respectfully

request that Defendants' Damages figures be approved and entered by this Court as the

final judgment in this matter.

Respectfully submitted,

Defendants, TOWN OF NATICK,
NATICK POLICE DEPARTMENT, and
DENNIS R. MANNIX, CHIEF OF POLICE

By their attorneys,

/s/  John P. Flynn
John P. Flynn, BBO# 172640
Geoffrey B. McCullough, BBO# 558207
Kathryn M. Murphy, BBO#564789
Karis L. North, BBO # 648998
MURPHY, HESSE, TOOMEY & LEHANE, LLP
300 Crown Colony Drive, Suite 410
Quincy, MA 02169
(617) 479-5000

Dated: May 1, 2008

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be send to those indicated as non registered participants on May 1, 2008

/s/ Karis L. North
Karis L. North